EXHIBIT – 8

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
### 400 MCALLISTER STREET, SAN FRANCISCO, CA 94102

| | |
|---|---|
| MICHAEL CAVA | **Pretrial Department 212** |
| PLAINTIFF (S) | |
| VS. | **NO. CGC-06-453469** |
| NETVERSANT-NATIONAL, INC., A DELAWARE CORPORATION et al | **Notice of Time and Place of Trial and Mandatory Settlement Conference** |
| DEFENDANT (S) | |

To: ALL COUNSEL AND PARTIES IN PROPRIA PERSONA

As a result of the hearing regarding objection to the tentative setting in the case,

YOU ARE HEREBY NOTIFIED that this case is set for Jury TRIAL on  JUN-25-2007 at 9:30 AM in Dept. 206.

A MANDATORY SETTLEMENT CONFERENCE is set for JUN-08-2007 at 3:30 PM in Department 514, 400 McAllister Street San Francisco, CA 94102.  Sanctions will be imposed for failure to comply with Local Rule 5.0.A. and Cal. Rules of Court, Rule 225.

ALL REQUESTS FOR CONTINUANCE MUST BE SUBMITTED TO THE PRESIDING JUDGE in Department 206, 400 MCALLISTER STREET, SAN FRANCISCO, CA 94102.

DATED: NOV-27-2006

Arlene T. Borick
_____
JUDGE/COMMISSIONER

# EXHIBIT - 9

Shahab E. Fotouhi
Fotouhi Epps Hillger Gilroy LLP
160 Pine St. Suite 710
San Francisco, CA 94111

Michelle L. Bucek
Littler Mendelson et al
50 West San Fernando St. 14th Floor
San Jose, CA 95113

December 8, 2006

---

## SUPERIOR COURT OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO
### EARLY SETTLEMENT PROGRAM

### Notice of Early Settlement Conference

| Plaintiff(s) | Case Number |
|---|---|
| **MICHAEL CAVA** | **453469** |
| **vs.** | |
| **NETVERSANT-NATIONAL, INC., A DELAWARE CORPORATION DBA NETVERSANT-SAN FRANCISCO AKA NETVERSANT; PETER WAINWRIGHT AN INDIVIDUAL** | |
| **Defendant(s)** | |

Notice is hereby given that the EARLY SETTLEMENT CONFERENCE for the above-entitled case has been SCHEDULED. Attendance at the settlement conference by the parties, authorized representatives of the insurer (other than counsel) and the trial attorney(s) is mandatory.

It is HEREBY ORDERED that the matter is set for settlement conference on

**4/20/2007        at        9:00 AM**

You will receive written notification of the identity of the assigned panelists and conference location from the Bar Association of San Francisco two to three weeks prior to conference date.

You are then required to send the required ESP Statement by mail, hand-delivery or fax, insuring that the panelist(s), ESP/BASF and all other counsel receive a copy no later than the Monday before your ESP conference. The ESP Statement must include a Proof of Service indicating all who were sent a copy.

Your administrative fee invoice is enclosed.

_Arlene T. Borick_

**ESP Policies and Procedures and the Superior Court Local Rule 4.3 is enclosed.**

Shahab E. Fotouhi
Fotouhi Epps Hillger Gilroy LLP
160 Pine St. Suite 710
San Francisco, CA 94111

Michelle ~~L. Buck~~ B. *Heverly*
Littler Mendelson et al
50 West San Fernando St. 14th Floor
San Jose, CA 95113

December 8, 2006

## SUPERIOR COURT OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO
### EARLY SETTLEMENT PROGRAM

## I N V O I C E

| Plaintiff(s)  MICHAEL CAVA  vs.  NETVERSANT-NATIONAL, INC., A DELAWARE CORPORATION DBA NETVERSANT-SAN FRANCISCO AKA NETVERSANT; PETER WAINWRIGHT AN INDIVIDUAL  Defendant(s) | CASE: 453469  Conference Date: 4/20/2007  Fee due date: 12/23/2006 |
|---|---|

Pursuant to ESP/SFBA Policies and Procedures (copy enclosed), Rule No. 4, the Early Settlement Program administrative fee in this case is due **within 15 days of the date of this invoice. (NOTE:** We must be notified in writing immediately of any changes in status of this case; e.g., settlement, dismissal, withdrawal to mediation, changes in counsel, etc. See Rule No. 10).

1. List (use the back of the page if more room is needed):
   (a) all parties you represent: *NetVersant National and Peter Wainwright*
   (b) their relationship to each other: *Co-defendants, company + employee*

2. If applicable, indicate name(s) of co-counsel and firm: _____

3. **The administrative fee is $250 per party.** For purposes of calculating the fee, a husband and wife (and any minor children) or a company and its principals, officers, or directors shall be considered one party. All others are considered individual parties.

   ☒ A. Enclosed is $ *500* for *2* parties @ $250 each; or

   ☐ B. Enclosed is a written request for a waiver based on financial hardship; or

   ☐ C. No check is enclosed because co-counsel will submit the payment.

4. Return a copy of this completed invoice and payment **payable to ESP/BASF, 465 California Street, Suite 1100, San Francisco, CA 94104.** Please include the case number on your check.

Superior Court Local Rule 4.3 and ESP/BASF Policies and Procedures can be found at **www.sfbar.org**
Questions about fees? (415) 782-8987

# EXHIBIT-10

**Shahab E. Fotouhi - 168301**
**Daniel P. Iannitelli -  203388**
FOTOUHI • EPPS • HILLGER • GILROY LLP
160 Pine Street, Suite 710
San Francisco, CA 94111
Tel: 415.362.9300
Fax: 415.358.5521

Attorneys for Plaintiffs
MICHAEL CAVA

ENDORSED
F I L E D
San Francisco County Superior Court

JAN 3 0 2007

GORDON PARK-LI, Clerk
BY: MARTA VALLEJO
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO - UNLIMITED JURISDICTION

MICHAEL CAVA,

            Plaintiff,

vs.

NETVERSANT - NATIONAL, INC., a Delaware
corporation, dba NETVERSANT - SAN
FRANCISCO, aka NETVERSANT; PETER
WAINWRIGHT, an individual; and DOES 1
through 40, inclusive,

            Defendants.

Case No.  CGC-06-453469

**JOINT PROTECTIVE ORDER RE
CONFIDENTIAL INFORMATION**

1    Upon joint application by plaintiff Michael Cava and defendants Netversant - National, Inc.,

2  dba Netversant - San Francisco and Peter Wainwright, and good cause appearing therefor, IT IS

3  HEREBY ORDERED as follows:

4    1.    Designated Material.

5    Any information or material produced, formally or informally, in connection with discovery in

6  this action and any material lodged with the Court may be designated under this Order by any party,

7  or by the person or entity, producing or lodging it ("Designating Person").  All such information and

8  material and all information or material derived from it constitutes "Designated Material" under this

9  Order.  The designation may be made for the purpose of avoiding invasion of individual privacy,

10  privacy of third parties, confidential business information and/or trade secrets relating to the

11  Designating Person's business or personal information.  The designation shall be either

12  "CONFIDENTIAL" or "CONFIDENTIAL–ATTORNEYS ONLY" as described below.

13    2.    Criteria for Designation

14    (a)    "CONFIDENTIAL":  A Designating Person may designate documents,

15  discovery responses, testimony or information as "CONFIDENTIAL" if the Designating Person

16  reasonably believes that the documents, discovery responses, testimony or information embody (a)

17  sensitive, competitive or other confidential information, including, without limitation, computer code,

18  personnel files, development information, sales engineering information, customer information, sales

19  rankings, commission statements, information specific to employee benefits paid, (b) sensitive

20  financial information, including, without limitation, budgets, financial statements, profit and loss

21  statements, accountant computations, (c) sensitive personal information, (d) other sensitive

22  information the Designating Person does not customarily disclose to the public, (e) third-party

23  documents or information that the third-party currently maintains as CONFIDENTIAL and is seeking

24  to maintain as CONFIDENTIAL for purposes of this action, as well as personnel records, including

25  performance improvement plans;

26    (b)    "CONFIDENTIAL–ATTORNEYS ONLY":  A Designating Person may

27  designate documents, discovery responses, testimony or information is "CONFIDENTIAL" documents,

28  discovery responses, testimony or information pursuant to paragraph 2(a) above, and (b) that the

1   confidentiality of such documents, discovery responses, testimony or information cannot be

2   adequately maintained so as to protect the reasonable interests of the Designating Person in

3   maintaining their confidentiality, unless the disclosure of such documents, discovery responses,

4   testimony or information is limited to the person to whom "CONFIDENTIAL–ATTORNEYS ONLY"

5   documents, discovery responses, testimony or information may be disclosed pursuant to this

6   Stipulation and Order.

7       3.   Access to Designated Material.  Designated Material shall be not be used or

8   disclosed for any purpose other than the litigation of this action and may be disclosed only as

9   follows:

10          (a)   Parties/Insurance Carriers:   Material designated "CONFIDENTIAL" may be

11  disclosed to those officers, directors, in-house counsel (including their legal associates and regularly

12  employed office staff), members and/or employees of the parties or insurance carriers for the parties

13  to this action who have agreed in writing to be bound by this Order.  A copy of the form agreement

14  is attached as Exhibit "A".

15          (b)   Counsel:   Material designated "CONFIDENTIAL" or "CONFIDENTIAL

16  ATTORNEYS – ONLY" may be disclosed to outside counsel of record for parties to this litigation, their

17  legal partners, of counsel, associates, contract attorneys, legal assistants, case clerks, office staff, and

18  commercial litigation support services, such as copy centers, outside court reporting services and

19  court reporters, and the like.

20          (c)   Consultants:   Material designated "CONFIDENTIAL" or "CONFIDENTIAL

21  ATTORNEYS – ONLY" my be disclosed to consultants and their office staff who have been retained

22  by counsel for any party and who have agreed in writing to be bound by this Order.  Nothing in this

23  paragraph shall require any party to disclose its consultants to any adverse party other than as

24  required under the Code of Civil Procedure or by order of this Court.

25          (d)   Court Personnel:   Material designated "CONFIDENTIAL" or

26  "CONFIDENTIAL ATTORNEYS – ONLY" lodged with the Court may be disclosed to and viewed by

27  appropriate court personnel as necessary without the need of further order by this Court.

28  //

1      (e)      Authors and Addressees:  Material designated "CONFIDENTIAL" or

2  "CONFIDENTIAL ATTORNEYS – ONLY" may be disclosed to any person who appears as an author

3  or addressee on the face of the document or who received a copy of the document or to any officer,

4  director, or attorney (including legal assistants and regularly employed office staff) of the Designating

5  Person.

6      (f)      Other Persons:  All Designated Material may be disclosed to other persons

7  who are subsequently designated by agreement of the parties or by order of the Court upon motion

8  by a party.

9      4.      Copies.  Copies, extracts, and summaries may be made by or for the foregoing

10  persons in paragraph 3, provided that all copies, extracts, and summaries are appropriately marked

11  in accordance with paragraph 6.  All copies, extracts, and summaries are subject to paragraph 8 of

12  this Order.

13      5.      Custody of Designated Materials.  Except as provided in Paragraph 4, documents

14  containing information designated "CONFIDENTIAL" or "CONFIDENTIAL ATTORNEYS – ONLY" and

15  notes or other records regarding such information shall be maintained in the custody of the attorneys

16  to whom the documents and information have been disclosed, and not partial or complete copies or

17  extracts thereof shall be retained by anyone else at any location, except that consultants may retain

18  documents, notes and records on a temporary basis for the purpose of study, analysis and

19  preparation of the case.  A person having custody of Designated Material shall maintain it in a

20  manner that limits access to qualified persons.

21      6.      Designating Documents.  Documents shall be designated "CONFIDENTIAL" or

22  "CONFIDENTIAL ATTORNEYS – ONLY" and shall have each page of all such documents and

23  exhibits marked as such.  The document shall be marked prior to production.  Designated Material

24  not reduced to documentary, tangible, or physical form or which cannot be conveniently designated

25  in the manners set forth or described herein shall be designated by the Designating Party by

26  informing the receiving party in writing.  In the event a party believes that documents or information

27  produced by another party or third party should be designated "CONFIDENTIAL" or

28  "CONFIDENTIAL ATTORNEYS – ONLY" that party shall identify all documents by Bates number and

1  promptly inform all parties of the designation.

2      7.    <u>Designating Depositions</u>.

3      (a)    Deposition transcripts or portions thereof may be designated either: (i) before

4  the testimony is recorded, in which case the transcript of the designated testimony shall be bound in a

5  separate volume and marked by the reporter, as the Designating Person may direct, or (ii) by

6  captioned, written notice to the reporter and all counsel of record, given within ten (10) business days

7  after the reporter sends written notice that the transcript is available for review, in which case all

8  counsel receiving such notice shall be responsible for marking the copies of the designated transcript

9  or portion thereof in their possession or control as directed by the Designating Person.  Pending

10  expiration of the ten (10) business days, the deposition transcript shall be treated as if it had been

11  designated"CONFIDENTIAL" or "CONFIDENTIAL ATTORNEYS – ONLY".  For convenience, if

12  deposition transcript contains repeated references to Designated Material which cannot conveniently

13  be segregated from non-designated material, any party may request that the entire transcript be

14  maintained as CONFIDENTIAL.

15      (b)    Where testimony is designated at a deposition, the Designating Person may

16  exclude from the deposition all persons other than those whom the Designated Material may be

17  disclosed under paragraph 3 of this Order.

18      (c)    Any party may mark Designated Material as a deposition exhibit and

19  examine any witness thereon, or examine any witness about Designated Material, provided at the

20  deposition witness is one to whom the Designated Material may be disclosed under paragraph 3 of

21  this Order and the exhibit, if any, and related transcript pages receive the same confidentiality

22  designation as the original Designated Material.

23      8.    <u>Court Procedures</u>.

24      (a)    The parties agree that the employees of the Court of the Clerk's office have

25  no duty to the parties to maintain the confidentiality of any information in any papers filed with the

26  Court.

27      (b)    In applications and motions to the Court, all submissions of Designated

28  Material shall be lodged (not filed) with the Court in sealed enclosures on which shall be affixed the

1   title of this action, an indication of the nature of their contents, the word "CONFIDENTIAL" and a

2   statement substantially in the following form:

3         THIS ENVELOPE CONTAINS MATERIALS SUBJECT TO A PROTECTIVE ORDER
          ENTERED IN THIS ACTION.  IT IS NOT TO BE OPENED NOR ARE ITS
4         CONTENTS TO BE DISPLAYED, REVEALED, OR MADE PUBLIC, EXCEPT BY
          ORDER OF THE COURT.

5

6         The submission shall indicate clearly which portions are designated to be confidential.  A

7   copy of this Order shall be submitted with the lodged materials.  Lodged materials shall be returned

8   by the Court to the submitting party immediately after the hearing or as early as is otherwise

9   practicable.  The materials shall then be preserved by the submitting party for the duration of the

10  action.

11        (c)     The parties to this lawsuit shall be responsible for moving the Court to hold

12  in camera any hearing which may refer to or describe Designated Materials.

13        9.    Designations to be Reasonable.

14        (a)     The parties will use reasonable care to avoid designating any documents or

15  information as "CONFIDENTIAL" that are generally available to the public.

16        (b)     The parties will use reasonable care to avoid designating any documents or

17  information as "CONFIDENTIAL" or "CONFIDENTIAL ATTORNEYS – ONLY" for which the

18  designating party does not have a good faith belief that the document or information satisfies the

19  criteria set forth in paragraph 2.

20        10.   Objections.   A party may challenge the propriety of any designation under this

21  Order at any time.  The parties shall then meet and confirm in goof faith regarding the challenged

22  designation.  If the parties are unable to resolve the disagreement, a challenge may be made by

23  serving on all parties a captioned notice of objection, which shall identify with particularity the items

24  as to which the designation is challenged, state the basis for each challenge and propose a new

25  designation for each item.  The challenged material shall be deemed re-designated as proposed

26  unless within fifteen (15) days after service (or twenty (20) days if service is by mail) the Designating

27  Person has filed and served a motion for a protective order to maintain the original designation or to

28  designate the material otherwise.  The original designations shall remain effective until ten (10) days

after entry of an order re-designating the materials. The Court may award sanctions on a motion concerning the designation if it finds that any party's position with respect to the designation was taken without substantial designation.

11.  <u>No Prejudice</u>.

(a)  Nothing in this Order shall preclude any party from seeking and obtaining additional or different protection with respect to confidentiality of discovery.

(b)  This Order shall not diminish any existing obligations or right with respect to Designated Material, nor shall it prevent a disclosure to which the Designating Person consents in writing before the disclosure takes place.

(c)  Unless all parties stipulate otherwise, evidence of the existence or nonexistence of a designation under this Order shall not be admissible for any purpose during any proceeding on the merits of this action. The designation of information as "CONFIDENTIAL" or "CONFIDENTIAL ATTORNEYS – ONLY", pursuant to this Order, shall not be construed as a concession by a producing party that such information is relevant or material to any issue or is otherwise discoverable, or by a receiving party that such information is, in fact, confidential.

(d)  A party may seek by stipulation or court order to make late designations of material otherwise entitled to protection under this Order if the party failed to make a timely designation through mistake or inadvertence.

12.  <u>Inadvertence Production of Privileged Information</u>.    The inadvertent production of any document or thing shall be without prejudice to a claim that such material is protected by the attorney-client privilege or protected from discovery by work product. If within a reasonable time after materials are disclosed, a Designating Person asserts that such materials are protected by the attorney-client privilege or work product doctrine and were inadvertently produced, the receiving party shall take prompt steps to ensure that all known copies of such materials are returned to the Designating Person. Nothing in this section shall preclude a party from challenging the propriety of the claim of privilege in accordance with the Rules of Civil Procedure.

13.  <u>Error in Designation</u>. The inadvertent or unintentional production of documents containing, or otherwise disclosing, private, confidential, proprietary, or secret information without

being designated "CONFIDENTIAL" or "CONFIDENTIAL ATTORNEYS – ONLY" at the time of production or disclosure shall not be deemed a waiver in whole or in part of a Designating Person's claim of confidentiality or secrecy, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Any error in designation shall be corrected within a reasonable time after the Designating Person becomes aware of the error.

14.     _Final Disposition_.  Upon final termination of this action and at the written request of the Designating Person, all Designated Material and all copies, extracts, and summaries thereof shall be returned to the person that produced the material or destroyed.  However, counsel of record may retain copies of pleadings, attorney and consultant work product, and deposition transcripts for archival purposes.

15.     _Modification and Survival_.   The restrictions imposed by this Order may only be modified or terminated by written stipulation of all parties, by stipulation read into a court record or deposition record, or by order of this Court.  The Order shall survive termination of this action.

16.     _Restrictions_.   Nothing in this Order shall impose any restrictions on the use or disclosure by a party of its own information and documents or information and documents obtained independently from public sources.

17.     _Binding Effect_.  As among the parties and their counsel, this Order shall take effect upon execution of this Order by counsel for the parties.

18.     This Order is subject to local rules and further order of this Court.


SO STIPULATED

DATED: January 22, 2007                    LITTLER  MENDELSON, P.C.


By: _Michelle Heverly_
Michelle B. Heverly
Attorneys for Defendants

1

DATED: January **25**, 2007

FOTOUHI • EPPS • HILLGER • GILROY LLP

2

3



4

By:

Daniel P. Iannitelli
Attorneys for Plaintiff

5

6

7

SO ORDERED

8

9

10

Dated: January **30**, 2007

BRUCE E. CHAN

11

12

Judge of the Superior Court

13

14

# 453467

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

<u>**ACKNOWLEDGMENT**</u>

_____
(Print Name)


_____
(Address)


_____
(Position)


        I understand that confidential documents and information have been disclosed or are going to be disclosed to me for purposes related to this matter entitled _Michael Cava v. Netversant - National, Inc., dba Netversant - San Francisco, et al._  I have been given a copy of the attached Joint Stipulation Re Confidential Information entered by the Court and have been advised that such confidential documents and/or information may not be used for any purposes other than the preparation of depositions, arbitration, mediation or trial, and I agree to be bound by the Protective Order.

                                        _____
                                        (Signature)


                                        _____
                                        (Date)

# EXHIBIT -11

MICHELLE B. HEVERLY, Bar No. 178660
MICHAEL W. WARREN, Bar No. 223642
LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street, 14th Floor
San Jose, CA 95113.2303
Telephone:    408.998.4150

Attorneys for Defendants
NETVERSANT - NATIONAL, INC., PETER
WAINWRIGHT

ENDORSED FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

MAR 0 9 2007

GORDON PARK-LI, CLERK

BY: _____
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| MICHAEL CAVA,<br><br>Plaintiff,<br><br>v.<br><br>NETVERSANT - NATIONAL, INC., a Delaware corporation, dba NETVERSANT - SAN FRANCISCO, aka NETVERSANT; PETER WAINWRIGHT, an individual; and DOES 1 through 40, inclusive,<br><br>Defendants. | Case No. CGC-06-453469<br><br>**DEFENDANT NETVERSANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**<br><br>Date:    May 23, 2007<br>Time:    9:30 a.m.<br>Dept:    301<br>Judge:   Hon. Peter Busch |

TO:    MICHAEL CAVA AND HIS ATTORNEY OF RECORD:

NOTICE IS HEREBY GIVEN that on May 23, 2007, at 9:30 a.m., or as soon thereafter as the matter may be heard in Department 301 of the San Francisco County Superior Court, located at 400 McAllister Street, San Francisco, California, 94102, Defendant NETVERSANT – NATIONAL, INC., will move and hereby does move this court for summary judgment or, in the alternative, summary adjudication of the following issues:

///

///

///

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

Case No. CGC-06-453469

DEF NETVERSANT'S NOT OF MOT & MSJ, OR IN THE ALT, SUM ADJ OF ISSUES

1

## FIRST CAUSE OF ACTION

2

## DISABILITY DISCRIMINATION

3      <u>ISSUE 1</u>:      Plaintiff's claim for disability discrimination is subject to summary

4      adjudication because Plaintiff cannot establish a *prima facie* case.

5      <u>ISSUE 2</u>:      Alternatively, Plaintiff's claim for disability discrimination fails

6      because Defendant has articulated a legitimate, non-discriminatory reason for his termination and

7      Plaintiff has no proof of pretext.

8      <u>ISSUE 3</u>:      Alternatively, Plaintiff's claim for disability discrimination fails

9      because Defendant accommodated his disability to the extent required by law.

10

## SECOND CAUSE OF ACTION

11

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

12      <u>ISSUE 4</u>:      Plaintiff's claim for wrongful termination fails for the same reasons his

13      claim for disability discrimination fails.

14

## FOURTH CAUSE OF ACTION

15

## RETALIATION

16      <u>ISSUE 5</u>:      Plaintiff's claim for retaliation fails because he has not engaged in any

17      legally protected activity.

18      <u>ISSUE 6</u>:      Alternatively, Plaintiff's claim for retaliation fails because he has no

19      evidence to establish a causal nexus between the alleged protected activity and the adverse action.

20      <u>ISSUE 7</u>:      Alternatively, Plaintiff's claim for retaliation fails because he cannot

21      rebut the legitimate business reason provided for his termination and Plaintiff has no proof of

22      pretext.

23

## FIFTH CAUSE OF ACTION

24

## BREACH OF CONTRACT

25      <u>ISSUE 8</u>:      Plaintiff's claim for breach of contract fails because he cannot

26      establish an oral or implied contract contradictory to the terms of the written agreements singed by

27      Plaintiff.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
15th Floor
San Jose, CA 95113-2303
408.998.4150

2.

Case No.  CGC-06-453469

**DEF NETVERSANT'S NOT OF MOT & MSJ, OR IN THE ALT, SUM ADJ OF ISSUES**

1    ISSUE 9:    Alternatively, Plaintiff's claim for breach of contract fails because the

2    promises upon which Plaintiff claims the contract is based are too vague to be enforceable.

3    ISSUE 10:    Alternatively, Plaintiff's claim for breach of contract fails for lack of

4    consideration.

5

6    ISSUE 11:    Alternatively, Plaintiff's claim for breach of contract fails because he

7    was employed at will.

8    **SIXTH CAUSE OF ACTION**

9    **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

10    ISSUE 12:    Plaintiff's claim for breach of the implied covenant of good faith and

11    fair dealing fails because he cannot establish an oral or implied contract contradictory to the terms of

12    the written agreements singed by Plaintiff.

13    ISSUE 13:    Alternatively, Plaintiff's claim for breach of the implied covenant of

14    good faith and fair dealing fails because the promises upon which Plaintiff claims the underlying

15    contract is based are too vague to be enforceable.

16    ISSUE 14:    Alternatively, Plaintiff's claim for breach of the implied covenant of

17    good faith and fair dealing fails because the underlying contract for lack of consideration.

18    ISSUE 15:    Alternatively, Plaintiff's claim for breach of the covenant of good faith

19    and fair dealing fails because he was employed at will.

20    **SEVENTH CAUSE OF ACTION**

21    **INTENTIONAL MISREPRESENTATION**

22    ISSUE 16:    Plaintiff's claim for intentional misrepresentation fails because

23    Plaintiff has not identified a specifically enforceable misrepresentation.

24    ISSUE 17:    Alternatively, Plaintiff's claim intentional misrepresentation fails

25    because he has no evidence of falsity.

26    ISSUE 18:    Alternatively, Plaintiff's claim for intentional misrepresentation fails

27    because he cannot prove reasonable reliance.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408.998.4150

3.                          Case No. CGC-06-453469

DEF NETVERSANT'S NOT OF MOT & MSJ, OR IN THE ALT, SUM ADJ OF ISSUES

1    ISSUE 19:    Alternatively, Plaintiff's claim for intentional misrepresentation fails

2    because he remained employed even after he became aware of the alleged falsity of the promises.

3                        **SEVENTH CAUSE OF ACTION**

4                        **NEGLIGENT MISREPRESENTATION**

5    ISSUE 20:    Plaintiff's claim for negligent misrepresentation fails because Plaintiff

6    has not identified a specifically enforceable misrepresentation.

7    ISSUE 21:    Alternatively, Plaintiff's claim negligent misrepresentation fails

8    because he has no evidence of falsity.

9    ISSUE 22:    Alternatively, Plaintiff's claim for negligent misrepresentation fails

10    because he cannot prove reasonable reliance.

11    ISSUE 23:    Alternatively, Plaintiff's claim for negligent misrepresentation fails

12    because he remained employed even after he became aware of the alleged falsity of the promises.

13    ISSUE 24:    Alternatively, Plaintiff's claim for negligent misrepresentation fails

14    because Plaintiff alleges no misrepresentations of past or existing material fact.

15

16    Dated: March 8, 2007

17

18    _____

     MICHAEL W. WARREN
19    LITTLER MENDELSON
     A Professional Corporation
20    Attorneys for Defendants
     NETVERSANT - NATIONAL, INC., PETER
21    WAINWRIGHT

22

23

24

25

26

27

28

Case No. CGC-06-453469

LITTLER MENDELSON

DEF NETVERSANT'S NOT OF MOT & MSJ, OR IN THE ALT, SUM ADJ OF ISSUES

EXHIBIT -12

1   MICHELLE B. HEVERLY, Bar No. 178660
    MICHAEL W. WARREN, Bar No. 223642
2   LITTLER MENDELSON
    A Professional Corporation
3   50 West San Fernando Street, 14th Floor
    San Jose, CA  95113.2303
4   Telephone:    408.998.4150

5   Attorneys for Defendants
    NETVERSANT - NATIONAL, INC., PETER
6   WAINWRIGHT

7

ENDORSED FILED
S...      ...URT
COUNT...   ...NCISCO

Mar 0 9 2007

GOR...  ...LI, CLERK
BY: _____
            Deputy Clerk

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF SAN FRANCISCO

10

11   MICHAEL CAVA,                          Case No.  CGC-06-453469

12              Plaintiff,                  **DEFENDANT NETVERSANT'S**
                                            **MEMORANDUM OF POINTS AND**
13        v.                                **AUTHORITIES IN SUPPORT OF ITS**
                                            **MOTION FOR SUMMARY JUDGMENT**
14   NETVERSANT - NATIONAL, INC., a         **AND/OR SUMMARY ADJUDICATION OF**
     Delaware corporation, dba              **ISSUES**
15   NETVERSANT - SAN FRANCISCO, aka
     NETVERSANT; PETER WAINWRIGHT,          Date:      May 23, 2007
16   an individual; and DOES 1 through 40,  Time:      9:30 a.m.
     inclusive,                             Dept:      3D1
17                                          Judge:     Hon. Peter Busch
                Defendants.
18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

Case No.  CGC-06-453469

DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES

# **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ..................................................................................................1

II.   STATEMENT OF FACTS ....................................................................................1

III.  ARGUMENT........................................................................................................7

    A.    Plaintiff's Disability Discrimination Claim Is Subject to Summary
        Adjudication ................................................................................................7

        1.    Plaintiff Cannot Establish A Prima Facie Case Of Discrimination.................8

        2.    Alternatively Defendant Has Articulated A Legitimate, Non-
               Discriminatory Reason For The Alleged Adverse Action................................8

        3.    Defendant Accommodated Plaintiff's Disability .........................................10

    B.    Plaintiff's Claim For Wrongful Term Is Subject To Summary Adjudication............11

    C.    Plaintiff's Claim For Retaliation Is Subject To Summary Adjudication....................11

        1.    Plaintiff Has Not Engaged In Protected Activity ...........................................12

        2.    Alternatively, Plaintiff Cannot Establish A Causal Nexus Between His
               Leave And His Termination ..........................................................................12

        3.    Alternatively, Plaintiff Cannot Rebut The Legitimate Reasons
               Provided For Plaintiff's Termination .............................................................13

    D.    Plaintiff's Claims For Breach Of Contract And Breach Of The Covenant Of
        Good Faith And Fair Dealing Are Subject To Summary Adjudication ....................13

        1.    Plaintiff Cannot Establish An Implied Contract Contrary To The
               Express Written Agreements He Signed .........................................................14

        2.    Alternatively, The Alleged Promises Are Too Vague To Be
               Enforceable ..................................................................................................15

        3.    Alternatively, The Alleged Agreements Fail For Lack Of
               Consideration................................................................................................15

        4.    Plaintiff's Implied Covenant Claim Fails Because Plaintiff Was At
               Will ..............................................................................................................16

    E.    Plaintiff's Claims For Intentional and Negligent Misrepresentation Are
        Subject To Summary Adjudication .............................................................................16

        1.    Plaintiff's Has Not Identified A Specific Misrepresentations.........................17

        2.    Alternatively, Plaintiff Has No Evidence Of Intentional Falsity....................18

        3.    Alternatively, Plaintiff Cannot Prove Reasonable Reliance...........................18

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 598 4150

# TABLE OF CONTENTS
### (CONTINUED)

PAGE

4.    Alternatively, Plaintiff Remained Employed Despite The Falsity .................19

5.    Alternatively, Plaintiff Cannot Establish The Essential Elements Of
His Negligent Misrepresentation Claim .........................................................20

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408 998 4150

# TABLE OF AUTHORITIES

**PAGE**

## CASES

Bank of America Ass'n v. Pendergrass
(1935) 4 Cal.2d 258 ..............................................................................19

Bermudez v. TRC Holdings, Inc.
(7th Cir. 1998) 138 F.3d 1176 ..............................................................12

Brookwood v. Bank Of America, et. al.
(1996) 45 Cal.App.4th 1667 ..................................................................19

Brundage v. Hahn
(1997) 57 Cal.App.4th 228 ...........................................................7, 9, 10

Byrne v. Avon Products
(7th Cir. 2003) 328 F.3d 379 ..................................................................8

Careau & Co. v. Pacific Business Credit, Inc.
(1990) 222 Cal. App. 3d 1371 ..............................................................15

Chen v. County of Orange
(2002) 96 Cal.App.4th 926 ....................................................................12

Church of Merciful Saviour v. Volunteers of America, Inc.
(1960) 184 Cal.App.2d 851 ...................................................................18

City of Atascadero v. Merrill Lynch, et al.
(1998) 68 Cal.App.4th 445 ....................................................................19

Clark v. Claremont Univ.
(1992) 6 Cal. App. 4th 639 ....................................................................13

Clark County School Dist. v. Breeden
(2001) 532 U.S. 270 .........................................................................12, 13

Colarossi v. Coty US, Inc.
(2002) 97 Cal.App.4th 1142 ..................................................................11

Cooper v. Neiman Marcus Group
(9th Cir. 1997) 125 F.3d 786 ..................................................................7

Deschene v. Pinole Point Steel Co
(1999) 76 Cal.App.4th 33 .....................................................................7, 8

Engalla v. Permanente Med. Group, Inc.
(1997) 15 Cal.4th 951 ...........................................................................17

Epps v. City of Pine Lawn
(8th Cir. 2003) 353 F.3d 588, 593 n. 5 ...................................................9

Flait v. North Amer. Watch Co.
(1992) 3 Cal.App.4th 467 ................................................................11, 13

Foley v. Interactive Data Corp.,
(1988) 47 Cal. 3d 654 .....................................................................14, 16

Gonzales v. MetPath
(1989) 214 Cal.App.3d 422 ....................................................................9

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Green v. Ralee Eng. Co.*
(1998) 19 Cal.4th 66 ........................................................................................11

*Gual v. Lucent Technologies, Inc.*
(3rd Cir. 1998) 134 F.3d 576 ..........................................................................10

*Guz v. Bechtel Nat. Inc.*
(2000) 24 Cal.4th 317 ..................................................................................passim

*Hanson v. Lucky Stores, Inc.*
(1999) 74 Cal.App.4th 215 ....................................................................8, 10, 11

*Hastings v. Dept of Corr.*
(2003) 110 Cal.App.4th 963 ............................................................................10

*Horn v. Cushman & Wakefield West. Inc.,*
(1999) 72 Cal.App.4th 799 ................................................................................9

*Hoxsie v. Clark*
(1965) 234 Cal.App.2d 370 .......................................................................15, 17

*Humphrey v. Memorial Hospital Assn*
(9th Cir. 2001) 239 F.3d 1128 .........................................................................11

*Jennings v. Marralle*
(1994) 8 Cal.4th 121 ........................................................................................11

*Kennedy v. Dresser Rand Co.*
(2nd Cir. 1999) 193 F.3d 120 ..........................................................................10

*Lazar v. Sup. Ct*
(1996) 12 Cal. 4th 631 .....................................................................................17

*LeBourgeois v. Fireplace Mfrs., Inc.*
(1998) 68 Cal.App.4th 1049 ......................................................................8, 13

*Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*
(1992) 6 Cal.App.4th 603 ................................................................................19

*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells, et. al.*
(2000) 86 Cal.App.4th 303 ..............................................................................20

*Okun v. Morton*
(1988) 203 Cal.App.3d 805 .............................................................................17

*Prilliman v. United Air Lines, Inc.*
(1997) 53 Cal.App.4th 935 ..............................................................................10

*Robertson v. Neuromedical Center*
(5th Cir. 1998) 161 F.3d 292 ...........................................................................10

*Robinson & Wilson, Inc., v. Stone*
(1973) 35 Cal.App.3d 396 .........................................................................15, 17

*Rochlis v. Walt Disney Co.*
(1993) 19 Cal.App.4th 201 ...................................................................15, 18, 20

*Schultz v. Spraylat Corp.*
(C.D. Cal. 1994) 866 F.Supp. 1535 .............................................................7, 18

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Shapiro v. Wells Fargo*
(1984) 152 Cal.App.3d 467 ............................................................. 14, 15

*Slivinsky v. Watkins-Johnson Co.*
(1990) 221 Cal.App.3d 799 ............................................................. 16, 19

*Stansfield v. Starkey*
(1990) 220 Cal.App.3d 59 ............................................................. 15, 17

*Tarmann v. State Farm Mut. Auto Ins. Co.*
(1991) 2 Cal.App.4th 153 ............................................................. 20

*Tenzer v. Superscope, Inc.*
(1985) 39 Cal.3d 18 ............................................................. 18

*Texas Dept. of Community Affairs v. Burdine*
(1981) 450 U.S. 248 ............................................................. 7

*Thomas v. Dept. of Corr.*
(2000) 77 Cal.App.4th 507 ............................................................. 13

*Tyco Indus. v. Sup. Ct*
(1985) 164 Cal.App.3d 148, ............................................................. 18

*Walker v. Elmore County Board of Education*
(11th Cir. 2004) 379 F.3d 1249 ............................................................. 12

*Walters v. Marler*
(1978) 83 Cal.App.3d 1 ............................................................. 20

*West v. Henderson*
(1991) 227 Cal.App.3d 1578 ............................................................. 19

*Western Lithograph Co. v. Vanomar Producers*
(1921) 185 Cal. 366 ............................................................. 16

*Wilhelm v. Pray, Price, Williams & Russell*
(1986) 186 Cal.App.3d 1324 ............................................................. 17

*Williamson v. General Dynamics Corp.*
(9th Cir. 2000) 208 F.3d 1144 ............................................................. 17

## STATUTES

California Civil Code
§ 1550 ............................................................. 16
§ 1605 ............................................................. 16

California Labor Code
§2922 ............................................................. 14

Government. Code
§ 12940(a) ............................................................. 7
§ 12940(m) ............................................................. 10

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408 998 4150

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

**OTHER AUTHORITIES**

Witkin, 1 *Summary of California Law*, Contracts,
§ 202 (10th ed. 2005)...................................................................................................................16

LITTLER MENDELSON
PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

## I.    INTRODUCTION

This case proves the age old axiom of employment law that "no good deed goes unpunished." That is, despite bending over backwards to help an employee going through a difficult time in his personal life, Defendant NetVersant is now being sued. Ironically, it is being sued by the very employee it tried to help, Plaintiff Michael Cava. When Plaintiff's son was diagnosed with a serious medical condition, NetVersant not only let Plaintiff take nearly nine months of time off, it paid him for the time even though it had no obligation to do so. Although at the time Plaintiff was grateful for the Company's generosity, he now claims he was treated unfairly and on that basis sues his former employer. As is demonstrated below, however, Plaintiff's claims against NetVersant cannot stand as they have no legal or factual support, and Defendant thus moves for judgment on Plaintiff's first, second, fourth, fifth, sixth, seventh and eight causes of action.[1]

## II.    STATEMENT OF FACTS

NetVersant is the leading national provider of comprehensive and integrated network infrastructure solutions. (Wainwright Dep., p. 17:15-18:11.) NetVersant San Francisco, the division in which Plaintiff worked, focuses solely on high-end telephony systems, and is responsible for selling and installing such systems in various business across Northern California, ranging from Folsom Prison to Gallo Wines. (Wainwright Dep., p. 13:21-25; 17:15-18:11; 39:13-14.)

In approximately May 2004, Plaintiff Michael Cava contacted NetVersant to inquire about a job opportunity.[2] (Cava Dep., p. 23:1-4.) Plaintiff had learned that one of NetVersant's Sacramento-area sales representatives (Jennifer Forrest) was leaving the field to pursue another line of work.[3] (Cava Dep., p. 21:15-23:10; Wainwright Dep., p. 26:12-27:9.) Plaintiff interviewed for the position with VP of Sales Peter Wainwright and Scott Landis, General Manager of NetVersant's San Francisco office. (Cava Dep., p. 24:20-25:2; 25:18-26:3; Wainwright Dep., p. 12:25-13:10.)

---

[1]    Defendant NetVersant National and Peter Wainwright have also moved for summary adjudication of Plaintiff's third, ninth and tenth causes of action. That motion was brought separately because it is factually distinct from the instant motion.

[2]    One of NetVersant's customers, Kathleen Arceo, allegedly told him about NetVersant, and he thereafter contacted the Company about an opening. (Cava Dep., p. 21:15-23; 23:1-4.)

[3]    Plaintiff testified that he talked with Ms. Forrest about the position and understood that she had a "large base of customers," "a million dollars a year in recurring maintenance" in the Sacramento area, and was earning $200,000 per year. (Cava Dep., p. 23:21-24:1.)

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408.998.4150

1.

Case No. CGC-06-453469

DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES

1            Plaintiff contends that during the interviews, he was promised that if he joined

2 NetVersant, "he would be taking over most of the Sacramento area accounts that [Jennifer Forrest]

3 had handled," and apparently also claims that it was "his impression" that once given to him, these

4 accounts could never be taken away.[4] (Cava Dep., p. 26:7-12; 27:8-16; 32:6-9; 33:24-34:5; 35:4-

5 10.) Plaintiff now contends that these oral promises amounted to an enforceable employment

6 agreement. (Cava Dep., p. 91:4-13.) Plaintiff also claims that during the interview process Mr.

7 Landis and Mr. Wainwright told him that he would be both "managing existing accounts and

8 pursuing new accounts," and but allegedly did not tell him how much time he was expected to spend

9 pursing new business. (Cava Dep., p. 31:14-32:5; 58:20-59:5; Wainwright Dep., p. 31:12-33:25;

10 124:11-125:5.) Plaintiff admits that he was not told what specific accounts he would be given, nor

11 was what percentage of Ms. Forrest's accounts he would ultimately receive. (Cava Dep., p. 32:6-

12 33:11.) Plaintiff also admits that no one at NetVersant told him how much he could expect to earn in

13 commissions or what his total compensation would be. (Cava Dep., p. 36:22-37:15; 38:6-18.)

14            Following the interview, Plaintiff had several telephone conferences with Mr.

15 Wainwright, wherein they discussed compensation and whether "the quota was achievable there."

16 (Cava Dep., p. 28:2-14.) Within a "couple of weeks" after the first interview, Plaintiff received an

17 offer of employment from NetVersant for the position of Account Executive, which he accepted in

18 writing. (Cava Dep., p. 27:17-22, Ex. 2; Wainwright Dep., p. 37:25-38:15; Ex. 1.) Plaintiff began

19 work in June 2004, and was paid a base salary of $65,000 plus commissions based on a percentage

20 of his sales. (Cava Dep., p. 35:13-36:13; 43:8-11; Ex. 2, 5; Wainwright Dep., p. 37:25-39:1.)

21 Plaintiff's supervisor for the entire period of his employment was Mr. Wainwright, and like all other

22 NetVersant employees, Plaintiff was employed on an "at will" basis. (Cava Dep., p. 39:1-3, 40:6-

23 16; 41:8-22; 42:14-22; 44:1-17; Exhs. 1, 2, 3; Wainwright Dep., p. 13:5-10; 21:11-14.) Specifically,

24 at the time of his hire, Plaintiff signed various documents, including an employment application,

25 offer letter and employee handbook acknowledgment, all of which specifically state that Plaintiff's

26 employment can be terminated at will. (Cava Dep., p. 39:11-15; 43:12-14; Exhs. 1, 2, 3;

27

---

[4]    Despite his "impression," Plaintiff admits that he was never told that the accounts could not be
28     reassigned or otherwise taken away from him. (Cava Dep., p. 35:4-10.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408 998 4150

2.

Case No. CGC-06-453469

DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES

1   Wainwright Dep., p. 35:16-36:1.)  These employment documents, for which Plaintiff acknowledges

2   receiving and signing, also specifically state that other terms and conditions of employment may be

3   changed at any time by the Company.  (*Id.*)  Plaintiff admits that no one ever told him either that the

4   terms of these agreements would not apply to his employment or that his employment would be

5   anything other than "at will."[5]  (Cava Dep., p. 40:2-41:18; 42:14-43:7; 46:22-24; Exhs. 1, 2, 3.)

6          At the time of his hire, Plaintiff was also provided with a sales compensation plan.

7   (Cava Dep., p. 48:8-20; 49:8-18; Ex. 5.)  This plan governed the terms under which Plaintiff would

8   be assigned accounts and paid commissions, and Plaintiff admits that the terms of the plan could be

9   changed prospectively.  (Cava Dep., p. 45:11-46:19; Ex. 5; Wainwright Dep., 60:15-21.).  When

10  Plaintiff started work, he claims he was "dismayed" that he was initially assigned only two accounts

11  – Maximus and Gallo Wines, both of which had previously been cultivated by Ms. Forrest, and

12  neither of which were assigned to him in writing.  (Cava Dep., p. 50:6-22.)  Despite the fact that

13  Plaintiff certainly did not get "most" of Ms. Forrest's accounts as he claims were promised during

14  his interview, he did nothing remedy the situation other than having a "very brief conversation" with

15  Mr. Wainwright, who indicated he was "assigning them to other reps." (Cava Dep., p. 50:23-51:21.)

16         When Mr. Wainwright informed the customer contact at Gallo Wines that Plaintiff

17  would be their new account representative, the customer complained about Plaintiff.  Specifically,

18  the customer told Mr. Wainwright that she had met Plaintiff at user group meetings an did not want

19  him working on the Gallo account.  (Wainwright Dep, p. 77:20-78:6.)  As a result, within "a month"

20  of the start of Plaintiff's employment, Mr. Wainwright re-assigned the Gallo account to another sales

21  representative.  (Cava Dep., p. 51:22-52:9; 53:10-14; 54:6-10; Wainwright Dep., p. 70:15-25;

22  109:15-23.)  Although Plaintiff asked Mr. Wainwright about the decision, he admits he never

23  complained to anyone until the time of his termination in August 2005.  (Cava Dep., p. 53:15-54:5;

24  54:11-19; 90:17-25.)  Although the Gallo issue caused Mr. Wainwright immediate concern about

    Plaintiff's performance and abilities, Mr. Wainwright made every effort to give Plaintiff the chance

    o succeed, and assigned him additional five accounts in July 2004, including Markstein Beverage,

---

[5] Plaintiff also received and signed for an anti-discrimination policy, and admits that he understood he should report any such complaints.  (Cava Dep., p. 47:6-24; Ex. 4.)

1    EA Consulting, Hansen Information Technologies, Apple Computers and the US Federal Courts,

2    some of which had formerly been assigned to Ms. Forrest. (Cava Dep., p. 54:23-55:25; Ex. 6.)

3    Even with the additional accounts, however, Plaintiff claims he still felt as if he had been mistreated.

4    (Cava Dep., p. 57:6-18.) Nonetheless, Plaintiff did nothing to remedy the situation even though he

5    knew he could not earn what he expected with the reduced account list. (Cava Dep., p. 57:22-58:14.)

6            During the first few months of his employment Plaintiff's achievements were

7    minimal and Mr. Wainwright quickly began to grow concerned about his new hire. (Wainwright

8    Dep., p. 66:10-68:2; 70:15-21; 103:19-104:20;109:15-23; 110:7-14.) Plaintiff's sales funnel was not

9    what he expected it to be, and Plaintiff landed no new accounts other than one small sale worth a

10   "couple hundred" dollars, and generated only a small amount of business from existing accounts.[6]

11   (Cava Dep., p. 67:21-68:9; 104:8-105:7.) Although Plaintiff appeared to be making his sales goals

12   during this period, the numbers were skewed by one big order that had been landed prior to the time

13   Plaintiff joined NetVersant. (Cava Dep, p. 64:6-65:18.) Specifically, Ms. Forrest had sold a five

14   year maintenance contract to Maximus in 2003. (Cava Dep., p. 173:16-174:175:7.) Ms. Forrest did

15   not get credit for the maintenance contract because it did not go into effect until the product had been

16   at Maximus for one year, which was after the time Ms. Forrest had left the company. (Wainwright

17   Dep., p. 64:3-65:11.) Thus Plaintiff got a "bluebird," of approximately $295,000 when the contract

18   was booked as revenue in 2004 and thereafter credited to him. (Cava Dep., p. 62:13-23; 65:7-18;

19   89:3-17; 173:16-175:7; Exhs. 7, 21; Wainwright Dep., p. 64:2-10; 157:23-158:13.) Plaintiff admits

20   that Mr. Wainwright did not have to give him credit for the sale. (Cava Dep., p. 176:2-10.)

21            In fact, Plaintiff admits that "probably" more than 75% of the sales for which he

22   initially received credit came from work done by other sales representatives, including Ms. Forrest.

23   (Cava Depo., p. 65:7-18; Exh. 7.) Thus, at the time he went out on leave, Plaintiff had only

24   generated $118,000 of his $341,250 prorated annual quota. (Cava Dep., p. 176:20-177:7; Exhs. 5,

25   21.) Significantly, in 2004 Plaintiff earned only "a few thousand dollars" in commissions from his

26   employment at NetVersant, which was significantly less than the amount he had earned in his prior

27

28

---

[6] The "sales funnel" is the sales person's self identification of opportunities for both new and existing customers. (Cava Dep., p. 61:1-23; 62:5-21.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408 998 4150

4.

Case No. CGC-06-453469

DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES

position.[7]  (Cava Dep., p. 20:22-21:12; 177:8-16; Wainwright Dep., p. 70:15-71:20.)  Despite not making the money he expected, Plaintiff took no steps to change employment or otherwise find a new job, as even with the reduced accounts and commissions, the thought it was a "great opportunity."  (Cava Dep., p. 177:17-21.)  Mr. Wainwright counseled Plaintiff regarding his performance on a periodic basis, but, as discussed below, never had the chance to give him a formal performance warning.  (Wainwright Dep., p. 44:7-23; 61:13-23; 62:5-23; 66:5-67:12; 68:3-69:10.)

In November 2004, before Mr. Wainwright could begin a more formal counseling process after having worked at the Company for less than five months, Plaintiff's infant son was diagnosed with a brain tumor.  (Cava Dep., p. 91:14-19; Wainwright Dep., p. 70:15-25; 72:10-22.)  Plaintiff requested and was immediately granted a leave of absence to deal with his son's medical condition.  (Cava Dep., p. 91:20-23; 94:16-95:1; Ex. 12.)  In Plaintiff's own words, his need for time off "wasn't even questioned."  (Cava Dep., p. 92:10-20.)  Although not eligible for any protected leave due to his short tenure with the Company, and despite the fact that Plaintiff had not worked long enough to earn sufficient paid time off, the Company agreed to continue paying Plaintiff's full salary and benefits for the initial period of leave, which ran from November 1, 2004 through January 17, 2005.  (Cava Dep., p. 89:23-25; 93:5-10; 96:7-97:17.)  Plaintiff admits that the Company, including Mr. Wainwright, seemed concerned about his welfare and was supportive of his needs during this period.  (Cava Dep., p. 84:2-15; 92:3-14; Wainwright Dep., p. 76:11-77:2.)

In light of the performance concerns that pre-dated Plaintiff's time off, when Plaintiff returned to work on January 17, 2005, Mr. Wainwright met with Plaintiff to discuss his sales goals and expectations for the coming months.[8]  (Cava Dep., 98:17-22; 101:7-102:1; 107:6-108:16; Ex. 13; Wainwright Dep., p. 128:5-11; 129:17-23; Ex. 9.)  Plaintiff was upset after meeting with Mr. Wainwright, and expressed his concerns to Joanna Cotter in Human Resources and to Mr. Wainwright's supervisor, Scott Landis.  (Cava Dep., p. 113:18-114:6.)  Ms. Cotter and Mr. Landis both told Plaintiff not to worry about the plan, that if he met his goals he would be fine.  (Cava Dep.,

---

[7]  Plaintiff claims he earned between $120,000 and $180,000 per year in total compensation in his prior position, compared to the approximate $75,000 annualized he earned at NetVersant in 2004.  (Cava Dep., p. 20:22-21:12; 177:8-16.)

[8]  Plaintiff admits that he was nearly "ramped up" before going leave.  (Cava Dep., p. 70:25-71:2.)

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408 998 4150

5.

Case No. CGC-06-453469

DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES

1    p. 115:10-116:25.) Even Plaintiff admitted that being on the plan did not cause him to lose any

2    compensation or suffer any other adverse consequences. (Cava Dep., p. 116:19-25.)

3    　　　　　Nonetheless, after working for only a few days he announced that he was "not ready"

4    to return to work and again requested and received a leave of absence from work, this time for his

5    own alleged disability.[9] (Cava Dep., p. 97:15-17; 117:9-19; 118:4-25; Ex. 14.) Plaintiff was

6    informed at the time that he was not eligible for any protected leave, but that NetVersant would

7    nonetheless allow him to take additional time off as long as his leave did not exceed six months.[10]

8    (Cava Dep., p. 122:16-123:15; 123:25-125:1.) Plaintiff contends that when he went out on leave he

9    made an agreement with Mr. Wainwright that would allow other representatives to work on his

10   accounts on a temporary basis, and that the accounts would be returned to him when he returned

11   from leave. (Cava Dep., p. 73:19-74:10; 137:5-22.) Plaintiff was initially scheduled to return in

12   April 2005, but received several extensions of his leave and ultimately remained off work through

13   August 2005. (Cava Dep., p. 126:5-12; 127:1-20; 129:3-9; Ex. 16.) Plaintiff admits that from the

14   period of January 19th through August 1, 2005 he was totally disabled other than for "brief periods,"

15   and that there was no part of his job that he could have done. (Cava Dep., p. 179:14-180:4.)

16   　　　　　When Plaintiff returned to work on August 1, 2005, Mr. Wainwright again met with

17   him to discuss expectations. (Cava Dep., p. 134:10-20; 138:23-139:6; Ex. 17; Wainwright Dep., p.

18   151:4-11.) During that meeting, and in the correspondence that followed, Mr. Wainwright

19   confirmed to Plaintiff that although he was starting with a "clean slate," he would be expected to

20   meet certain sales goals. (Cava Dep., p. 152:25-153:9; Ex. 17.) Plaintiff apparently felt that the

21   demands were unreasonable and again left work. (Cava Dep., p. 74:18-76:6; 143:7-19; 153:12-20;

22   157:5-16.) On August 3, 2005, Plaintiff forwarded a doctor's note to NetVersant, which indicated

23   only that Plaintiff "needs time off work." (Cava Dep., p. 86:11-21; 157:14-19; 161:5-24; 162:10-12;

---

24   [9]  Plaintiff claims that he suffered from anxiety, depression, stress, ADD/ADHD and back pain,

25   although it is unclear which of these conditions caused him to be off work as his doctor's note
     was extremely vague. (Cava Dep., p. 12:18-23; Ex. 14.) Additionally, Plaintiff admits that he

26   never told Mr. Wainwright he was suffering from any medical conditions, and never told anyone
     at NetVersant that he had ADD or ADHD. (Cava Dep., p. 77:6-9; 77:22-78:2.)

27   [10]  At the time Plaintiff first went out on disability leave he was told that he did not have any job

28   protection and that his employment could be terminated, and also that Company policy allowed a
     maximum of six month's leave. (Cava Dep., p. 123:2-15; 130:4-131:13; 132:23-133:1.)

Case No. CGC-06-453469

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose CA 95113 2303
408.998.4150

**DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES**

1    Ex. 19.)  Significantly the requested leave had no end date, and neither Plaintiff nor his physician

2    apparently had any indication of when Plaintiff would be able to return to work.[11]  (Cava Dep., p.

3    162:6-9; 180:14-20 Ex. 19.)  Plaintiff also admitted that as of August 3, 2005 he was again totally

4    disabled and that there was no part of his job that he could have done.  (Cava Dep., p. 180:5-13.)

5    Because of the length of the leave Plaintiff had already been given, and in light of the indefinite

6    nature of Plaintiff's doctor's note and his prior poor performance, Plaintiff's employment was

7    terminated on August 5, 2005.  (Cava Dep., 168:11-169:15; Ex. 20.)

8    **III.    ARGUMENT**

9          **A.    Plaintiff's Disability Discrimination Claim Is Subject to Summary Adjudication.**

10                 In his first cause of action Plaintiff complains that he was discriminated against when

11   Defendant failed to accommodate his "mental disability" and subjected him to "adverse employment

12   actions."  (Comp., ¶ 18, 20, 21.)  He complains that the 6 month limit placed on his leave of absence

13   and his resulting termination were discriminatory.[12]  (Comp., ¶ 20, 21; Cava Dep., p. 178:7-179:3.)

14                 In order to prevail on his disability discrimination claim, Plaintiff must first prove that

15   he (1) suffered from a disability; (2) could perform the essential duties of the job with or without

16   accommodations, and (3) was subjected to an adverse employment action because of the disability.

17   *Brundage v. Hahn* (1997) 57 Cal.App.4[th] 228, 236; *Deschene v. Pinole Point Steel Co.* (1999) 76

18   Cal.App.4[th] 33, 44; Gov't Code § 12940(a).  Plaintiff must also show that "intentional discrimination

19   was the 'determinative factor' in the adverse employment action."  *Id.; Cooper v. Neiman Marcus*

20   *Group* (9th Cir. 1997) 125 F.3d 786, 790.  If Plaintiff can establish these elements, Defendant can

21   nonetheless defeat his claim by offering a legitimate, nondiscriminatory reason for the decisions it

22   made.  *Schultz v. Spraylat Corp.* (C.D. Cal. 1994) 866 F.Supp. 1535, 1539, *citing, Texas Dept. of*

23   *Community Affairs v. Burdine* (1981) 450 U.S. 248, 253; *Brundage, supra,* 57 Cal.App.4[th] at 236.

24

25   [11]  In fact, Plaintiff remained totally disabled through December 26, 2005, more than a year
     following the initial time he left work.  (Cava Dep., p. 180:16-23; 181:6-15.)

26   [12]  Although Plaintiff alleges additional actions in his Complaint (such as harassing him, abusing
27   him and treating him differently), when asked at his deposition if anyone had done anything
     discriminatory to him other than terminate his employment, Plaintiff answered "not that I can
     think of."  (Cava Dep., p. 178:7-179:3.)  In addition, to the extent Plaintiff claims he was
28   harassed, these allegations are addressed in a separate motion.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
15th Floor
San Jose, CA 95113-2303
408 998 4150

7.

Case No. CGC-06-453469

**DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES**

1    Once such a reason has been articulated by Defendant, Plaintiff may avoid summary dismissal only

2    by producing sufficient evidence that the "articulated reason was not the true reason, but was in fact

3    a mere pretext for unlawful disability discrimination." *Id.* In the instant case, Plaintiff cannot

4    establish a *prima facie* case of discrimination, cannot rebut the legitimate reasons offered for the

5    actions taken, and ultimately cannot show that Defendant acted with discriminatory animus.

6                    **1.    Plaintiff Cannot Establish A *Prima Facie* Case Of Discrimination.**

7                As noted, as part of his *prima facie* case, Plaintiff must show that he was a "qualified

8    individual," meaning that he could perform the essential functions of his job. *Deschene, supra,* 76

9    Cal.App.4[th] at 44. Because Plaintiff admits that he was totally disabled and unable to perform the

10    essential functions of his job from January 19, 2005 through December 26, 2005, he was not

11    qualified and thus cannot establish a necessary element in bringing a disability discrimination claim.

12    *LeBourgeois v. Fireplace Mfrs., Inc.* (1998) 68 Cal.App.4[th] 1049, 1058-59 (the ability to work is

13    essential to any position); *Byrne v. Avon Products* (7th Cir. 2003) 328 F.3d 379, 380-381 ("An

14    inability to do the job's essential tasks means that one is not 'qualified'; it does not mean that the

15    employer must excuse the inability.").

16                Here, Defendant provided Plaintiff with nine months of total leave, more than its

17    policies allowed and more than was required under any of the mandatory leave statutes. Despite

18    these generous leaves, Plaintiff was unable to return to work and according to his own testimony

19    remained disabled for nearly another five months following the date of his termination(Cava Dep., p.

20    180:16-23; 181:6-15.) Plaintiff's lengthy disability thus renders him "unqualified" and unprotected

21    by the disability statutes. *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4[th] 215, 226-227 (an

22    employer is not required "to wait indefinitely for an employee's medical condition to be corrected.").

23    Because Plaintiff was not qualified for the position at the time of his termination, he cannot establish

24    a *prima facie* case of disability discrimination and summary adjudication is appropriate.

25                    **2.    Alternatively Defendant Has Articulated A Legitimate, Non-**
                           **Discriminatory Reason For The Alleged Adverse Action.**
26

27                Alternatively, even if Plaintiff can somehow establish a *prima facie* case of disability

28    discrimination, his claim nonetheless fails as Defendant has offered a legitimate non-discriminatory

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
5 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

8.                                                        Case No. CGC-06-453469

**DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES**

1    reason for the decision to terminate his employment, and Plaintiff has no proof of pretext.
2    *Brundage, supra,* 57 Cal.App.4th at 236 (plaintiff bears the burden of proving pretext). Specifically,
3    as noted above, Plaintiff's performance prior to his extended leave of absence was marginal at best.
4    He made virtually no new sales and was only 33% of his prorated annual quota at the time he left
5    work. (Cava Dep., p. 176:20-177:7; Exhs. 5, 21; Wainwright Dep., p. 176:4-11.) Plaintiff was then
6    off work for more than nine months, leaving the Sacramento area uncovered. Although other sales
7    representatives were able to fill in for Plaintiff on his accounts for a short time period, requiring
8    them to do so on an extended basis created a hardship for the Company. (Wainwright Dep., p.
9    141:20-24; 142:18-143:21; 156:16-157:5; Wainwright Decl., ¶ 5-6.); *Epps v. City of Pine Lawn* (8th
10   Cir. 2003) 353 F.3d 588, 593 n. 5 (employer not required to hire additional people or reallocate tasks
11   to other employees to accommodate extended leave of absence). As Mr. Wainwright testified, "[w]e
12   needed to have people assigned to the accounts and have them compensated for the work they were
13   doing," and "if accounts keep having a new rep changing, its disruptive." (Wainwright Dep., p.
14   141:20-24; 142:18-143:21; 156:16-157:5.)

15            Plaintiff's poor performance, coupled with the extended period of time he had been
16   off work provided and the resulting hardship it was causing the Company provided Defendant with a
17   legitimate reason for the termination. (Wainwright Dep., p. 181:25-182:21.) As such, Plaintiff must
18   now come forward with "specific, substantial evidence of pretext" from which the trier of fact could
19   conclude that the explanation offered by Defendant is not credible. *Horn v. Cushman & Wakefield*
20   *West. Inc.,* (1999) 72 Cal.App.4th 799, 807. As Plaintiff has no such substantial responsive evidence,
21   his claim for disability discrimination is properly subject to summary adjudication.[13] *Guz v. Bechtel*
22   *Nat. Inc.* (2000) 24 Cal.4th 317, 360-361; *Horn, supra,* at 808 (plaintiff must do more than establish a
23   prima facie case and deny the credibility of the defendant's explanations to avoid judgment).

---

24   [13]  Plaintiff admits that Mr. Wainwright made no comments to him about his alleged disability, and
25        further admits that he never heard Mr. Wainwright make any jokes about being disabled or about
        people with disabilities. (Cava Dep., p. 72:20-25; 73:15-18.) In fact, Plaintiff has been unable to
26        identify anything other than the fact he claims to be disabled as support for his discrimination
        claim. *See Gonzales v. MetPath* (1989) 214 Cal.App.3d 422, 427 (membership within a
27        protected class alone without any evidence of an unlawful discriminatory motive is insufficient
        to survive summary judgment.) Additionally, Defendant's generosity in granting Plaintiff
28        extended leaves and even paying for some of his time off belies any discriminatory intent.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
So West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

9.                              Case No. CGC-06-453469

DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES

### 3.    Defendant Accommodated Plaintiff's Disability.

Plaintiff also contends that he was discriminated against when Defendant failed to accommodate his alleged disability. (Comp., ¶ 20; Cava Dep., p. 179:4-13.) Specifically, although he admits there was nothing more that Defendant could have done in January 2005 other than give him the leave it gave him, Plaintiff contends that he could have been accommodated in August 2005 when again went out. (Cava Dep., p. 181:12-182:10.) Interestingly, the accommodation that Plaintiff apparently sought was to be given some "understanding" and "a little compassion."[14] (*Id.*)

The FEHA requires an employer to "make reasonable accommodations for the known physical...disability of an applicant or employee." Gov. Code § 12940(m). The law is clear, however, that an employer is not required to relieve an employee of any essential functions of the job, modify the actual duties, promote a disabled employee, or reassign existing employees or hire new employees to perform those duties. *See, Hastings v. Dept of Corr.* (2003) 110 Cal.App.4th 963, 972; *see also Robertson v. Neuromedical Center* (5th Cir. 1998) 161 F.3d 292, 295.[15] Moreover, the employer is not required to choose the best accommodation or the accommodation the employee seeks. *Hanson, supra,* 74 Cal.App.4th at 495. In addition, while a finite leave of absence *can* be a reasonable accommodation, that is only the case where it "is likely that, at the end of such leave, the employee will be able to perform his or her employment duties." *Hanson, supra,* 74 Cal.App.4th at 226. Indeed, "[r]easonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected...." *Id.* at 226-227.

As in *Hanson*, Defendant NetVersant's policies provided for a finite amount of disability leave. Plaintiff was repeatedly informed of the policy, yet chose to stay out beyond the

---

[14]  Although Plaintiff suggested in his deposition that he would have considered a "different position," or a "different division," he also admitted that he could not have worked even with such an accommodation. (Cava Dep., p. 182:18-184:1.) Even assuming that giving him a different supervisor would have helped Plaintiff return to work, the law is clear that the employer is not required to choose the accommodation that the employee wants. *Hanson, supra,* 74 Cal.App.4th at 228. Likewise, being shielded from a particular supervisor is not a reasonable accommodation as a matter of law. *Kennedy v. Dresser Rand Co.* (2nd Cir. 1999) 193 F.3d 120; *Gual v. Lucent Technologies, Inc.* (3rd Cir. 1998) 134 F.3d 576, 581.

[15]  "Because the FEHA provisions relating to disability discrimination are, in fact, based on the ADA and other federal law, decisions interpreting federal anti-discrimination laws are relevant in interpreting the FEHA's similar provisions." *Brundage, supra,* at 235; *citing Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 948.

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95112 2303
408 998 4150

10.

Case No. CGC-06-453469

DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES

1    stated maximum, and like the plaintiff in *Hanson,* repeatedly extended his anticipated return to work

2    date. In this situation, it was reasonable for Defendant to become concerned that given the number

3    of times plaintiff's leave had been extended, he might not actually return to work as scheduled. This

4    provided Defendant with justification to refuse further accommodation. Indeed, the courts have held

5    that *"once the employer was aware the initial accommodation was not effective,"* (in this case the

6    first six months of leave), it has no obligation to explore alternative accommodations (such as an

7    additional leave). *Humphrey v. Memorial Hospital Assn* (9th Cir. 2001) 239 F.3d 1128, 1139. Thus,

8    terminating Plaintiff in the midst of this extended and indefinite leave does not amount to a failure of

9    accommodation, is not a violation of its mandatory duty to engage in the interactive process, and

10   does not amount to disability discrimination as a matter of law. *Id.*

11           **B.     Plaintiff's Claim For Wrongful Term Is Subject To Summary Adjudication.**

12           Plaintiff next contends that his termination was wrongful and in violation of the

13   public policy because he believes that Defendant terminated him "because of" his mental disability.

14   (Comp., ¶ 29.) This claim fails for the same reasons that Plaintiff's disability discrimination claim

15   fails -- Plaintiff was neither discriminated against nor entitled to any accommodation other than that

16   was provided to him. (See Section A above); *Jennings v. Marralle* (1994) 8 Cal.4th 121, 135-136

17   (where termination did not violate the FEHA, employer could not be liable for violating the public

18   policy which is embodied in that statute). Wrongful termination from employment is only tortious

19   when the termination occurs in violation of a fundamental public policy. *Green v. Ralee Eng. Co.*

20   (1998) 19 Cal.4th 66. The inability to prove that his termination violated the Government Code is

21   fatal to Plaintiff's public policy claims as a matter of law. *Jennings, supra,* 8 Cal.4th at 135-136.

22           **C.     Plaintiff's Claim For Retaliation Is Subject To Summary Adjudication.**

23           In his fourth cause of action Plaintiff alleges that he was retaliated against for

24   requesting a leave of absence. (Comp., ¶ 43.) In order to establish a prima facie case of retaliation

25   under the FEHA, Plaintiff must show: (1) he "engaged in protected activity;" (2) "the employer

26   subjected...him to an adverse employment action;" and (3) a causal nexus between "the protected

27   activity and the employer's action." *Colarossi v. Coty US, Inc.* (2002) 97 Cal.App.4th 1142, 1152;

28   *Flait v. North Amer. Watch Co.* (1992) 3 Cal.App.4th 467, 476.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose CA 95113 2303
408 998 4150
11.
Case No. CGC-06-453469
**DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES**

1          **1.    Plaintiff Has Not Engaged In Protected Activity.**

2          Plaintiff's claim fails at the outset because he cannot prove that he engaged in

3     protected activity. Specifically, although a leave of absence can be protected, such is only the case

4     when it has some statutory basis. *Walker v. Elmore County Board of Education* (11th Cir. 2004) 379

5     F.3d 1249, 1253 (plaintiff's retaliation claim based on her request for leave failed as a matter of law

6     because she was statutorily ineligible for protected leave.) In the instant case, as discussed in detail

7     above, Plaintiff was not protected by any leave or disability statutes because he had not been

8     employed with NetVersant long enough and because he was not a "qualified" individual with a

9     disability. (Cava Dep., p. 35:13-36:13; 43:8-11; 180:5-13). Thus, because simply requesting time

10    off does not provide any protection from retaliation, Plaintiff's claim is subject to adjudication.

11          **2.    Alternatively, Plaintiff Cannot Establish A Causal Nexus Between His
              Leave And His Termination.**

12

13          Assuming that he engaged in protected activity by requesting time off work, Plaintiff

14    nonetheless cannot demonstrate a "causal nexus" between the request and his termination, and

15    therefore cannot establish a *prima facie* case of retaliation. Plaintiff has no evidence of a retaliatory

16    animus toward his disability -- he admits no disability related comments were made to him, nor did

17    anyone tell him jokes or otherwise make fun of disabled individuals. (Cava Dep., p. 72:20-25;

18    73:15-18.) Thus, the *only* evidence Plaintiff has connecting the two events is the timing, and the law

19    is clear that timing alone is not enough. *Chen v. County of Orange* (2002) 96 Cal.App.4th 926, 931

20    (stating that allowing "mere sequence" as the basis for a retaliation claim "would be the classic

21    logical fallacy of 'post hoc ergo prompter hoc' (after the fact, therefore because of the fact.)".)

22          This is particularly true in the instant case where Plaintiff had performance

23    deficiencies that existed prior to his alleged disability. *Clark County School Dist. v. Breeden* (2001)

24    532 U.S. 270, ("[e]mployers need not suspend previously planned [employment actions] upon

25    discovering [protected activity], and their proceeding along lines previously contemplated, though

26    not yet definitively determined, is no evidence whatsoever of causality"); *Bermudez v. TRC*

27    *Holdings, Inc.* (7th Cir. 1998) 138 F.3d 1176, 1179 (plaintiff terminated for poor performance

28    shortly after filing charge of discrimination unable to show causation where complaints about her

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose CA 95113 2303
408 998 4150

12.                                      Case No. CGC-06-453469

**DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES**

1   performance pre-dated the charge).  Here, the issues with Plaintiff's performance clearly predated

2   any announced disability or leave.  Thus, to the extent his performance improvement plan and

3   ultimate termination were based on his performance, the timing is simply irrelevant.

        **3.    Alternatively, Plaintiff Cannot Rebut The Legitimate Reasons Provided
        For Plaintiff's Termination.**

6         Once a plaintiff establishes a *prima facie* case of relation, that case can be rebutted by

7   the employer upon a showing of a legitimate, nonretaliatory reason for the decision in question.

8   *Flait, supra,* 3 Cal.App.4th at 476; *Thomas v. Dept. of Corr.* (2000) 77 Cal.App.4th 507, 510.

9   Defendant does not need to prove the absence of retaliatory motive.  *See Clark v. Claremont Univ.*

10  (1992) 6 Cal. App. 4th 639, 664.  As such, the question is not whether the decision to terminate

11  Plaintiff was based on correct assumptions, but whether the Defendant reasonably believed those

12  reasons and exercised its business judgment based on them.  *Guz v. Bechtel Natl., Inc.* (2000) 23 Cal.

13  4th 317, 358.  Significantly, it is not the purpose of the courts to second-guess the wisdom of

14  business decisions.  *Id.*  In order to overcome the employer's legitimate reason, Plaintiff must show

15  that the defendant's proffered explanation is merely a pretext for the illegal termination.  *Flait,*

16  *supra.,* 3 Cal.App.4th at 476.  Here, because he has no evidence of pretext, Plaintiff's claims fail.

17        Specifically, and as discussed in detail above, Plaintiff was unqualified for the

18  position and was entitled to no further accommodation at the time of his termination.  *LeBourgeois,*

19  *supra* 68 Cal.App.4th at 1058-59.  Thus, because he could not work, he could not perform the

20  essential functions of his job and his termination was justified.  Plaintiff has no evidence to suggest

21  that this reason was either untrue or a pretext for unlawful retaliation.  See, e.g., *Flait,* 3 Cal.App.4th

22  at 479 (employer entitled to summary judgment on retaliation claim if plaintiff could not

23  demonstrate stated business reason for his termination was untrue or a pretext for unlawful

24  retaliation).  Accordingly, Defendant is entitled to summary adjudication of this claim.

        **D.    Plaintiff's Claims For Breach Of Contract And Breach Of The Covenant Of
        Good Faith And Fair Dealing Are Subject To Summary Adjudication.**

27        Plaintiff next contends that he had an employment agreement with Defendants that

28  provided that he would "receive certain on-going accounts to manage," and that Defendant's breached

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408 998 4150

13.                    Case No. CGC-06-453469

DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES

1  this agreement "by failing to assign all the accounts as promised." (Comp., ¶ 49, 51.)  Specifically,

2  Plaintiff claims he had three different oral agreements with Defendant:  (1) that upon his hire he

3  would receive "most" of Jennifer Forrest's accounts; (2) that in February 2005 Mr. Wainwright

4  promised that the Maximus and Hansen accounts would be returned to Plaintiff at the end of his

5  leave; and (3) in June 2004 Mr. Wainwright told Plaintiff he could work on the HealthNet account.

6  (Cava Dep., p. 189:6-191:1.)  He also claims that Defendant's alleged breach of these agreements

7  violated the covenant of good faith and fair dealing contained in every contract.  (Comp., ¶ 69-72.)

8  
9

**1.    Plaintiff Cannot Establish An Implied Contract Contrary To The Express Written Agreements He Signed.**

10        As noted above, Plaintiff was indisputably employed pursuant to several written

11  agreements. (Cava Dep., p. 39:11-15; 43:12-14; Exhs. 1, 2, 3); *Guz v. Bechtel National, Inc.,* (2000)

12  24 Cal. 4th 317, 335; *Foley v. Interactive Data Corp.,* (1988) 47 Cal. 3d 654, 680; California Labor

13  Code §2922.  These written agreements not only include not only include express at will language,

14  but also note that that "no implied contract concerning any employment-related decision or term or

15  condition of employment can be established by any other statement, conduct, policy or practice,"

16  and provide examples of the types of conduct for which an implied contract cannot be created.  (*Id.*)

17  Among these examples are "work assignments; job duties and responsibilities.....or any other terms

18  and conditions that the Company may be determine to be necessary for the safe, efficient, and

19  economic operation of its business." *Id.*

20        In light of this clear language, Plaintiff's claim that he has an implied contract that

21  specified such terms cannot stand.   *See, e.g., Guz, supra,* 24 Cal.4[th] at 340, n. 10 ("express written

22  agreement, signed by the employee, cannot be overcome by proof of an implied contrary

23  understanding"); *Shapiro v. Wells Fargo* (1984) 152 Cal.App.3d 467, 482 (same).   Specifically,

24  because Defendant had the right to make and change work assignments "at will," Plaintiff cannot

25  establish that he had an oral or implied agreement that contradicted this express term. *Id.*

26        Additionally, the express written terms of Plaintiff's commission agreement state that

27  assigned accounts are those that are assigned "in writing" and Plaintiff has not been able to establish

28  that any of the identified accounts (Maximus, Hansen and HealthNet) were ever assigned to him in

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose CA  95113 2303
408 998 4150

14.                              Case No. CGC-06-453469

**DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES**

1  writing. (Cava Dep., p. 50:12-22.) As such, as the alleged promises do not comply with the

2  requirements of the written agreements, they cannot be enforced. *Shapiro, supra,* 152 Cal.App.3d at

3  482. Finally, the commission plan specifically states that its terms are "subject to change from time

4  to time in the sole discretion of the Company, with or without notice." (Cava Dep., Ex. 5.) Thus,

5  even if the alleged promises were made to Plaintiff, they could be changed at any time, and thus he

6  has no enforceable agreement for any specified period.[16] *Guz, supra,* 24 Cal.4th at 340.

7            **2.     Alternatively, The Alleged Promises Are Too Vague To Be Enforceable.**

8            Alternatively, even if the promises were made, they are too vague to be enforced as

9  contractual agreements. Indeed, Plaintiff admits that he was never told what specific accounts he

10  would receive upon his hire, nor can he say what percentage of the prior sales representative's

11  accounts would be given to him. (Cava Dep., p. 26:7-12; 27:8-16; 32:6-33:11; 33:24-34:5; 35:4-10.)

12  Rather, the supposed promise was a vague guarantee to give Plaintiff "most" of Jennifer Forrest's

13  former accounts. Clearly, such an agreement is too vague to be enforceable. *Robinson & Wilson,*

14  *Inc., v. Stone* (1973) 35 Cal.App.3d 396, 407 (promise to provide "standard" materials too vague to

15  be enforceable); *Hoxsie v. Clark* (1965) 234 Cal.App.2d 370, 374-375 (promise that daughter would

16  be "taken care of" too indefinite and vague to be enforced); *Stansfield v. Starkey* (1990) 220

17  Cal.App.3d 59; *Rochlis v. Walt Disney Co.* (1993) 19 Cal.App.4th 201, 213.

18            Likewise, the alleged promises that Plaintiff could "work on" or would be "assigned

19  to" the Maximus, Hansen and HealthNet accounts are insufficiently vague, as they do not indicate

20  for what time period the assignments would be made, whether the assignments could be changed for

21  any reason or what would happen in the event of termination of Plaintiff's employment. For this

22  reason, the alleged promises fail as contracts and summary adjudication is appropriate. *Id.*

23            **3.     Alternatively, The Alleged Agreements Fail For Lack Of Consideration.**

24            Alternatively, the alleged promises related to the return of the Maximus and Hansen

25  accounts and Plaintiff's work on the HealthNet account cannot support a valid contract as they lack

---

26  [16] Plaintiff's breach of implied covenant claim fails for all of the same reasons his contract claim
27     fails. *Careau & Co. v. Pacific Business Credit, Inc.* (1990) 222 Cal. App. 3d 1371, 1395 (breach
       of implied covenant claim may be "disregarded as superfluous" where it is based upon the same
28     facts as plaintiff's breach of contract claim).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose CA 95113 2303
408 998 4150

15.                                        Case No. CGC-06-453469

**DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES**

1    consideration, an essential element to every enforceable contract. Civ. Code § 1550. Consideration

2    requires a bargained-for exchange of either an act, forbearance, change in legal relations, or a

3    promise made by the promisee. Witkin, 1 *Summary of California Law*, Contracts, § 202 (10th ed.

4    2005.) The alleged promises made by Mr. Wainwright regarding the Maximus, Hansen, and

5    HealthNet accounts were not the result of a bargain-for exchange between Mr. Wainwright and

6    Plaintiff. Plaintiff did not confer a benefit upon Mr. Wainwright, nor did he suffer a detriment in

7    exchange for the alleged promises. *See* Cal. Civil Code § 1605; *Western Lithograph Co. v. Vanomar

8    Producers* (1921) 185 Cal. 366, 369 (a "naked promise unsupported by a consideration is not

9    enforceable.") Accordingly, Defendant is entitled to judgment on these claims.

10            **4.    Plaintiff's Implied Covenant Claim Fails Because Plaintiff Was At Will.**

11            Finally, Plaintiff's undisputed at will status precludes him from pursuing a claim for

12    breach of the implied covenant of good faith and fair dealing arising from his termination. (Comp., ¶

13    72. As recognized by the California Supreme Court, "[b]ecause the implied covenant protects only

14    the parties' right to receive the benefit of their agreement, and, in an at-will relationship there is no

15    agreement [to limit the employer's right to terminate the employee], the implied covenant standing

16    alone cannot be read to impose such a duty." *Foley v. Interactive Data Corp.* (1988) 47 Cal. 3d 654,

17    698, n. 39. Thus, where an individual is employed at-will, the implied covenant of good faith and

18    fair dealing does not preclude the employer from "terminating him arbitrarily, as by failing to follow

19    its own policies, or in bad faith." *Guz, supra,* 24 Cal.4[th] at 326-327. As *Guz* makes clear, Plaintiff's

20    at-will status entitled Defendants to terminate him for any reason whatsoever and that fact is not

21    altered in any way by the existence of the implied covenant of good faith and fair dealing

22    incorporated within Plaintiff's employment agreement. *Slivinsky v. Watkins-Johnson Co.* (1990) 221

23    Cal.App.3d 799, 806 (claim that plaintiff's termination violated the implied covenant contained in

24    his employment contract failed because "[e]ven if the [stated reason for the termination was] a

25    pretextual ground for terminating [plaintiff's] employment, it would not be actionable with an at-will

26    employment contract"). Accordingly, Defendants are entitled to judgment on this claim.

27            **E.    Plaintiff's Claims For Intentional and Negligent Misrepresentation Are Subject
                      To Summary Adjudication.**

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408 998 4150

16.

Case No. CGC-06-453469

**DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES**

1    In his sixth and seventh causes of action, Plaintiff claims that "at the time his

2  employment commenced," he was promised that he would "receive certain on-going accounts to

3  manage," and that Defendants did not assign the promised accounts.[17] (Comp., ¶¶ 55-56.) Plaintiff

4  essentially claims that he was defrauded during the interview process when Defendant allegedly told

5  him that he would get "most" of Jennifer Forrest's accounts. (Cava Dep., p. 26:7-12; 27:8-16; 32:6-

6  9; 33:24-34:5; 35:4-10.) Like his other claims, these fail for a variety of reasons.

7    In order to establish that Defendants are liable for fraud on any of these alleged

8  promises, Plaintiff must prove (1) misrepresentation; (2) knowledge of falsity (scienter); (3) intent to

9  defraud (to induce reliance); (4) justifiable reliance on the misrepresentation; and (5) damages.

10  *Engalla v. Permanente Med. Group, Inc.* (1997) 15 Cal.4th 951, 974; *Okun v. Morton* (1988) 203

11  Cal.App.3d 805, 828. In the instant case, Plaintiff has completely failed to fulfill his burden of

12  proving these elements and Defendant is thus entitled to summary adjudication of these claims.

13    **1.    Plaintiff's Has Not Identified A Specific Misrepresentations.**

14    As Plaintiff admits that Defendant never made any specific promises to him, it is

15  axiomatic that his fraud claim must fail. *Okun, supra,* 203 Cal.App.3d at 828; *Stansfield v. Starkey*

16  (1990) 220 Cal.App.3d 59 (plaintiffs may not rely on vague, nonspecific promises to support fraud

17  claims); *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331 (absence of

18  any elements of claim for fraud precludes recovery); *see also, Robinson & Wilson, Inc., v. Stone*

19  (1973) 35 Cal.App.3d 396, 407 (promise to provide "standard" materials too vague to be

20  enforceable); *Hoxsie, supra,* 234 Cal.App.2d at 374-375; *Williamson v. General Dynamics Corp.* (9th

21  Cir. 2000) 208 F.3d 1144, 1156. As the only thing Plaintiff claims was promised to him during the

22  interview process was that he was to receive "most" of Jennifer Forrest's accounts, he cannot

23  establish a specific enough promise to support his fraud claims and they are thus subject to

24  judgment. (Cava Dep., p. 26:7-12; 27:8-16; 32:6-9; 33:24-34:5; 35:4-10.)

25    In fact, Plaintiff's claims herein are remarkably similar to the plaintiff's claims in

26

27  [17] Although Plaintiff testified that other promises were made to him, they have not been
    specifically plead and thus must be disregarded. *Lazar v. Sup. Ct* (1996) 12 Cal. 4th 631, 645

28  (facts underlying a fraud allegation must be stated with sufficient specificity and particularity.)

1   *Rochlis,* where the plaintiff alleged that numerous promises had been made to him to induce him to

2   accept a job with the defendant, including promises relating to his job duties and to income potential.

3   *Rochlis, supra,* 19 Cal.App.4th at 213. When the plaintiff sued for fraud, claiming that the defendant

4   had never intended to live up to those promises, the court rejected his claims, stating that "such

5   commitments [were] simply too vague and indefinite to be enforced," and cautioned that "[l]itigation

6   cannot become a vehicle for the micromanagement of day to day corporate affairs." *Id.* at 214, 216.

7   Like Mr. Rochlis, Plaintiff's fraud claim is too indefinite to be enforced as it is not based on specific

8   statements or commitments, but rather on a vague expectation that he would receive "most" of Ms.

9   Forrest's accounts. (Cava Dep., p. 26:7-12; 27:8-16; 32:6-9; 33:24-34:5; 35:4-10.)

### 2.    Alternatively, Plaintiff Has No Evidence Of Intentional Falsity.

11      In order to prevail on his fraud claim, Plaintiff must not only prove that specific

12  promises were made to him, he must also prove that the alleged representations were *intentionally*

13  *false* at the time they were made. *Tyco Indus. v. Sup. Ct* (1985) 164 Cal.App.3d 148, 156; *Schultz v.*

14  *Spraylat Corp.* (C.D.Cal. 1994) 866 F.Supp. 1535, 1537. In the instant case, Plaintiff has no such

15  evidence.[18] In fact, when Plaintiff was questioned regarding whether he had any evidence that the

16  alleged promises made to him at the time of his hire were false when they were made, Plaintiff

17  responded "I have no indication either way." (Cava Dep., p. 196:23-197:5.) Without competent

18  evidence of Defendant's mal-intentions, Plaintiff cannot withstand summary adjudication of his

19  fraud based claims. *See, Church of Merciful Saviour v. Volunteers of America, Inc.* (1960) 184

20  Cal.App.2d 851, 859 ("[a] declaration of intention, although in the nature of a promise, made in

21  good faith, without the intention to deceive, and in the honest expectation that it will be fulfilled,

22  even though it is not carried out, does not constitute fraud.")

### 3.    Alternatively, Plaintiff Cannot Prove Reasonable Reliance.

24      Assuming, *arguendo,* that Plaintiff can somehow prove that Defendants made specific

25  false promises without the intent to perform, his claim must nonetheless fail as he cannot establish

26  that he *reasonably* relied on those promises to his detriment. *City of Atascadero v. Merrill Lynch, et*

---

[18]  More than mere nonperformance is required to prove the defendant's intent not to perform his promise." *Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 30.

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose CA 95113 2303
408 998 4150

18.

Case No. CGC-06-453469

**DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES**

1   *al.* (1998) 68 Cal.App.4[th] 445, 482 ("It is essential, however, that the person complaining of fraud

2   actually have relied on the alleged fraud, and suffered damages as a result.")  The law is clear that

3   there can be no reliance, and thereby no fraud, where there is a written agreement contrary to the

4   alleged oral promises made to Plaintiff.  *Bank of America Ass'n v. Pendergrass* (1935) 4 Cal.2d 258,

5   263; *West v. Henderson* (1991) 227 Cal.App.3d 1578, 1583..  In *Slivinsky, supra,* 221 Cal.App.3d at

6   806, for example, the plaintiff alleged that she had been promised that she would work on a

7   particular project, that she would be made the head of a group, and that she would have indefinite

8   employment.  Despite these claims, Plaintiff had signed a written agreement and offer letter which

9   provided that she would be employed at will and which mentioned none of the other alleged

10  promises.  *Id.* at 802.  The court summarily rejected plaintiff's fraud claim, holding that it could not

11  proceed because plaintiff did in fact work on the project at issue during her employment, and, more

12  importantly, because her reliance on the alleged promises was unreasonable in light of the contrary

13  written agreement between the parties.  *Id.* at 807; *see also, Marketing West, Inc. v. Sanyo Fisher*

14  *(USA) Corp.* (1992) 6 Cal.App.4[th] 603, 612 (no fraud because, "as a matter of law, plaintiff could not

15  have relied upon alleged oral representation or alleged concealed facts which contradicted the

16  unambiguous 'without cause' termination provisions of the written agreement.")

17          In the instant case, Plaintiff testified that he was promised during his interviews that

18  he would be given "most" of Jennifer Forrest's accounts.  Yet before he started work he signed an

19  offer letter, which mentioned none of these alleged promises.  (Cava Dep., Ex. 2.)  Likewise, at the

20  time of his hire, Plaintiff received and signed for a written compensation plan, which stated that

21  "assigned accounts" would be given in writing "by the EVP-Sales & Business Development," and

22  which mentioned no such accounts.[19]  (Cava Dep., Ex. 5.)  Thus, any reliance on alleged promises

23  contrary to these written agreements could not have been "reasonable" and his claims for fraud fails

24  for this independent reason.  *Marketing West, supra,* 6 Cal.App.4[th] at 612.

25          **4.    Alternatively, Plaintiff Remained Employed Despite The Falsity.**

26          Plaintiff's fraud claims also fail because he admits he remained at NetVersant despite

27  [19]  Although Plaintiff claims that he might not have read all of the documents before signing them,
        this does not diminish the legal effect of his signature.  *Brookwood v. Bank Of America, et. al.*
28      (1996) 45 Cal.App.4[th] 1667, 1673-74.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408.998.4150

19.

Case No. CGC-06-453469

DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES

1   his awareness of the alleged falsity of Defendants' promises. (Cava Dep., p. 50:23-51:21.) Such

2   knowledge and conduct is fatal to her fraud claim. *Rochlis, supra,* 19 Cal.App.4th at 215 (plaintiff's

3   knowledge of the true facts precluded subsequent reliance). As held by the *Rochlis* court, Plaintiff's

4   decision to continue his employment after he discovered the "truth," conclusively established that

5   "*he did not detrimentally rely on any misrepresentations as a matter of law.*" *Id.* at 215 (emphasis

6   added). Plaintiff knew that he was not getting most of the accounts he had allegedly been promised

7   within the first month of his employment, yet he continued to work for the Company for more than

8   another year. (Cava Dep., p. 50:6-22.) Consistent with *Rochlis*, Plaintiff is precluded as a matter of

9   law from establishing that he actually relied upon any alleged misrepresentations by Defendants.

### 5.   Alternatively, Plaintiff Cannot Establish The Essential Elements Of His Negligent Misrepresentation Claim.

12          In order to establish a negligent misrepresentation, however, in addition to the above

13  factors, Plaintiff must also establish that Defendant made "a representation as to a past or existing

14  material fact" *Walters v. Marler* (1978) 83 Cal.App.3d 1, 17. Indeed, the law is clear that "[t]o be

15  actionable, a negligent misrepresentation must ordinarily be as to past or existing material facts.

16  [P]redictions as to future events, or statements as to future action by some third party, are deemed

17  opinions, and are not actionable." *Tarmann v. State Farm Mut. Auto Ins. Co.* (1991) 2 Cal.App.4th

18  153, 158. Here, Plaintiff alleges that Defendant was negligent when it "promised" to give him

19  certain accounts. (Comp., ¶ 63.) It is "hornbook law" that such "statements regarding future events

20  are merely deemed opinions" and are not actionable. *Neu-Visions Sports, Inc. v.*

21  *Soren/McAdam/Bartells, et. al.* (2000) 86 Cal.App.4th 303, 309-310. Accordingly, as the alleged

22  promises made by Defendant regarding what Plaintiff might be given after he started employment

23  amounted to nothing more than a proposal about something that might happen in the future, they

24  cannot support his claim for negligent misrepresentation as a matter of law. *Tarmann, supra,* 2

25  Cal.App.4th at 159 (declining to establish a new action based on a "negligent false promise").

26  Dated: March 8, 2007

27                                      MICHAEL W. WARREN
                                        LITTLER MENDELSON

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

20.                    Case No. CGC-06-453469

DEF NETVERSANT'S MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES