# EXHIBIT -22

1  MICHELLE B. HEVERLY, Bar No. 178660
   MICHAEL W. WARREN, Bar No. 223642
2  LITTLER MENDELSON
   A Professional Corporation
3  50 West San Fernando Street, 14th Floor
   San Jose, CA 95113.2303
4  Telephone:    408.998.4150

5  Attorneys for Defendants
   NETVERSANT - NATIONAL, INC., PETER
6  WAINWRIGHT

ENDORSED
FILED
San Francisco County Superior Court

MAY 18 2007

GORDON PARK-LI, Clerk
By: ROSSALY DE LA VEGA
            Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| MICHAEL CAVA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NETVERSANT - NATIONAL, INC., a Delaware corporation, dba NETVERSANT - SAN FRANCISCO, aka NETVERSANT; PETER WAINWRIGHT, an individual; and DOES 1 through 40, inclusive,<br><br>　　　　　Defendants. | Case No. CGC-06-453469<br><br>**DEFENDANT NETVERSANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION OF ISSUES**<br><br>Date:　　　May 23, 2007<br>Time:　　　9:30 a.m.<br>Dept:　　　 301<br>Judge:　　　Hon. Peter Busch |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

Case No. CGC-06-453469

DEF NETVERSANT'S REPLY MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES

## I. INTRODUCTION

Plaintiff claims that this case involves a company who tried to "kick a man while he was down." Although this claim may have some facial appeal, a careful review of the facts reveals both that the employer did nothing of the sort, and that by helping its employee, it put itself in an impossible situation. In November 2004, when Plaintiff Cava's son was diagnosed with cancer, Defendant NetVersant had <u>no legal obligation to keep him employed</u>. Nonetheless, it did the morally right thing by not only allowing Plaintiff to keep his job, but also by paying his full salary while he took unprotected time off to care for his young son. It was only after Plaintiff abused the system and took more than nine months of total leave that Defendant decided to put a stop to its generosity. If Plaintiff's current theory is to be believed, Defendant had no right to change its mind or rethink its generous offer (or even to run a business), and instead had to keep him indefinitely.

## II. ARGUMENT

### A. Plaintiff's Disability Discrimination Claim Is Subject to Summary Adjudication.

Plaintiff's first cause of action is for "Disability Discrimination." Despite the fact that it is pled as one violation of statute, Plaintiff now contends that he actually has three claims – disability discrimination, failure to accommodate and failure to engage in the interactive process. Regardless of how he labels his claims, he cannot escape the fact that he was lawfully treated.

#### 1. Plaintiff Cannot Establish A *Prima Facie* Case Of Discrimination.

As stated in Defendant's moving papers, because Plaintiff admits that he was totally disabled and unable to perform the essential functions of his job through December 26, 2005, he was not a "qualified individual with a disability" at the time he allegedly requested accommodation and was terminated in August 2005. (Cava Dep., p. 180:16-23; 181:6-15.) As such, his disability claim is defective and subject to judgment. *Kennedy v. Applause, Inc.* (9th Cir. 1996) 90 F.3d 1477, 1481-1482 (totally disabled individuals are not "qualified individuals" under the disability statutes).

In his opposition, Plaintiff contends that a request for an extended medical leave "does not make the employee 'unqualified.'" (Plt's Opp. p. 10:16-17.) What Plaintiff overlooks is that this is only true if the leave is both "finite" <u>and</u> there is some evidence that it will actually serve to return the employee to a functioning position. *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th

1.                                                                                      Case No. CGC-06-453469

**DEF NETVERSANT'S REPLY MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES**

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

215, 226 (a "finite" leave can be an accommodation, "provided it is likely that at the end of the leave the employee would be able to perform his or her duties.") Here, neither is true.

In fact, Plaintiff himself testified that he was totally disabled and unable to work for a period of nearly a year. (Cava Dep., p. 180:16-23; 181:6-15.) Thus he is similar to the plaintiff in *Swonke v. Sprint, Inc.* (N.D.Cal. 2004) 327 F.Supp.2d 1128, 1134, who "himself characterized his disabilities . . . as preventing him from performing *any* of his job duties." **As Plaintiff's own "statements as to [his] inability to work are highly relevant in a summary judgment analysis,"** these admissions alone warrant judgment in favor of Defendant. *Swonke, supra,* at 1135-1136 (summary judgment granted in favor of employer where employee was totally disabled); *Bombard v. Fort Wayne News, Inc.,* (7th Cir. 1996) 92 F.3d 560, 563 (disabled employee who was unable to work at time of termination was not qualified and could not state *prima facie* case of discrimination).

Even without Plaintiff's admissions, however, his opposition would be insufficient to withstand Defendant's motion for summary judgment on this issue, as Plaintiff has presented <u>no</u> evidence whatsoever establishing that he could have returned to work after a leave other than his own self-serving declaration.[1] *Swonke, supra,* at 1134 ("given the medical evidence presented, plaintiff's subjective opinion concerning his ability to work is facially insufficient to establish that he was qualified to return to work"). Significantly, Plaintiff provides no expert testimony, and no evidence from his treating physician that an additional period of leave would have cured his condition and allowed him to work. Again, his claims are like those in *Swonke,* wherein the court noted that even if a doctor were to testify later at trial, "it would not alter the facts as they were plainly presented to [the company] at the time" of termination. *Id.* at 1133. Because the information available to the employer at the time of termination indicated that Plaintiff was totally disabled and unable to work, he cannot establish a *prima facie* case of disability discrimination as a matter of law.

### 2. Defendant Has Articulated A Legitimate Reason For Its Action.

Even if Plaintiff could establish a *prima facie* case, he cannot show pretext because

---

[1] Plaintiff cites to no evidence at all in his memorandum of points and authorities. In his responsive separate statement, he misleadingly quotes the deposition of Joanna Cotter, wherein she gave testimony related to Plaintiff's *January* 2005 leave. Accordingly, this "evidence" is wholly unrelated to his alleged request for accommodation or unlawful termination in August 2005. (Cotter Depo., p. 31:19-34:21.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

2.    Case No. CGC-06-453469
DEF NETVERSANT'S REPLY MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES

he has no evidence to rebut the legitimate non-discriminatory reason provided for his termination. *Brundage, supra,* 57 Cal.App.4th at 236. In other words, he cannot show that "intentional discrimination was the 'determinative factor' in the adverse employment action...." Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2005) ¶ 7:356, p. 7-49.[2]

First, as noted in Defendant's moving papers, Plaintiff, who was only a five-month employee and obtained no new sales accounts during that period, had taken more than nine months of leave. The law is clear that an employer is not required "to wait indefinitely for an employee's medical condition to be corrected...." *Hanson, supra,* at 226-227. Thus, the length of the leave alone, without any indication *when or if* Plaintiff might actually be able to work, provided a legitimate reason for his termination. *Id.,* at 226, *citing, Schmidt v. Safeway, Inc.* (D.Or. 1994) 864 F.Supp. 991, 997 ("employer would not be required to provide repeated leaves of absence (or perhaps even a single leave of absence)" where there was not a good prognosis for recovery.)

In addition, Plaintiff's poor performance prior to his leave provided yet an additional legitimate reason for his termination. Plaintiff's supervisor testified repeatedly during his deposition that he was "concerned" because Plaintiff had brought in no new sales during his first five months of employment. (Wainwright Dep., p. 66:10-68:2; 103:19-104:20;109:15-23; 110:7-14.) Specifically, Mr. Wainwright testified that Plaintiff had "been zero for business that he developed at that point." (Wainwright Depo, p. 70:15-21.) Plaintiff himself admitted that he had landed <u>no</u> new accounts other than one small sale worth a "couple hundred" dollars. (Cava Dep., p. 67:21-68:9; 104:8-105:7.) Accordingly, Plaintiff's lack of sales, coupled with the length of leave and poor prognosis, provided a legitimate basis for his termination. *Schmidt, supra,* 864 F.Supp. at 997.

In his reply, Plaintiff attempts to overcome this reason by claiming both that he was a good performer and that there is "substantial evidence that account executives who were at NetVersant for much longer than Mr. Cava.....were neither terminated nor placed on a PIP." (Plt's

---

[2] Plaintiff makes much ado about a mistakenly identified citation in Defendant's brief. It is a well known principle of employment law that in a disparate treatment case, the plaintiff must show that intentional discrimination was the determinative factor in the adverse employment action. *Hazen Paper Co. v. Biggins (*1993) 507 U.S. 604, 610. Thus, even if accidentally misattributed to the wrong case, the principle of law is still valid.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

3.                                      Case No. CGC-06-453469
DEF NETVERSANT'S REPLY MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES

Opp. 12:20-21.) In support of this claim, he submits only his own declaration and a comparison chart he apparently prepared. Plaintiff's "evidence" in this regard is neither competent, nor responsive, and is thus irrelevant to the instant motion. *Horn v. Cushman & Wakefield West. Inc.*, (1999) 72 Cal.App.4th 799, 816 ("an employee's subjective personal judgments of his or her competence alone do not raise a genuine issue of material fact); *Bradley v. Harcourt Brace & Co.* (9th Cir. 1996) 104 F.3d 267, 270 (where reason for discharge is poor performance, an employee's subjective opinion about his or her job performance does not create a triable issue of fact).

Specifically, the alleged evidence provided is neither authenticated, nor does it address the issues raised by Defendant's motion. That is, although Plaintiff provided some supposed sales data, he does not indicate where he got the information and does not provide any indication of its authenticity.[3] Even if he had, however, the data only goes to the amount and not the quality of the sales made by other representatives. As noted, Mr. Wainwright testified that the problem he had with Plaintiff's performance was that he had landed <u>no new accounts during the first five months of his employment</u>. (Wainwright Depo, p. 70:15-21.) Plaintiff does not dispute this fact. (Cava Dep., p. 67:21-68:9; 104:8-105:7.) As such, Plaintiff has not presented the "substantial responsive evidence" required to overcome summary judgment. *Horn, supra*, 72 Cal.App.4th at 807.

### 3. Defendant Accommodated Plaintiff's Disability.

Plaintiff claimed in his deposition that the only accommodation he sought was to be given some "understanding" and "a little compassion." (Cava Dep., p. 181:12-182:10.) Now, however, he claims that he should have been given additional time off as an accommodation for his disability. The law is clear that time off can be an accommodation for a leave <u>only</u> where there is some evidence that it will actually assist the employee in performing the duties of his or her position. *Hanson, supra*, 74 Cal.App.4th at 226. Here, there is no such evidence. Rather, the only evidence presented is that at the time of his termination, Plaintiff had been given two leaves of absence totaling nearly nine months of work. Despite this extended leave, Plaintiff remained totally disabled and unable to work. "[T]he fact that a prior leave was granted and was unsuccessful may be a

---

[3] In fact, Plaintiff admits that he stole the data from his employer prior to his termination, thereby providing after acquired evidence sufficient to justify his termination.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

4.   Case No. CGC-06-453469

**DEF NETVERSANT'S REPLY MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES**

relevant consideration in determining whether additional leave would be a reasonable accommodation." *Humphey v. Memorial Hosp. Assn* (2001) 239 F.3d 1128, 1136, n. 13, *Kimbro v. Atlantic Richmond Co.* (9th Cir. 1990) 889 F.2d 869, 879, n.10. Thus, an employee cannot avoid termination simply by requesting repeated leaves of absence. *Humphrey, supra,; Swonke, supra,* 327 F.Supp.2d at 1137 ( as plaintiff himself "indicated to his employer that he was incapacitated from working, it is hardly [the employer's] responsibility for failing to offer accommodation.")

Plaintiff attempts to distinguish his case from the facts in *Hanson, supra,* by claiming that in *Hanson* "there was no indication that the employee's condition would change." (Plt's Opp. 14:12-13.) He further contends that unlike *Hanson*, "[t]here is no question that Mr. Cava would have returned to work with no restriction." Suspiciously, Plaintiff cites *no* authority or evidence for this proposition – no doctor's testimony, no notes from his physician, and no expert opinion. As Plaintiff is not a medical doctor, he is unqualified to render such an opinion, and it must be disregarded. Cal. Evid. Code §§ 800, 801, 802; *Swonke, supra,* 327 F. Supp. 2d at 1134.

Even if Plaintiff's opinion in this regard were competent to overcome summary judgment, however, his theory remains unsound as it would have required Defendant to see into the future. There is no dispute that *at the time of Plaintiff's termination* the only information NetVersant had was that Plaintiff was disabled and unable to work for an unknown period. (Cava Depo., Exh. 19.) Thus, at the time the decision was made, there is no evidence that the accommodation Plaintiff now requests would have been effective. *Swonke, supra,* 327 F.Supp.2d at 1133 (a physician's after the fact testimony does not alter the facts as they were presented to the employer at the time the decision was made). Accordingly, Plaintiff's arguments must be disregarded, and as in *Hanson*, summary judgment should be granted in favor of the employer in this case.[4] *Bombard, supra,* 92 F.3d 560, 563 ("the determination as to whether an individual is a 'qualified individual with a disability' must be made as of the time of the employment decision.")

Finally, as noted in Defendant's moving papers, the accommodation requested by Plaintiff did not have to be granted because it created an undue hardship for Defendant.

---

[4] As in *Hanson*, the defendant employer followed its own internal policies, thereby giving it additional justification for the actions taken against the plaintiff.

(Wainwright Dep., p. 141:20-24; 142:18-143:21; 156:16-157:5; Wainwright Decl., ¶ 5-6.); *Epps v. City of Pine Lawn* (8th Cir. 2003) 353 F.3d 588, 593 n. 5 (employer not required to hire additional people or reallocate tasks to other employees to accommodate extended leave of absence). Plaintiff now contends, again *without authority or evidence*, that the claimed hardship (requiring people to cover his accounts) is "without merit or factual basis" because all of his accounts had already been *temporarily* reassigned at the time of termination. Plaintiff's argument truly "begs the question," as he admits that part of his claim for discrimination is based on the account reassignment. (Plt's Opp. p. 8:23.) Certainly, had Defendant granted the leave and yet permanently reassigned all of Plaintiff's accounts, he would still be litigating his case, claiming that a leave, without having the accounts returned to him at the end, was an illusory accommodation. Accordingly, it is clear that the accommodation that Plaintiff was truly requesting was a leave of absence from work <u>with</u> his accounts returned to him at the end. As noted in Defendant's moving papers, however, such a leave created a hardship both for other sales representatives and customers, and Plaintiff has no evidence to dispute this fact. *Humphrey, supra,* 239 F.3d at 1136, n. 14.

### 4. Defendant Had No Obligation To Engage In The Interactive Process.

Plaintiff now claims that he has adequately pled a separate claim for failure to engage in the interactive process. Plaintiff's claim for "disability discrimination" is dependent on one "primary right" and is thus appropriately treated as one cause of action for purposes of the instant motion. *Lilienthal& Fowler v. Sup. Ct.* (1993) 12 Cal.App.4th 1848, 1854.

Even if such a claim had been separately pled, however, it rises and falls with Plaintiff's failure to accommodate claim. Thus, because there were "no accommodations that could have possibly been consistent with the medical opinion that [Plaintiff] was totally disabled from employment...[t]he Court cannot impose upon the employer an obligation to engage in a process that was guaranteed to be futile." *Swonke, supra,* 327 F.Supp.2d at 1137. Likewise, as a component of a disability discrimination claim, a plaintiff alleging failure to accommodate must first make the predicate showing that he was a "qualified individual with a disability." *Bombard, supra,* 92 F.3d 560, 563. As Plaintiff can do neither, his failure to accommodate claims are subject to judgment as part and parcel of his disability discrimination claim. *Mays v. Principi* (7th Cir. 2002) 301 F.3d 866,

871 (the question of whether an employer engaged in the required interactive process and the question of whether there was a reasonable accommodation for the disabled employee are intertwined); *see also, Treanor v. MCI Telecommunications Corp.* (11th Cir. 2000) 200 F.3d 570, 575, questioned on other grounds in *Mems v. City of St. Paul* (8th Cir. 2003) 327 F.3d 771, 784 (the court concluded that plaintiff failed to create a genuine question of fact as to her interactive process claim because there was no evidence a reasonable accommodation was possible); *Hansen v. Henderson* (7th Cir. 2000) 233 F.3d 521, 523 (failure to engage in the "interactive process" cannot give rise to a claim for relief if the employer can show that no reasonable accommodation was possible); *Allen v. Pacific Bell* (C.D. Cal. 2003) 212 F. Supp. 2d 1180, 1197 ("an interactive process claim can stand only if there existed a reasonable accommodation for the plaintiff").[5]

### B.  Plaintiff's Claim For Wrongful Termination

Plaintiff has only one cause of action for wrongful termination.[6] (Comp., ¶ 29.) Although he claims there were multiple "wrongful" reasons for his termination, this does not change the fact that Plaintiff was actually terminated for a legitimate reason. This legitimate reason, as described above, renders Plaintiff's wrongful termination claim defective as a matter of law. *Jennings v. Marralle* (1994) 8 Cal.4th 121, 135-136.[7]

### C.  Plaintiff's Claim For Retaliation Is Subject To Summary Adjudication.

#### 1.  Plaintiff Has Not Engaged In Protected Activity.

Plaintiff has no authority for the proposition that his request for accommodation, even though futile and not appropriate, amounts to protected activity. Instead he merely attempts to

---

[5] Although Plaintiff now claims that there were other accommodations available, it remains undisputed that Plaintiff himself admitted that at the time of termination he was so disabled that he could not perform any of his job duties. (Cava Dep., p. 180:16-23; 181:6-15.) Plaintiff's argument thus amounts to nothing more than speculation which cannot be used to save his claims from judgment. *See, e.g., Brautigam v. Brooks* (1964) 227 Cal. App. 2d 547, 556 (an inference cannot be based upon mere possibility).

[6] Plaintiff has alleged only one theory of liability (wrongful termination) and the claim must be treated, as it is pled, as one cause of action. *Lilienthal & Fowler v. Sup. Ct.* (1993) 12 Cal.App.4th 1848, 1854.

[7] Even assuming Plaintiff had pled *two* independent causes of action for wrongful termination, the claim based on the medical benefits would also fail. That is because wrongful termination from employment is only tortious when the termination occurs in violation of a fundamental public policy with a statutory or constitutional basis. *Green v. Ralee Eng. Co.* (1998) 19 Cal.4th 66. Plaintiff has not alleged a statutory or constitutional basis for his "medical benefits" claim, thus rendering it subject to dismissal on a motion for judgment on the pleadings. *American Airlines, Inc. v. Cty of San Mateo* (1996) 12 Cal.4th 1110, 1118.

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

7.    Case No. CGC-06-453469

DEF NETVERSANT'S REPLY MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES

distinguish Defendant's authority on the basis that a disability leave is somehow different than a pregnancy disability leave. *Walker v. Elmore County Board of Education* (11th Cir. 2004) 379 F.3d 1249, 1253. As both leaves are protected by law, and both involve disability, Plaintiff's argument in this regard is nonsensical and must be disregarded. As Plaintiff cannot dispute that he did not engage in any protected activity, his claim is subject to judgment.

### 2. There Is No Causal Nexus Between The Leave And The Termination.

As noted in Defendant's moving papers, Plaintiff's retaliation claim also fails because he has no evidence of a retaliatory animus toward his disability -- he admits no disability-related comments were made to him, nor did anyone tell him jokes or otherwise make fun of disabled individuals. (Cava Dep., p. 72:20-25; 73:15-18.) In this situation, <u>timing alone is not enough</u> to establish retaliation. *Chen v. County of Orange* (2002) 96 Cal.App.4th 926, 931.[8] Although Plaintiff now claims that timing can be sufficient, he does not address the case at hand where his own performance deficiencies predated his alleged disability. *Clark County School Dist. v. Breeden* (2001) 532 U.S. 270. The admitted lack of new customers, and undisputed "concerns" raised by Plaintiff's supervisor, provide ample evidence to dispute any timing based causal connection.

### 3. Plaintiff Cannot Rebut The Legitimate Reasons For Termination.

Defendant makes an alternative argument in its moving papers that Plaintiff's retaliation claim is fatally defective because he was terminated (and his accounts taken away) for a legitimate business reason. *Flait, supra,* 3 Cal.App.4th at 476; *Thomas v. Dept. of Corr.* (2000) 77 Cal.App.4th 507, 510. Plaintiff apparently concedes this issue as he does not even attempt to rebut Defendant's argument. Accordingly, Plaintiff's opposition is insufficient to rebut summary judgment on this claim. *Kerr v. Rose* 91990) 216 Cal.App.3d 1551, 1564.

### D. Plaintiff's Contract Claims Are Subject To Summary Adjudication.

### 1. Plaintiff Cannot Establish An Oral Contract.

Plaintiff does not dispute that he was employed at-will, and does not dispute that the written employment agreements Plaintiff signed contain language that preclude the establishment of

---

[8] Plaintiff cites to several federal cases, which he claims stand for the proposition that timing alone can be enough, but does not cite to a single California case that would overrule *Chen* on this issue.

a contrary implied contract. (Cava Dep., p. 39:11-15; 43:12-14; Exhs. 1, 2, 3); *Guz v. Bechtel National, Inc.* (2000) 24 Cal. 4th 317, 335; *Foley v. Interactive Data Corp,* (1988) 47 Cal. 3d 654, 680; California Labor Code §2922. Rather, Plaintiff only argues that he had an "oral" and not an "implied" contract. Again, Plaintiff's argument is nonsensical, as he has attempted to make a distinction without a difference. The written agreements specifically note that no contract can be created by any "statement." (Cava Dep., p. 39:11-15; 43:12-14; Exhs. 1, 2, 3). Thus, regardless of whether the contract is called an "oral" contract or an "implied" contract, it could not be based upon a statement allegedly made by Mr. Wainwright during Plaintiff's interview. *Shapiro v. Wells Fargo* (1984) 152 Cal.App.3d 467, 482. In light of the contrary written agreements, Plaintiff cannot establish that a contract existed, and his claims are subject to judgment. *Id.*

### 2. The Alleged Promises Are Too Vague And Lack Consideration.

In an attempt to overcome this defect, Plaintiff now contends for the first time that he was promised "all Sacramento area accounts except for Octel." (Plt's Opp. 18:22.) Interestingly, this new promise is in <u>direct contradiction</u> of Plaintiff's sworn deposition testimony wherein he testified several times that the only thing that was promised to him was that he would get "most" of the prior sales person's accounts. (Cava Dep., p. 26:7-12; 27:8-16; 32:6-9; 33:24-34:5; 35:4-10.) Plaintiff also admitted in his deposition that no specific accounts were discussed and that he was never told how many or what percentage of the prior representative's accounts he would get. (Cava Dep., p. 26:7-12; 27:8-16; 32:6-33:11; 33:24-34:5; 35:4-10.) As Plaintiff cannot create a triable issue of fact with his own testimony, there is no dispute but that the alleged promise of "most" of the accounts is too vague to be enforceable. *Stansfield v. Starkey* (1990) 220 Cal.App.3d 59.

Plaintiff does not address Defendant's argument that the alleged agreements fail for lack of consideration other than to state that consideration was "adequate" because Plaintiff left his prior employer. (Plt's Opp. 18:24-25.) Like his other claims, Plaintiff presents neither competent evidence nor any legal authority to support this proposition. As there is no evidence that this was part of the bargained for exchange (i.e., no evidence that Plaintiff took the job in exchange for the promises), Plaintiff's contract claims must fail. Civ. Code § 1550.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

9.   Case No. CGC-06-453469

DEF NETVERSANT'S REPLY MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES

### 3. Plaintiff's Implied Covenant Claim Fails Because Plaintiff Was At-Will.

Plaintiff mistakenly argues that reliance on *Foley* is misplaced because Plaintiff's contract claim is not based on his termination. (Plt's Opp. 18:28-19:1.) What Plaintiff apparently fails to grasp is that because Plaintiff was employed at-will, the other employment related promises that he alleges could also have been terminated *at any time. Guz, supra,* 24 Cal.4th at 326-327. As such, a separate claim cannot stand in this context.

### E. Plaintiff's Claims For Misrepresentation Are Subject To Judgment.

#### 1. Plaintiff's Claim Is Vague And Lacks Evidence Of Falsity.

As noted above, the promise allegedly made to Plaintiff is too vague to be enforced. *See, e.g., Stansfield v. Starkey* (1990) 220 Cal.App.3d 59. With no disputed facts and no authority to contradict Defendant's legal position, Plaintiff's opposition on this issue is insufficient to withstand summary judgment. *Green, supra,* 19 Cal.4th at 72. Alternatively, Plaintiff's claim is subject to judgment as he does not provide any facts or evidence to rebut Defendant's claim that he has no evidence that the alleged promises were false at the time they were made. *Tyco Indus. v. Sup. Ct* (1985) 164 Cal.App.3d 148, 156. In fact, in his response to Defendant's separate statement, Plaintiff indicates simply "Undisputed" to the fact that "Plaintiff admits he has 'no indication' that the alleged promises were false at the time they were made to him." (Sep. Stmt, Fact No. 108). This admission is alone sufficient to grant judgment in Defendant's favor on Plaintiff's fraud based claims. *Green, supra,* 19 Cal.4th at 72.

#### 2. Alternatively, Plaintiff Cannot Prove Reasonable Reliance.

Plaintiff's claim also fails because he cannot prove "reasonable" reliance. *City of Atascadero v. Merrill Lynch, et al.* (1998) 68 Cal.App.4th 445, 482. Although Plaintiff claims that he has proven "textbook" reliance because he agreed to take a job, he does not address the argument that the reliance was unreasonable in light of the written documents that were contrary to the alleged promises. Defendant cited multiple cases which support the proposition that there can be no reliance, and thereby no fraud, where there is a written agreement contrary to the alleged oral promises made to Plaintiff. As Plaintiff does not dispute that he signed agreements containing none of the alleged promises, reliance on contrary promises was not reasonable. (Cava Dep., Ex. 2, 5.)

### 3. Alternatively, Plaintiff Cannot Establish Negligent Misrepresentation.

Plaintiff admits in his opposition that "matters of opinion are not actionable claims for representation." (Plt's Opp. p. 20:27-28.) As such, he expressly concedes the argument that a negligent misrepresentation claim cannot stand in this context. *Walters v. Marler* (1978) 83 Cal.App.3d 1, 17.

Dated: May 18, 2007

_____
MICHELLE B. HEVERLY
MICHAEL W. WARREN
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendants
NETVERSANT - NATIONAL, INC., PETER WAINWRIGHT

DEF NETVERSANT'S REPLY MPA ISO ITS MOT FOR SJ AND/OR SUM ADJ OF ISSUES