EXHIBIT -27

1   MICHELLE B. HEVERLY, Bar No. 178660
    MICHAEL W. WARREN, Bar No. 223642
2   LITTLER MENDELSON
    A Professional Corporation
3   50 West San Fernando Street, 14th Floor
    San Jose, CA 95113.2303
4   Telephone:    408.998.4150

5   Attorneys for Defendants
    NETVERSANT - NATIONAL, INC., PETER
6   WAINWRIGHT

ENDORSEL
FILED
San Francisco County Superior Cour

MAY 1 8 2007

GORDON FARRLL, Clerk
By:_____ROSSALY DE LA VEGA_____
                    Deputy Clerk

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                             COUNTY OF SAN FRANCISCO

10  MICHAEL CAVA,

11              Plaintiff,

12      v.

13  NETVERSANT - NATIONAL, INC., a
14  Delaware corporation, dba
    NETVERSANT - SAN FRANCISCO, aka
15  NETVERSANT; PETER WAINWRIGHT,
    an individual; and DOES 1 through 40,
16  inclusive,

17              Defendant.

18

Case No.  CGC-06-453469

**REPLY APPENDIX OF FEDERAL
AUTHORITIES CITED IN SUPPORT OF
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY
ADJUDICATION**

Date:      May 23, 2007
Time:      9:30 a.m.
Dept:      302
Judge:     Hon. Peter Busch

19

20          In accordance with California Rule of Court 313(h), Defendants NetVersant –

21  National, Inc., and Peter Wainwright ("Defendants") hereby submit copies of the federal authorities

22  cited in their Reply Memorandum of Points and Authorities in support of their Motions for Summary

23  Judgment, filed herewith.  Attached as Exhibits A and O are copies of the following federal cases:

24          A.  *Clark County School Dist. v. Breeden* (2001) 532 U.S. 270

25          B.  *Swonke v. Sprint, Inc.* (N.D.Cal. 2004) 327 F.Supp.2d 1128

26          C.  *Bombard v. Fort Wayne News, Inc.* (7th Cir. 1996) 92 F.3d 560

27          D.  *Schmidt v. Safeway, Inc.* (D.Or. 1994) 864 F.Supp. 991

28          E.  *Bradley v. Harcourt Brace & Co.* (9th Cir. 1996) 104 F.3d 267

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

Case No. CGC-06-453469

**REPLY APPENDIX OF FEDERAL AUTHORITIES ISO DEFS' MOTIONS FOR SUMMARY JUDGMENT,
OR ALTERNATIVELY, SUMMARY ADJUDICATION**

1   F.  *Humphey v. Memorial Hosp. Assn* (2001) 239 F.3d 1128

2   G.  *Kimbro v. Atlantic Richmond Co.* (9th Cir. 1990) 889 F.2d 869

3   H.  *Epps v. City of Pine Lawn* (8th Cir. 2003) 353 F.3d 588

4   I.  *Mays v. Principi* (7th Cir. 2002) 301 F.3d 866

5   J.  *Treanor v. MCI Telecommunications Corp.* (11th Cir. 2000) 200 F.3d 570

6   K.  *Hansen v. Henderson* (7th Cir. 2000) 233 F.3d 521

7   L.  *Allen v. Pacific Bell* (C.D. Cal. 2003) 212 F. Supp. 2d 1180

8   M.  *Walker v. Elmore County Board of Education* (11th Cir. 2004) 379 F.3d 1249

9   N.  *Kennedy v. Applause, Inc.* (9th Cir. 1996) 90 F.3d 1477

10  O.  *Vasquez v. County Of Los Angeles* (9th Cir. 2003) 349 F.3d 634

11  Dated: May 18, 2007

12

13  MICHELLE B. HEVERLY
    MICHAEL W. WARREN

14  LITTLER MENDELSON
    A Professional Corporation

15  Attorneys for Defendants
    NETVERSANT - NATIONAL, INC., PETER

16  WAINWRIGHT

    Firmwide:82488714.1 037665.1017

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose CA 95113-2303
408 998 4150

**APPENDIX OF FEDERAL AUTHORITIES ISO DEFS' MOTIONS FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION**

# EXHIBIT – A

Westlaw.

121 S.Ct. 1508                                                                                    Page 1
532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509, 69 USLW 3681, 69 USLW 3684, 85 Fair Empl.Prac.Cas. (BNA)
730, 80 Empl. Prac. Dec. P 40,442, 152 Ed. Law Rep. 492, 01 Cal. Daily Op. Serv. 3153, 2001 Daily Journal
D.A.R. 3893
**(Cite as: 532 U.S. 268, 121 S.Ct. 1508)**

▷
Supreme Court of the United States
CLARK COUNTY SCHOOL DISTRICT, Petitioner,
v.
Shirley A. BREEDEN, Respondent.
No. 00-866.

April 23, 2001.
Rehearing Denied June 11, 2001.
See 533 U.S. 912, 121 S.Ct. 2264.

School district employee sued district under Title
VII, alleging retaliation for engaging in protected
activities. The United States District Court for the
District of Nevada, Hagen, J., granted summary
judgment for district. The Ninth Circuit Court of
Appeals, 232 F.3d 893, reversed. On grant of petition
for writ of certiorari, the Supreme Court held that: (1)
no reasonable person could have believed that single
incident of alleged sexual harassment violated Title
VII, precluding retaliation claim based on employee's
internal complaints about incident, and (2) fact that
Equal Employment Opportunity Commission
(EEOC) issued right-to-sue letter to employee three
months before employee's supervisor announced she
was contemplating employee's transfer was
insufficient to establish causation element of
retaliation claim.

Reversed.

West Headnotes

**[1] Civil Rights** ☞1185
78k1185 Most Cited Cases
(Formerly 78k167)
Sexual harassment is actionable under Title VII only
if it is so severe or pervasive as to alter conditions of
victim's employment and create an abusive working
environment. Civil Rights Act of 1964, § 703(a)(1),
42 U.S.C.A. § 2000e-2(a)(1).

**[2] Civil Rights** ☞1185
78k1185 Most Cited Cases
(Formerly 78k167)
Factors in whether workplace environment is
sufficiently hostile or abuse to support sexual
harassment claim under Title VII include frequency
of discriminatory conduct, its severity, whether it is

physically threatening or humiliating or a mere
offensive utterance, and whether it unreasonably
interferes with employee's work performance. Civil
Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. §
2000e-2(a)(1).

**[3] Civil Rights** ☞1244
78k1244 Most Cited Cases

**[3] Schools** ☞63(1)
345k63(1) Most Cited Cases
No reasonable person could have believed that Title
VII sex discrimination provision was implicated by
single incident during school district's review of job
applicants' profiles, in which male supervisor, in
presence of one male and one female employee who
were also participating in review, read aloud sexually
explicit statement attributed to one applicant, stated
that he did not know what it meant, and was told by
male employee, "I'll tell you later," at which both
men laughed; thus, incident did not support female
employee's Title VII retaliation claim alleging that
adverse actions followed her internal complaints
about exchange. Civil Rights Act of 1964, § §
703(a)(1), 704(a), 42 U.S.C.A. § § 2000e-2(a)(1),
2000e-3(a).

**[4] Civil Rights** ☞1252
78k1252 Most Cited Cases

**[4] Schools** ☞63(1)
345k63(1) Most Cited Cases
Fact that school district was contemplating
employee's transfer prior to learning of employee's
Title VII sexual harassment complaint against district
rendered immaterial, in employee's action alleging
retaliation for filing of complaint, fact that transfer
was carried out one month after district learned of
complaint. Civil Rights Act of 1964, § § 703(a)(1),
704(a), 42 U.S.C.A. § § 2000e-2(a)(1), 2000e-3(a).

**[5] Civil Rights** ☞1252
78k1252 Most Cited Cases

**[5] Schools** ☞63(1)
345k63(1) Most Cited Cases
Fact that Equal Employment Opportunity
Commission (EEOC) issued right-to-sue letter to
school district employee three months before

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

121 S.Ct. 1508                                                                                                    Page 2
532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509, 69 USLW 3681, 69 USLW 3684, 85 Fair Empl.Prac.Cas. (BNA)
730, 80 Empl. Prac. Dec. P 40,442, 152 Ed. Law Rep. 492, 01 Cal. Daily Op. Serv. 3153, 2001 Daily Journal
D.A.R. 3893
(Cite as: 532 U.S. 268, 121 S.Ct. 1508)

employee's supervisor announced she was contemplating employee's transfer was insufficient to establish causation element of employee's Title VII retaliation action; if supervisor was presumed to know about letter, supervisor also had to be presumed to know about filing of original EEOC complaint 20 months earlier. Civil Rights Act of 1964, § § 703(a)(1), 704(a), 706(b, e), 42 U.S.C.A. § § 2000e-2(a)(1), 2000e-3(a), 2000e-5(b, e); 29 C.F.R. § 1601.14.

**1509 Carol Davis Zucker, Kamer, Zucker & Abbott, Las Vegas, Nevada, Kathy M. Banke, Crosby, Heafey, Roach & May, Oakland, California, for Petitioner.

Richard Segerblom, Las Vegas, Nevada, for Respondent.

*269 PER CURIAM.

Under Title VII of the Civil Rights Act of 1964, 78 Stat. 255, as amended, 42 U.S.C. § 2000e-3(a), it is unlawful "for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." In 1997, respondent filed a § 2000e-3(a) retaliation claim against petitioner Clark County School District.    The claim as eventually amended alleged that petitioner had taken two separate adverse employment actions against her in response to two different protected activities in which she had engaged.    The District Court granted summary judgment for petitioner, No. CV-S-97-365-DWH(RJJ) (D.Nev., Feb. 9, 1999), but a panel of the Court of Appeals for the Ninth Circuit reversed over the dissent of Judge Fernandez, No. 99-15522, 2000 WL 991821 (July 19, 2000) (per curiam) (unpublished), judgt. order reported at 232 F.3d 893. We grant the writ of certiorari and reverse.

On October 21, 1994, respondent's male supervisor met with respondent and another male employee to review the psychological evaluation reports of four job applicants.    The report for one of the applicants disclosed that the applicant had once commented to a co-worker, "I hear making love to you is like making love to the Grand Canyon." Brief in Opposition 3. At the meeting respondent's supervisor read the comment aloud, looked at respondent and stated, "I don't know what that means."    Ibid. The other

employee then said, "Well, I'll tell you later," and both men chuckled.    Ibid. Respondent later complained about the comment to the offending employee, to Assistant Superintendent George Ann Rice, the employee's supervisor, and to another assistant *270 superintendent of petitioner.    Her first claim of retaliation asserts that she was punished for these complaints.

The Court of Appeals for the Ninth Circuit has applied § 2000e-3(a) to protect employee "oppos[ition]" not just to practices that are actually "made ... unlawful" by Title VII, but also to practices that the employee could reasonably believe were unlawful.    2000 WL 991821, at *1 (stating that respondent's opposition was protected "if she had a reasonable, good faith belief that the incident involving the sexually explicit remark constituted unlawful sexual harassment"); Trent v. Valley Electric Assn. Inc., 41 F.3d 524, 526 (C.A.9 1994). We have no occasion to rule on the propriety of this interpretation, because even assuming it is correct, no one could reasonably believe that the incident recounted above violated Title VII.

[1][2] Title VII forbids actions taken on the basis of sex that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1).    Just three Terms ago, we reiterated, what was plain from our previous decisions, that sexual harassment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.' " Faragher v. Boca Raton, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (some internal quotation marks omitted)). See also Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 752, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (Only harassing conduct that is "severe or pervasive" can produce a "constructive alteratio[n] in the **1510 terms or conditions of employment"); Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment").    Workplace conduct is not measured in isolation;    instead, "whether an environment is sufficiently hostile or abusive" must be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory *271 conduct; its

121 S.Ct. 1508                                                                                   Page 3
532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509, 69 USLW 3681, 69 USLW 3684, 85 Fair Empl.Prac.Cas. (BNA)
730, 80 Empl. Prac. Dec. P 40,442, 152 Ed. Law Rep. 492, 01 Cal. Daily Op. Serv. 3153, 2001 Daily Journal
D.A.R. 3893
**(Cite as: 532 U.S. 268, 121 S.Ct. 1508)**

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Faragher v. Boca Raton, supra,* at 787-788, 118 S.Ct. 2275 (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Hence, "[a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. Boca Raton, supra,* at 788, 118 S.Ct. 2275 (citation and internal quotation marks omitted).

[3] No reasonable person could have believed that the single incident recounted above violated Title VII's standard. The ordinary terms and conditions of respondent's job required her to review the sexually explicit statement in the course of screening job applicants. Her co-workers who participated in the hiring process were subject to the same requirement, and indeed, in the District Court respondent "conceded that it did not bother or upset her" to read the statement in the file. App. to Pet. for Cert. 15 (District Court opinion). Her supervisor's comment, made at a meeting to review the application, that he did not know what the statement meant; her co-worker's responding comment; and the chuckling of both are at worst an "isolated inciden[t]" that cannot remotely be considered "extremely serious," as our cases require, *Faragher v. Boca Raton, supra,* at 788, 118 S.Ct. 2275. The holding of the Court of Appeals to the contrary must be reversed.

[4] Besides claiming that she was punished for complaining to petitioner's personnel about the alleged sexual harassment, respondent also claimed that she was punished for filing charges against petitioner with the Nevada Equal Rights Commission and the Equal Employment Opportunity Commission (EEOC) and for filing the present suit. Respondent filed her lawsuit on April 1, 1997; on April 10, 1997, respondent's supervisor, Assistant Superintendent Rice, "mentioned *272 to Allin Chandler, Executive Director of plaintiff's union, that she was contemplating transferring plaintiff to the position of Director of Professional Development Education," App. to Pet. for Cert. 11-12 (District Court opinion); and this transfer was "carried through" in May, Brief in Opposition 8. In order to show, as her defense against summary judgment required, the existence of a causal connection between her protected activities and the transfer, respondent "relie[d] wholly on the temporal proximity of the filing of her complaint on April 1, 1997 and Rice's statement to plaintiff's union representative on April 10, 1997 that she was considering transferring plaintiff to the [new] position." App. to Pet. for Cert. 21-22 (District Court opinion). The District Court, however, found that respondent did not serve petitioner with the summons and complaint until April 11, 1997, one day *after* Rice had made the statement, and Rice filed an affidavit stating that she did not become aware of the lawsuit until after April 11, a claim that respondent did not challenge. Hence, the court concluded, respondent "ha[d] not shown that any causal connection exists between her protected activities and the adverse employment decision." *Id.,* at 21.

The Court of Appeals reversed, relying on two facts: The EEOC had issued a right-to-sue letter to respondent three months before Rice announced she was contemplating the transfer, and the actual **1511 transfer occurred one month after Rice learned of respondent's suit. 2000 WL 991821, at *3. The latter fact is immaterial in light of the fact that petitioner concededly was contemplating the transfer before it learned of the suit. Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.

[5] As for the right-to-sue letter: Respondent did not rely on that letter in the District Court and did not mention it in *273 her opening brief on appeal. Her demonstration of causality all along had rested upon the connection between the transfer and the filing of her lawsuit--to which connection the letter was irrelevant. When, however, petitioner's answering brief in the Court of Appeals demonstrated conclusively the lack of causation between the filing of respondent's lawsuit and Rice's decision, respondent mentioned the letter for the first time in her reply brief, Reply Brief in No. 99-15522(CA9) pp. 9-10. The Ninth Circuit's opinion did not adopt respondent's utterly implausible suggestion that the *EEOC's* issuance of a right-to-sue letter--an action in which the employee takes no part--is a protected activity of the employee, see 42 U.S.C. § 2000e-3(a). Rather, the opinion suggests that the letter provided petitioner with its first notice of respondent's charge before the EEOC, and hence allowed the inference that the transfer proposal made three months later

121 S.Ct. 1508                                                                                              Page 4
532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509, 69 USLW 3681, 69 USLW 3684, 85 Fair Empl.Prac.Cas. (BNA)
730, 80 Empl. Prac. Dec. P 40,442, 152 Ed. Law Rep. 492, 01 Cal. Daily Op. Serv. 3153, 2001 Daily Journal
D.A.R. 3893
**(Cite as: 532 U.S. 268, 121 S.Ct. 1508)**

was petitioner's reaction to the charge. See 2000 WL 991821, at *3. This will not do.

First, there is no indication that Rice even knew about the right-to-sue letter when she proposed transferring respondent. And second, if one presumes she knew about it, one must also presume that she (or her predecessor) knew *almost two years earlier* about the protected action (filing of the EEOC complaint) that the letter supposedly disclosed. (The complaint had been filed on August 23, 1995, and both Title VII and its implementing regulations require that an employer be given notice within 10 days of filing, 42 U.S.C. § § 2000e-5(b), (e)(1); 29 CFR § 1601.14 (2000).) The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close," *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1253 (C.A.10 2001). See, *e.g., Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (C.A.10 1997) (3-month period insufficient); *Hughes v. Derwinski,* 967 F.2d 1168, 1174-1175 (C.A.7 1992) *274 4-month period insufficient). Action taken (as here) 20 months later suggests, by itself, no causality at all.

In short, neither the grounds that respondent presented to the District Court, nor the ground she added on appeal, nor even the ground the Court of Appeals developed on its own, sufficed to establish a dispute substantial enough to withstand the motion for summary judgment. The District Court's granting of that motion was correct. The judgment of the Court of Appeals is reversed.

*It is so ordered.*

For U.S. Supreme Court Briefs See:

2000 WL 33301932 (Appellate Petition, Motion and Filing), PETITION FOR A WRIT OF CERTIORARI, (November 29, 2000)

2001 WL 476883 (Appellate Petition, Motion and Filing), BRIEF IN OPPOSITION, (February 28, 2001)

2001 WL 476889 (Appellate Petition, Motion and Filing), PETITIONER'S RESPONSE TO RESPONDENT'S BRIEF IN OPPOSITION, (March 12, 2001)

2001 WL 34091931 (Appellate Petition, Motion and Filing), Petition for Rehearing, (May 17, 2001)

2000 WL 34000512 (Appellate Petition, Motion and Filing), Petition for a Writ of Certiorari, (November 29, 2000)

2001 WL 34117271 (Appellate Petition, Motion and Filing), Petitioner's Response to Respondent's Brief in Opposition, (March 12, 2001)

532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509, 69 USLW 3681, 69 USLW 3684, 85 Fair Empl.Prac.Cas. (BNA) 730, 80 Empl. Prac. Dec. P 40,442, 152 Ed. Law Rep. 492, 01 Cal. Daily Op. Serv. 3153, 2001 Daily Journal D.A.R. 3893

END OF DOCUMENT

EXHIBIT – B

Westlaw.

327 F.Supp.2d 1128                                                     Page 1
327 F.Supp.2d 1128
(Cite as: 327 F.Supp.2d 1128)

▷

United States District Court,
N.D. California.
Carl SWONKE, Plaintiff,
v.
SPRINT INC., Sprint/United Management Company,
d/b/a Sprint, John Grismore, and
Does 1 to 10, inclusive, Defendants.
No. C02-5039 TEH.

April 26, 2004.

**Background:** Former employee brought disability
discrimination claim against former employer under
California Fair Employment and Housing Act
(FEHA). Former employer moved for summary
judgment.

**Holdings:** The District Court, Henderson, J., held
that:

(1) employee was not "otherwise qualified" for his
position;

(2) employee's termination was not caused by his
disability, and thus did not violate FEHA;

(3) employer did not fail to reasonably
accommodate employee's knee injury; and

(4) employer did not fail to engage in interactive
process.

Motion granted.

West Headnotes

**[1] Civil Rights** ⚖══1218(4)
78k1218(4) Most Cited Cases
Viewing employee's pancreatitis in isolation from his
other medical problems, employee was "otherwise
qualified" for his supervisory sales position, as
required for prima facie case under California Fair
Employment and Housing Act (FEHA), where he
worked for employer for years, with accommodation,
and received positive performance reviews.   West's
Ann.Cal.Gov.Code § 12940 et seq.

**[2] Civil Rights** ⚖══1218(4)
78k1218(4) Most Cited Cases
Employee was not "otherwise qualified" for his
supervisory sales position, as required for prima facie
case under California Fair Employment and Housing
Act (FEHA), where his own medical providers
designated him as unable to work for two years due
to his knee injury, and employee, in seeking long-

term disability benefits, characterized his aggregate
disabilities of pancreatitis, knee injury, head injury,
and torn rotator cuff as preventing him from
performing any of his job duties.    West's
Ann.Cal.Gov.Code § 12940 et seq.

**[3] Estoppel** ⚖══68(2)
156k68(2) Most Cited Cases
Employee was not per se judicially estopped from
arguing that he was "otherwise qualified" for his
position, as required for prima facie case under
California Fair Employment and Housing Act
(FEHA), based on fact that, when seeking long-term
disability benefits, he had maintained that he could
not perform any of his job duties.    West's
Ann.Cal.Gov.Code § 12940 et seq.

**[4] Civil Rights** ⚖══1220
78k1220 Most Cited Cases
Employee's termination from supervisory sales
position was not caused by his disability, and thus did
not violate California Fair Employment and Housing
Act (FEHA), even though employee was on disability
leave at time of lay-off, where employer presented
documents and testimony showing that reduction in
force (RIF) was legitimate business decision, and all
employees in employee's group were terminated.
West's Ann.Cal.Gov.Code § 12940 et seq.

**[5] Civil Rights** ⚖══1220
78k1220 Most Cited Cases
Employer's failure to give employee another position
after he was terminated in
reduction in force (RIF) was not caused by his
disability, and thus did not violate California Fair
Employment and Housing Act (FEHA), where
decision-makers for openings for which he applied
had no knowledge of his disabilities.    West's
Ann.Cal.Gov.Code § 12940 et seq.

**[6] Courts** ⚖══97(5)
106k97(5) Most Cited Cases
Decisions interpreting the ADA may be useful in
deciding cases under the California Fair Employment
and Housing Act (FEHA).    Americans with
Disabilities Act, § 2 et seq., 42 U.S.C.A. § 12101 et
seq.; West's Ann.Cal.Gov.Code § 12940 et seq.

**[7] Civil Rights** ⚖══1220
78k1220 Most Cited Cases
Alleged denial of supervisory sales employee's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

request for time off for single weekend, which he ended up working successfully, if proven, was not adverse employment action upon which California Fair Employment and Housing Act (FEHA) claim of disability discrimination could be based. West's Ann.Cal.Gov.Code § 12940 et seq.

**[8] Civil Rights �köö1225(3)**
78k1225(3) Most Cited Cases
Employer did not fail to reasonably accommodate supervisory sales employee's knee injury, in violation of California Fair Employment and Housing Act (FEHA), where his claim that he could work with modified schedule, rest breaks, and home-based work was inconsistent with his submission of repeated doctor's notes excusing him entirely from work, and there was no other job he could be assigned to given his medical providers' opinions. West's Ann.Cal.Gov.Code § 12940 et seq.

**[9] Civil Rights ⊃1225(4)**
78k1225(4) Most Cited Cases
Employer did not fail to engage in interactive process, in violation of California Fair Employment and Housing Act (FEHA), where there were no accommodations for supervisory sales employee's knee injury that could have possibly been consistent with medical opinion that employee was totally disabled from any employment. West's Ann.Cal.Gov.Code § 12940 et seq.;
29 C.F.R. § 1630.2(*o*)(3).

**[10] Civil Rights ⊃1225(4)**
78k1225(4) Most Cited Cases
With respect to the California Fair Employment and Housing Act (FEHA) requirement that an employer engage in an interactive process with a disabled employee, a court cannot impose upon the employer an obligation to engage in a process that is guaranteed to be futile. West's Ann.Cal.Gov.Code § 12940 et seq.; 29 C.F.R. § 1630.2(*o*)(3).

**[11] Civil Rights ⊃1225(2)**
78k1225(2) Most Cited Cases

**[11] Civil Rights ⊃1240**
78k1240 Most Cited Cases
An employer's responsibility under the California Fair Employment and Housing Act (FEHA) to reassign a disabled employee who cannot be otherwise accommodated does not require creating a new job, moving another employee, promoting the disabled employee, or violating another employee's rights under a collective bargaining agreement

(CBA), but it nevertheless does entail affirmative action. West's Ann.Cal.Gov.Code § 12940 et seq.; 29 C.F.R. § 1630.2(*o*) (3).

**[12] Civil Rights ⊃1220**
78k1220 Most Cited Cases
Employer's alleged action of telling employee to stay home and recuperate was not adverse action upon which Fair Employment and Housing Act (FEHA) claim could be based. West's Ann.Cal.Gov.Code § 12940 et seq.

**[13] Civil Rights ⊃1769**
78k1769 Most Cited Cases
Employee was not entitled to punitive damages from employer under California Fair Employment and Housing Act (FEHA), where he presented no evidence that decision-makers responsible for his termination were managing agents, and evidence of his reprimand for reporting knee injury six days after the fact, of
manager's alleged skepticism about seriousness of his injury, and of manager's request for documentation of injury did not indicate malice, oppression, or fraud. West's Ann.Cal.Gov.Code § 12940 et seq.
*1130 Kathleen A. McCormac, McCormac & Associates, San Francisco, CA, for Plaintiff.

Sonia Renee Martin, Sonnenschein, Nath & Rosenthal, San Francisco, CA, Lloyd C. Loomis, Sonnenschein, Nath & Rosenthal, Los Angeles, CA, for Defendants.

**ORDER GRANTING SUMMARY JUDGMENT**

HENDERSON, District Judge.

**INTRODUCTION**
This is a disability discrimination case brought by plaintiff Carl Swonke against his former employer Sprint, pursuant to the California Fair Employment & Housing Act (FEHA). Plaintiff had a number of physical disabilities which he claims Sprint failed to accommodate and which he asserts ultimately motivated defendant to terminate his employment. Sprint denies these charges and moves for summary judgment. The Court heard oral argument on March 29, 2004. Having fully considered all briefs and evidence submitted by the parties, as well as the oral *1131 argument of counsel, the Court hereby grants defendant's motion for summary judgment, as discussed below.

**FACTUAL BACKGROUND**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

327 F.Supp.2d 1128
327 F.Supp.2d 1128
(Cite as: 327 F.Supp.2d 1128)

Plaintiff began working for Sprint in 1998 as a sales associate. He was quickly promoted to a supervisory position hiring and training new sales associates.

In October 1999 plaintiff was in an accident during a work-sponsored trip causing injury to his pancreas and a minor head injury. His supervisor accommodated his pancreas disability by allowing plaintiff time off for doctor appointments and breaks whenever he suffered pancreatic attacks.

In July 2000 plaintiff was promoted to a Retail Sales Manager position in the Broadband Wireless Group ("BWG") in Burlingame, which provides high-speed internet service. Plaintiff was responsible for securing sales of Sprint's broadband products through large retailers. He advised his manager, Mr. Robinson, of his disability, and Robinson continued the accommodations.

In late 2000 Mr. Robinson was replaced by John Grismore. Plaintiff told Mr. Grismore about his disability, and plaintiff continued to take breaks as needed. However, at a certain point Mr. Grismore asked plaintiff for documentary proof of his disability. Plaintiff contacted Human Resources and others to try to get the proper workers' compensation records. Plaintiff provided some documentation to Grismore, which appears to be a few blank forms and other documents which plaintiff fails to describe in any detail. Mr. Grismore told plaintiff that the documents were insufficient. Plaintiff continued his effort with Human Resources to provide appropriate documentation to Grismore, but without success, and plaintiff never gave Mr. Grismore any records from plaintiff's own files.

On April 9, 2001 plaintiff slipped on a ladder at work and twisted his knee. He did not seek medical help and continued working as usual (including walking, light lifting, etc.), but several days later during a routine chiropractic visit he was told it might be more than just a slight strain and that he should report the injury to the workers' compensation carrier. Plaintiff e-mailed Mr. Grismore the next day about the knee injury and then went to Kaiser Hospital. He was diagnosed with a meniscal tear of the knee, and the doctor placed him off work, limiting him to sedentary activities, and noting that he could participate in modified work starting April 30, 2001. Mr. Grismore was not pleased that plaintiff waited six days to report his knee injury, and he seems to have been skeptical about whether there was any significant injury at all (a number of other employees told Mr. Grismore that they saw plaintiff during the week after the knee strain incident bending, lifting, etc. with no problems). Mr. Grismore wrote to the Regional Sales Manager, Steve Rowley, suggesting that plaintiff receive a written warning for waiting so long to report the injury. However, Mr. Rowley did not issue a warning and plaintiff was not reprimanded in any way.

During the second half of April, plaintiff stayed home but continued a number of his sales manager duties by phone, including staying in daily contact with his account executive and participating in some work meetings. Then Mr. Grismore and a Human Resources representative e-mailed plaintiff telling him to stop engaging in any work and to focus his energy on his recovery. Sprint placed plaintiff on short-term disability leave ("STD").

On April 24, 2001 plaintiff called Sprint's Ethics Helpline to complain about Mr. Grismore's treatment of him. Plaintiff believed that Mr. Grismore was denying him *1132 reasonable accommodations and was using plaintiff's disabilities to prevent him from working at all. Sprint recorded the complaint, but it never took any action. The Helpline log entries show that once plaintiff went on disability leave, the company put the complaint on hold.

From April 2001 to early 2003, plaintiff continued to stay home from work based on his disabilities. He produced a series of twenty-one (21) notes from medical providers to support his inability to return to work. Some of the notes indicate a short-term rehabilitation period (e.g. after out-patient surgery on the knee) followed by an anticipated return to work with or without restrictions. However, each of these is overridden by another doctor's note extending the time off work. A full chronology of all the doctors' notes shows that plaintiff was completely excused from work for the entire period from April 18, 2001 to March 15, 2003. See Def.'s Reply Brief, Appendix A (and exhibits referenced therein).

In August 2001, Sprint "reorganized" the Broadband Wireless Group, based on its decision that the technology it was selling essentially had become obsolete. The company closed plaintiff's sales office. Rather than terminating plaintiff, however, Sprint technically reassigned him to the San Jose office, although he did not go there to work. Defendant explains that it kept him on the payroll under the San Jose manager so that he could exhaust his short-term disability benefits.

In October 2001, in a second wave of

"restructuring," Sprint eliminated plaintiff's job. Plaintiff applied for long-term disability benefits ("LTD"), and the company placed him on unpaid leave during the processing of the application. In January 2002 the company denied LTD benefits, based on Sprint's physician's determination that he was not disabled, at which point plaintiff was terminated with six weeks of severance pay. Plaintiff appealed the denial of LTD benefits, submitting an application stating that his injuries "prevent[ ] me from engaging in any gainful employment," and a doctor's letter stating that plaintiff was "unable to perform the job duties as dictated by his occupation." Plaintiff won his appeal. To this date, plaintiff continues to receive LTD benefits, and his doctors have not released him to perform any work.

After being terminated, plaintiff sent letters of application to a number of other Sprint divisions seeking a managerial position. He was not interviewed or hired for any of those jobs.

### LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); U.S. v. 45/194 Kg. Drums of Pure Vegetable Oil, 961 F.2d 808, 811 (9th Cir.1992). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. The court may not weigh the evidence, and is required to view the evidence in the light most favorable to the nonmoving party. Id at 255, 106 S.Ct. 2505.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses demonstrating the absence of a genuine issue of material fact. *1133Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof on an issue at trial, he or she must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Id. at 322-323, 106 S.Ct. 2548. However, on an issue for which her opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to

the District Court ... that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S.Ct. 2548. If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 250, 106 S.Ct. 2505.

### DISCUSSION
#### A. Is Plaintiff an "Otherwise Qualified" Individual?

To establish a prima facie claim for violation of the California Fair Employment and Housing Act (FEHA), plaintiff must introduce evidence demonstrating that he: (1) has a disability, (2) is otherwise qualified for employment, and (3) has suffered an adverse employment action because of the disability. Brundage v. Hahn, 57 Cal.App.4th 228, 236, 66 Cal.Rptr.2d 830 (1997). Defendant does not contest that plaintiff has a disability.

[1] With regard to the second prong of the test, a person is "otherwise qualified" only if he is capable of performing the essential functions of the job with or without reasonable accommodation. Cal. Gov't Code § 12940(a)(1); Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir.1996). Focusing only on the pancreatitis, plaintiff clearly was otherwise qualified, as he worked at Sprint for years, with accommodation, and received positive performance reviews.

[2] Focusing on the knee injury, the Court's initial impression was that it would not seem to be so severe as to prevent him from doing his job (based on the minimal evidence presented), except during the short periods following the injury and surgery. As a retail sales manager, plaintiff was not required to lift more than 10 pounds (briefcase and laptop), and much of his work was sedentary with periodic standing and walking in the office and to and from sales calls. Thus, a common sense approach to plaintiff's knee disability would indicate that, at least in the abstract, he would be otherwise qualified.

However, on the facts of this particular case, plaintiff's own medical providers designated him as unable to work at all based on the knee injury for two years. Plaintiff contends that in spite of his medical providers' designations, he was able to perform some duties, as evidenced by the work he performed from home for a week or so in mid-April 2001. There is no evidence in the record, however, supporting plaintiff's ability to meet his job responsibilities from

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

327 F.Supp.2d 1128
327 F.Supp.2d 1128
(Cite as: 327 F.Supp.2d 1128)

Page 5

home or otherwise after that brief period. Rather, it is undisputed that Sprint was told by plaintiff's medical providers that he was unable to work, even with modifications, from April 2001 forward, and the company acted accordingly by telling plaintiff to stay home, recuperate, and return to work when ready. Many months then passed, extending well beyond the knee surgery, with no indication from plaintiff or, more importantly, his medical providers that he was capable of returning to work. Even if a doctor were to testify later in deposition or at trial that plaintiff was physically able to have performed his work with modifications, it would not alter the facts as they were plainly presented to Sprint at the time. To rule in favor of plaintiff on this point would be to hold that the employer should have returned plaintiff to work when the professional medical judgment was that he was physically incapacitated. *See \*1134Ott v. Crown Cork & Seal Co.,* 1997 WL 231110, *6 (N.D.Cal.1997) ("given the medical evidence presented, plaintiff's subjective opinion concerning his ability to work is facially insufficient to establish that he was qualified to return to work"); 2 Cal.Code Reg. § 7297.4(b)(2)(E) (entitling employer to insist on doctor's release verifying that the employee is able to return to work following medical leave).

Plaintiff attempts to evade the clear dictates of his medical providers' advice in ways that are entirely unpersuasive to the Court. First, plaintiff focuses on selected doctor's notes in isolation, each of which makes it appear that plaintiff's knee disability is short-term and that he would be returning to work, with or without modifications, within a matter of weeks. However, when the doctor's notes are reviewed as a whole, one sees that prior to each date the doctor anticipates plaintiff will return to work, a new note excuses plaintiff for a longer period of time. Thus, there was not a single day after the onset of the knee injury in April 2001 when plaintiff was actually released to work even with restrictions.

Plaintiff's second attempt to evade the import of the medical advice is particularly troubling to the Court. Plaintiff's first six notes relating to the knee injury, excusing him from work from April to September 2001, were from Dr. Raphael at Kaiser. The remaining notes, excusing him from work from September 2001 to March 2003, were from William King of the Martinez Chiropractic Center. When plaintiff sent these notes to Sprint, he represented that they were from his "physician." *See* Def.'s Index of Evidence, Exh. B (Exh. 18 to Pl.'s Depo.). On each note King signed next to the printed space for "Dr. Signature." At oral argument, however, plaintiff's

counsel informed the Court that Mr. King is not a doctor. Plaintiff further argued to the Court that as a legal matter a doctor's advice "trumps" that of a chiropractor. Plaintiff thus concludes that Dr. Raphael's last note, which provides an anticipated return to work date of September 15, 2001, should be the final word, and that the year and a half's worth of chiropractic notes designating plaintiff as disabled should be disregarded.

The Court simply cannot accept this argument. If plaintiff's doctor had cleared him to return to work, and Sprint were contradicting that position with its own chiropractor, then the Court would be presented with a material conflict that should await resolution by a jury. But here all of the notes were submitted by plaintiff, with the unambiguous representation that they were written by appropriate health care providers. The semantics of who is or is not a "doctor," [FN1] and the gamesmanship of whose advice should be credited, are irrelevant to resolution of this matter. The only point of any import is that, all told, the notes state without contradiction or ambiguity that plaintiff was not able to return to work. For the Court to find a *genuine* dispute on these facts would be to engage in a level of fiction unwarranted by controlling legal standards. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

> FN1. Although the notes do not indicate King's level of accreditation, the Court has uncovered a letter in the record indicating that he is a "D.C.," or doctor of chiropractic. *See* Def.'s Index of Evidence, Exh. B (Exh. 5).

Furthermore, plaintiff himself characterized his disabilities in the aggregate (pancreatitis, knee injury, head injury, and a torn rotator cuff resulting from crutches set at the improper height after the knee surgery) as preventing him from performing *any* of his job duties when he sought long-term disability benefits. For example, on January 17, 2002, plaintiff wrote the following to Human Resources:

[M]y work related injuries resulted in one surgery, several more scheduled in *1135 the future ... Therefore, Sprint's offer for career transition services and job opportunities are not valid at this time. Before I can return to gainful employment, I am required by California law to be released by all treating physicians. The releases will only be authorized once all the surgeries and rehab have been completed.

Def.'s Index of Evidence, Exh. B (Exh. 17); *see also* Def.'s Index of Evidence, Exh. B (Exh. 5) (letter

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

327 F.Supp.2d 1128
327 F.Supp.2d 1128
(Cite as: 327 F.Supp.2d 1128)

Page 6

dated February 6, 2002 from W. King, stating that "it is my medical opinion that Mr. Swonke is unable to perform the job duties as dictated by his occupation.").

The Ninth Circuit has addressed very similar situations--where a plaintiff applies for disability benefits based on his total inability to work, and later sues on the theory that he could have worked with accommodation--and held that statements as to a plaintiff's inability to work are highly relevant in a summary judgment analysis. *See Fredenburg v. Contra Costa County Dept. of Health Services,* 172 F.3d 1176, 1179 (9th Cir.1999); *Johnson v. State of Oregon,* 141 F.3d 1361 (9th Cir.1998); *Kennedy v. Applause, Inc.,* 90 F.3d 1477 (9th Cir.1996). However, addressing a defense that a plaintiff's prior claim of total disability should provide a basis for judicial estoppel of any later inconsistent claim, the court has held that the plaintiff is not automatically barred. The Ninth Circuit explained in *Johnson* that the standards governing the decision whether to grant disability benefits may be different than the standard under the ADA or FEHA. Thus, the courts must take a case-by-case approach to evaluate the particular statements and facts that have been asserted. The court reasoned as follows:

> Some potential plaintiffs might abandon pursuit of their rights under the ADA if they could not apply for disability benefits. Faced with the financial pressures accompanying the loss of a job and the uncertainty and length of litigation, individuals might well elect immediate benefits over the pursuit of even the most meritorious ADA claim. Such a situation would not only harm the individuals the ADA seeks to protect, it also would protect the very activity the ADA seeks to eliminate: discrimination against disabled individuals. Employers who discriminate unlawfully would be shielded from liability if their victims could sue them only if they did not apply for disability benefits.

> As we have previously emphasized, what may be considered a disability or total disability under legal precepts of certain federal or state disability statutes or private instruments conferring disability benefits may differ under provisions of other federal or state legislation or other private instruments. Therefore, a statement averring a *legal conclusion* in a previous application or proceeding as to disability may not always preclude eligibility in subsequent applications or proceedings. Having said this, however, we emphasize that *material factual statements* made by an individual in prior disability applications or proceedings may be

binding in subsequent ADA claims.
*Johnson,* 141 F.3d at 1369 (emphasis added).

[3] In this case, the Ninth Circuit's analysis saves plaintiff from a *per se* rejection of his position on estoppel grounds, but it still leaves him with the evidentiary problem of having made material factual statements as to his total disability and having acted in accordance. In other words, the problem is not that his positions are logically inconsistent, <u>it is that he so consistently acted in accordance with being totally disabled.</u> 

Based on the analysis presented above, the Court does not find that plaintiff has presented any genuine issue of material *1136 fact as to whether he was otherwise qualified with respect to his knee injury, nor with respect to his aggregate of injuries following the knee incident.

Nevertheless, for the purpose of providing a complete analysis, the Court will address plaintiff's discrimination and accommodation claims. As discussed below, even in the event that plaintiff were to be considered otherwise qualified, there are no genuine issues of material fact as to whether plaintiff suffered discrimination or a failure to accommodate disability.

**B. Plaintiff's Discrimination Claim**

[4] Plaintiff claims that his termination was discriminatory because it was based on his disability. However, Sprint has presented documents and testimony showing that the reduction in force (RIF) was a legitimate business decision. Plaintiff in fact conceded at oral argument that the company made "drastic lay-offs" in the Broadband group. Plaintiff was on disability leave at the time of the lay-off, but this does not immunize him from termination. The evidence shows that *all* employees in his work group were terminated, and that he was treated no worse than anyone else. Plaintiff simply has no evidence to create a material dispute as to the issue of causation. *See Martin v. Lockheed Missiles & Space Co.,* 29 Cal.App.4th 1718, 1733, 35 Cal.Rptr.2d 181 (1994).

[5] Plaintiff also claims that he should have been offered an alternative position. He applied for various managerial positions and was denied even an interview for all of them. However, Sprint has presented uncontradicted testimony and evidence that the decision-makers for each of these openings had no knowledge of plaintiff's disabilities, and therefore could not have based their decisions on his

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

disabilities. Again, plaintiff simply has no evidence to create a material dispute as to the issue of causation.

## C. Plaintiff's Claim for Failure to Accommodate Disability

[6][7] Plaintiff asserts that defendant failed to accommodate his disability in a number of ways. First, with respect to his pancreatic disability, he claims that Mr. Grismore should have continued the practice of plaintiff's previous managers by allowing plaintiff time to rest. However, the evidence does not indicate a failure to provide such accommodations. When Mr. Grismore first became plaintiff's supervisor, plaintiff told him about his pancreas condition and need for accommodations, and Mr. Grismore "said that would be fine with him." Potter Dec., Exh. A (Swonke Depo. 52:6). In fact, plaintiff continued to take rest breaks just as he had done when working for his previous supervisors. *Id.* (Swonke Depo. 62:22-25) Plaintiff himself was a manager, and his own testimony indicates that he took time off during the day when he needed to, and then made up the time on his own schedule. The following month, Mr. Grismore asked plaintiff to work at a trade show over the coming weekend, and plaintiff requested the weekend off because he felt it would be too physically taxing to work a seven-day week given his condition. Mr. Grismore then asked for documentation of the disability, which, as discussed above, plaintiff never successfully presented. *See Allen v. Pacific Bell,* 348 F.3d 1113, 1115 (9th Cir.2003) (plaintiff's failure to submit medical evidence obviated employer's obligation to engage further in interactive process regarding accommodation). [FN2] Plaintiff ended up working the trade show, apparently without problems. Thus, the *1137 undisputed evidence shows that the only actual accommodation plaintiff was allegedly denied was time off for a single weekend, which he ended up working successfully. As a matter of law, this does not rise to the level of an adverse action. *See Akers v. County of San Diego,* 95 Cal.App.4th 1441, 1455, 116 Cal.Rptr.2d 602 (2002) (adverse action under FEHA refers to conduct resulting in a "substantial" or "material" effect on the terms and conditions of plaintiff's employment; a change that is "merely contrary to the employee's interests or not to the employee's liking is insufficient").

> FN2. Decisions interpreting the ADA "may be useful in deciding cases under the FEHA." *Spitzer v. The Good Guys,* 80 Cal.App.4th 1376, 1384, 96 Cal.Rptr.2d 236

(2000) (citation omitted); *Allen,* 348 F.3d at 1114 n. 1.

Plaintiff also fails to provide any authority indicating that Mr. Grismore was not entitled to ask for the documentation. Furthermore, plaintiff's effort to blame Sprint for failing to provide him with his worker's compensation records does not withstand scrutiny. When asked at oral argument why plaintiff did not simply provide his own documentation of the pancreatic disability, plaintiff's counsel confirmed that plaintiff did possess his own documentation, but counsel inexplicably insisted that plaintiff was justified in waiting for Sprint to supply its own paperwork.

In conclusion, the Court finds no genuine dispute of material fact as to whether defendant reasonably accommodated plaintiff's pancreatic disability.

[8] Second, with respect to the knee injury, plaintiff claims that after sustaining the injury he would have been able to work with a modified schedule, rest breaks, and the ability to work from home. As discussed above, this is inconsistent with his submission of repeated doctor's notes excusing him entirely from work, and from his claim of total disability for long-term disability benefits. Since plaintiff himself consistently indicated to his employer that he was incapacitated from working, it is hardly Sprint's responsibility for failing to offer accommodations.

The FEHA incorporates the EEOC's interpretative guidance to the ADA on the issue of reasonable accommodation. Cal. Gov't Code § 12941.6(e). The EEOC provides that

> [t]o determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(*o*)(3). The interactive process is triggered either by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation.

[9][10] Plaintiff blames Sprint for failing to engage in the interactive process with him. However, on the facts of this case, there was nothing the employer could do until it received notice that plaintiff would

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

327 F.Supp.2d 1128
327 F.Supp.2d 1128
(Cite as: 327 F.Supp.2d 1128)

Page 8

be released to work with or without restrictions. Given the series of medical providers' notes that plaintiff presented to the company, as discussed above, there were no accommodations that could have possibly been consistent with the medical opinion that he was totally disabled from any employment. The Court cannot impose upon the employer an obligation to engage in a process that was guaranteed to be futile.

[11] Plaintiff's argument that he should have been given another managerial job, discussed above as a discrimination claim, also can be read as a claim for failure to accommodate. As the court held in *Spitzer,* 80 Cal.App.4th at 1389, 96 Cal.Rptr.2d 236:

> The responsibility to reassign a disabled employee who cannot be otherwise accommodated does "not require creating a new job, moving another employee, *1138 promoting the disabled employee, or violating another employee's rights under a collective bargaining agreement" (citation omitted) but it nevertheless does entail affirmative action... "[A]n employer has a *duty* to reassign a disabled employee if an already funded, vacant position at the same level exists." (citation omitted) (emphasis in original).

While the Court fully recognizes the obligation imposed upon employers, on the facts of this case there simply could not have been a job that plaintiff could have been assigned to, given the opinion of his medical providers. The employer cannot be required to find a job for an employee when no such position could be created even hypothetically.

[12] Plaintiff's other accommodation claims border on the frivolous. He asserts that he was harassed and that he was "negatively portrayed" to others, but the undisputed evidence shows that these claims are based on his own over-reaction to defendant's unremarkable actions. For example, when his managers told him to stay home and recuperate, he took it as an order to stop all work as part of a plan to prevent him from returning to the company. Plaintiff also contends that he was "relieved of management responsibilities" and was "denied the opportunity to generate income." Pl.'s Opp. at 15. He does not explain these purported adverse actions, and does not provide any evidentiary proof. Further, the evidence suggests that plaintiff was paid in full until well after the RIF, and plaintiff has submitted no evidence whatsoever indicating any income loss. Not only are these alleged failures to accommodate unsupported by the record, they also fail as a matter of law to rise to the level of legally cognizable adverse actions. See *Akers,* 95 Cal.App.4th at 1455, 116 Cal.Rptr.2d 602.

### D. Plaintiff's Claim for Punitive Damages

[13] Given the rulings above, plaintiff's failure to present a genuine issue of material fact as to liability prevents him from proceeding to the issue of punitive damages. Nonetheless, the Court notes that plaintiff has the burden of showing by "clear and convincing evidence" that an officer, director, or "managing agent" of Sprint acted with "malice, oppression, or fraud." Cal. Civ.Code § 3294. Even if plaintiff had presented enough evidence to defeat summary judgment on his discrimination or accommodation claim, he has not addressed whether the decision-makers at Sprint were managing agents. Plaintiff's counsel addressed this issue only when prompted by the Court's question at oral argument, even though it was squarely raised in defendant's opening brief. While it is certainly conceivable that Mr. Grismore and perhaps other managers involved in the actions relevant to this case were managing agents, plaintiff still failed to present the Court with a single piece of evidence (such as an organizational chart or deposition testimony) to show the existence of an actual material fact to this effect.

Furthermore, the sum total of the evidence plaintiff presents as supporting a punitive damages award-- Mr. Grismore's suggestion (which was not followed) that plaintiff be reprimanded for reporting his knee injury six days after the fact, Mr. Grismore's alleged skepticism about the seriousness of the knee injury, and his request for documentation of the pancreatic injury prior to the trade show (Pl.'s Opp. at 24)--fails as a matter of law even to approach the threshold of malice, oppression, or fraud. [FN3]

> FN3. In the Reply brief, defendant filed a number of objections to plaintiff's evidence. The objections are overruled.

### *1139 CONCLUSION

For the reasons discussed above, and with GOOD CAUSE APPEARING, the Court hereby ORDERS that defendant's Motion for Summary Judgment is GRANTED.

**SO ORDERED.**

327 F.Supp.2d 1128

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT – C

Westlaw.

92 F.3d 560                                                                                    Page 1
92 F.3d 560, 44 Fed. R. Evid. Serv. 1215, 5 A.D. Cases 1283, 18 A.D.D. 286, 8 NDLR P 249
**(Cite as: 92 F.3d 560)**

C

United States Court of Appeals,
Seventh Circuit.
Peter H. BOMBARD, Plaintiff-Appellant,
v.
FORT WAYNE NEWSPAPERS,
INCORPORATED, Defendant-Appellee.
No. 95-2918.

Argued Feb. 15, 1996.
Decided Aug. 12, 1996.

Employee sued his former employer for unlawfully failing to accommodate his mental disability and terminating him for that disability in violation of the Americans with Disabilities Act (ADA). The United States District Court for the Northern District of Indiana, William C. Lee, J., granted summary judgment in favor of employer. Employee appealed. The Court of Appeals, Kanne, Circuit Judge, held that employee's failure to show his ability to perform essential functions of his job was fatal to his claims.

Affirmed.

West Headnotes

**[1] Federal Courts** ⟶776
170Bk776 Most Cited Cases
In reviewing district court's grant of summary judgment, Court of Appeals assesses record de novo and reaches its own conclusions regarding law and fact; court will not resolve factual disputes or weigh conflicting evidence and will only determine whether genuine issue of material fact exists for trial. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[2] Federal Civil Procedure** ⟶2470
170Ak2470 Most Cited Cases
Genuine issue of material fact exists for trial, and thus summary judgment is precluded, where there is sufficient evidence favoring nonmoving party for jury to return verdict for that party. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[3] Federal Courts** ⟶802
170Bk802 Most Cited Cases
In reaching conclusion as to presence of genuine issue of material fact, Court of Appeals must view evidence and draw all inferences in way most favorable to nonmoving party. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[4] Federal Civil Procedure** ⟶2470.4
170Ak2470.4 Most Cited Cases
Where there is no genuine issue of material fact, sole question on motion for summary judgment is whether moving party is entitled to judgment as matter of law. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[5] Federal Civil Procedure** ⟶2466
170Ak2466 Most Cited Cases
If nonmoving party fails to establish existence of element essential to his case, one on which he would bear burden of proof at trial, summary judgment must be granted to moving party. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[6] Federal Courts** ⟶766
170Bk766 Most Cited Cases
It is not Court of Appeals' function to scour record in search of evidence to defeat motion for summary judgment; court relies on nonmoving party to identify with reasonable particularity evidence upon which he relies. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[7] Federal Civil Procedure** ⟶2545
170Ak2545 Most Cited Cases
Evidence relied upon in opposing summary judgment must be competent evidence of type otherwise admissible at trial; party may not rely upon inadmissible hearsay in affidavit or deposition. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[8] Federal Courts** ⟶762
170Bk762 Most Cited Cases
Court of Appeals may affirm district court's grant of summary judgment on ground other than that relied upon by district court below, so long as alternative basis finds adequate support in record. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[9] Civil Rights** ⟶1225(4)
78k1225(4) Most Cited Cases
(Formerly 78k173.1)
Before employer may be liable under ADA for failing to provide employee with reasonable accommodation, employer must be aware of employee's disability. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

92 F.3d 560                                                                                                    Page 2
92 F.3d 560, 44 Fed. R. Evid. Serv. 1215, 5 A.D. Cases 1283, 18 A.D.D. 286, 8 NDLR P 249
**(Cite as: 92 F.3d 560)**

[10] Civil Rights ⏖1225(4)
78k1225(4) Most Cited Cases
        (Formerly 78k173.1)
Once employer's responsibility to provide reasonable accommodation is triggered pursuant to ADA, employer must engage with employee in interactive process to determine appropriate accommodation under the circumstances. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; 29 C.F.R. Pt. 1630, App., § 1630.9.

[11] Civil Rights ⏖1401
78k1401 Most Cited Cases
        (Formerly 78k240(1))
Plaintiff bears burden of proving that he is "qualified individual with a disability" in order to successfully prosecute ADA claim. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; 29 C.F.R. Pt. 1630, App., § 1630.2(m).

[12] Evidence ⏖128
157k128 Most Cited Cases
Statements by person providing medical attention to patient are not within exception to hearsay rules for statements made by person seeking medical attention to person providing that attention. Fed.Rules Evid.Rule 803(4), 28 U.S.C.A.

[13] Civil Rights ⏖1218(4)
78k1218(4) Most Cited Cases
        (Formerly 78k173.1)
Employee's failure to show he was able to perform essential functions of his job with reasonable accommodation was fatal to his ADA claims. Americans with Disabilities Act of 1990, § 101(9), 42 U.S.C.A. § 12111(9); 29 C.F.R. Pt. 1630, App., § 1630.2(m).
**\*561** Christopher C. Myers (argued), Myers & Geisleman, Fort Wayne, IN, for plaintiff-appellant.

John R. Burns, III, Steven L. Jackson (argued), Debra L. Schroeder, Baker & Daniels, Fort Wayne, IN, for defendant-appellee.

Before KANNE, ROVNER, and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

Peter Bombard filed a complaint under the Americans with Disabilities Act against his former employer, Fort Wayne Newspapers, Inc., ("FWN") alleging that FWN unlawfully failed to provide him with reasonable accommodation for his mental disability and then unlawfully discriminated against him by terminating him because of that disability. The district court granted summary judgment in favor of FWN. We affirm on the ground that Bombard failed to adduce sufficient evidence to make the necessary showing that he was a "qualified individual with a disability."

I

Peter H. Bombard began working for FWN in May 1986, and during the time relevant to this lawsuit Bombard served FWN as an inside sales representative. In the year prior to March 1994, Bombard began suffering from various illnesses, including severe depression with psychotic features. As a result of his depression, Bombard requested and received a short-term disability leave for several weeks, and he was scheduled to return to work on March 23, 1994.

One week prior to his scheduled return, Bombard knew that he would be unable to come back to work on March 23. On the morning of March 23, Bombard experienced a suicidal episode and was physically and emotionally unable to call his supervisor at FWN to inform her that he would not be returning to work as scheduled.

Bombard's first communication with FWN following his scheduled return date was his phone call to Charles Cammack, an employee in FWN's personnel department, on March 25. Bombard told Cammack that his doctor had released him to work part-time. Cammack responded, "We have already made our decision. And you will be getting a letter." Cammack called Bombard back ten minutes later and told him that FWN had decided to terminate him. Bombard subsequently received a termination letter signed by his supervisor, Greta Lesh, explaining that the reason for his termination was his failure to notify his manager that he would be absent from work. [FN1] Bombard had previously received **\*562** a written warning on February 9, 1994, for failing to notify his manager that he would not report to work on February 1 and 2. That letter had warned: "Any future infractions of this nature will result in more severe disciplinary action, up to and including termination."

> FN1. It is interesting to note that the record contains two substantially identical termination letters, one dated March 24 and the other dated March 25. In his deposition, Bombard identified the March 24 letter as the letter he received. Neither party

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

92 F.3d 560                                                                                                Page 3
92 F.3d 560, 44 Fed. R. Evid. Serv. 1215, 5 A.D. Cases 1283, 18 A.D.D. 286, 8 NDLR P 249
(Cite as: 92 F.3d 560)

proffered an explanation for the existence of the March 25 letter.

On October 5, 1994, Bombard filed a complaint against FWN alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. [FN2] His complaint included two legally distinct, although temporally related, claims under the ADA. The first claim was that FWN failed to provide him with reasonable accommodation, as required by 42 U.S.C. § 12112(b)(5), by not allowing him to return to work part-time. The second claim was that FWN's decision to discharge Bombard was premised upon the fact that he suffered from a disability, in violation of § 12112(b)(1).

> FN2. Bombard's complaint also alleged that FWN violated the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., and Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. Bombard abandoned his FMLA claim after failing to respond to the FMLA arguments in FWN's motion for summary judgment. Bombard subsequently abandoned his Title VII claim when, after the district court granted FWN summary judgment on the ADA and Title VII claims, Bombard only appealed the summary judgment on his ADA claims.

The district court granted summary judgment on the first claim on the ground that Fort Wayne Newspapers did not breach its obligation to provide Bombard a reasonable accommodation because Bombard did not request an accommodation until after he had been terminated by FWN. The district court granted summary judgment on the second claim on the ground that Bombard had failed to produce sufficient evidence to show that FWN's nondiscriminatory reason for terminating him--his failure to notify his manager that he would be absent--was a pretext. Bombard appeals the summary judgment with regard to both claims.

II

[1][2][3] In reviewing a district court's grant of summary judgment, we assess the record *de novo* and reach our own conclusions regarding law and fact. *Thiele v. Norfolk & Western Ry. Co.*, 68 F.3d 179, 181 (7th Cir.1995). We will not resolve factual disputes or weigh conflicting evidence. We will only determine whether a genuine issue of material fact exists for trial, which is the case where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In reaching a conclusion as to the presence of a genuine issue of material fact, we must view the evidence and draw all inferences in a way most favorable to the nonmoving party. *Tolentino v. Friedman*, 46 F.3d 645, 649 (7th Cir.), cert. denied, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995).

[4][5][6][7] Where there is no genuine issue of material fact, the sole question is whether the moving party is entitled to judgment as a matter of law. If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party. *Richards v. Combined Ins. Co. of America*, 55 F.3d 247, 251 (7th Cir.1995). It is not our function to scour the record in search of evidence to defeat a motion for summary judgment; we rely on the nonmoving party to identify with reasonable particularity the evidence upon which he relies. *Id.* The evidence relied upon must be competent evidence of a type otherwise admissible at trial. Thus, a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment. *Wigod v. Chicago Mercantile Exch.*, 981 F.2d 1510, 1518-19 (7th Cir.1992); see also Fed. R. Civ. P. 56(e).

[8] In deciding an appeal, we may affirm the district court's grant of summary judgment on a ground other than that relied upon by the district court below, so long as the alternative basis finds adequate support in the record. *Meredith v. Allsteel, Inc.*, 11 F.3d 1354, 1358 (7th Cir.1993).

*563 III

[9][10] The pertinent part of the ADA provides:
No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
42 U.S.C. § 12112(a). The same section defines discrimination, in part, as
(5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

92 F.3d 560                                                                                                Page 4
92 F.3d 560, 44 Fed. R. Evid. Serv. 1215, 5 A.D. Cases 1283, 18 A.D.D. 286, 8 NDLR P 249
(Cite as: 92 F.3d 560)

(B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

42 U.S.C. § 12112(b)(5)(A)-(B). Reasonable accommodation may include such things as job restructuring and part-time or modified work schedules. 42 U.S.C. § 12111(9)(B). Before an employer may be liable for failing to provide an employee with reasonable accommodation, the employer must be aware of the employee's disability. *Beck v. University of Wisconsin Bd. of Regents,* 75 F.3d 1130, 1134-35 (7th Cir.1996); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 934 (7th Cir.1995). Once an employer's responsibility to provide reasonable accommodation is triggered, the employer must engage with the employee in an "interactive process" to determine the appropriate accommodation under the circumstances. *Beck,* 75 F.3d at 1135; *see also* 29 C.F.R. app., § 1630.9. However, we need not consider whether Bombard adduced sufficient evidence that FWN failed to provide reasonable accommodation or discharged him because of his disability. We find merit in FWN's argument raised both below and on appeal that Bombard failed to make the predicate showing that he was a "qualified individual with a disability."

The ADA proscribes discrimination against only "qualified individual[s] with a disability." 42 U.S.C. § 12112(a); *see also* 29 C.F.R. § 1630.4; 29 C.F.R. app. § 1630.9. Unlawful discrimination under the ADA includes both discriminatory discharge and the failure to provide reasonable accommodation. 42 U.S.C. § 12112(a), (b)(5)(A). In order to protest such activity, the plaintiff must meet the definition of a "qualified individual with a disability."

[11] A "qualified individual with a disability" is defined, in relevant part, as: "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(9). Whether someone meets the definition of a "qualified individual with a disability" involves a two-step determination. 29 C.F.R. app. § 1630.2(m). First, we consider whether "the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." *Id.* If he does, then we must consider "whether or not the individual can perform the essential functions of the position held or

desired, with or without reasonable accommodation." *Id.* The determination as to whether an individual is a "qualified individual with a disability" must be made as of the time of the employment decision. *Id.* The plaintiff bears the burden of proof on this issue; he must be able to show that he is a "qualified individual with a disability" in order to successfully prosecute an ADA claim. *See DeLuca v. Winer Indus., Inc.,* 53 F.3d 793, 797 (7th Cir.1995).

FWN does not dispute that Bombard met the first step, i.e., that he had the requisite experience, skill, and education to perform as an inside sales representative. Nor does Bombard dispute that he could not have performed the essential functions of his job without reasonable accommodation. The dispute concerns whether Bombard put forth **\*564** sufficient evidence that he could perform the essential functions of his job with reasonable accommodation.

The only evidence Bombard offers in support of the fact that he is a "qualified individual with a disability" is his testimony in his deposition, repeated later in his affidavit: "I could have been put on part-time. In fact, on March 25, when I went to the doctor, before I knew I was terminated, that [sic] she said, 'Well, why don't we try and work just part time, half the day and gradually ease into it.' " Bombard properly acknowledges in his reply brief that his testimony regarding the doctor's statement is hearsay. Reply Br. at 9. Nevertheless, he argues that his relation of the doctor's statement is competent evidence that he was a "qualified individual" because the statement would otherwise be admissible under Fed. R. Evid. 803(4).

[12] Rule 803(4) excepts the following from the realm of inadmissible hearsay:

Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Fed. R. Evid. 803(4). The Rule excepts statements made by a person seeking medical attention to the person providing that attention. Rule 803(4) does not purport to except, nor can it reasonably be interpreted as excepting, statements by the person providing the medical attention to the person seeking attention. *See Gong v. Hirsch,* 913 F.2d 1269, 1273-74 & n. 5 (7th Cir.1990) (detailing the limited scope of Rule 803(4)). Bombard's testimony regarding his doctor's statement, submitted for the purpose of establishing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

92 F.3d 560                                                                                    Page 5
92 F.3d 560, 44 Fed. R. Evid. Serv. 1215, 5 A.D. Cases 1283, 18 A.D.D. 286, 8 NDLR P 249
(Cite as: 92 F.3d 560)

his ability to perform the essential functions of his job with accommodation, is therefore inadmissible and incompetent evidence to oppose summary judgment. *See Wigod, 981 F.2d at 1519.*

[13] After removing from consideration the statement of Bombard's doctor, it is clear that Bombard has failed to produce sufficient evidence to establish a genuine issue of material fact as to his ability to perform the essential functions of his job with reasonable accommodation. That conclusion is confirmed by Bombard's deposition testimony where he states that he was "unable to work" beginning on January 31, 1994, and continuing at least through the date of the deposition, January 20, 1995.

Because Bombard has failed to adduce sufficient evidence to show that he was a "qualified individual with a disability," he was not entitled to the reasonable accommodation he requested, nor was he protected from being discharged because of his disability. The judgment of the district court is AFFIRMED.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.