# EXHIBIT – D

Westlaw.

864 F.Supp. 991 Page 1
864 F.Supp. 991, 3 A.D. Cases 1141, 6 A.D.D. 1223, 5 NDLR P 346
(Cite as: 864 F.Supp. 991)

▷

United States District Court,
D. Oregon.
Stanley N. SCHMIDT, Plaintiff,
v.
SAFEWAY INC., a Delaware corporation,
Defendant.
No. CV 93-1322-PA.

June 9, 1994.

Terminated truck driver sued former employer, claiming that he was terminated and denied reasonable accommodation in violation of the Americans with Disabilities Act and its counterpart under Oregon law. The District Court, Panner, J., held that: (1) after-acquired evidence of misstatement on application could not be used to support termination decision; (2) claims were not barred by former driver's failure to arbitrate them at grievance hearing held pursuant to collective bargaining agreement (CBA); and (3) genuine issue of material fact remained regarding whether employer discharged driver in accordance with company policy governing use of alcohol by drivers that was consistently applied in nondiscriminatory manner.

Ordered accordingly.

West Headnotes

[1] Federal Civil Procedure ⚷2497.1
170Ak2497.1 Most Cited Cases
Evidence of employee's failure to disclose conviction for contributing to delinquency of minor on his employment application which was discovered after the employee's termination did not entitle employer to summary judgment in disability discrimination action; issue to be resolved in discrimination action was whether decision, when it occurred, was then actually motivated by illegal discrimination, and not whether employer could thereafter articulate some hypothetical nondiscriminatory reason for its decision. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; ORS 659.425.

[2] Civil Rights ⚷1529
78k1529 Most Cited Cases
(Formerly 78k372)
There may be some circumstances in which evidence of misconduct which was discovered after an employee's termination can be used to limit employee's remedy in discrimination action.

[3] Alternative Dispute Resolution ⚷121
25Tk121 Most Cited Cases
(Formerly 33k3.3 Arbitration)
Statutory claims may be subject of arbitration agreement, enforceable pursuant to Federal Arbitration Act. 9 U.S.C.A. § 1 et seq.

[4] Civil Rights ⚷1514
78k1514 Most Cited Cases
(Formerly 78k362.1)
Disability discrimination plaintiff's claims against his former employer were not barred by his failure to assert ADA claim at grievance hearing held pursuant to collective bargaining agreement (CBA); labor arbitrator had authority only to resolve questions of contractual rights, and could not grant relief for violations of civil rights laws. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; ORS 659.425.

[5] Civil Rights ⚷1573
78k1573 Most Cited Cases
(Formerly 78k402)
Employer can toll accrual of back pay liability in employment discrimination action by unconditionally offering claimant his job back, thereby providing claimant with opportunity to minimize his damages, but offer cannot be conditioned upon plaintiff's waiver of his claim for back pay.

[6] Civil Rights ⚷1542
78k1542 Most Cited Cases
(Formerly 78k381)
Testimony and evidence regarding posttermination settlement offers was inadmissible, in disability discrimination action, as offers were not unconditional, but rather, proposal to allow employee to pursue his claim for back pay would have been construed as counteroffer. Fed.Rules Evid.Rule 408, 28 U.S.C.A.; Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; ORS 659.425.

[7] Civil Rights ⚷1226
78k1226 Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

864 F.Supp. 991                                                                                                              Page 2
864 F.Supp. 991, 3 A.D. Cases 1141, 6 A.D.D. 1223, 5 NDLR P 346
(Cite as: 864 F.Supp. 991)

(Formerly 78k174)
Under ADA and Oregon law, employer may be required to provide leave of absence to employee with alcohol problem, particularly if employer would provide that accommodation to employee with cancer or some other illness requiring medical treatment. Americans with Disabilities Act of 1990, § 101(8), 42 U.S.C.A. § 12111(8); ORS 659.425.

[8] Civil Rights 1022
78k1022 Most Cited Cases
        (Formerly 78k174)
Alcoholism is "disability" covered by ADA. Americans with Disabilities Act of 1990, § 101(8), 42 U.S.C.A. § 12111(8); 29 C.F.R. Part 1630 App., § 1630.16(b).

[9] Civil Rights 1022
78k1022 Most Cited Cases
        (Formerly 78k174)
Under Oregon law, alcoholism is "physical or mental impairment" within meaning of civil rights statutes. ORS 659.425(1)(a).

[10] Civil Rights 1226
78k1226 Most Cited Cases
        (Formerly 78k174)
Under ADA, employer is not required to pay for rehabilitation program for alcoholic employees, as treatment benefits employees both on and off the job, and not just in capacity as employee. 29 C.F.R. Part 1630 App., § 1630.9.

[11] Civil Rights 1226
78k1226 Most Cited Cases
        (Formerly 78k174)
Under ADA and Oregon law, leave of absence for employee to obtain medical treatment for alcoholism would have been reasonable accommodation, if it was likely that, following treatment, employee would have been able to safely perform his duties as truck driver. Americans with Disabilities Act of 1990, § 101(9), 42 U.S.C.A. § 12111(9); 29 C.F.R. § 1630.2(o); 29 C.F.R. Part 1630 App., § 1630.2(o); Or. Admin. R. 839-06-245.

[12] Civil Rights 1225(2)
78k1225(2) Most Cited Cases
        (Formerly 78k173.1)
Under ADA and Oregon law, employer is not required to offer employee with disability accommodation that is likely to be futile. Americans with Disabilities Act of 1990, § 101(9), 42 U.S.C.A. § 12111(9); 29 C.F.R. § 1630.2(o); 29 C.F.R. Part 1630 App., § 1630.2(o); Or. Admin. R. 839-06-245.

[13] Civil Rights 1555
78k1555 Most Cited Cases
        (Formerly 78k389)
Ordinarily, reasonableness of accommodation is issue for jury in disability discrimination action. Americans with Disabilities Act of 1990, § 101(9), 42 U.S.C.A. § 12111(9); 29 C.F.R. § 1630.2(o); 29 C.F.R. Part 1630 App., § 1630.2(o); Or. Admin. R. 839-06-245.

[14] Civil Rights 1226
78k1226 Most Cited Cases
        (Formerly 78k174)
Under ADA and Oregon law, provision of leave of absence to employee in which to obtain treatment for alcoholism would not have imposed undue hardship on employer; employer offered no evidence of economic impact or disruption of operations, and argument that granting leave of absence would have undermined its substance abuse deterrence program was not sort of hardship envisioned by statutes. Americans with Disabilities Act of 1990, § 102(b)(5)(A), 42 U.S.C.A. § 12112(b)(5)(A); Or. Admin. R. 839-06-245.

[15] Civil Rights 1018
78k1018 Most Cited Cases
        (Formerly 78k173.1)
ADA does not require plaintiff to speak any magic words before he is subject to its protections. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

[16] Civil Rights 1225(1)
78k1225(1) Most Cited Cases
        (Formerly 78k173.1)
Under ADA and Oregon law, employer has no duty to accommodate employee who denies she has disability or denies need for accommodation. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; 29 C.F.R. Part 1630 App., § 1630.9; ORS 659.425.

[17] Civil Rights 1225(4)
78k1225(4) Most Cited Cases
        (Formerly 78k173.1)
Employer knows employee has disability, so as to invoke obligation to reasonably accommodate, when employee tells employer about condition or when employer otherwise becomes aware of condition, such as through third party or by observation.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

864 F.Supp. 991                                                                                                          Page 3
864 F.Supp. 991, 3 A.D. Cases 1141, 6 A.D.D. 1223, 5 NDLR P 346
**(Cite as: 864 F.Supp. 991)**

Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; 29 C.F.R. Part 1630 App., § 1630.9; ORS 659.425.

**[18] Civil Rights** 🗝️1225(4)
78k1225(4) Most Cited Cases
    (Formerly 78k173.1)
Employer need only know underlying facts, and need not know legal significance of those facts, in order to know employee has disability so as to trigger duty of reasonable accommodation. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; 29 C.F.R. Part 1630 App., § 1630.9; ORS 659.425.

**[19] Civil Rights** 🗝️1218(4)
78k1218(4) Most Cited Cases
    (Formerly 78k173.1)
Truck driver was qualified individual with disability entitled to protection under ADA at time of his termination, where he was initially qualified to drive truck, and employer's medical review officer (MRO) opined that with accommodation he would have continued to be qualified. Americans with Disabilities Act of 1990, § 101(8), 42 U.S.C.A. § 12111(8).

**[20] Civil Rights** 🗝️1218(4)
78k1218(4) Most Cited Cases
    (Formerly 78k173.1)
Under Oregon law, employer cannot terminate existing employee who was initially qualified for position but subsequently developed disqualifying condition that could be controlled with reasonable accommodation; rather, employer must first give employee reasonable opportunity to obtain treatment for condition. 49 C.F.R. § 391.41(b); Or. Admin. R. 839-06-255.

**[21] Civil Rights** 🗝️1226
78k1226 Most Cited Cases
    (Formerly 78k174)
Under ADA and Oregon law, termination of truck driver who suffered from alcoholism was not justified by threat to public safety, where employer's medical review officer (MRO) believed that driver would be able to safely drive truck once he completed rehabilitation program. Americans with Disabilities Act of 1990, §§ 101(3), 103(c)(2), 42 U.S.C.A. §§ 12111(3), 12113(c)(2); Or. Admin. R. 839-06-230.

**[22] Civil Rights** 🗝️1218(4)
78k1218(4) Most Cited Cases
    (Formerly 78k173.1)
Employer cannot justify decision to terminate employee with disability based on threat to public safety, with information not available to it at the time decision was made. Americans with Disabilities Act of 1990, § 103(c)(2), 42 U.S.C.A. § 12113(c)(2); Or. Admin. R. 839-06-230.

**[23] Automobiles** 🗝️116
48Ak116 Most Cited Cases
Under Department of Transportation (DOT) regulations, truck driver was not subject to termination based upon detected presence of alcohol. Americans with Disabilities Act of 1990, § 104(e)(2), 42 U.S.C.A. § 12114(e)(2); 29 C.F.R. § 1630.16(c)(2); 49 C.F.R. §§ 383.5, 392.5(a)(1, 2), (b, c).

**[24] Civil Rights** 🗝️1226
78k1226 Most Cited Cases
    (Formerly 78k174)
Under Oregon law, truck driver who was terminated after alcohol was detected in his blood while he was on duty did not retroactively lose any claim he might have had for his wrongful termination by failing to attend regular meetings of alcohol rehabilitation group, but rather, that failure would at most affect his remedy. Or. Admin. R. 839-06-240.

**[25] Civil Rights** 🗝️1226
78k1226 Most Cited Cases
    (Formerly 78k174)
If employer discharged employee in accordance with company policy governing use of alcohol by truck drivers that was consistently applied to similarly situated employees in nondiscriminatory manner, employer was not liable under ADA. Americans with Disabilities Act of 1990, § 104(c)(2, 4), 42 U.S.C.A. § 12114(c)(2, 4).

**[26] Civil Rights** 🗝️1728
78k1728 Most Cited Cases
    (Formerly 78k174)
Under Oregon law, employer's policy of providing treatment for truck drivers who self-report alcohol problems but automatically terminating any driver who was caught violating employer's rules governing alcohol use was valid affirmative defense to charge of disability discrimination, where policy was consistently applied in nondiscriminatory manner to persons employed in positions in which safety was vital concern. ORS 659.425.

**[27] Civil Rights** 🗝️1504
78k1504 Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(Formerly 78k173.1)
To extent that there is any inconsistency between technical assistance manual (TAM) promulgated by Equal Employment Opportunity Commission (EEOC) pursuant to ADA and text of ADA itself, such inconsistency must be resolved in favor of ADA, as TAM was merely attempt to simplify and summarize applicable law. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

[28] Civil Rights 1542
78k1542 Most Cited Cases
(Formerly 78k241)
Technical Assistance Manual (TAM) promulgated by Equal Employment Opportunity Commission (EEOC) pursuant to ADA would have been relevant, in disability discrimination action, to show employer's state of mind, namely, that it believed it was following the law. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

[29] Civil Rights 1217
78k1217 Most Cited Cases
(Formerly 78k173.1)
Terminating employee because of symptom of disability is tantamount to terminating him because of disability, for purposes of disability discrimination claim. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

*994 Stephen L. Brischetto, Portland, OR, for plaintiff.

Lisa C. Brown, McEwen, Gisvold, Rankin, Carter & Streinz, Portland, OR, for defendant.

## OPINION

PANNER, District Judge.

Plaintiff Stanley Schmidt brings this action against defendant Safeway, Inc., alleging he was terminated from employment and denied reasonable accommodation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and its Oregon counterpart, ORS 659.425. Though the parties have briefed numerous legal and factual disputes, most are either not relevant to this case, or do not present a factual dispute for the jury. This opinion is intended to summarize and explain some of the pre-trial rulings I previously announced.

1. *After-Discovered Evidence of Misstatement on Application:*

[1] Defendant contends it is entitled to summary judgment because it has learned, through discovery, that when plaintiff applied for his job in 1970, he may have failed to disclose information about a 1956 conviction for contributing to the delinquency of a minor. Some circuits have held that after-discovered evidence of misconduct that would have justified termination had the employer known of the conduct earlier is a complete defense because the employee has suffered no legal injury. See, e.g., Summers v. State Farm Mut. Auto. Ins. Co., 864 F.2d 700 (10th Cir.1988); McKennon v. Nashville Banner Pub. Co., 9 F.3d 539 (6th Cir.1993), cert. granted, 511 U.S. 1106, 114 S.Ct. 2099, 128 L.Ed.2d 661 (1994).

The *Summers* rule permits the employer to justify an employment decision with facts that admittedly played no role in that decision. *Summers* is also inconsistent with section 107 of the Civil Rights Act of 1991, 105 Stat. 1075, which provides that the employee is a prevailing party for attorney's fees purposes so long as discrimination was a motivating factor in his termination, even if the employer would have taken the same action anyway for other reasons. The *Summers* rule is bad policy because it encourages an employer charged with discrimination to comb the background of the plaintiff to find any infirmities. That spawns a wave of collateral disputes which greatly complicate the litigation. Such investigations may also have a chilling effect upon an employee considering whether to file a discrimination claim.

The Ninth Circuit has never addressed this issue squarely, but I think it would reject the *Summers* rule. In a slightly different context in *Norris v. City and County of San Francisco,* 900 F.2d 1326, 1331 (9th Cir.1990), the Ninth Circuit held that information about the applicant that was unknown to the employer at the time the decision was made not to hire him could not have entered into the calculus of the decision and would be *995 entirely irrelevant. *Id.* at 1331. Such after-acquired data cannot explain the employer's decision not to hire this applicant. *Id.* The issue to be resolved is whether the decision, when it occurred, was then actually motivated by illegal discrimination, not whether the employer could thereafter articulate some hypothetical nondiscriminatory reason for its decision. *Id.*

[2] There may be circumstances where after-discovered evidence can be used to limit the employee's remedy. See, e.g., *Wallace v. Dunn Const. Co., Inc.,* 968 F.2d 1174 (11th Cir.1992). For

instance, if an employer discharged a doctor on account of his race, but later learns that the "doctor" never attended medical school, the employee would obviously not be entitled to reinstatement to his former position. In the present case, plaintiff was 18- years old when he was charged with contributing to the delinquency of a minor for having intercourse with a 17-year old girl in 1956. Plaintiff avers that when he interviewed with Safeway in 1970, he disclosed the conviction to the interviewer, who told him not to worry about it and not to bother mentioning it on his employment application.

I have no intention of conducting a mini-trial to determine what plaintiff told the interviewer in 1970, or whether failure to disclose this 1956 conviction on a job application in 1970 would result in the automatic termination of that employee in 1994. This 40-year old conviction has no bearing upon plaintiff's fitness to drive a truck. Defendant argues that omissions on a job application are always relevant because they reflect upon the applicant's honesty. Plaintiff was employed by Safeway for 22 years, during which time defendant had ample opportunity to observe defendant. If defendant had doubts about his honesty, it would have terminated plaintiff long ago. Accordingly, I grant partial summary judgment in favor of plaintiff on this affirmative defense. I also grant plaintiff's motion in limine precluding use of this evidence for impeachment.

2. *Failure to Arbitrate:*

[3][4] Defendant argues plaintiff's claims are barred because he failed to assert his ADA claim at the grievance hearing held pursuant to the collective bargaining agreement. I disagree. Statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the Federal Arbitration Act. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (securities broker bound by agreement to arbitrate any claims arising out of his employment or termination). However, *Gilmer* expressly distinguished a situation where the employee agrees to arbitrate disputes arising out of a collective bargaining agreement:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.

*Id.* at 34, 111 S.Ct. at 1656 (quoting *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). The Court also noted a labor arbitrator has authority only to resolve questions of contractual rights, and cannot grant relief for violations of civil rights laws. *Id.* I grant summary judgment for plaintiff on this affirmative defense.

3. *Post-Termination Settlement Offers:*

[5][6] Plaintiff moves pursuant to Rule 408 to exclude testimony regarding post-termination settlement offers, along with exhibits 117 through 119. Defendant counters with its own motion to limit wage loss to the time period before August 1, 1993, when Safeway allegedly offered to reinstate him. An employer can toll the accrual of back pay liability by unconditionally offering the claimant his job back, thereby providing the employee with an opportunity to minimize his damages. *Ford Motor Company v. EEOC,* 458 U.S. 219, 234, 102 S.Ct. 3057, 3066-67, 73 L.Ed.2d 721 (1982). However, the offer cannot be conditioned upon the plaintiff's waiver of his claim for back pay. *Id.* at 232 n. 18, 102 S.Ct. at 3066 n. 18. In this case, the *996 proposed agreement does not expressly condition reinstatement upon dismissal of the grievance, since there was no lawsuit yet. Nonetheless, the company official who made the offer testified at deposition that a proposal to allow plaintiff to continue to pursue his claim for back pay would have been construed as a counter-offer. Deposition of Alvin Carder at 69-70. A *Ford* offer was never discussed. Accordingly, I grant plaintiff's motion to exclude evidence of post-termination settlement offers, along with exhibits 117 through 119, and deny defendant's motion to limit wage loss to the time period before August 1, 1993.

4. *Reasonable Accommodation for an Alcohol Problem:*

[7][8][9] Defendant contends the ADA does not require it to offer a leave of absence to an employee with an alcohol problem so the employee can enter a rehabilitation program. That is an overstatement. The ADA protects a "qualified individual with a disability" from discrimination. That means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8). Alcoholism is a disability covered by the ADA. *Mackey v. Cleveland State University,* 837 F.Supp. 1396, 1411-12 (N.D.Ohio 1993); 29 C.F.R. Pt. 1630

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

864 F.Supp. 991        Page 6
864 F.Supp. 991, 3 A.D. Cases 1141, 6 A.D.D. 1223, 5 NDLR P 346
(Cite as: 864 F.Supp. 991)

App. (interpretive regulations, Section 1630.16(b)); EEOC Technical Assistance Manual § 8.4. *See also* Fuller v. Frank, 916 F.2d 558, 561 (9th Cir.1990) (alcoholism is a covered handicap under the Rehabilitation Act of 1973). Alcoholism is also a "physical or mental impairment" within the meaning of ORS 659.425(1)(a), the Oregon counterpart to the ADA. Braun v. American Int'l Health & Rehab. Serv., Inc., 315 Or. 460, 469, 846 P.2d 1151 (1993).

The term "reasonable accommodation" is an open-ended one. The statutes and regulations offer examples, but caution that the term is not limited to those examples. 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(*o* ); 29 C.F.R. Pt. 1630, App. (interpretive regulations, section 1630.2(*o* )); OAR 839-06-245. An employer may, "in appropriate circumstances, have to consider the provision of leave to an employee as a reasonable accommodation, unless the provision of leave would impose an undue hardship." 29 C.F.R. Pt. 1630, App. (EEOC interpretive regulations to Section 1630.15(b) and (c)). *See also* 29 C.F.R. Pt. 1630, App. (EEOC interpretive regulations to Section 1630.2(*o* )) (reasonable accommodation may include leave of absence to obtain medical treatment); Kimbro v. Atlantic Richfield Co., 889 F.2d 869, 878-79 (9th Cir.1989) (leave of absence is a "reasonable accommodation," construing Washington statute similar to ADA), *cert. denied*, 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990). Although the interpretive regulations were not specifically directed at alcohol problems, I conclude the ADA may require an employer to provide a leave of absence to an employee with an alcohol problem, particularly if the employer would provide that accommodation to an employee with cancer or some other illness requiring medical treatment. Likewise, the Oregon Supreme Court has implicitly recognized that a leave of absence may be a necessary accommodation pursuant to ORS 659.425 for an employee with an alcohol problem. *See* Braun, 315 Or. at 473 n. 17, 846 P.2d 1151.

[10] Defendant cites legislative history that says the ADA does not require an employer to provide a "rehabilitation program" for alcoholics. Defendant overlooks the critical distinction between providing a "rehabilitation program" and providing a "leave of absence" so the employee can pursue treatment at his own expense. The employer is not required to pay for the treatment itself, since the medical treatment benefits the employee both on and off the job, not just in his capacity as an employee. *Cf.* 29 C.F.R. Pt. 1630, App., (interpretive regulations, Section 1630.9) employer not required to provide employee with prosthetic limb, wheelchair, or eyeglasses). The issue here is not whether the employer must provide a rehabilitation program, but whether the employer must give the employee a leave of absence while the employee undergoes a treatment program.

[11][12] I conclude a leave of absence to obtain medical treatment is a reasonable accommodation *997 if it is likely that, following treatment, plaintiff would have been able to safely perform his duties as a truck driver. An employer is not required to offer an accommodation that is likely to be futile because, even with the accommodation, the employee could not safely and efficiently perform the essential functions of the job. Thus an employer would not be required to provide repeated leaves of absence (or perhaps even a single leave of absence) for an alcoholic employee with a poor prognosis for recovery. *See* Kimbro, 889 F.2d at 879 n. 10 (the fact that an accommodation has been attempted and was unsuccessful may prove dispositive in determining whether failure to permit subsequent leave constituted failure to make a reasonable accommodation; construing analogous Washington statute).

[13] Ordinarily, the reasonableness of an accommodation is an issue for the jury. In this case, defendant's own Medical Review Officer ("MRO") advised defendant that plaintiff "should be an excellent employee after he finishes treatment" and recommended "he be considered on medical leave until he completes treatment and then he can certainly return to his regular job." Plaintiff's Exhibit 8. Thus there is no factual dispute for the jury to resolve, and plaintiff is entitled to partial summary judgment on this issue as a matter of law. The employer may still have other defenses in a specific case. I will consider those separately.

5. *Undue Hardship:*

[14] Defendant argues it was not required to provide a leave of absence to plaintiff because that would have imposed an undue hardship on the company. Undue hardship is an affirmative defense to a failure to provide reasonable accommodation under both the ADA and its Oregon counterpart. 42 U.S.C. § 12112(b)(5)(A); OAR 839-06-245. However, defendant offers no evidence of any economic impact upon the company or disruption of its operations. Rather, defendant argues that granting a leave of absence to plaintiff in lieu of termination would undermine its substance abuse deterrence program. That is not the sort of hardship the statute envisions.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

864 F.Supp. 991                                                                                                           Page 7
864 F.Supp. 991, 3 A.D. Cases 1141, 6 A.D.D. 1223, 5 NDLR P 346
(Cite as: 864 F.Supp. 991)

The relationship between the ADA and an employer's alcohol and drug policies is addressed by other sections of the statute. Accordingly, I grant partial summary judgment for plaintiff on this defense.

6. *Demand for Accommodation:*

[15][16] Defendant contends it is entitled to summary judgment because plaintiff failed to affirmatively request an accommodation pursuant to the ADA. The statute does not require the plaintiff to speak any magic words before he is subject to its protections. The employee need not mention the ADA or even the term "accommodation." Of course, the employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge. 29 C.F.R. Pt. 1630, App. (interpretive regulations, Section 1630.9). An employer also has no duty to accommodate an employee who denies she has a disability or denies a need for accommodation. Braun, 315 Or. at 473, 846 P.2d 1151.

[17][18] An employer knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation. The employer need only know the underlying facts, not the legal significance of those facts. Accordingly, whether defendant knew alcohol abuse is considered a "disability" is of no consequence here. It is sufficient that defendant knew plaintiff had an alcohol problem.

A leave of absence to undergo treatment was an obvious accommodation. Dr. Kimberley specifically recommended a leave of absence, plaintiff agreed to undergo treatment, and this proposal was also discussed during the Union grievance proceeding. Defendant argues Dr. Kimberley was not authorized to request an accommodation for plaintiff, but express authorization is not required. The real issue is whether the employer had reason to believe the employee could continue to perform the job providing an accommodation was made. Defendant was provided with that information by its MRO.

*998 In any event, defendant has asserted that company policy requires termination of a driver who arrives at work with any trace of alcohol in his urine. If true, then even an express request for accommodation would have been futile.

Accordingly, I grant partial summary judgment for plaintiff on this defense.

7. *"Qualified Individual with a Disability":*

[19] Defendant argues that plaintiff was not "a qualified individual with a disability" entitled to protection under the ADA because DOT regulations preclude a person with a "current clinical diagnosis of alcoholism" from driving a truck. 49 C.F.R. § 391.41(b). At the time defendant decided to terminate plaintiff, the latter was medically certified to drive a truck. Defendant is essentially arguing that plaintiff had developed a disqualifying condition which precluded him from driving.

The ADA defines a "qualified individual with a disability" as a person who, *with or without reasonable accommodation*, can perform the essential functions of the position. 42 U.S.C. § 12111(8) (emphasis added). Here, the accommodation was a leave of absence to undergo treatment. Defendant's MRO said plaintiff would be qualified if he received that accommodation. If plaintiff was initially qualified to drive a truck, which defendant stipulates is true, and with accommodation he would continue to be qualified, then plaintiff is a qualified individual with a disability who is protected by the ADA.

Moreover, the Safeway official who terminated plaintiff testified at deposition that he took the action because he was informed that plaintiff was intoxicated on the job, and that fact had been confirmed by a urine test. If so, then whether plaintiff had a "current clinical diagnosis of alcoholism" pursuant to DOT regulations was not a factor in that decision. Defendant cannot justify its decision to terminate plaintiff on the basis of information it claims not to have considered.

I hold only that plaintiff was a "qualified individual with a disability" when he was terminated. Whether plaintiff was legally qualified to drive a truck during the period following his termination may still be relevant to the issue of remedy.

[20] Defendant also cites OAR 839-06-255, which provides:
> Where a law or regulation ... prevents the employment in a particular position of an individual with a specific impairment or specified severity of impairment an employer is not required to employ the individual in that position if the individual has the described, medically verified

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

864 F.Supp. 991 Page 8
864 F.Supp. 991, 3 A.D. Cases 1141, 6 A.D.D. 1223, 5 NDLR P 346
**(Cite as: 864 F.Supp. 991)**

impairment.

Defendant argues this section allows it to terminate plaintiff because DOT regulations preclude a person with a "current clinical diagnosis of alcoholism" from driving a truck. 49 C.F.R. § 391.41(b). Even assuming plaintiff had such a diagnosis, this section does not authorize an employer to terminate an *existing* employee who was initially qualified for the position but subsequently developed a disqualifying condition that could be controlled with reasonable accommodation. The employer would have to first give the employee a reasonable opportunity to obtain treatment for the condition before terminating him. A comparable situation would be a driver who develops high blood pressure that can be controlled with medication. The employer cannot terminate the employee because he is temporarily unqualified if that condition can be alleviated through reasonable accommodation.

**8.** *Threat to Public Safety:*

[21] An employer is not required to place an otherwise qualified individual with a disability in a position that poses an inherent risk of injury to the employee, co-workers, or the public, that, even with reasonable accommodation, would be materially enhanced because of the individual's impairment. 42 U.S.C. § 12113(c)(2); OAR 839-06-230. In this case, defendant's MRO believed plaintiff would be able to safely drive a truck once he completed the rehabilitation program. Defendant fired plaintiff anyhow. Moreover, had plaintiff been given a leave of absence, he would not have been allowed to return to work until defendant's MRO certified that he was capable of safely driving a truck.

**\*999** [22] Finally, defendant cannot justify its decision with information not available to it at the time. It must show that when it made the decision it had reason to believe this particular employee had a high probability of relapse. The company official who made the decision did not even cite the potential for relapse as a reason for terminating plaintiff.

Defendant also argues the assessment of whether plaintiff posed a direct threat must be based upon his "present" condition, which defendant argues was his condition before receiving treatment for his alcohol problem. That is incorrect. The statute expressly states that a direct threat is one that "cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). If a leave of absence would have eliminated the threat, and is considered a "reasonable accommodation," then this defense fails. Accordingly, plaintiff is entitled to partial summary judgment on this defense. Whether plaintiff ever posed a threat to the public may be relevant to any remedy, but that is an issue for the court pursuant to the party's stipulation.

**9.** *Violation of DOT Regulations:*

[23] Defendant argues it had to terminate plaintiff because his continued employment would violate DOT regulations. That is incorrect. A driver may not consume, or be under the influence of, an intoxicating beverage within four hours before going on duty. 49 C.F.R. § 392.5(a)(1). A driver is "under the influence of" an intoxicating beverage if his alcohol concentration, as measured by a blood or breath test, is .04 or more. 49 C.F.R. § 383.5. Somewhat contradictorily, 49 C.F.R. § 392.5(a)(2) provides that a driver cannot have any measured alcohol concentration or any detected presence of alcohol, while on duty. An employer may not permit a driver to be on duty or operate a motor vehicle if, by the driver's general appearance or conduct or by other substantiating evidence, the driver appears to have consumed an intoxicating beverage within the preceding four hours. 49 C.F.R. § 392.5(b).

Defendant argues that because plaintiff had a "detected presence of alcohol," termination was mandatory under DOT regulations. In actuality, DOT regulations merely provide that any driver who is found to be in violation of the provisions of section (a) or (b) shall be placed out-of-service immediately *for a period of 24 hours.* 49 C.F.R. § 392.5(c). The regulations say nothing about terminating the driver.

29 C.F.R. § 1630.16(c)(2) states that the ADA does not encourage, prohibit, or authorize the otherwise lawful exercise by entities subject to the jurisdiction of the DOT of authority to remove from safety-sensitive positions persons who test positive for on-duty impairment by alcohol. *Accord* 42 U.S.C. § 12114(e)(2). Defendant argues this regulation confers authority to terminate plaintiff. I disagree. This section confers no authority defendant did not already have under some other law. Moreover, the term "remove" says nothing of the duration. DOT regulations require only a 24-hour removal from service. There is no conflict between those regulations and the ADA.

Finally, defendant again argues that DOT regulations prohibit employment of a driver with a "current clinical diagnosis of alcoholism." Even assuming plaintiff had such a diagnosis, this argument fails

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

864 F.Supp. 991                                                                                                          Page 9
864 F.Supp. 991, 3 A.D. Cases 1141, 6 A.D.D. 1223, 5 NDLR P 346
**(Cite as: 864 F.Supp. 991)**

because defendant does not contend it relied on that diagnosis or regulation when it decided to terminate plaintiff.

10. *Abandonment of Controlling Therapy:*

[24] OAR 839-06-240 provides that:
> Conditions which are controllable ... may not form a basis for rejection of the individual for a position so long as the individual is able to perform the work involved [with reasonable accommodation]. An individual with a controlled condition as described who abandons or ignores the controlling therapy loses the protection of ORS 659.425 if the absence of the control removes the ability to perform, as defined. Examples include but are not limited to arrested alcoholism ...

Defendant argues that if plaintiff is not *presently* attending regular meetings of Alcoholics Anonymous, then he has *retroactively* lost any claim he might have had for his wrongful termination in February, 1993. I disagree. At most, it would affect his remedy. *1000 Alternatively, defendant seeks to limit wage loss liability to the period prior to November 1, 1993, when plaintiff allegedly stopped attending AA meetings. Defendant argues that fact would prevent him from being recertified as a truck driver. That is an issue for the court, not the jury, per the parties' stipulation.

Defendant also cites 49 C.F.R. § 391.123 for the proposition that a driver who tests positive for alcohol is required to continue after-care monitoring for up to 60 months following his return to work. This regulation is part of Subpart H, which governs random testing for *drugs* and expressly excludes *alcohol.* See 49 C.F.R. §§ 391.85, 391.81; 21 U.S.C. § 802. It has no application to a driver who tests positive for alcohol.

11. *42 U.S.C. § 12114(c):*

[25] Defendant cites 42 U.S.C. § 12114(c) for authority to terminate plaintiff. There are five parts to this section.

Subsection (c)(1) permits the employer to prohibit the use of alcohol at the workplace. Plaintiff is not accused of drinking at the workplace. Subsection (c)(2) allows the employer to prohibit employees from being under the influence of alcohol at the workplace. Defendant has stipulated plaintiff was not "under the influence." Subsection (c)(3) is inapposite. Subsection (c)(4) allows an employer to hold an employee who is an alcoholic to the same qualification standards for employment or job performance and behavior that other employees must follow. Job performance is not an issue, since plaintiff received superior performance ratings. Behavior is generally not an issue, since he is not accused of fighting on the job or other misconduct.

Defendant contends it has a policy of prohibiting drivers from reporting for work with *any* amount of alcohol in their system, regardless of when it was consumed, even if the employee is not "under the influence." That policy goes beyond the language of subsection (c)(2), which exempts discipline of employees only for being "under the influence." Nonetheless, a stricter policy towards drug and alcohol use is justified for employees who operate fifty-ton trucks. Given the strong justification underlying this policy, I conclude that subsection (c)(4) is broad enough to encompass this policy. Accordingly, if defendant discharged plaintiff in accordance with a company policy governing the use of alcohol by drivers that is consistently applied to similarly situated employees in a non-discriminatory manner, defendant is not liable under the ADA. Because this is an affirmative defense, defendant has the burden of proof. Finally, subsection (c)(5) allows the employer to require employees to comply with DOT regulations. That is subsumed within the prior discussion.

[26] Plaintiff maintains he is entitled to summary judgment on his claim for violation of ORS 659.425 because Oregon law contains no counterpart to § 12114(c) that would allow the employer to avoid liability by showing it acted in accordance with a company policy governing alcohol use by drivers. Oregon law contains no express exemption for such a policy. Nonetheless, judges are not required to leave their common sense at the door when they take the bench each morning. An intoxicated truck driver presents a serious threat to the community. The Oregon law allows an employer to suspend a driver if it learns he has an alcohol problem. However, defendant argues that drivers must be provided with incentive to voluntarily seek alcohol treatment before they cause an accident. Defendant asserts it has a policy of providing treatment for drivers who self-report, but automatically terminating any driver who is caught violating the company's rules governing alcohol use. I conclude this is a valid affirmative defense to a charge of violating ORS 659.425, at least when this policy is consistently applied in a non-discriminatory manner to persons employed in positions where safety is a vital concern.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

12. *EEOC Technical Assistance Manual:*

Defendant cites the EEOC Technical Assistance Manual ("TAM") for the proposition that the ADA does not require an employer to offer a leave of absence to an employee with an alcohol problem. That is an overstatement. The TAM states that an employer "may take the same disciplinary action *1001 against employees with disabilities as it takes against other similarly situated employees, if the illegal use of drugs or alcohol use affects job performance and/or attendance." TAM § 7.7. The TAM also states that "the ADA does not require an employer to provide an opportunity for rehabilitation in place of discipline or discharge" of an employee whose alcohol abuse adversely affects job performance or conduct to the extent he or she is not qualified. TAM § 8.7. There is no contention here that plaintiff's alcohol use adversely affected his job performance, conduct, or attendance. On the contrary, plaintiff received high marks in these areas in a performance evaluation conducted shortly before his termination.

[27] Defendant argues that a truck driver with an alcohol problem is legally unqualified to drive. There is some tension between a statute which declares that an employee is qualified if he can perform the job *with* accommodation, and a manual that suggests the employee can be terminated if he is unable to perform the job *without* accommodation. To the extent there is any inconsistency between the TAM and the ADA, it must be resolved in favor of the ADA. The TAM is not law, nor does it have the force of law. Rather, the TAM is merely an attempt to simplify and summarize the applicable law. The TAM does not cite any section of the ADA or its interpretive regulations that support such a rule, but it is probably attempting to summarize 42 U.S.C. § 12114(c)(4), which allows an employer to hold an employee who is an alcoholic to the same qualification standards for employment or job performance and behavior that other employees must follow. I have already discussed the significance of that subsection. The TAM cannot modify § 12114(c)(4) or add to it.

Even assuming the TAM is an accurate statement of the law, defendant would have to show that plaintiff's alcohol abuse rendered him unqualified to perform his job, and that defendant has a policy of terminating employees under those circumstances. That is simply another way of asking whether plaintiff was discharged in accordance with the employer's disciplinary rules. I have already ruled that defendant is entitled to prevail if it terminated plaintiff in accordance with a company policy governing the use of alcohol and drugs by drivers.

[28] The TAM would be relevant to show the employer's state of mind, i.e., that it believed it was following the law. However, that is no longer an issue in this case, since I granted defendant's motion to strike the prayer for punitive damages.

13. *Motion to Strike Compensatory Damages:*

Defendant moves to strike the prayer for compensatory damages because there is no evidence defendant "intentionally" discriminated against plaintiff because he was handicapped, as required by 42 U.S.C. § 1981a(a)(2). Defendant misconstrues the meaning of the term "intentional." The statute defines intentional discrimination as discrimination other than "an employment practice that is unlawful because of its disparate impact." *Id.* Moreover, the term "intentional" modifies only the first clause of subsection (a)(2), and does not apply to a failure to provide reasonable accommodation in violation of 42 U.S.C. § 12112(b)(5). There is a separate "good faith" exemption that applies to violations of § 12112(b)(5), but defendant does not qualify for its protections. *See* 42 U.S.C. § 1981a(a)(3).

14. *Lack of Pretext:*

[29] Defendant renews its motion for summary judgment on grounds plaintiff has no evidence defendant discriminated against plaintiff because of his disability, or that defendant's stated reason for termination was a pretext. I deny the motion. This is not a "pretext" case in which the employer articulates a false reason for taking an action in order to conceal a discriminatory animus. Rather, defendant concedes it refused to offer plaintiff a leave of absence. Refusing to make reasonable accommodation is a form of discrimination under the ADA. 42 U.S.C. § 12112(b)(5). The only question is whether defendant has an affirmative defense that shields it from liability. Defendant also concedes it terminated plaintiff because he had a trace of alcohol in his urine. Although defendant denies it terminated plaintiff "because" *1002 of his disability, terminating an employee because of a symptom of that disability is tantamount to terminating him because of the disability. [FN1]

> FN1. A comparable situation would be a diabetic employee terminated for eating a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

864 F.Supp. 991                                                                                                                         Page 11
864 F.Supp. 991, 3 A.D. Cases 1141, 6 A.D.D. 1223, 5 NDLR P 346
**(Cite as: 864 F.Supp. 991)**

candy bar while at her post. The employee may have nominally been terminated for violating a company rule prohibiting eating while on duty, rather than "because" she is a diabetic. However, the symptoms cannot be separated from the underlying cause. The employee was terminated "because" of her disability, notwithstanding that the prohibition upon eating on duty applies equally to all employees, disabled or not. Of course, a determination that an employee was terminated "because" of his or her disability is but one element of an ADA claim and does not necessarily mean the employee will prevail.

## CONCLUSION

The only factual issue left for the jury to resolve is whether defendant discharged plaintiff in accordance with a company policy governing the use of alcohol by drivers that is consistently applied in a non-discriminatory manner. If the answer is "yes," defendant is entitled to prevail, and vice versa.

864 F.Supp. 991, 3 A.D. Cases 1141, 6 A.D.D. 1223, 5 NDLR P 346

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT – E

Westlaw.

104 F.3d 267 Page 1
104 F.3d 267, 77 Fair Empl.Prac.Cas. (BNA) 303, 69 Empl. Prac. Dec. P 44,491, 8 A.D. Cases 333, 19 A.D.D. 805, 9 NDLR P 68, 96 Cal. Daily Op. Serv. 9511, 96 Daily Journal D.A.R. 15,653
(Cite as: 104 F.3d 267)

United States Court of Appeals,
Ninth Circuit.
Mary BRADLEY, Plaintiff-Appellant,
v.
HARCOURT, BRACE AND COMPANY,
Defendant-Appellee.
No. 95-56003.

Argued and Submitted Oct. 8, 1996.
Decided Dec. 30, 1996.

Former employee brought sex and disability discrimination action against former employer under Title VII, Americans with Disabilities Act (ADA), and California Fair Employment and Housing Act (FEHA). The United States District Court for the Southern District of California, Gordon Thompson, Jr., J., entered summary judgment for employer. Employee appealed. The Court of Appeals, Trott, Circuit Judge, held that: (1) employee's evidence was insufficient to rebut employer's proffered reasons for terminating her, i.e. poor performance and behavior not in accordance with customary business practices, or to counter strong inference of nondiscrimination that arose because same person who hired her terminated her only one year later, and (2) evidence was insufficient to establish that employee was disabled when terminated.

Affirmed.

West Headnotes

[1] Civil Rights 1104
78k1104 Most Cited Cases
    (Formerly 78k141)
Under California law, federal interpretations of Title VII would be relied on to interpret analogous provisions of California Fair Employment and Housing Act (FEHA). Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; West's Ann.Cal.Gov.Code § 12900 et seq.

[2] Federal Civil Procedure 2497.1
170Ak2497.1 Most Cited Cases
To avoid summary judgment in Title VII and California Fair Employment and Housing Act (FEHA) action, employee was required to do more than establish prima facie case and deny credibility of employer's witnesses; she was required to produce specific, substantial evidence of pretext. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; West's Ann.Cal.Gov.Code § 12900 et seq.

[3] Federal Civil Procedure 2497.1
170Ak2497.1 Most Cited Cases
Employee's summary judgment evidence was insufficient to rebut employer's proffered reasons for terminating her, including poor performance, or to counter strong inference of nondiscrimination that arose because same person who hired her terminated her only one year later, in ADA and California Fair Employment and Housing Act (FEHA) action; nothing indicated that supervisor's favoritism of male employee stemmed from his sex rather than his competence. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; West's Ann.Cal.Gov.Code § 12900 et seq.; Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

[4] Federal Civil Procedure 2497.1
170Ak2497.1 Most Cited Cases
Employee's subjective personal judgments of his or her competence alone do not raise genuine issue of material fact at summary judgment stage of sex discrimination action. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; West's Ann.Cal.Gov.Code § 12900 et seq.; Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

[5] Civil Rights 1535
78k1535 Most Cited Cases
    (Formerly 78k377.1)
Where same actor is responsible for both hiring and firing of discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; West's Ann.Cal.Gov.Code § 12900 et seq.

[6] Civil Rights 1216
78k1216 Most Cited Cases
    (Formerly 78k173.1)
Under California law, federal interpretations of ADA would be relied on to interpret disability discrimination claim under California Fair Employment and Housing Act (FEHA). Americans with Disabilities Act of 1990, § 2 et seq., 42

104 F.3d 267                                                                                                                      Page 2
104 F.3d 267, 77 Fair Empl.Prac.Cas. (BNA) 303, 69 Empl. Prac. Dec. P 44,491, 8 A.D. Cases 333, 19 A.D.D. 805, 9 NDLR P 68, 96 Cal. Daily Op. Serv. 9511, 96 Daily Journal D.A.R. 15,653
**(Cite as: 104 F.3d 267)**

U.S.C.A. § 12101 et seq.; West's Ann.Cal.Gov.Code § 12900 et seq.

**[7]** Civil Rights 🔑1217
78k1217 Most Cited Cases
        (Formerly 78k173.1)
To prevail on disability discrimination claim, employee was required to establish: that she was disabled person within meaning of ADA; that she was qualified, with or without reasonable accommodation, that is, able to perform essential functions of the job; and that employer terminated her because of her disability. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[8]** Federal Civil Procedure 🔑2497.1
170Ak2497.1 Most Cited Cases
Summary judgment evidence was insufficient in ADA and California Fair
Employment and Housing Act (FEHA) action to establish as matter of law that employee was disabled at time of termination; employee stated that her disability began with her termination, and employee undermined her credibility by taking inconsistent positions in sex and disability claims as to whether she adequately performed her job. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; West's Ann.Cal.Gov.Code § 12900 et seq.; Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**[9]** Estoppel 🔑68(2)
156k68(2) Most Cited Cases
Court of Appeals would not invoke doctrine of judicial estoppel where plaintiff took inconsistent positions in the same litigation.

**[10]** Estoppel 🔑68(2)
156k68(2) Most Cited Cases
Judicial estoppel, also known as doctrine of preclusion of inconsistent positions, is intended to protect against litigant playing fast and loose with the courts, gaining advantage by taking one position, then seeking to gain second advantage by taking incompatible position.

**[11]** Estoppel 🔑68(2)
156k68(2) Most Cited Cases
Underlying policy of doctrine of judicial estoppel is to protect dignity of the judicial process.
  **\*268** Patricia Doninger, San Diego, California, for plaintiff-appellant.

Phillip L. Kossy and Deanna M. Baker, Littler, Mendelson, Fastiff, Tichy & Mathiason, San Diego, California, for defendant-appellee.

**\*269** Appeal from the United States District Court for the Southern District of California, Gordon Thompson, Jr., District Judge, Presiding. D.C. No. CV-94-00694-GT(LSP).

Before: BRUNETTI, TROTT, and THOMAS, Circuit Judges.

TROTT, Circuit Judge:

### OVERVIEW
Mary Bradley appeals the district court's grant of summary judgment in favor of Harcourt, Brace and Company ("Harcourt") on her claims of sex discrimination and disability discrimination. We must decide whether Bradley has produced sufficient evidence to establish a genuine factual dispute regarding: (1) whether Harcourt's articulated justifications for her termination-poor work performance and misconduct-are pretexts for unlawful sex discrimination; and (2) whether Bradley has an impairment that substantially limits her ability to work. Because we conclude that Bradley has produced no meaningful evidence to rebut Harcourt's proffered reasons for her termination or to counter the strong inference of nondiscrimination that arises because the same person who hired Bradley fired her only a year later, we affirm the grant of summary judgment for Harcourt on Bradley's sex discrimination claims. Further, because Bradley has produced no material evidence that she has a disability, we affirm the grant of summary judgment on the disability claim.

### BACKGROUND
Evelyn Sasmor, a senior vice president at Harcourt, hired Mary Bradley as an information services manager in February 1992. In accordance with company policy, Harcourt placed Bradley on an initial ninety-day probation, to end May 24, 1992. On May 25, 1992, Bradley was in a non-work-related car accident. As a result of the accident, she missed four days of work. On June 2, 1992, Sasmor notified Bradley that her probationary period would be extended another ninety days, because three months was not enough time to evaluate someone in her managerial position. Sasmor claims the decision was made prior to Bradley's accident and was based on her concerns about Bradley's technical skills and her failure to follow up on assignments. On June 3,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

104 F.3d 267                                                                                                                              Page 3
104 F.3d 267, 77 Fair Empl.Prac.Cas. (BNA) 303, 69 Empl. Prac. Dec. P 44,491, 8 A.D. Cases 333, 19 A.D.D. 805, 9 NDLR P 68, 96 Cal. Daily Op. Serv. 9511, 96 Daily Journal D.A.R. 15,653
(Cite as: 104 F.3d 267)

1992, Bradley produced a note from her doctor indicating that she needed to work part-time for approximately two months. Harcourt allowed her to work part-time and paid her full salary. Eventually, Bradley returned to full-time work. Her probation ended on August 24, 1992.

Sasmor received numerous complaints about Bradley's work before and after the accident and was concerned with several problem areas of Bradley's performance. Additionally, Bradley asked a subordinate to serve as a reference for her husband and to tell his potential employers that he worked at Harcourt when he did not; this conduct constituted a breach of customary business practices at Harcourt. On January 28, 1993, Sasmor, in the presence of a human resources representative, notified Bradley she was on probation again. On February 10, 1993, Sasmor informed Bradley of her termination, but the parties dispute whether she was ever officially terminated. Although Harcourt had notified Bradley of her termination on February 10, 1993, Harcourt allowed Bradley time to review and sign termination documents. Bradley did not return those documents, but instead filed a disability claim with Harcourt. Harcourt then placed her on short-term disability and paid her through August, 1994.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). We must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

## DISCUSSION
### I. Sex Discrimination Claim

[1] Bradley brought sex discrimination claims under both federal and state law. *270 California courts have relied upon federal interpretations of Title VII to interpret analogous provisions of the California Fair Employment and Housing Act (FEHA), which prohibits unlawful discrimination. *Clark v. Claremont Univ. Ctr. & Graduate Sch.*, 6 Cal.App.4th 639, 662, 8 Cal.Rptr.2d 151 (1992). Thus, we pursue the same analysis for Bradley's federal and state law claims.

Bradley bears the initial burden of establishing a prima facie case of discrimination by introducing evidence that gives rise to an inference of unlawful discrimination. For the purposes of Harcourt's motion for summary judgment, we assume--as did the district court and Harcourt--that Bradley has met her prima facie showing. Thus, the burden shifts to Harcourt to produce evidence that it had a legitimate, nondiscriminatory reason for terminating Bradley. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07, 113 S.Ct. 2742, 2746-47, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-55, 101 S.Ct. 1089, 1093-95, 67 L.Ed.2d 207 (1981). To rebut the prima facie case, Harcourt must "produc[e] an explanation" for its actions, that is, it must show that the employment action was taken for "a legitimate, nondiscriminatory reason." *St. Mary's Honor Ctr.*, 509 U.S. at 506-07, 113 S.Ct. at 2747 (citation omitted). Supported by the declaration of Evelyn Sasmor, Harcourt presented two reasons for Bradley's termination: [FN1] (1) inadequate work performance; and (2) behavior not in accordance with customary business practices (requesting a subordinate to lie).

> FN1. Harcourt contends that Bradley's claims must fail because she cannot establish that she was fired. Because we decide that Bradley has failed to establish either of her discrimination claims, we need not decide when and if Bradley was terminated.

[2] Harcourt has met its burden by articulating a legitimate reason for discharge. Thus, the presumption of unlawful discrimination "simply drops out of the picture," *id.* at 511, 113 S.Ct. at 2749, and Bradley bears the ultimate burden of persuading the court that the stated reason for the discharge was false and the true reason for the discharge was unlawful sex discrimination. *Id.* at 507-08, 113 S.Ct. at 2747-48; *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir.1991). To avoid summary judgment, Bradley "must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir.1994) (citation omitted). She must produce "specific, substantial evidence of pretext." *Id.*

[3][4] Bradley produced no meaningful evidence indicating either that Harcourt's proffered explanation was false or that her supervisor harbored discriminatory animus towards her because she was a woman. Bradley claims she had been performing her job adequately and had received no feedback indicating otherwise. However, an employee's subjective personal judgments of her competence

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

104 F.3d 267                                                                                                                    Page 4
104 F.3d 267, 77 Fair Empl.Prac.Cas. (BNA) 303, 69 Empl. Prac. Dec. P 44,491, 8 A.D. Cases 333, 19 A.D.D. 805, 9 NDLR P 68, 96 Cal. Daily Op. Serv. 9511, 96 Daily Journal D.A.R. 15,653
**(Cite as: 104 F.3d 267)**

alone do not raise a genuine issue of material fact. *Schuler v. Chronicle Broadcasting Co., Inc.,* 793 F.2d 1010, 1011 (9th Cir.1986). Further, Bradley does not dispute asking the subordinate to lie.

[5] Bradley argues that her supervisor's real reason for terminating her was sex discrimination, because she wanted to give Bradley's position to a male. However, Sasmor, the person who terminated Bradley, is the same person who originally made the decision to hire her less than a year earlier. In this context, Bradley's allegation that her supervisor wanted a male in the position is at best suspicious. If Sasmor had preferred to place a man in the position, we can see no reason why she would have hired a woman only a year earlier. As the Fourth Circuit has observed:

> One is quickly drawn to the realization that claims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.

*Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991) (quotations omitted). We therefore hold that where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur *271 within a short period of time, a strong inference arises that there was no discriminatory motive. See *Lowe v. J.B. Hunt Transp., Inc.,* 963 F.2d 173 (8th Cir.1992) (finding argument that company developed aversion to older people less than two years after hiring member of protected age group "simply incredible"); *Buhrmaster v. Overnite Transp. Co.,* 61 F.3d 461, 464 (6th Cir.1995) ("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class."), *cert. denied,* 516 U.S. 1078, 116 S.Ct. 785, 133 L.Ed.2d 736 (1996). *But see Waldron v. SL Indus., Inc.,* 56 F.3d 491, 495 n. 6 (3d Cir.1995) (refusing to follow *Proud* and accord presumptive value to the fact that the same actor hired and fired the plaintiff, instead considering this fact to be evidence of non-discrimination).

Bradley cannot rebut this inference. She points to Sasmor's interaction with Bradley's subordinate Tom Jackson as evidence of sex discrimination, claiming that Sasmor: held conversations with Jackson and without Bradley to discuss procedures within the department; assigned work to Jackson without Bradley's knowledge; believed his accounts of events over Bradley's prior to any investigation; lent more credence to Jackson's opinion on technical matters; stated that "he is wonderful;" and invited Jackson's criticism of a project of Bradley's. These allegations do not establish that Sasmor terminated Bradley because of sex discrimination. Nothing indicates that Sasmor's favoritism of Jackson stemmed from his sex rather than his competence or performance, particularly in light of Bradley's inadequate performance during the same period.

Because Bradley did not produce any evidence showing Harcourt's proffered reasons were pretexts for an improper discriminatory motive, we affirm the grant of summary judgment on the sex discrimination claims.

### II. Disability Discrimination Claim

[6] Bradley brought disability discrimination claims under both the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, and the FEHA, Cal. Gov't Code § 12940. California relies on federal discrimination decisions to interpret the FEHA. Thus, we proceed with the same analysis for the purposes of both claims.

[7] The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). To prevail on her disability discrimination claim, Bradley must establish: (1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified, with or without reasonable accommodation, that is, able to perform the essential functions of the job; and (3) that the employer terminated her because of her disability. *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir.1996).

[8] Bradley must first establish that she has a disability. The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102. Bradley asserts that the lingering effects from her injuries, manifested as concentration and memory problems, substantially limited her ability to work. Working is considered to be a major life activity. 29 C.F.R. § 1630.2(i). However, Bradley presents no evidence--not even medical reports--that supports the existence of these alleged impairments. Bradley admits she never specifically told Sasmor that she was disabled. In fact, when Sasmor asked her if she felt able to resume work following her accident, Bradley assured her that

104 F.3d 267                                                                                                           Page 5
104 F.3d 267, 77 Fair Empl.Prac.Cas. (BNA) 303, 69 Empl. Prac. Dec. P 44,491, 8 A.D. Cases 333, 19 A.D.D. 805, 9 NDLR P 68, 96 Cal. Daily Op. Serv. 9511, 96 Daily Journal D.A.R. 15,653
**(Cite as: 104 F.3d 267)**

she did. Further, Bradley stated in her deposition that her disability began with her termination: "I believe that when she told me that I was fired, that that is the start of my disability." No evidence, beyond her own testimony, supports the existence of an impairment during the time Bradley was employed.

[9][10][11] Further, we are troubled by the inconsistent positions Bradley takes with regard to the adequacy of her work performance. Although we will not invoke the doctrine of judicial estoppel because Bradley takes her inconsistent positions in the same *272 litigation, [FN2] we believe the policy underlying the doctrine is instructive. Judicial estoppel, also known as the doctrine of preclusion of inconsistent positions, "is intended to protect against a litigant playing fast and loose with the courts," gaining an advantage by taking one position, then seeking to gain a second advantage by taking an incompatible position. *Rissetto v. Plumbers and Steamfitters Local 343,* 94 F.3d 597, 600-01 (9th Cir.1996) (quoting *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990), *cert. denied,* 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991)). The underlying policy is to protect the dignity of the judicial process. *Id.* at 601. To establish her sex discrimination claims, Bradley argues that Harcourt's explanation that they terminated her because she was performing her job inadequately was pretextual, because she believed that she was performing competently. Then, to establish her disability discrimination claims, she argues that her memory and concentration problems substantially limited her ability to work, leading us to believe she was not fulfilling her job responsibilities. We recognize that the law does not preclude a plaintiff from bringing both a sex discrimination and a disability discrimination claim in the same suit. We further recognize that a discrimination plaintiff who seeks to show she is substantially limited in her ability to work must tread carefully so as not to undo her contention that she is qualified for the position. However, Bradley undermines her credibility by simultaneously telling two different stories about her work performance.

> FN2. Bradley did file a claim for disability with her employer. However, that application was not the subject of a legal proceeding.

Because Bradley has failed to produce evidence showing she has a disability, we affirm the district court's grant of summary judgment in favor of Harcourt on the disability discrimination claims.

AFFIRMED.

•Mary BRADLEY, Plaintiff/Appellant, v. HARCOURT BRACE AND COMPANY and Does I through XX, Defendant/Appellee., 1995 WL 17016758 (Appellate Brief) (C.A.9 February 22, 1995), Appellant's Reply Brief

•Mary BRADLEY, Plaintiff/Appellant, v. HARCOURT BRACE & COMPANY, Defendant/Appellee., 1996 WL 33417429 (Appellate Brief) (C.A.9 January 25, 1996), Brief of Appellee

104 F.3d 267, 77 Fair Empl.Prac.Cas. (BNA) 303, 69 Empl. Prac. Dec. P 44,491, 8 A.D. Cases 333, 19 A.D.D. 805, 9 NDLR P 68, 96 Cal. Daily Op. Serv. 9511, 96 Daily Journal D.A.R. 15,653

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.