# EXHIBIT – I

Westlaw.

301 F.3d 866                                                                                             Page 1
301 F.3d 866, 13 A.D. Cases 985, 24 NDLR P 203
(Cite as: 301 F.3d 866)

**H**

United States Court of Appeals,
Seventh Circuit.
Maxcene MAYS, Plaintiff-Appellant,
v.
Anthony J. PRINCIPI, Secretary of Veterans Affairs,
Defendant-Appellee.
No. 01-4227.

Argued May 28, 2002.
Decided Sept. 5, 2002.

Nurse at Veterans Administration (VA) hospital who had suffered work-related back injury that prevented her from lifting more than ten pounds filed disability discrimination suit under Rehabilitation Act. The United States District Court for the Northern District of Illinois, 2001 WL 1512552, Suzanne B. Conlon, J., granted summary judgment for employer. Employee appealed. The Court of Appeals, Posner, Circuit Judge, held that: (1) absence of reference in initial complaint to administrative disability claim was not prejudicial to VA; (2) assuming that nurse was disabled, VA's failure to consult with her concerning possible accommodation of disability merely shifted burden of production concerning availability of reasonable accommodation; (3) VA reasonably accommodated nurse's disability by reassigning her to clerical position; and (4) district court did not, under the circumstances, abuse its discretion by granting summary judgment for VA before ruling on nurse's motion to compel discovery.

Affirmed.

West Headnotes

[1] Civil Rights 1225(2)
78k1225(2) Most Cited Cases
    (Formerly 78k173.1)
Under Rehabilitation Act, employer need not manufacture a job that will enable a disabled worker to work despite his disability. Rehabilitation Act of 1973, § 2 et seq., as amended, 29 U.S.C.A. § 701 et seq.

[2] Civil Rights 1532
78k1532 Most Cited Cases
    (Formerly 78k235(3))
Reference to pending administrative disability claim in former Veteran's Administration (VA) nurse's original discrimination complaint was not required to clarify that nurse had exhausted her administrative remedies by waiting 180 days to sue, and omission of such a reference did not prejudice VA, which had denied the administrative claim on ground that subject thereof was the subject of lawsuit. Rehabilitation Act of 1973, § 2 et seq., as amended, 29 U.S.C.A. § 701 et seq.; 29 C.F.R. § 1614.407(b).

[3] Federal Courts 802
170Bk802 Most Cited Cases
Issue of whether Veterans Administration (VA) nurse claiming Rehabilitation Act violation had timely contacted employment discrimination counselor would be
decided in nurse's favor, where that dispute could not be resolved on the record on appeal from grant of summary judgment for VA. Rehabilitation Act of 1973, § 2 et seq., as amended, 29 U.S.C.A. § 701 et seq.; 29 C.F.R. § 1614.105(a).

[4] Civil Rights 1225(4)
78k1225(4) Most Cited Cases
    (Formerly 78k173.1)

[4] Civil Rights 1540
78k1540 Most Cited Cases
    (Formerly 78k240(2))
Only consequence of the employer's failure to consult with the employee concerning a possible accommodation of the employee's disability is to shift the burden of production concerning the availability of a reasonable accommodation from the employee to the employer, and when no reasonable accommodation is possible the failure to jaw about accommodation is harmless. Rehabilitation Act of 1973, § 2 et seq., as amended, 29 U.S.C.A. § 701 et seq.; 29 C.F.R. § 1630.2(*o*)(3).

[5] Civil Rights 1225(3)
78k1225(3) Most Cited Cases
    (Formerly 78k173.1)
Veterans Administration (VA) did not, in reassigning former staff nurse to clerical job, fail to reasonably accommodate her back injury which prevented her from lifting more than ten pounds; she could not be placed back in regular nursing job requiring contact with patients in view of her physical limitations, other applicants were more qualified for administrative nursing positions that she was physically able to perform, and clerical position gave

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

301 F.3d 866 Page 2
301 F.3d 866, 13 A.D. Cases 985, 24 NDLR P 203
(Cite as: 301 F.3d 866)

her the same after-tax salary as she had earned before, though with fewer fringe benefits and fewer career advantages. Rehabilitation Act of 1973, § 2 et seq., as amended, 29 U.S.C.A. § 701 et seq.

[6] Civil Rights 1225(2)
78k1225(2) Most Cited Cases
(Formerly 78k173.1)
Employer is not required to provide the accommodation for a disabled employee that is ideal from the employee's standpoint, only one that is reasonable in terms of costs and benefits.

[7] Federal Civil Procedure 2553
170Ak2553 Most Cited Cases
District court did not, under the circumstances, abuse its discretion in disability discrimination case by granting summary judgment for employer before ruling on employee's motion to compel discovery; motion was prompted by employer's inadequate responses to interrogatories, employee's counsel had opportunity to depose individuals preparing the interrogatory responses and obtained nothing of value, and no more evidence appeared to be obtainable from employer. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.
*868 Jamie G. Sypulski (argued), Chicago, IL, for Plaintiff-Appellant.

Thomas Walsh (argued), Ann L. Wallace, Office of the U.S. Atty., Civ. Div., Chicago, IL, for Defendant-Appellee.

Before BAUER, POSNER, and WILLIAMS, Circuit Judges.

POSNER, Circuit Judge.

[1] This is an appeal from the grant of summary judgment to the defendant, the Veterans Administration, in a suit under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq., the counterpart for federal agency defendants to the employment provisions of the subsequently enacted Americans with Disabilities Act. The plaintiff, a nurse at a VA hospital, injured her back helping to lift a 400-pound patient. After some weeks off work she returned to duty as a light-duty nurse, a temporary position (rather than a regular part of the hospital's table of organization) requiring less strength than the regular nursing job the plaintiff had had when she was injured. A year and a half later she was removed from the light-duty job for reasons unrelated to her injury. Shortly before that a physician had opined that the injury was permanent and had restricted her (in the words of her opening brief in this court) to "sedentary work, maximum lifts of 10 pounds, no work at or above shoulder level, and no patient lifting," but added that she could return to her job as a light-duty nurse. The light-duty nurse position having evaporated (and the hospital not obliged to recreate it, that is, to "manufacture a job that will enable the disabled worker to work despite his disability," Hansen v. Henderson, 233 F.3d 521, 523-24 (7th Cir.2000)), the hospital assigned her to a clerical support position that paid a much lower salary although, with the workers' compensation that she received for her injury, her after-tax income was (and, so far as appears, will continue to be) the same as when she had been a nurse. She complains that in reassigning her to the clerical job the VA failed to provide a proper accommodation for her disability.

[2] Originally she was complaining about racial discrimination as well and this has given rise to a procedural issue pressed by the VA. The plaintiff had filed separate administrative complaints with regard to racial discrimination and to disability and had brought this suit after the denial of her racial-discrimination (and a related retaliation) complaint but while her disability complaint was still wending its way through the administrative process. Her initial complaint in the district court did not refer to the administrative disability claim that she had filed, but before the district judge ruled on the VA's motion for summary judgment, the VA denied the plaintiff's administrative disability claim on the ground that it was the subject of her lawsuit.

The suit was not premature, even though filed before her administrative complaint was denied, because she had waited the required 180 days after filing that complaint before suing. 29 C.F.R. § 1614.407(b). The VA argues that her initial complaint in the district court should have referred to the administrative disability complaint to make clear that she had "exhausted" her administrative remedies *869 by waiting 180 days before suing (we put the word in scare quotes because the right to sue is absolute after 180 days even if the agency is still mulling over whether to grant the individual some administrative remedy). We cannot see what difference that omission could have made. The VA can't complain about being surprised; it denied the administrative complaint *because* the subject of that complaint was the subject of her suit, and so it had to know about the relation between the administrative and judicial complaints. And if it was surprised, so what? It won in the district court and does not argue

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

301 F.3d 866                                                                                                           Page 3
301 F.3d 866, 13 A.D. Cases 985, 24 NDLR P 203
**(Cite as: 301 F.3d 866)**

that it could defend against the plaintiff's appeal more effectively if only she had mentioned the administrative complaint at the outset of the suit. And anyway when it received the judicial complaint, the VA would as a matter of ordinary prudence, and doubtless did, search its records to make sure the plaintiff had filed an administrative complaint at least 180 days before suing, since otherwise the suit would be premature.

[3] The VA further argues that the plaintiff cannot complain about any violation of the Rehabilitation Act that occurred before December 5, 1999, because to challenge a personnel action as a violation of the Act an employee must contact a designated employment discrimination counselor "within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The action of which the plaintiff is complaining is being assigned to the clerical job, and that occurred on November 16 and, according to the VA, she did not contact the counselor until 45 days after December 5 (so January 19, though oddly the VA does not indicate the date). The plaintiff contends, however, that she contacted the counselor on December 16, which if so placed the job assignment that she claims violated the Act well within the 45 days. As the dispute cannot be resolved on the present record, she gets the benefit of the doubt.

We move on to the substantive issues, where an initial puzzle is the silence of the briefs and the district judge on the question whether the plaintiff even *has* a disability within the meaning of the Rehabilitation Act. This has merely been assumed, most surprisingly by the Veterans Administration. A disability within the meaning of the Rehabilitation Act and the Americans with Disabilities Act is a condition that, as we noted recently with reference to the ADA (but the standard under the Rehabilitation Act is the same, _Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 122 S.Ct. 681, 689, 151 L.Ed.2d 615 (2002); Stein v. Ashcroft, 284 F.3d 721, 725 n. 2 (7th Cir.2002); Silk v. City of Chicago, 194 F.3d 788, 798 n. 7 (7th Cir.1999); Vinson v. Thomas, 288 F.3d 1145, 1152 n. 7 (9th Cir.2002); McDonald v. Pennsylvania, 62 F.3d 92, 94-95 (3d Cir.1995)_), "substantially prevents a person from engaging in one of the major activities of life, such as walking, seeing, or reproduction." _Szmaj v. American Tel. & Tel. Co., 291 F.3d 955, 956 (7th Cir.2002)_. We doubt whether lifting more than 10 pounds is such an activity. Cf. _Stein v. Ashcroft, supra, 284 F.3d at 725-26; Duncan v. Washington Metropolitan Area Transit Authority, 240 F.3d 1110, 1115_ (D.C.Cir.2001) (en banc); _Snow v. Ridgeview Medical Center, 128 F.3d 1201, 1207 (8th Cir.1997); Williams v. Channel Master Satellite Systems, Inc., 101 F.3d 346, 349 (4th Cir.1996)_ (per curiam). It is not as if the plaintiff were missing an arm. Compare _Gillen v. Fallon Ambulance Service, Inc., 283 F.3d 11, 23 (1st Cir.2002)_. The physician who determined the severity and duration of her back injury thought she could return to her job as a light-duty nurse. The number of Americans restricted by back problems to light work is legion. They are not disabled. See _Contreras v. Suncast Corp., 237 F.3d 756, 762-63 (7th Cir.2001);_ *870_Ray v. Glidden Co., 85 F.3d 227, 228-29 (5th Cir.1996)_ (per curiam). Any challenge to the plaintiff's claim to be disabled has been forfeited, but we have thought it prudent to register our doubts lest our opinion be assumed by its silence to endorse the proposition that a back injury that merely limits a person's ability to lift heavy objects creates a disability within the meaning of federal disability law.

[4] The plaintiff (assuming as we shall in light of the defendant's forfeiture that she does have a disability) argues that if only the VA had engaged with her in the "interactive process" that federal disability law has been understood to contemplate, see, e.g., _Rehling v. City of Chicago, 207 F.3d 1009, 1015-16 (7th Cir.2000); 29 C.F.R. § 1630.2(o)(3)_--that is, if only its human-relations or other management-level personnel had made suggestions for accommodating her disability rather than waiting for her to propose something ("consultative process" strikes us as a more perspicuous term than "interactive process")--it would quickly have discovered that her disability could be accommodated as she preferred: either by restoring her to her original nurse's job stripped of its lifting duties, or by assigning her to a nurse's job that involved no contact with patients, that is, a purely administrative position but one requiring knowledge of nursing, unlike the clerical position that she was given.

She acknowledges as she must in light of the cases that "failure to engage in this 'interactive process' cannot give rise to a claim for relief, however, if the employer can show that no reasonable accommodation was possible." _Hansen v. Henderson, supra, 233 F.3d at 523_. (Similar but more emphatic is _Morton v. United Parcel Service, Inc., 272 F.3d 1249, 1256 (9th Cir.2001);_ cf. _Ballard v. Rubin, 284 F.3d 957, 960 (8th Cir.2002)_.) We think the best understanding of the brief passage in _Hansen_ concerning burden shifting is that the (only) consequence of the employer's failing to consult with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

301 F.3d 866                                                                                                                     Page 4
301 F.3d 866, 13 A.D. Cases 985, 24 NDLR P 203
(Cite as: 301 F.3d 866)

the employee concerning a possible accommodation of the employee's disability is to shift the burden of production concerning the *availability* of a reasonable accommodation from the employee to the employer. The plaintiff cannot seek a judicial remedy for the employer's failure to accommodate her disability without showing that a reasonable accommodation existed. But if it existed yet she failed to obtain it because the employer had not consulted her in order that "together they can identify the employee's needs and discuss accommodation options," the fault in the failure to make the accommodation available would be the employer's and he would lose. *Emerson v. Northern States Power Co.,* 256 F.3d 506, 515 (7th Cir.2001); see also *Ozlowski v. Henderson,* 237 F.3d 837, 840 (7th Cir.2001). The purpose of the consultative process is to find a reasonable accommodation for the particular disabled employee, and if she proves that such an accommodation existed, that nevertheless she did not receive it, and that there was no consultative process, suspicion arises that the reason her disability was not accommodated was not that she turned down a reasonable accommodation but that the employer failed to explain her options to her and thus did not make it "available" to her in a practical sense. The burden shifts to the employer to produce some evidence that even if he failed to consult or "interact" with her, soliciting her suggestions for a reasonable accommodation, etc., he offered her such an accommodation with sufficient clarity to make the accommodation available to her in a practical sense, so that her rejecting it was her own fault.

The principal significance of the consultative process is not that the employee is likely to come up with a reasonable accommodation if only she is consulted, but that *871 she is quite likely to turn it down and either quit or sue unless the employer explains why he can't do more to enable her to work despite her disability. That can be presumed from the employer's failure to consult but he can meet the presumption with evidence that he said enough to avoid being blamed for her failure to accept his offer.

The interpretation that we have offered of the burden-shifting consequence of the employer's failure to engage in a consultative process with a disabled employee reconciles our cases with one another and also brings us into harmony with the cases from the other circuits (all but the Ninth) that say that the burden of showing that a reasonable accommodation existed remains on the employee. See *Shapiro v. Township of Lakewood,* 292 F.3d 356, 359-60 (3d Cir.2002); *Frazier v. Simmons,* 254 F.3d 1247, 1261 (10th Cir.2001); cf. *Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1256 n. 2 (11th Cir.2001). For present purposes, however, as we are about to see, all that matters is that every court, as far as we know, agrees with *Hansen* that when no reasonable accommodation is possible the failure to jaw about accommodation is harmless. See, e.g., *Kvorjak v. Maine,* 259 F.3d 48, 53 (1st Cir.2001).

[5] The question whether the employer engaged in the required consultative process and the question whether there was a reasonable accommodation for the plaintiff's condition are often and here intertwined. The less that is available in the employer's enterprise in the way of reasonable accommodations to the employee's particular disability, the less there is to consult about with a disabled employee seeking an alternative or reconfigured job with the employer. It is evident that with no light-duty nursing positions open our plaintiff could not hold a job that required contact with patients, because, if they are heavy, as so many Americans are, she would not, limited as she is to lifting 10 pounds, be able to support them if they needed help walking (as they often do), to break their falls (which are frequent in a hospital), to help them into and out of bed, or to pick them up from the floor after they have fallen. The hospital could not be required to pair her with another nurse, or an orderly, who would follow her around to help her lift patients. See *Hansen v. Henderson, supra,* 233 F.3d at 523 ("the job that Hansen would like would be a job in which another worker does the sorting, then gives Hansen the mail to case, and then when Hansen has done that carries the cases to the truck, and Hansen then makes just curbside deliveries.... Two new jobs would have to be manufactured, one for Hansen and one for his helper. The Act does not require that"); *EEOC v. Amego, Inc.,* 110 F.3d 135, 148 (1st Cir.1997). There was no reasonable accommodation that would have enabled the plaintiff to return to her old job as a regular staff nurse.

A few nursing jobs, however, do not require patient contact, and of course finding a new job for a disabled employee is one method of accommodating the employee's disability. *EEOC v. Humiston-Keeling, Inc.,* 227 F.3d 1024, 1026 (7th Cir.2000); see 42 U.S.C. § 12111(9)(B). One of the nursing jobs that does not involve patient contact is that of "utilization nurse," whose responsibility is to "go to inpatient wards, review charts for appropriateness of treatment and then make recommendations to the chief of staff as to whether or not in their opinions these patients were being treated properly. If they

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

301 F.3d 866                                                                                                                Page 5
301 F.3d 866, 13 A.D. Cases 985, 24 NDLR P 203
(Cite as: 301 F.3d 866)

were being kept in the hospital for too long for no reason, if they were given tests that were not really related to their diagnosis, those were the kinds of things that utilization review does." Those tasks the plaintiff had the physical ability to perform, and openings for such jobs were *872 posted and she applied for them but was turned down--but was turned down for reasons unrelated to her physical condition.

She claims that her supervisor testified that there "were administrative nursing positions that Plaintiff was able to perform with her physical limitations." He had said in a letter to her that "your [physical] condition does not eliminate you for administrative Nursing positions, other than patient care areas." He testified in his deposition that what he had meant was "that there were other administrative nursing positions that may have been available or would become available, that she was still eligible to apply for those positions." She does not take issue with this explanation, which makes clear that the supervisor did not testify that she was qualified to be a utilitization nurse or any other kind of nurse that does not do any patient care. She was not *physically* disqualified, but obviously these positions require more than the ability to sit. They require professional skills and experience that she may have lacked.

But assuming that she was qualified for such a job, if nevertheless there were better-qualified applicants--and the evidence is uncontradicted that there were--the VA did not violate its duty of reasonable accommodation by giving the job to them instead of to her. *Id.* at 1026-29; Daugherty v. City of El Paso, 56 F.3d 695, 700 (5th Cir.1995); see also Williams v. United Insurance Co. of America, 253 F.3d 280, 282 (7th Cir.2001). This conclusion is bolstered by a recent decision of the Supreme Court which holds that an employer is not required to give a disabled employee superseniority to enable him to retain his job when a more senior employee invokes an entitlement to it conferred by the employer's seniority system. U.S. Airways, Inc. v. Barnett, 535 U.S. 391, ----, ---- - ----, 122 S.Ct. 1516, 1519, 1524-25, 152 L.Ed.2d 589 (2002). If for "more senior" we read "better qualified," for "seniority system" we read "the employer's normal method of filling vacancies," and for "superseniority" we read "a break," U.S. Airways becomes our case.

[6] As a matter of fact, the VA *did* accommodate the plaintiff's disability, and the accommodation was reasonable. The clerical position to which it reassigned her gave her the same net after-tax salary as she had earned as a nurse though with fewer fringe benefits and, because it did not draw on her nursing skills, fewer career advantages. It was not a perfect substitute. But an employer is not required to provide the accommodation for a disabled employee that is ideal from the employee's standpoint, only one that is reasonable in terms of costs and benefits. See Oconomowoc Residential Programs, Inc. v. City of Milwaukee, 300 F.3d 775, 2002 WL 1811325, at *7-8 (7th Cir. Aug.8, 2002); Hoffman v. Caterpillar, Inc., 256 F.3d 568, 577 (7th Cir.2001); Vande Zande v. Wisconsin Dept. of Administration, 44 F.3d 538, 542-43 (7th Cir.1995); Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259-60 (1st Cir.2001); Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580-81 (3d Cir.1998); Monette v. Electronic Data Systems Corp., 90 F.3d 1173, 1183 and n. 10 (6th Cir.1996); Borkowski v. Valley Central School District, 63 F.3d 131, 138 (2d Cir.1995). Neither of the "ideal" accommodations from the plaintiff's standpoint--restoring her to a regular nursing job with patient contact or assigning her an administrative nursing job without patient contact--was reasonable. She was not qualified for the first (and it would not have been a cost-justified accommodation to pair another employee with her to do the lifting) and not as well qualified as competing applicants for the second.

*873 [7] She has an ancillary beef, that the district judge granted the VA's motion for summary judgment before ruling on her motion to compel discovery. Ordinarily that would indeed be a no-no. Farmer v. Brennan, 81 F.3d 1444, 1449-50 (7th Cir.1996); Dean v. Barber, 951 F.2d 1210, 1213-14 (11th Cir.1992). But not in the peculiar circumstances of this case. The plaintiff's lawyer had served interrogatories on VA personnel seeking information about the existence, requirements, and availability of nursing jobs in the VA that did not involve patient care. It was because the responses were so inadequate, implying as they did that the VA had no information relevant to the inquiry, that the plaintiff's lawyer filed a motion to compel fuller answers. In response the VA offered the lawyer the individuals who had prepared the interrogatory responses, for him to depose. The offer was not particularly generous. The VA employees whom he was being invited to depose were the very ones who had failed to answer his interrogatories. How likely was it that he would extract helpful information from them by questioning them at a deposition? Not very; for he did depose them, and obtained nothing of value. The VA argues in this court that there is nothing more in its files that could help him. He

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

301 F.3d 866 Page 6
301 F.3d 866, 13 A.D. Cases 985, 24 NDLR P 203
(Cite as: 301 F.3d 866)

argues that there must be, but that is not an adequate response.

The district judge did not jump the gun and deny summary judgment before the plaintiff's lawyer had an opportunity to depose the VA witnesses or present other evidence obtainable from the VA, in which event the grant of summary judgment would indeed have been premature. There is no indication that any such evidence exists. So what the argument of the plaintiff's lawyer comes down to is that the judge should have punished the VA's foot-dragging by denying summary judgment. The failure to do this was not an abuse of the judge's discretion. *Weeks v. Samsung Heavy Industries Co., 126 F.3d 926, 943 (7th Cir.1997)*. Indeed, had the judge done what the plaintiff is asking, the punishment would have been disproportionate to the crime, since the plaintiff has not shown that she was harmed. It's not as if she were seeking reimbursement for the expense of depositions that would have been unnecessary had the VA responded adequately to the interrogatories. She is not.

AFFIRMED.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT – J

Westlaw.

200 F.3d 570                                                                                                Page 1
200 F.3d 570, 10 A.D. Cases 80, 17 NDLR P 4
(Cite as: 200 F.3d 570)

▷
United States Court of Appeals,
Eighth Circuit.
Christine TREANOR, Appellant,
v.
MCI TELECOMMUNICATIONS CORPORATION,
Appellee.
No. 99-1836.

Submitted Oct. 18, 1999.
Decided Jan. 7, 2000.

Former employee sued former employer for disability discrimination under Americans with Disabilities Act (ADA) and Minnesota Human Rights Act (MHRA). The United States District Court for the District of Minnesota dismissed suit and imposed discovery sanctions on employee and her counsel, and they appealed. The Court of Appeals, 150 F.3d 916, reversed and remanded. On remand, the District Court, David S. Doty, J., entered summary judgment for employer, and employee appealed. The Court of Appeals, Hansen, Circuit Judge, held that: (1) continuing violation doctrine did not apply to toll MHRA's statute of limitations; (2) employee could not maintain ADA claim for conduct occurring before ADA's effective date; and (3) employee failed to show that she was qualified individual with a disability, thus defeating disability discrimination claims.

Affirmed.

West Headnotes

[1] Limitation of Actions ⚖58(1)
241k58(1) Most Cited Cases
Continuing violation doctrine did not apply to toll Minnesota Human Rights Act's (MHRA) statute of limitations for employee's disability discrimination claim, despite her contention that employer's refusal to provide her with part-time work amounted to pattern of systematic denial of reasonable accommodation, where employer rejected employee's first request for part-time employment three years earlier, employee chose then to accept full-time employment, and employee was subsequently terminated after second medical leave of absence two years later when employer again rejected request for part-time schedule. M.S.A. § 363.06, subd. 3.

[2] Limitation of Actions ⚖58(1)
241k58(1) Most Cited Cases
Minnesota Human Rights Act's (MHRA) statute of limitations may be avoided by application of the "continuing violations doctrine," which tolls statute of limitations in situations where continuing pattern forms due to discriminatory acts occurring over a period of time, as long as at least one incident of discrimination occurred within the limitations period. M.S.A. § 363.06, subd. 3.

[3] Limitation of Actions ⚖58(1)
241k58(1) Most Cited Cases
Continuing violations doctrine is available to avoid Minnesota Human Rights Act's (MHRA) statute of limitations when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts, but this manifestation must be more than the mere consequences of past discrimination; the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful. M.S.A. § 363.06, subd. 3.

[4] Limitation of Actions ⚖58(1)
241k58(1) Most Cited Cases
Mere consequence of an alleged discriminatory act is not sufficient to invoke the continuing violations doctrine under Minnesota Human Rights Act's (MHRA), unless it amounts to a discriminatory act itself. M.S.A. § 363.06, subd. 3.

[5] Civil Rights ⚖1106
78k1106 Most Cited Cases
       (Formerly 78k102.1)
Employee could not maintain ADA claim based on conduct occurring before ADA's effective date. Americans with Disabilities Act of 1990, § 101, 42 U.S.C.A. § 12111.

[6] Civil Rights ⚖1217
78k1217 Most Cited Cases
       (Formerly 78k173.1)
To withstand summary judgment on disability discrimination claim, plaintiff must make out a prima facie case (1) that she is disabled within meaning of ADA, (2) that she is qualified, either with or without reasonable accommodation, to perform essential functions of the job at issue, and (3) that she suffered an adverse employment decision because of her disability. Americans with Disabilities Act of 1990, §

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

200 F.3d 570                                                                                                  Page 2
200 F.3d 570, 10 A.D. Cases 80, 17 NDLR P 4
**(Cite as: 200 F.3d 570)**

2 et seq., 42 U.S.C.A. § 12101 et seq.; Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[7] Federal Civil Procedure** ⇐2497.1
170Ak2497.1 Most Cited Cases
Summary judgment is proper on ADA claim if plaintiff fails to establish any element of her prima facie case. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[8] Civil Rights** ⇐1218(4)
78k1218(4) Most Cited Cases
   (Formerly 78k173.1)
Employee failed to show that she was qualified person with a disability, thus defeating ADA claim, despite her contention that her 15 years of experience with employer qualified her for many positions within the company, as long as they were part-time, where employer offered evidence that no part-time positions existed when employee sought work after taking medical leave, and employee proffered no evidence refuting employer's contentions, nor did she identify any job for which she actually applied or that could have been reasonably restructured to accommodate her request for part-time employment. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[9] Civil Rights** ⇐1225(2)
78k1225(2) Most Cited Cases
   (Formerly 78k173.1)
Part-time work and job restructuring may be considered reasonable accommodations under ADA, but this does not mean an employer is required to offer those accommodations in every case, as restructuring frequently involves reallocating the marginal functions of a job, and an employer is not required to reallocate the essential functions of a job. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[10] Civil Rights** ⇐1225(2)
78k1225(2) Most Cited Cases
   (Formerly 78k173.1)
ADA does not require employer to create a new part-time position where none previously existed. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[11] Civil Rights** ⇐1225(4)
78k1225(4) Most Cited Cases
   (Formerly 78k173.1)
Employee did not show that employer failed to engage in an interactive process to determine a reasonable accommodation, as required under ADA, based on employee's contention that employer did not assist her in finding a part-time job and did not allow her to use its inter-office e-mail system, where employer knew of employee's disability and of her request for part-time work, it indicated in response that no such position existed, there was no evidence that this information was false, and there was no indication that others who had lost reinstatement rights due to an extended medical leave of absence were allowed to use interoffice e-mail to search for suitable open positions. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[12] Civil Rights** ⇐1218(4)
78k1218(4) Most Cited Cases
   (Formerly 78k173.1)
To conclude that a person is qualified individual within meaning of ADA, court must consider whether the person has the requisite skill, experience, education, and other job-related requirements of the employment position that such individual holds or desires; court cannot evaluate plaintiff's qualifications in a vacuum, but must consider the specific essential functions of a particular job. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[13] Civil Rights** ⇐1218(4)
78k1218(4) Most Cited Cases
   (Formerly 78k173.1)
ADA does not prevent employer from terminating a disabled person who is not qualified to perform essential functions of a particular and available job. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[14] Civil Rights** ⇐1552
78k1552 Most Cited Cases
   (Formerly 78k242(3))
Even assuming that employee raised question of fact as to whether she was qualified, for purposes of her ADA claim, she failed to present sufficient evidence from which jury could find that she was discharged because of her disability, where employer explained that it terminated employee because she had been on an extended leave of absence, after which she was unable to find suitable work within the company due to her need for part-time position, employer presented evidence that no part-time positions existed when employee returned from leave, and employer had granted her liberal leaves of absence to accommodate her medical condition. Americans

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

200 F.3d 570                                                                                                      Page 3
200 F.3d 570, 10 A.D. Cases 80, 17 NDLR P 4
(Cite as: 200 F.3d 570)

with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.
*572 Phillip R. Krass, Bloomington, MN, argued (Timothy F. Moynihan, on the brief), for Appellant.

Gregory R. Merz, Minneapolis, MN, argued (Laura J. Hein, on the brief), for Appellee.

Before McMILLIAN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

HANSEN, Circuit Judge.

Christine Treanor brought suit against her former employer, MCI Telecommunications Corporation (MCI), alleging discrimination in employment on the basis of a disability. She now appeals the district court's [FN1] grant of summary judgment in favor MCI, and we affirm.

> FN1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

I.
Treanor began working for MCI as a special clerk in 1978. She received excellent ratings over the years, and by May 1990, she had climbed her way up the corporate ladder to the job of Senior Technical Consulting Services Manager for areas including Minnesota cities; Omaha, Nebraska; and Des Moines, Iowa. She was earning in excess of $100,000 per year. In January 1991, Treanor took her first medical leave of absence due to depression, chronic fatigue, and resulting concentration difficulties. MCI allowed Treanor to exhaust her vacation and sick leave, which she depleted by March 15, 1991. Thereafter, Treanor was absent on medical leave due to her illness for a period of approximately five months.

In August 1991, Treanor requested to return to her former position on a part-time basis and asked that the job be restructured to cover only the Minnesota territory. MCI policy allows reinstatement in the same or a comparable position for employees who have been on leave for 6 weeks (42 days) or less, but employees on leave for longer periods of time are not guaranteed reinstatement. Pursuant to this policy, Treanor was not eligible for automatic reinstatement. MCI informed Treanor that her prior position could not be split up into part-time work. MCI required Treanor to interview for a job as any other person would be required to do, unless she could obtain an unconditional release to work full-time within one week. Treanor obtained an unconditional release to work full-time, but not until the end of the month. She then interviewed for her former position over lunch one day in September 1991 but was not chosen for the job. MCI offered Treanor a lower-level position, and she returned to work full-time at MCI. Her former job of Senior Manager was not filled until December 1991.

Treanor worked full-time in the lower-level position until April 17, 1992, when she took a second medical leave of absence due to depression and fatigue. She continued on a personal leave of absence (lasting one year and four months) until August 1993, when MCI informed Treanor that she would be terminated unless she could find work within the company by August 26, *573 1993. No part-time positions were available at that time according to MCI, and Treanor did not apply for any specific job. Accordingly, MCI terminated her employment.

Treanor brought suit claiming that MCI violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213 (1994), and the Minnesota Human Rights Act (MHRA), Minn.Stat. § 363.01-363.15 (1991). She alleged that MCI engaged in a systematic pattern of disability discrimination from 1991 through 1993 by not accommodating her reasonable requests for part-time employment.

MCI moved for summary judgment. The district court granted the motion for summary judgment on the ADA and MHRA claims. The court concluded that Treanor's ADA claim failed because the 1991 conduct occurred prior to the effective date of the ADA and because she could not show she was qualified for any specific job when she attempted to return to work in 1993. As to the MHRA claims, the district court concluded that Treanor violated the MHRA's one-year statute of limitations with regard to the 1991 conduct and that the 1993 conduct failed to make out a claim for the same reasons the ADA claim failed. Treanor appeals the grant of summary judgment.

II.
We review de novo a grant of summary judgment, applying the same standards as the district court. See Callas Enter. Inc. v. Travelers Indem. Co. of Am., 193 F.3d 952, 955 (8th Cir.1999). Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the evidence, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

200 F.3d 570                                                                                                         Page 4
200 F.3d 570, 10 A.D. Cases 80, 17 NDLR P 4
(Cite as: 200 F.3d 570)

law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### A. Continuing Violations Theory

[1] The MHRA contains a one-year statute of limitations, requiring all charges of discrimination to be filed with the Equal Employment Opportunity Commission (EEOC) within one year of the alleged discrimination. See Minn.Stat. § 363.06, Subd. 3 (1991 & West Supp.1999). Treanor filed a charge of discrimination with the EEOC on January 22, 1994. The district court held that any conduct occurring prior to January 22, 1993 (one year prior to her filing with the EEOC) was barred by the one-year statute of limitations found in the MHRA. Treanor asserts that her entire discrimination claim is timely because it is based on a continuing pattern of discriminatory behavior by MCI dating back to August of 1991, when she tried to return to her former job after her first medical leave of absence, and continuing to her termination in 1993. Treanor alleges that MCI's refusal to provide her with part-time work amounted to a pattern of "systematic denial of reasonable accommodation, coupled with MCI's ultimate termination of Treanor." (Appellant's Br. at 19.)

[2][3] The MHRA's statute of limitations may be avoided by a legal theory known as the continuing violations doctrine. See *Giuliani v. Stuart Corp.*, 512 N.W.2d 589, 595 (Minn.Ct.App.1994). This doctrine tolls the statute of limitations in situations where a continuing pattern forms due to discriminatory acts occurring over a period of time, as long as at least one incident of discrimination occurred within the limitations period. See *id.* The doctrine is available when "the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Id.* (internal quotations omitted). This manifestation, however, must be more than the mere consequences of past discrimination--"the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *574*Sigurdson v. Isanti County*, 448 N.W.2d 62, 67 (Minn. 1989) (internal quotations and emphasis omitted).

Treanor alleges a pattern of discrimination beginning with MCI's failure to accommodate her with part-time work in August 1991. She asserts that MCI's refusal to grant her request for part-time employment "forced" her to return to work full-time, and in turn directly caused a relapse in her condition, necessitating her second leave of absence. She also asserts that MCI refused her request for part-time work when she tried to return in August 1993.

[4] Treanor's complaints amount to two individual instances in which MCI did not provide her with part-time employment. These instances are separated by two years and are not connected by any intervening acts of discriminatory conduct. Even assuming that Treanor has stated a claim of discrimination from MCI's refusal to create a part-time position for her in 1991 or 1993, the record simply supports no inference of continuing discriminatory conduct to justify tolling the statute of limitations on the basis of continuing violations. Although Treanor asserts that her second leave of absence was the direct consequence of MCI's initial failure to accommodate her request for part-time employment, she provided MCI with a medical release allowing her to return to full-time employment in 1991. She chose to accept MCI's offer of full-time employment, and MCI should be entitled to rely on the medical release that Treanor provided. Treanor does not allege any intervening discriminatory conduct on the part of MCI. A mere consequence of an alleged discriminatory act is not sufficient to invoke the continuing violations doctrine unless it amounts to a discriminatory act itself. See *Giuliani*, 512 N.W.2d at 596.

[5] We conclude that the district court did not err by applying the MHRA's statute of limitations unaltered by the continuing violations doctrine. As such, any alleged discriminatory conduct that occurred prior to January 1993 is beyond the scope of allowable claims under the MHRA. We note also that the 1991 conduct occurred before the ADA was effective, because the ADA rules applicable to employment did not take effect until July 1992. See 42 U.S.C. § 12111, note-Effective Date. Consequently, only the 1993 conduct can be considered when determining whether Treanor has created a genuine issue of material fact concerning discrimination under either the ADA or the MHRA.

### B. Qualified Disabled Person

[6][7] Treanor asserts that summary judgment was inappropriate because material questions of fact remain concerning whether she was a qualified person with a disability. To withstand summary judgment, Treanor must make out a prima facie case (1) that she is disabled within the meaning of the ADA, (2) that she is qualified, either with or without reasonable accommodation, to perform the essential functions of the job at issue, and (3) that she suffered an adverse employment decision because of her disability. See *Wilking v. County of Ramsey*, 153

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

200 F.3d 570  Page 5
200 F.3d 570, 10 A.D. Cases 80, 17 NDLR P 4
(Cite as: 200 F.3d 570)

F.3d 869, 872 (8th Cir.1998) (noting that claims under the ADA and MHRA are analyzed the same). "Summary judgment is proper if a plaintiff fails to establish any element of her prima facie case." *Id.* at 873.

[8] We note that the district court assumed for purposes of summary judgment that Treanor was disabled within the meaning of the ADA, and we will engage in that same assumption. The district court concluded, however, that Treanor failed to set forth facts sufficient to demonstrate that she was qualified to perform the essential functions of any specific job. The district court noted that it could not evaluate whether Treanor was a qualified individual because Treanor did not identify any particular job for which she was qualified.

Treanor asserts that she created a material issue of fact concerning whether she was qualified. Most of her argument, *575 however, is based on her application for re-employment to her former position in 1991--an incident that we have concluded is outside the scope of allowable claims in this suit. As to the August 1993 incident, Treanor asserts that she made clear her desire to obtain part-time employment, and she asserts that her 15 years of experience with MCI qualified her for many positions within the company, as long as the position was part-time. She also complains that MCI did not assist her in finding a part-time job and did not allow her to use its inter-office e-mail system.

[9][10] Under the ADA, part-time work and job restructuring may be considered reasonable accommodations. This does not mean an employer is required to offer those accommodations in every case. "Restructuring frequently involves reallocating the marginal functions of a job," and an employer is not required to reallocate the essential functions of a job. *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1112-13 (8th Cir.1995). The district court stated that MCI offered evidence that no part-time positions existed when Treanor sought work in 1993. Treanor questions the credibility of MCI's assertion that no part-time positions existed, but she has failed to proffer any evidence refuting MCI's contentions. Even assuming that the functions of her former position could have been reasonably restructured, there is no evidence that this position was available in 1993. Treanor has not specifically articulated in her brief *any* job for which she actually applied in 1993 or any job that could have been reasonably restructured to accommodate her request for part-time employment. Although her reply brief cites her deposition testimony, this testimony, at best, shows that she made some telephone calls to inquire about the availability of a position and found no openings. (*See* Appellant's App. at A-82--A-86.) Treanor apparently wanted MCI to find or make a suitable position for her, but the ADA does not require an employer to create a new part-time position where none previously existed. *See id.* at 1114; *see also Terrell v. USAir,* 132 F.3d 621, 626 (11th Cir.1998) (noting an employer is not required to carve out a part-time position where no part-time positions existed in the company).

[11] To the extent Treanor claims that MCI failed to engage in an interactive process to determine a reasonable accommodation, *see Fjellestad v. Pizza Hut of Am., Inc.,* 188 F.3d 944, 950-54 (8th Cir.1999), we conclude that Treanor failed to create a genuine question of fact in dispute on this issue. MCI knew of her disability and of Treanor's request for part-time work. In response, MCI indicated that no such position existed. There is no evidence that this information was false. There is no indication that others who had lost reinstatement rights due to an extended medical leave of absence were allowed to use the interoffice e-mail to search for suitable open positions. Treanor made no assertion that any particular suitable job was available. *Cf. id.* at 950 (finding a question of fact where the plaintiff had made a facial showing that reassignment to a particular vacant position was possible). Furthermore, Treanor created no genuine dispute that MCI acted in bad faith by not further investigating the existence of a reasonable accommodation. *See id.* at 953 (summarizing that summary judgment is inappropriate where there is a genuine dispute over whether the employer acted in good faith in considering reasonable accommodations).

[12][13] To conclude that a person is a qualified individual within the meaning of the ADA, the court must consider whether the person has "the requisite skill, experience, education and other job-related requirements of the employment position that such individual *holds or desires.*" *Weber v. Strippit, Inc.,* 186 F.3d 907, 916 (8th Cir.), (internal quotations omitted and emphasis added), *cert. denied,* 528 U.S. 1078, 120 S.Ct. 794, 145 L.Ed.2d 670 (2000); *see also Day v. Johnson,* 119 F.3d 650, 656 (8th Cir.1997) (noting in the Title *576 VII context that the court "must ask whether the job applicant was qualified for a *particular available* position") (emphasis added), *cert. denied,* 522 U.S. 1055, 118 S.Ct. 707, 139 L.Ed.2d 649 (1998). We agree with the district court's assessment that a court cannot

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

200 F.3d 570 Page 6
200 F.3d 570, 10 A.D. Cases 80, 17 NDLR P 4
**(Cite as: 200 F.3d 570)**

evaluate a plaintiff's qualifications in a vacuum but must consider the specific essential functions of a particular job. The ADA does not prevent an employer from terminating a disabled person who is not qualified to perform the essential functions of a particular and available job.

[14] Even if we assume for purposes of argument that Treanor has raised a question of whether she was qualified, she still has not presented sufficient evidence from which a jury could find that she was discharged because of her disability. MCI explained that it terminated Treanor because she had been on an extended leave of absence, after which she was unable to find suitable work within the company. The record supports this assertion; Treanor did not even apply for a position in 1993. See *Wilking, 153 F.3d at 873* ("[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.") (internal quotations omitted). "To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." *Id. at 874* (internal quotations and alterations omitted). Treanor did not create a question of fact on pretext. As the district court noted, MCI presented evidence that no part-time positions existed in August 1993. Furthermore, MCI had granted her liberal leaves of absence to accommodate her medical condition. The record in this case simply does not support an inference that Treanor was terminated because of her disability.

### III.
Accordingly, we affirm the judgment of the district court.

200 F.3d 570, 10 A.D. Cases 80, 17 NDLR P 4

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.