# EXHIBIT – K

Westlaw.

233 F.3d 521                                                                                       Page 1
233 F.3d 521, 11 A.D. Cases 306
**(Cite as: 233 F.3d 521)**

**H**

United States Court of Appeals,
Seventh Circuit.
Steve R. HANSEN, Plaintiff-Appellant,
v.
William J. HENDERSON, Postmaster General,
Defendant-Appellee.
No. 99-3952.

Argued Aug. 9, 2000.
Decided Nov. 15, 2000.

Mail carrier sued the Postal Service under the Rehabilitation Act for failure to accommodate his disability. A bench trial in the United States District Court for the Northern District of Illinois, Matthew F. Kennelly, J., resulted in a judgment for the Postal Service, and carrier appealed. The Court of Appeals, Posner, Circuit Judge, held that: (1) the Postal Service was not required to bounce one of the incumbents in light-duty jobs to make way for disabled carrier, and (2) the Rehabilitation Act did not require that the Postal Service accommodate the carrier's disability by manufacturing two new jobs, one for the carrier doing part of his former job and one for a helper.

Affirmed.

West Headnotes

**[1] Civil Rights** ☞1225(4)
78k1225(4) Most Cited Cases
(Formerly 78k173.1)
When a disabled worker has communicated his disability to his employer and asked for an accommodation so that he can continue working, the employer has the burden of exploring with the worker the possibility of a reasonable accommodation, but failure to engage in this interactive process cannot give rise to a claim for relief if the employer can show that no reasonable accommodation was possible. Rehabilitation Act of 1973, § 2 et seq., as amended, 29 U.S.C.A. § 701 et seq.

**[2] Civil Rights** ☞1225(2)
78k1225(2) Most Cited Cases
(Formerly 78k173.1)
Reassignment of a disabled worker to a job on the

employer's roster that the worker's disability does not prevent him from performing is a legitimate form of accommodation. Rehabilitation Act of 1973, § 2 et seq., as amended, 29 U.S.C.A. § 701 et seq.

**[3] Civil Rights** ☞1225(3)
78k1225(3) Most Cited Cases
(Formerly 78k173.1)
The Postal Service was not required under the Rehabilitation Act to bounce one of the incumbents in light-duty jobs to make way for disabled mail carrier, whether or not the incumbents were disabled, unless they had been put into those jobs to block the disabled carrier. Rehabilitation Act of 1973, § 2 et seq., as amended, 29 U.S.C.A. § 701 et seq.

**[4] Civil Rights** ☞1225(2)
78k1225(2) Most Cited Cases
(Formerly 78k173.1)
Firing a worker to make a place for a disabled worker is not a "reasonable
accommodation" of the worker's disability.

**[5] Civil Rights** ☞1225(2)
78k1225(2) Most Cited Cases
(Formerly 78k173.1)
The employer need not manufacture a job that will enable a disabled worker to work despite his disability; redundant staffing is not a "reasonable accommodation." Rehabilitation Act of 1973, § 2 et seq., as amended, 29 U.S.C.A. § 701 et seq.

**[6] Civil Rights** ☞1225(2)
78k1225(2) Most Cited Cases
(Formerly 78k173.1)
A disabled worker cannot demand that his employer give him a job for which there is no vacancy without shifting the worker who has that job to another job in order to create a vacancy for the disabled worker. Rehabilitation Act of 1973, § 2 et seq., as amended, 29 U.S.C.A. § 701 et seq.

**[7] Civil Rights** ☞1225(3)
78k1225(3) Most Cited Cases
(Formerly 78k173.1)
Where light duty job was not available for mail carrier whose herniated disc precluded job that would require him to walk, the Rehabilitation Act did not require that the Postal Service accommodate the disability by manufacturing two new jobs, one for the carrier doing part of his former job and one for a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

233 F.3d 521
233 F.3d 521, 11 A.D. Cases 306
(Cite as: 233 F.3d 521)

Page 2

helper. Rehabilitation Act of 1973, § 2 et seq., as amended, 29 U.S.C.A. § 701 et seq.

**[8] Civil Rights** ☜1225(2)
78k1225(2) Most Cited Cases
       (Formerly 78k173.1)
All the Rehabilitation Act required, where reassignment to a lighter job was not available, was that the employer either clear away obstacles to the disabled worker's doing his job or provide facilities that would enable the worker to do the job, and when thus accommodated the worker must be able to do the job as configured by the employer, not his own conception of the job; the law does not require a lowering of standards. Rehabilitation Act of 1973, § 2 et seq., as amended, 29 U.S.C.A. § 701 et seq.
   *522 Carl K. Turpin (argued), Chicago, IL, for Plaintiff-Appellant.

Sherri L. Thornton (argued), Office of the United States Attorney, Civil Division, Appellate Section, Chicago, IL, for Defendant-Appellee.

Before POSNER, RIPPLE, and WILLIAMS, Circuit Judges.

POSNER, Circuit Judge.

Hansen, a mail carrier working out of the Glenview, Illinois post office, sued the Postal Service for failure to accommodate his disability, in violation of the Rehabilitation Act, 29 U.S.C. § § 701 et seq. A bench trial resulted in a judgment for the defendant.

Hansen's work involved first sorting mail for about 4 hours while standing and bending over to pick up the mail to be sorted from piles on the floor or on low shelves; then placing the mail in cases or trays weighing 10 to 15 pounds each and wheeling or carrying the cases to a mail truck and loading them onto the truck; and finally delivering the mail: sometimes by parking at the end of a block and walking from house to house carrying the mail for the block in a sack (this is called "park and loop" delivery); sometimes by driving the truck to the entrance of a business and either leaving the mail for the business there or wheeling or carrying it inside ("dismount" delivery); and sometimes by placing the mail in mailboxes located along the road, without having to get out of the truck at all ("curbline" delivery).

A herniated disc conceded to be a disabling injury within the meaning of the Rehabilitation Act prevented Hansen from doing his job. Hansen asked his postmaster, Slickenmeyer, for a job that would not require him to walk. The Glenview post office does have a few such jobs, but they were filled and Hansen does not claim that his disability entitled him to bounce any of the incumbents from their jobs. Slickenmeyer inquired of the other post offices in his district on Hansen's behalf but they had no vacancies in nonwalking jobs either. He also inquired of Hansen's union but it had no suggestions and so Hansen, unable by his own account to perform a mail carrier's duties as configured by the Postal Service, was let go.

He complains that Slickenmeyer should have explored with him the possibility of restructuring his existing job so that it would not involve walking, bending, or heavy lifting. For example, if all he had had to do was case (not sort or load) the mail and deliver it curbside, he would not have had to do any significant walking or lifting. He argues that Slickenmeyer had created such light-duty jobs for other disabled workers and that Slickenmeyer should have done that for him too. The district judge found Slickenmeyer to be an *523 entirely credible witness, and concluded that *523 Slickenmeyer had done everything reasonably possible to find a job for Hansen in the Postal Service that Hansen could perform, given his back problem.

[1] When as in this case the disabled worker has communicated his disability to his employer and asked for an accommodation so that he can continue working, the employer has the burden of exploring with the worker the possibility of a reasonable accommodation. E.g., _Gile v. United Airlines, Inc._, 213 F.3d 365, 373 (7th Cir.2000); _Taylor v. Phoenixville School District_, 184 F.3d 296, 311-20 (3d Cir.1999). Failure to engage in this "interactive process" cannot give rise to a claim for relief, however, if the employer can show that no reasonable accommodation was possible. E.g., _Rehling v. City of Chicago_, 207 F.3d 1009, 1016 (7th Cir.2000); _Donahue v. Consolidated Rail Corp._, 224 F.3d 226, 233-35 (3d Cir.2000); _Willis v. Conopco, Inc._, 108 F.3d 282, 285 (11th Cir.1997) (per curiam). For then the breakdown of the interactive process would be academic. That is what the Postal Service tried to show here, and the district judge, whose findings we can reverse only if we find them to be clearly erroneous, concluded that the Service had carried its burden of persuasion.

[2][3][4][5][6] Slickenmeyer had indeed created "light duty" jobs in the Glenview post office for several other disabled employees. Apparently these

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

are jobs that Hansen could have performed notwithstanding his disability, and apparently there were similar jobs in other post offices. And reassignment of a disabled worker to a job on the employer's roster that the worker's disability does not prevent him from performing is a legitimate form of accommodation, as we noted in our decision in *EEOC v. Humiston-Keeling, Inc.*, 227 F.3d 1024 (7th Cir.2000). But all those jobs were filled. There were no vacancies in the district, and Hansen does not contend that he would have been willing to move out of the district to find a suitable postal job. The Postal Service was not required to bounce one of the incumbents in the light-duty jobs to make way for Hansen, whether or not the incumbents were as disabled as Hansen, or for that matter disabled at all, e.g., *Pond v. Michelin North America, Inc.*, 183 F.3d 592, 595 (7th Cir.1999); *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 632 (7th Cir.1998); *Willis v. Pacific Maritime Ass'n*, 162 F.3d 561, 567 (9th Cir.1998), unless they had been put into those jobs to block Hansen, which is not argued. Firing a worker to make a place for a disabled worker is not a reasonable accommodation of the worker's disability. *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir.1995). Nor must the employer manufacture a job that will enable the disabled worker to work despite his disability. E.g., *Baert v. Euclid Beverage, Ltd., supra*, 149 F.3d at 632; *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir.1996); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1174 (10th Cir.1999). That is, redundant staffing is not a reasonable accommodation. See *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1022 (7th Cir.1997); *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 950 (8th Cir.1999). This implies, though we cannot find a case, that the worker cannot demand that his employer give him a job for which there is no vacancy without shifting the worker who has that job to another job in order to create a vacancy for the disabled worker.

[7][8] The job that Hansen would like would be a job in which another worker does the sorting, then gives Hansen the mail to case, and then when Hansen has done that carries the cases to the truck, and Hansen then makes just curbside deliveries. (Presumably, then, the sorting would involve sorting only mail for curbside delivery into Hansen's mail cases.) Two new jobs would have to be manufactured, one for Hansen and one for his helper. The Act does not require that. All it requires, so far as bears on this case (and setting aside the possibility of reassignment to a lighter job not here available), **524** is that the employer either clear away obstacles to the disabled

worker's doing his job or provide facilities (such as wheelchair access) that enables the worker to do the job. When thus accommodated the worker must be able to do the job as configured by the employer, not his own conception of the job. See, e.g., *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 698-700 (7th Cir.1998); *Sieberns v. Wal-Mart Stores, Inc., supra*, 125 F.3d at 1022; *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 913 (7th Cir.1996); *Fjellestad v. Pizza Hut of America, Inc., supra*, 188 F.3d at 950; *Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 788 (8th Cir.1998). The design of the job is a prerogative of management; the law "does not require a lowering of standards." *Fink v. New York City Dept. of Personnel*, 53 F.3d 565, 567 (2d Cir.1995). Having credited Slickenmeyer's testimony that there were no vacancies in jobs that Hansen could perform, the district judge could not have gone on to find that Hansen had rebutted this testimony by inventing a job that he could have performed for the Postal Service. That is not proper rebuttal. The judgment in favor of the defendant must therefore be

AFFIRMED.

233 F.3d 521, 11 A.D. Cases 306

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT – L

Westlaw.

212 F.Supp.2d 1180                                             Page 1
212 F.Supp.2d 1180
(Cite as: 212 F.Supp.2d 1180)

**H**

United States District Court,
C.D. California,
Western Division.
Clarence J. ALLEN, Plaintiff,
v.
PACIFIC BELL, SBC Communications, and does 1
to 100, inclusive, Defendants.
No. CIV.01-04017 DT.

July 22, 2002.

Former employee brought action against former employer and parent corporation alleging violation of Age Discrimination in Employment Act (ADEA), Americans with Disabilities Act (ADA), and California Fair Employment and Housing Act (FEHA). Employer moved for summary judgment. The District Court, Tevrizian, J., held that: (1) employee was not qualified individual with disability under ADA or FEHA; (2) employee failed to show that employer's legitimate, nondiscriminatory reason for discharging him was pretext for age or disability discrimination under federal or California law; and (3) parent company was not employer liable under ADA, ADEA or California discrimination statutes.

Granted.

West Headnotes

**[1] Federal Civil Procedure** ☞665
170Ak665 Most Cited Cases
Federal rule governing service of pleadings and other papers does not require that pleadings be served on all counsel of record; rather, burden is to serve all other parties. Fed.Rules Civ.Proc.Rule 5, 28 U.S.C.A.

**[2] Courts** ☞97(5)
106k97(5) Most Cited Cases
Because California relies on federal discrimination decisions to interpret California Fair Employment and Housing Act (FEHA), California follows ADA precedent in analyzing analogous FEHA provisions. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; West's Ann.Cal.Gov.Code § 12940(a).

**[3] Civil Rights** ☞1218(4)
78k1218(4) Most Cited Cases

(Formerly 78k173.1)
Employee who was limited by his physicians to desk job or job that was primarily sitting with minimal walking and no climbing or heavy lifting could not perform his duties his former position as service technician, and, thus, was not qualified individual with disability under ADA or California Fair Employment and Housing Act (FEHA), where former position required climbing poles and ladders, lifting and carrying ladders. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; West's Ann.Cal.Gov.Code § 12940(a).

**[4] Estoppel** ☞68(2)
156k68(2) Most Cited Cases
Former employee's representations to Social Security Administration while seeking disability benefits that he was totally disabled from working judicially estopped employee from claiming that he could perform duties of his former position with accommodation for purposes of his ADA or California Fair Employment and Housing Act (FEHA) claims, absent any explanation which reconciled conflicting positions. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; West's Ann.Cal.Gov.Code § 12940(a).

**[5] Civil Rights** ☞1220
78k1220 Most Cited Cases
(Formerly 78k173.1)
Employer proffered legitimate, non-disability based reason under ADA for discharging employee by stating that he voluntarily resigned by choosing not to show up for testing in violation of employer's official job declination rules after being warned, where human resources employee called employee twice to remind him to attend testing and of consequences of not showing up for tests, employee did not attend testing and did not submit any excuse for his failure to appear. Americans with Disabilities Act, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[6] Civil Rights** ☞1204
78k1204 Most Cited Cases
(Formerly 78k170)
Employer proffered legitimate, non-discriminatory reason under ADEA for discharging employee by stating that he voluntarily resigned by choosing not to show up for testing in violation of employer's official job declination rules after being warned, where human resources employee called employee twice to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.Supp.2d 1180
212 F.Supp.2d 1180
(Cite as: 212 F.Supp.2d 1180)

Page 2

remind him to attend testing and of consequences of not showing up for tests, employee did not attend testing and did not submit any excuse for his failure to appear. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

**[7] Civil Rights** ⚖1122
78k1122 Most Cited Cases
(Formerly 78k144)
Employer proffered legitimate, non-discriminatory reason under California Fair Employment and Housing Act (FEHA) for discharging employee by stating that he voluntarily resigned by choosing not to show up for testing in violation of employer's official job declination rules after being warned, where human resources employee called employee twice to remind him to attend testing and of consequences of not showing up for tests, employee did not attend testing and did not submit any excuse for his failure to appear. West's Ann.Cal.Gov.Code § 12940(a).

**[8] Civil Rights** ⚖1209
78k1209 Most Cited Cases
(Formerly 78k170)
Comments by manager to new employee that he should not talk to the old-timers and that he was hiring younger service employees because they were cheaper, complained less and were more easily directed were insufficient to show that employer's legitimate, nondiscriminatory reason for discharging employee, that he voluntarily resigned, was pretext for age discrimination in violation of California Fair Employment and Housing Act (FEHA) or ADEA. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; West's Ann.Cal.Gov.Code § 12941.

**[9] Civil Rights** ⚖1112
78k1112 Most Cited Cases
(Formerly 78k169, 78k143)
Parent company for corporation which employed former worker was not former worker's "employer," and, thus, was not liable for employment discrimination in violation of ADA, ADEA or California discrimination statutes, where parent company exercised no more control over corporation than that exercised in typical parent/subsidiary relationship. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; West's Ann.Cal.Gov.Code § § 12940(a), 12941, 12945.2.

**[10] Federal Civil Procedure** ⚖2553

170Ak2553 Most Cited Cases
Despite employee's claim that he needed more time to respond to summary judgment motion and obtain more discovery, court would not grant continuance for these purposes; employee had already been given extra two weeks and any material from discovery would only be minimally relevant to proceedings. Fed.Rules Civ.Proc.Rule 56(f), 28 U.S.C.A.

*1182 Garo Mardirossian, Joseph M Barrett, Mardirossian & Associates, Los Angeles, CA, James Urbanic, Carney R Shegerian, Shegerian & Associates, Beverly Hills, CA, for Clarence J Allen, on behalf of himself and all others similarly situated, plaintiff.

George E Preonas, Thomas R Kaufman, Seyfarth Shaw, Los Angeles, CA, for Pacific Bell, SBC Communications, defendants.

Benjamin Nathaniel Sternberg, Shegerian & Associates, Beverly Hills, CA, for does, 1 to 100, inclusive defendant.

ORDER **GRANTING** DEFENDANTS PACIFIC BELL AND SBC COMMUNICATIONS, INC.'S MOTION
FOR SUMMARY JUDGMENT

TEVRIZIAN, District Judge.

**I. Background**

**A. Factual Summary**

This action was originally brought by Plaintiff Clarence Allen ("Plaintiff") on his own behalf and as a representative of a class against Defendants Pacific Bell ("Pacific Bell") and SBC Communications (collectively, "Defendants"). Plaintiff asserts the following claims in the Third Amended Complaint, which is the operative complaint:

1. Disability discrimination in violation of FEHA, Cal. Gov't Code § 12940(a);

2. Disability discrimination in violation of ADA, 42 U.S.C. § § 12101-12213;

3. Age discrimination in violation of FEHA, Cal. Gov't Code § 12941;

4. Age discrimination in violation of ADEA, 29 U.S.C. § § 621-634;

5. Discrimination for taking leave in violation of

212 F.Supp.2d 1180
212 F.Supp.2d 1180
(Cite as: 212 F.Supp.2d 1180)

Page 3

CFRA, Cal. Gov't Code § 12945.2.

The following facts are undisputed [FN1]:

> FN1. In setting forth these undisputed facts, this Court has considered Defendants' Statement of Uncontroverted Facts and Conclusions of Law and Plaintiff's Statement of Genuine Issues in Opposition to Motion, as well as all supporting documents.

## Nature of Pacific Bell's Business

Pacific Bell provides telephone service to business and residential customers throughout California. To accomplish that goal, Pacific Bell employs approximately 45,000 employees who are organized and assigned to dozens of different job classifications, each with different duties. For example, to perform work related to establishing or repairing telephone service to a customer, Pacific Bell employs (1) Services Technicians, some of which actually go to a customer's home or business to install the wiring which connects the customer to Pacific Bell's network, or physically repair problems with the wiring between the customer's home and the central office; (2) Facilities Administrators who work in desk jobs troubleshooting problems that can be repaired through computers without physically leaving the office; (3) Maintenance Administrators who also work in a desk job and receive repair orders, look into the source of the trouble, and identify whether the problem should be repaired by a Services Technician or a Facilities Administrator; and (4) Service Representatives who take telephone calls from customers for new or changed service, and schedule appointments for customers with Services Technicians. While these four jobs are all different, they all work together toward the same goal of bringing dial tone to all Pacific Bell's customers.

The employees who install and repair telephone service are part of a collective bargaining unit represented by the Communications Workers of America ("CWA"). *1183 The job classifications of Services Technicians, Facilities Administrator and Maintenance Administrator have all been established through collective bargaining and are set forth in the collective bargaining agreement between the CWA and Pacific Bell. That agreement specifies not only the job classifications but also the pay rates associated with each job classification, along with the seniority and transfer rights of the employees in the bargaining unit.

## Plaintiff's Services Technician Job at Pacific Bell

Plaintiff began working for Pacific Bell in 1974, and continued to work for Pacific Bell approximately 25 years, until his employment terminated November 3, 2000. For the last twelve years of Plaintiff's employment at Pacific Bell, he worked in the job of Services Technician, and at all times relevant to this case, he was assigned to Pacific Bell's Pasadena garage, working five days per week, eight hours per day. Another thirty to forty Services Technicians also worked out of the Pasadena garage.

Services Technicians' primary responsibility is to connect phone service for Pacific Bell customers, bringing dial tone from the telephone terminals throughout California to residential and business customers. Services Technicians are also charged with the duty of repairing phone service when it goes down. As such, all Services Technicians are expected to be able to complete the customer installations or repairs that arise each day.

The telephone network connects each individual customer to a local "terminal" that typically serves ten to twenty homes. These terminals are typically located atop a telephone pole or in an underground vault. Depending on the situation encountered at a particular home or business, completion of the service or repair order could require climbing poles or ladders, crawling under houses or in narrow crawl spaces, and varying degrees of heavy lifting. Plaintiff admits that he could be assigned to work anywhere in Southern California, and "some days they ship you all over town," and that he did not know exactly what a job would entail until he arrived at the account.

The official job description for the Services Technicians position expressly states that they are required to be available to perform physically tasking work, including climbing poles and ladders. The job description states that Services Technician is a "Class II Physical" position, meaning physically demanding. It also states that Services Technicians are required to pass a Pole Climbing Training Test to qualify for the job, showing that Pacific Bell considered pole climbing so essential to the Services Technician position that no one was allowed to do it without a climbing certification. The second page of the job description further reiterates the need to climb where it states the Services Technicians "climb ladders (maximum 32 feet), poles and aerial platforms" and that the job requires "lifting, carrying and extending ladders."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.Supp.2d 1180                                                                Page 4
212 F.Supp.2d 1180
(Cite as: 212 F.Supp.2d 1180)

Plaintiff admits that when he worked as a Services Technician he was required to climb up telephone poles to access terminals about once each day. Indeed, where Plaintiff was asked on an application for Social Security Disability benefits "What do you do all day in this job," Plaintiff wrote "climbing, lifting, crawling," and further specified that he typically climbed 1-1/2 hours each day, crawled two hours each day, frequently lifted more than 50 pounds and sometimes more than 100 pounds. In addition, Plaintiff admits that his supervisors repeatedly told him that he was hired to work eight hours a day and that would be wherever Pacific Bell decided to assign him and that he had no right *1184 to work in a set territory or on a particular job. Plaintiff further admits that he was required to perform overtime work wherever problems arose after a rainstorm or other natural disaster struck some part of Southern California. Indeed, that job requirement is noted in the very first paragraph of the official job description which states that Services Technicians may be "subject to emergency callout and extended periods of mandatory overtime during adverse weather conditions and emergency restorals." In other words, if a severe rainstorm or other natural disaster hits Southern California, Services Technicians are expected to go wherever lines are down and restore telephone service. After larger rainstorms, even managers with pole climbing certification are sent out to help restore interrupted telephone service.

Services Technicians are assigned both "service" and "repair" orders. Service orders are where customers request that Pacific Bell provide them with new or changed telephone service. Repair orders are where customers report to Pacific Bell that their phone service is not working properly. A Router in the control center uses an automated system which sorts and distributes the work among the Services Technicians, and distribute "tickets" to the Service Technicians setting for the several various orders they would be expected to perform on a given day. To improve efficiency and productivity, an effort is made to assign job tickets in geographic proximity to one another. Plaintiff's workload was roughly evenly split between service orders and repair orders, and he admits that he could not be certain exactly what work would be required on an order just from looking at the "ticket." The uncertainty of what work would be required on a particular order is especially true for repair orders because the Services Technician does not always know the cause of the problem until he actually arrives at the customer's home and examines

the situation. Interruption to the telephone service could be caused by a problem inside the house, at the terminal which leads to the house, at the "B-box" that feeds multiple terminals, or anywhere in between those places.

The terminal which leads to an individual's home or business is often located atop a telephone pole, but it can also be located in other places. In some instances the terminal is located in an underground vault. To access these underground terminals, the Services Technician must first lift a heavy manhole cover and then climb down a ladder. Each Services Technician also carries a 32 foot ladder on his truck, which is used to attach or repair telephone wires from the telephone pole terminal to the house. Installing or repairing telephone lines at a home or business might also require accessing a crawl space under the home and related physical work. Even when not climbing or crawling, the job requires continuous standing, walking, bending or lifting.

Pacific Bell contends that serious customer service problems could arise from allowing people who could not climb to continue to work as Services Technicians. Customers generally need to reserve either the entire morning or afternoon to wait for their service appointments. If a Services Technician were unable to climb and it turned out that an order required climbing, the Services Technician would not be able to perform the work. That would result in customers having wasted half of the day and would require Pacific Bell to waste its scarce resources sending other Services Technicians out to cover the assignment.

**Plaintiff's Chronic Alcoholism Triggers a Lengthy Medical Leave**

In May 1999, Plaintiff had to be hospitalized for twenty-two days as a result of internal bleeding and liver damage caused *1185 by his excessive drinking. Plaintiff began a lengthy medical leave, during which he applied for and received short term disability ("STD") benefits under a benefit plan provided by Pacific Bell. When he applied for these benefits, Plaintiff's case was managed by Pacific Bell's Disability Assistance Program or "DAP."

To qualify for STD benefits, Plaintiff needed to establish that his condition rendered him unable to perform his Services Technician job duties. To make the determination that he was entitled to STD benefits, DAP assigned a Case Manager, Lisa Perla, R.N., to oversee Plaintiff's file. Perla was charged

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.Supp.2d 1180
212 F.Supp.2d 1180
**(Cite as: 212 F.Supp.2d 1180)**

with the duty of determining whether those limitations were severe enough to qualify Plaintiff for continued disability benefits.   As part of her case management duties, Perla received periodic reports from Dr. Lim and other physicians treating Plaintiff concerning his medical condition.   She used her nursing expertise to review these records looking toward how Plaintiff's condition limited him.   She also consulted with medical doctors on the DAP staff for questions that were beyond her expertise.   The medical records state that Plaintiff had suffered severe liver damage, requiring that a shunt be placed, and that Plaintiff continued to experience symptoms of weakness, forgetfulness, tremors, and edema. After Plaintiff's initial hospitalization, he regularly consulted with his doctor, Paul Lim, M.D., to make sure his internal bleeding did not resume.   Based on the medical records and the doctors' opinions that Plaintiff could not return to work, Plaintiff qualified for an award of STD benefits.

Short term disability benefits for Pacific Bell employees are available for a maximum of one year, and Plaintiff's were set to expire in June 2000.   To continue to receive disability pay, Plaintiff would have been required to qualify for Long Term Disability ("LTD") benefits.   The standard to qualify for LTD benefits was stricter than for STD benefits, requiring the employee to show that he could not work at all.

**Doctors Evaluating Plaintiff Determine That He Can Work, But Only in a Desk Job**

In the Spring of 2000, DAP received medical information concerning Plaintiff's condition both from Dr. Lim and from Jonathan Greenberger, M.D., an independent medical examiner.   Dr. Greenberger sent a letter to DAP on April 28, 2000 in which he concurred that, as a result of the symptoms attendant to Plaintiff's substantial liver disease, he was not "capable of pole climbing or working on ladders," but rather was only "capable of sedentary work, mainly sitting, with minimal walking."   Plaintiff's treating physician, Dr. Lim, sent similar information to DAP, including a May 16, 2000 letter stating that Plaintiff should "permanently work in that type of capacity." Because the two doctors who examined him concurred that Plaintiff was capable of working, Plaintiff was found not to qualify for LTD benefits. But since the Services Technician job was not a desk job, Pacific Bell determined that, to continue working for Pacific Bell, Plaintiff would need to work in a different job.   To accomplish that goal, a meeting was scheduled for June 2000 to discuss Plaintiff's

back-to-work options.

**Pacific Bell attempts to Find Plaintiff a Job at Pacific Bell Within His Restrictions**

The CBA between Pacific Bell and Plaintiff's union, the CWA, establishes an Automated Upgrade and Transfer System whereby all employees can bid on vacant positions in other classifications.   Under this system, Pacific Bell's staffing department matches requests by employees for transfer or promotion to requisitions that identify job vacancies.   The CBA provides *1186 for seniority preference in filling these vacancies, but provides first priority, regardless of seniority, to "qualified medically restricted employees." Plaintiff, who was released by his doctor to return to work, but was restricted by his doctor to a "desk job," was treated as a "qualified medically restricted employee," with priority for job bidding under the CBA.

On or about June 12, 2000, Plaintiff attended a meeting at the Pasadena garage with his front-line supervisor, his union representatives, and a job search Case Manager, Kathleen Davis, who conducted the meeting by telephone. Plaintiff was informed at this meeting that since his doctors precluded him from returning to his former duties that a thirty-day job search would commence to try to find him another job at Pacific Bell. Nobody at this meeting told him that Pacific Bell would be looking for another Services Technician job for him.     Plaintiff was provided a handout at this meeting that outlined the job search process, and Davis also explained the process in more detail.   Plaintiff was informed that the first step of the job search was that Pacific Bell's staffing department would match him to any jobs that came available that were within his medical restrictions, some jobs that might be offered pending his passing a qualification test—such as a typing or computer keyboarding test—to establish that he was, in fact, qualified for the job.     Davis expressly informed Plaintiff that if he was matched to a job pending passing tests, then the job would be held open until he had an opportunity to take the tests.

A key element of the job search process that was expressly set forth in the job search handout was the "job declination rules," which were rules concerning the restrictions on a medically restricted employee rejecting his jobs once matched to them.     The job search handout explained that jobs were divided into three categories: Category "A" were lateral transfer jobs that Plaintiff could commute to; Category "B" were either downgrade jobs or jobs that required

212 F.Supp.2d 1180
212 F.Supp.2d 1180
**(Cite as: 212 F.Supp.2d 1180)**

Page 6

Plaintiff to relocate; and Category "C" were jobs that were both a downgrade and required him to relocate. Pursuant to the written declination rules, if Plaintiff declined one job in Category "A," two jobs in Category "B," or eight in Category "C," he would be deemed to have voluntarily resigned his employment. In addition, as Davis informed Plaintiff, if he was matched to a job pending some testing, but he failed to appear for the testing, that too would be deemed a declination of a job offer. But, if Plaintiff simply took a test while matched to a job and failed that test, it would not be deemed a declination, and the job search would continue as if Plaintiff had never been matched to that job at all. Plaintiff was told that if he was matched to a job, and passed all the required qualification tests, he would then receive an official "job offer" which he would have forty-eight hours to decide whether to accept or reject. The job search handout also stated that if Plaintiff took a job that was in a lower pay grade, his salary would be "red circled" for one year, meaning that he would continue to receive his higher, Service Technician salary for a full year, whatever the new position's normal pay rate. In addition, the job search handout stated that, if at any time during this red circle period, Plaintiff recovered such that his work restrictions were removed, he would be entitled to request a transfer back into his Services Technician job.

### The Initial Job Search Is Unsuccessful

Plaintiff's thirty-day job search commenced on July 3, 2000. The only jobs Pacific Bell searched for were ones within the medical restrictions the two doctors had agreed were appropriate. The first job Plaintiff was matched with was a Service *1187 Representative position, which was a downgrade commutable position (Category "B"). Plaintiff was matched to the job pending his passing a "Service Representative Test," but he did not pass that test, so he did not receive a formal job offer. At the end of thirty days, Plaintiff had not been matched to any jobs for which he was able to pass the qualification tests.

### Pacific Bell Undertakes a Second Job Search for Plaintiff

Because there had been an unusually small number of jobs available during Plaintiff's thirty-day job search, Davis requested and Pacific Bell approved a second thirty-day job search for Plaintiff that job search commenced on October 5, 2000, meaning that it was set to last until at least November 4, 2000. Within a week, Plaintiff was matched to a vacant

Maintenance Administrator position located in Pasadena near his home. This was a job for which Plaintiff automatically qualified. On or about October 11, 2000, Wayne Harrell, a Staffing Department manager responsible for non-management staffing, contacted Plaintiff and left him a voicemail message formally offering an Maintenance Administrator job with no further testing required. When Plaintiff did not initially call Harrell back, Davis attempted to contact Plaintiff and left him voicemail messages confirming that Plaintiff should call Harrell as soon as possible. But Plaintiff never called Harrell back, so he ultimately was deemed to have declined the job offer pursuant to the job search rules. The accuracy of these facts is confirmed by Davis' contemporaneous notes and the paperwork generated when the formal job offer was made. The Maintenance Administrator position offered to Plaintiff was a Category "B" position, and under the declination rules, a single declination of a Category "B" job did not constitute an automatic resignation, so Plaintiff's job search continued.

### Plaintiff Intentionally Fails to Appear for Testing and Resigns His Employment

On or about October 23, 2000, Plaintiff was matched to a Facilities Administrator job in Alhambra, which was a Category "A" job. The Facilities Administrator job is to troubleshoot and diagnose problems with telephone services and to interface with the Services Technicians in allocating available and unused lines that can be used to establish service to customers. As with a Services Technician job, it requires knowledge of how the individual customers are physically connected to the central office. But unlike the Services Technician job, it is performed indoors, at a desk. The pay rate for the two jobs is identical, and Plaintiff would have carried all of his seniority with him to the Facilities Administrator job. Moreover, since Plaintiff lived in Pasadena, the commute to the job would have been only a short distance.

To obtain a formal job offer, Plaintiff needed only to pass a basic Microsoft Word and keyboarding test, which he was initially scheduled to take on October 24. If he took the test and failed it, the job search would have continued as if he had never been matched to the position. When Davis called Plaintiff and informed him of the testing, Plaintiff informed her that he could not take the test on October 24, claiming he had a dentist appointment scheduled that day. To accommodate Plaintiff, the testing was rescheduled to October 27, and Davis left Plaintiff a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.Supp.2d 1180                                                            Page 7
212 F.Supp.2d 1180
**(Cite as: 212 F.Supp.2d 1180)**

voicemail message on October 24, telling him about the change. In the October 24 voicemail message, Davis expressly reminded him of the fact that, under the job search rules he had been given at the outset of the job search, failure to take the test would be considered a declination of the position which would lead to his being deemed to have resigned from Pacific Bell. *1188 Two days later, on October 26, Davis left Plaintiff a second reminder message concerning the testing and the consequences that would result if he failed to show up for the test. Specifically, she reminded him that failure to show up for the test would be deemed a declination of the job, and since this was a Category "A" position, his declination would be deemed a voluntary resignation. Plaintiff admits he received both the October 24 and October 26 phone messages before the testing was set to begin. Nonetheless, Plaintiff did not even show up for the testing. His only excuse is that he claims to have believed he would have failed the tests.

Because Plaintiff did not show up for the testing, just as Davis had warned him, he was deemed to have declined a Category "A" job and, thus, deemed to have resigned his employment. Davis left Plaintiff a phone message on October 30, 2000 informing him that his failure to show up at the testing was tantamount to a voluntary resignation, but that Plaintiff could call her if he had any information that he thought Davis should be aware of. The message also said that he would be receiving a letter with some further details at the end of the week. Plaintiff received this message as well, but never returned Davis' call.

On November 3, 2000, Davis sent Plaintiff a letter recounting the key events that had occurred during the job search, and explaining that, pursuant to the job search rules that had been explained to him at the outset of the job search, he had been deemed to have resigned his position. Plaintiff never contacted Davis after receiving this letter. Furthermore, he never attempted to file a grievance with his union challenging the termination of his employment as wrongful.

### Plaintiff's Decision to Sue and Seek Social Security Disability Benefits

In or about June 2000, at approximately the same time that Plaintiff applied for Long Term Disability Benefits from Pacific Bell, he also applied for Social Security Disability ("SSD") benefits. On the Social Security application, Plaintiff represented under oath that he could not work at all, and agreed that if his condition improved so that he could work, he would notify the Social Security Administration immediately.

In August 2000, the Social Security Administration informed Plaintiff that he qualified for benefits effective December 1999 (five months after he became totally disabled) in the amount of $1,581.00 per month. Plaintiff has continued to receive SSD benefits up until the present.

Defendants contend that the apparent reason Plaintiff ignored Davis' repeated telephone calls was that he had elected to file this lawsuit rather than accept the potential lateral transfer. This inference arises from the fact that Plaintiff's lack of cooperation coincides almost exactly with, October 17, 2000, which is when he contacted an attorney and filed a charge of discrimination with the EEOC alleging failure to accommodate his disability.

### Plaintiff's Allegations of Age and Medical Condition Discrimination

Plaintiff also alleged in the Complaint that he was fired because of his age and because he took a medical leave. Plaintiff believes he was discriminated against on the basis of his age because it seemed to him that Pacific Bell was hiring a lot of young Services Technicians. His only basis for believing that his termination had something to do with his medical leave is that he never got his job back after he went out on leave.

### *1189 SBC Communications, as the Parent of Pacific Bell, Was Never Plaintiff's Employer

Pacific Bell is a separate corporation from SBC Communications, Inc. ("SBC"), maintaining separate offices, facilities, human resources professionals, accounting, financial staff, and boards of directors from SBC. As a subsidiary, Pacific Bell reports its financial results to SBC. However, Pacific Bell is managed and operated solely by persons working for Pacific Bell. Pacific Bell has a workforce separate from SBC, and has its own human resources department. SBC and Pacific Bell maintain separate payroll records for their respective employees, pay federal and state employment taxes separately, process their payrolls and deduct payroll taxes separately, separately issue W-2's, and have separate federal tax identification numbers. SBC and Pacific Bell maintain separate records relating to disbursements and issue separate 1099's to their respective independent contractors, vendors, and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.Supp.2d 1180
212 F.Supp.2d 1180
**(Cite as: 212 F.Supp.2d 1180)**

suppliers.    Pacific Bell alone makes all decisions regarding the hiring and work assignments of its employees.    SBC does not exercise day-to-day control over Pacific Bell's employees.

**B. Procedural Summary**

On January 16, 2001, Plaintiff filed the Complaint in the Superior Court of the State of California, County of Los Angeles.

On April 30, 2001, Plaintiff filed the First Amended Complaint in the Superior Court of the State of California, County of Los Angeles.

On May 2, 2001, Defendants filed a Notice of Removal to this Court.

On May 4, 2001, Defendants filed a Motion to Strike or Dismiss Class Action Allegations from the Complaint and to Dismiss Claims for Age Discrimination.

On May 7, 2001, Defendants filed Amendment to Notice of Removal.

On May 7, 2001, Plaintiff filed a Demand for Jury Trial.

On May 8, 2001, this Court issued its Standing Order with Regard to Newly Assigned Cases.

On May 15, 2001, Defendants filed Amendment to Notice of Removal.

On June 5, 2001, Defendants filed a Notice of Errata directing the Motion to Strike or Dismiss Class Allegations from the Complaint and to Dismiss Claims for Age Discrimination at the First Amended Complaint.

On June 5, 2001, Plaintiff filed an Opposition to Defendant's Motion to Strike or Dismiss Class Action Allegations from the First Amended Complaint and to Dismiss Claims for Age Discrimination.

On June 8, 2001, Defendants filed a Stipulation Granting Defendants' Motion to Strike or Dismiss Class Action Allegations from First Amended Complaint and to Dismiss Claims for Age Discrimination With Leave to Amend.

On June 22, 2001, Plaintiff filed his Second Amended Complaint.

On July 6, 2001, Defendants filed a Motion to Strike or Dismiss Class Action Allegations from the Second Amended Complaint.

On July 30, 2001, the Court granted without prejudice and with leave to amend Defendants' Motion to Strike or Dismiss Class Action Allegations from the Second Amended Complaint.

On August 29, 2001, Plaintiff filed his Third Amended Complaint.

On September 6, 2001, the Court filed an Order to continue the deadline for Defendants to respond to the Third Amended Complaint.

On September 24, 2001, Defendants filed a Notice of Motion and Motion to Strike or *1190 Dismiss Class Action Allegations from the Third Amended Complaint.

On October 30, 2001, this Court entered an Order Granting in Part With Prejudice and In Part Without Prejudice and With Leave to Amend Defendants Pacific Bell and SBC Communications' Motion to Strike or Motion to Dismiss Class Action Allegations From Plaintiff Allen's Third Amended Complaint.

On November 9, 2001, Plaintiff filed a Notice of Appeal of the above Order entered on October 30, 2001.

On December 11, 2001, Defendants filed an Answer to Third Amended Complaint.

On January 3, 2002, the Ninth Circuit filed an Order dismissing Plaintiff's appeal.    Said order was filed and spread upon the minutes of this Court on January 11, 2002.

On February 11, 2002, this Court held a Scheduling Conference and set the following dates:  discovery cut-off of September 20, 2002;  pretrial conference of November 25, 2002;  and jury trial of January 7, 2003.

On March 19, 2002, this Court ordered Defendants' Motion to Strike or Dismiss Class Action Allegations from the Complaint and to Dismiss Claims for Age Discrimination filed on May 4, 2001 off calendar.

On May 6, 2002, the Ninth Circuit issued an Order granting Plaintiff's petition for permission to appeal this Court's Order of October 29, 2001 denying class action certification.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 9

[1] On May 17, 2002, Defendants filed a Motion for Summary Judgment or Partial Summary Judgment, which is currently before this Court. [FN2]

> FN2. The hearing on this motion was originally scheduled for June 24, 2002; however on that date, one of Plaintiff's counsel, Mr. Joseph Barrett, stated that he was not served with a copy of the motion and that the law required service of each and every counsel. Based on this representation, this Court continued this matter to this date to allow Mr. Barrett to file an opposition. It appears that Plaintiff's counsels' representations to this Court were disingenuous. First, Federal Rule of Civil Procedure 5 does not required that pleadings be served on all counsel of record; rather, the burden is to serve all other *parties. See Daniel International Corp. v. Fischbach & Moore, Inc., 916 F.2d 1061, 1063 (5th Cir.1990)* ("[Appellant] argues that Rule 5(a) and (b) require that pleadings be served on all counsel of record. We disagree. The burden is to serve all other parties. This does not require service on each of several counsel appearing on behalf of a party.") "[S]ervice upon one, but not all, of its counsel is effective service." *Id.* Indeed, this Court stated at the prior hearing that service on one is service on both since both represent the same Plaintiff. As Plaintiff's other counsel, Mr. Shegerian, was served with the motion for summary judgment, service was proper, and it is curious why Mr. Shegerian never shared the motion with co-counsel. Second, this Court continued the hearing on this motion based on counsel's representation that the unserved counsel wanted an opportunity to file an opposition brief. This Court is in receipt of the additional opposition papers filed on behalf of Plaintiff, and these papers are signed by Mr. Shegerian, who is the served counsel. Because Mr. Shegerian failed to file an opposition previously, as was noted by this Court in its previous tentative ruling, it appears that Plaintiff's counsels' representations that the unserved counsel wanted to file an *additional* brief was in reality a desire by Mr. Shegerian to file *a* brief. This Court made clear at the prior hearing that Mr. Shegerian did not get an additional opportunity to file a pleading; "it

only gives counsel for Madirossian's firm who represented the Plaintiff." Contrary to Plaintiff's representations, this Court only stated that an opposition should be *filed* jointly. Nonetheless, in spite of the above, this Court has considered all papers filed by both parties with respect to this motion.

On May 17, 2002, Plaintiff filed an Ex Parte Application to Stay the Case Pending Plaintiff's Appeal in the United States Court of Appeal for the Ninth Circuit.

On May 21, 2002, this Court denied Plaintiff's Ex Parte Application to Stay the *1191 Case Pending Plaintiff's Appeal in the United States Court of Appeal for the Ninth Circuit.

On May 23, 2002, the Ninth Circuit issued an Order denying Plaintiff's emergency motion to stay the District Court proceedings pending appeal.

**II. *Discussion***

**A. *Standard***

Under the Federal Rules of Civil Procedure, summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).* If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. *See id.;* Fed.R.Civ.P. 56(e).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. *See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).* Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *See Anderson, 477 U.S. at 250-51, 106 S.Ct. at 2511.* The non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders her claim implausible. *See Matsushita Electric*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.Supp.2d 1180                                                                                          Page 10
212 F.Supp.2d 1180
(Cite as: 212 F.Supp.2d 1180)

*Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, mere disagreement or the bald assertion that a genuine issue of material fact exists no longer precludes the use of summary judgment. *See Harper v. Wallingford*, 877 F.2d 728 (9th Cir.1989); *California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987).

If the moving party seeks summary judgment on a claim or defense on which it bears the burden of proof at trial, it must satisfy its burden by showing affirmative, admissible evidence.

Unauthenticated documents cannot be considered on a motion for summary judgment. *See Hal Roach Studios v. Richard Feiner and Co.*, 896 F.2d 1542, 1550 (9th Cir.1989).

On a motion for summary judgment, admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. *See* Fed.R.Civ.P. 56(e). Declarations on "information and belief" are inappropriate to demonstrate a genuine issue of fact. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).

**B. *Judicial Notice***

Plaintiff filed a Request for Judicial Notice in Opposition to this Motion. Specifically, he requests this Court to take judicial notice of 22 of the exhibits he filed in support of his opposition.

A court must take judicial notice if a party requests it and supplies the court with the requisite information. Fed.R.Evid. 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to **1192** sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). This Court may take judicial notice of its own records, and documents that are public records and capable of accurate and ready confirmation by sources that cannot reasonably be questioned. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986) (courts may take judicial notice of matters of public record outside the pleadings); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980) (courts may take judicial notice of their own records).

Plaintiff asks this Court to take judicial notice of the documents listed in his Notice, which include deposition testimony from another case, trial testimony from another case, deposition testimony in this case, discovery obtained on another case, and documents filed in this case. Generally, Plaintiff's request is unnecessary. This is because this Court can take judicial notice of the fact that these documents exist only. If Plaintiff wants this Court to take judicial notice of certain facts contained in the documents, then Plaintiff must set forth precisely what facts contained in these documents he wants this Court to take judicial notice of, if any. Thus, for the limited purpose discussed, this Court takes judicial notice.

**C. *Analysis* [FN3]**

> FN3. Defendants filed Objections to Plaintiff's Evidence Submitted in Opposition to this Motion. This Court addresses certain objections in its analysis as they arise within the context of the discussion. With respect to the remainder of the objections not addressed, they are deemed moot.

**1. Defendants are entitled to summary judgment with respect to Plaintiff's disability discrimination claims**

In his disability discrimination claims based on failure to accommodate, Plaintiff contends that Pacific Bell could have accommodated him within his position as a Services Technician by restructuring the job. Defendants argue that they are entitled to summary judgment because the undisputed evidence establishes that Plaintiff was not a qualified individual with a disability, either because he was not qualified, he was not disabled, or both.

[2] To prevail on his disability discrimination claims, Plaintiff must show that (1) he suffered from a disability, (2) he was qualified to do his job, either with or without reasonable accommodation, and (3) his disability was a motivating factor in his termination. *See Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir.1999); *Deschene v. Pinole Point Steel Co.*, 76 Cal.App.4th 33, 44, 90 Cal.Rptr.2d 15 (1999). Plaintiff has the initial burden of establishing that he was a "qualified individual with a disability," meaning that "with or without reasonable accommodation, he [could] perform the essential functions of the employment position" at issue. *Weyer v. Twentieth Century Fox*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Film Corp.*, 198 F.3d 1104, 1108 (9th Cir.2000). [FN4] If a plaintiff cannot show he is a qualified individual with a disability, the defendant is entitled to summary judgment on the failure to accommodate claim. *Id.*

> FN4. Because California relies on federal discrimination decisions to interpret the FEHA, California follows ADA precedent in analyzing analogous FEHA provisions. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 271 (9th Cir.1996).

**a. Plaintiff could not perform the essential functions of his prior position with or without reasonable accommodation**

[3] It is undisputed that all the medical evidence submitted to Pacific Bell stated that Plaintiff could work only in a desk job or a job that was "primarily sitting, with minimal walking." Both doctors stated *1193 that Plaintiff could not climb poles or ladders or engage in heavy lifting. Pacific Bell could properly rely on the opinions Plaintiff's doctors provided Pacific Bell concerning his medical condition in deciding what work Plaintiff was capable of performing. *See Hanson v. Lucky Stores, Inc.*, 74 Cal.App.4th 215, 228, 87 Cal.Rptr.2d 487 (1999) ("The ADA guidelines and logic indicate that an employer may use the opinions of physicians and others to gauge the employee's abilities and limitations."); *Stafne v. Unicare Homes*, 266 F.3d 771, 774 (8th Cir.2001) (employer entitled to rely on medical opinions from plaintiff's own doctors "that she needed a 'totally sedentary sit-down job' and was qualified for 'seated work only.' "); *Weigel v. Target Stores*, 122 F.3d 461, 467 (7th Cir.1997) (employer entitled to rely on opinions submitted by plaintiff's own doctor in determining whether she was qualified to continue working in her position despite her medical impairment). In addition, Plaintiff admits that he never submitted any evidence to Pacific Bell before he was discharged suggesting that those restrictions ceased to apply. Thus, it is undisputed that Plaintiff was incapable of performing anything other than a desk job.

In his Opposition, Plaintiff argues that he was qualified to work as a Services Technician with his disability under six different scenarios with minimal reasonable accommodation. (*See* Opposition, pp. 11-15.) Specifically, he argues that by July 1, 2000, he was able to work in any job that did not involve climbing. Defendants respond that none of the evidence relied upon by Plaintiff shows that his

doctors told Pacific Bell that his desk job restriction had been removed. This Court agrees with Defendants.

First, Plaintiff submits a recent letter from Dr. Lim, dated May 3, 2002, and a declaration signed by Dr. Lim on July 5, 2002. Dr. Lim states in his new opinion that Plaintiff's only medical restrictions as of July 1, 2000 were as to climbing. However, Dr. Lim never states, and Plaintiff never shows, that this opinion was shared with Pacific Bell before Plaintiff filed this lawsuit. Indeed, both of these documents were created some two years after the fact. [FN5] As such, it remains undisputed that Dr. Lim's last communication to Pacific Bell was his letter of May 16, 2000 in which he stated that Plaintiff could never again work in anything other than a desk job:

> FN5. Plaintiff also relies on a form dated May 16, 2000 that Dr. Lim sent to the Employment Development Department stating that Plaintiff could return to his customary work on July 1, 2000. However, Plaintiff has failed to show that this form was ever disclosed to Pacific Bell during Plaintiff's employment.

The patient is unsafe and unfit to do any other type of work, except a desk job.... I find that he would do okay with a desk job and at this point, recommendations are for him to permanently work in that type of capacity.
(*See* Perla Decl., ¶ 7; Defendants' App. of Evid., p. 16, Exh. N.) In addition, as set forth above, Dr. Lim's letter was wholly consistent with the opinion of the independent medical examiner, Dr. Greenberger, whose letter of April 28, 2000, states that Plaintiff was only "capable of sedentary work, mainly sitting, with minimal walking." (*See id.* at Exh. M.)

Plaintiff also relies a May 19, 2000 letter written by Plaintiff's Pacific Bell disability case manager, Lisa Perla, to Plaintiff, stating that Plaintiff was not eligible for long term disability because Plaintiff has "been found able to work with restrictions." Plaintiff argues that this confirms that Pacific Bell knew he was capable of working with his medical restrictions. Plaintiff offers no evidence to show that the restrictions *1194 referenced in that letter refer to climbing. Instead, this letter is consistent with Pacific Bell's position that Plaintiff could work, but only in a desk job. It is consistent with Ms. Perla's opinion in writing on the DAP assessment form that Plaintiff could work only in a "sitting assignment." This was the conclusion that triggered the alternative

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.Supp.2d 1180                                                                    Page 12
212 F.Supp.2d 1180
(Cite as: 212 F.Supp.2d 1180)

job search for Plaintiff in the first place. (*See* Davis Decl. ¶ ¶ 5-7, Defendants' App. of Exh., Exh. D.)

In addition, as Defendants argue, Plaintiff does not dispute that Pacific Bell explained to Plaintiff that if he presented medical evidence showing that his work restrictions had been removed, he could qualify for a transfer back to his former position. Plaintiff's right to submit additional medical information was disclosed to him in the job search rules, which state at page 3 that "if an employee ... subsequently has the medical restrictions removed, they are eligible to request a return to the prior job title." (*See* Plaintiff's Depo., pp. 91, 133; Davis Decl., ¶ 9; Defendants' App. of Evid., Exhs. G and J.) On October 11, 2000, Katie Davis advised Plaintiff that, if he felt his work restrictions had changed, he should have his doctor forward her such information. (*See* Davis Decl., ¶ 7; Defendants' App. of Evid., Exh. F.) Plaintiff has come forth with no evidence that he ever submitted such additional medical information.

In light of the above, it is undisputed that at all times between when Plaintiff was first released to work in the Spring of 2000 until he resigned his employment in November 2000, all the medical information provided to Pacific Bell indicated that Plaintiff could work only in a sedentary "desk job." Plaintiff did not provide any medical information to the contrary despite knowing that he could do so. Thus, while Plaintiff contends that there were "six" other service technician jobs that he could perform with minimal help, these jobs were not desk jobs and therefore cannot create or manufacture a triable issue of fact as to whether Plaintiff was a qualified individual with a disability.

Furthermore, even assuming that Plaintiff was not restricted to a desk job, Plaintiff has failed to show that an available services technician job that did not involve climbing existed and was available during the relevant time period. Employers are required to consider disabled employees only for existing, open positions. *See* *Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011, 1019 (8th Cir.2000) ("employer is not required to create a new position" and "bumping another employee out of a position to create a vacancy is not required."); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1170 (10th Cir.1999) (en banc) ("employers need not create a new job or even modify an essential function of a vacant job in order to make it suitable for the disabled employee"). Instead, Plaintiff submits conclusory declarations that some unidentified Services Technicians have, at some unidentified

times, been assigned to locations that did not involve climbing. By contrast, Defendants have submitted a declaration from Pasadena Area Manager Jeff Brown, who stated that since he became Area Manager in March 2000, there has not been "a single Service Technician working in the Pasadena/Montrose/Glendale area whose job involves simply walking into high rise buildings and doing work at walk-up terminals in the building." (*See* Brown Decl., 8.) Rather, Brown states that all of the Services Technicians need to climb poles. (*See* *id.* at 4-8.) As such, the evidence shows that there was no job for Plaintiff within his area for which climbing was not an essential function.

Plaintiff claims in his declaration that Services Technicians could always spot the orders requiring climbing by looking at the *1195 repair and service tickets and could maintain a full workload without needing to climb. However, in his previous testimony, Plaintiff testified that service orders were often wrong with respect to what was required on a job and that, as to repair orders, Services Technicians "don't know what's wrong until [they] get there." (*See* Plaintiff's Depo., pp. 56-57, 78.) In addition, in his sworn statements to the Social Security administration, Plaintiff wrote that he spent "all day" on his job "climbing, lifting [and] crawling," and that he typically climbed 1-1/2 hours each day. (*See* Kaufman Decl., 5; Defendants' App. of Evid., Exh. O.)

Plaintiff acknowledges that he could not do his former job, but he basically argues that he should have been reassigned to a different position. As set forth in the undisputed facts, Pacific Bell attempted to do just that. Plaintiff has no right to demand he be transferred to one particular job rather than another the employer offers. "The employer is free to choose the reassignment that is to be offered to the qualified individual with a disability." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1177 (10th Cir.1999). This is especially true where, as here, the employer guarantees the employee will maintain his same salary whatever job he takes.

In light of the above, this Court concludes that Plaintiff has failed to show that he was qualified to do his job, either with or without reasonable accommodation. Defendants are therefore entitled to summary judgment as a matter of law with respect to Plaintiff's disability discrimination claims

**b. Plaintiff is judicially estopped from taking his current position that his only medical restriction**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.Supp.2d 1180                                                                                    Page 13
212 F.Supp.2d 1180
(Cite as: 212 F.Supp.2d 1180)

was as to climbing

[4] Defendants further argue that Plaintiff is judicially estopped from asserting that his medical restrictions were only as to climbing because he represented to the SSA that he could not work at all in order to qualify for disability benefits.

The Supreme Court has held that pursuit and receipt of SSDI benefits does not automatically estop a recipient from pursuing an ADA claim or erect a strong presumption against the recipient's ADA success. *See Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 802, 119 S.Ct. 1597, 1602, 143 L.Ed.2d 966 (1999).* However, to survive a summary judgment motion, an ADA plaintiff cannot ignore his SSDI contention that he was too disabled to work but must explain why that contention is consistent with his ADA claim that he can perform the essential functions of his job, at least with reasonable accommodation. *See id.* at 1604.

Here, it is undisputed that in his claim for SSDI benefits, Plaintiff represented that he had been totally unable to work since June 1999.    As a result, Plaintiff must offer an explanation of this apparent inconsistency with his ADA claim that he could perform a Services Technician job with accommodation. Plaintiff states that in filling out his Social Security Disability application in June of 2000, he referred to the fact that from June of 1999 through June of 2000, he could not perform as a Services Technician without any accommodation. He states that he was aware when he filled out his application that Defendants did not accommodate disabled persons as Services Technicians, having been told, "We have no light duty here for Service Technicians.    If you cannot do the whole job, you go home" by a previous manager.  He further states that as of early June 2000, Plaintiff's physical condition had not returned to the extent it did the following month in July of 2000.

This Court concludes as a matter of law that Plaintiff's explanation is not sufficient *1196 to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, Plaintiff could nonetheless "perform the essential functions" of his job, with or without "reasonable accommodation." *See id.* Plaintiff states that as of June 2000, he represented to the SSA that he had been totally unable to work since June 1999.    In this present motion, he claims that he was able to work with reasonable accommodation as of July 2000.  He was

not awarded benefits until August 20, 2000.  (*See* Kaufman Decl., ¶ 6, Defendants' App. of Evid., Exh. P.) Plaintiff does not represent that he has stopped receiving benefits and that he has disclosed to the SSA that since July 2000, his only work restrictions have been as to climbing.    To qualify for social security disability benefits, one must establish that he is "unable to do his previous work" and "cannot ... engage in any other kind of substantial gainful work which exists in the national economy." *Cleveland, 526 U.S. at 797, 119 S.Ct. 1597* (citing Section 223a of the Social Security Act).    If Plaintiff's only restriction was climbing, then he could find "substantial gainful work."  Because Plaintiff has failed to come forth with an explanation that reconciles the position he is taking here and the one he took in the Social Security context, this Court concludes that he is judicially estopped as a matter of law from contending that Pacific Bell could have accommodated him in his Services Technician job.

### c. Plaintiff fails to show a per se violation of the ADA and FEHA by Defendants

In his Opposition, Plaintiff argues that Defendants' unwritten policy of prohibiting the employment of physically disabled Service Technicians is a per se violation of the ADA and FEHA. In support, he relies on deposition testimony from certain managers. However, a review of this testimony does not support Plaintiff's argument that such a policy exists.

"100% healed" policies are per se violations of the ADA. "A '100% healed' or 'fully healed' policy discriminates against qualified individuals with disabilities because such a policy permits employers to substitute a determination of whether a qualified individual is '100% healed' from their injury for the required individual assessment whether the qualified individual is able to perform the essential functions of his or her job either with or without reasonable accommodation." *McGregor v. National R.R. Passenger Corp., 187 F.3d 1113, 1116 (9th Cir.1999).*

The testimony relied on by Plaintiff shows that certain "permanently restricted" employees were not allowed to work as Services Technicians. Although undefined, it appears from the context of the deposition testimony that "permanently restricted" means that the employee is medically restricted from performing certain functions of his position.  The employee therefore could not perform the normal functions of the Services Technician job.  As such, the testimony that Pacific Bell refused to allow these

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

employees with such restrictions to work as Services Technicians does not support that Pacific Bell violated the ADA. Plaintiff makes no showing whether these "permanently restricted" employees sought other positions and if so, whether they were denied solely because they were not "100% healthy." [FN6] As such, no triable issue of fact is created *1197 with respect to Plaintiff's "per se violation" claim. Moreover, in this case, the undisputed evidence shows that Pacific Bell engaged in the necessary individual assessment as to Plaintiff. Indeed, Pacific Bell undertook two job searches for Plaintiff, resulting in a potential match to a Facilities Administrator job. To obtain a formal job offer, Plaintiff needed to pass a test. While Plaintiff argues that continually testing him for a task they knew he could not perform is unreasonable, it is undisputed that if Plaintiff took the test and failed it, the job search would have continued as if he had never been matched to the position.

> FN6. In addition, in his own brief, Plaintiff submits evidence which is contrary to his per se violation claim. Specifically, he cites the deposition testimony of Katie Davis that Pacific Bell accommodated an injured Services Technician by providing him a bucket truck. (*See* Opposition, pp. 14-15; Davis Depo., p. 82.)

Plaintiff cannot prevail on his failure to accommodate claim merely by showing that there existed a practice of not accommodating other allegedly disabled Services Technicians. Rather, an employee is entitled to accommodation only if he can establish that he himself is a "qualified individual with a disability." *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1480-81 (9th Cir.1996); *Diffey v. Riverside County Sheriff's Department,* 84 Cal.App.4th 1031, 1035, 101 Cal.Rptr.2d 353 (2000) (same under FEHA). As set forth above, Plaintiff cannot establish that he himself is a qualified individual with a disability because he was limited to a desk job and therefore unable, with or without reasonable accommodation, to perform the essential functions of his Services Technician job.

#### d. Plaintiff fails to show a violation based on Defendants' failure to engage in an interactive process

Plaintiff further argues that Defendants violated the law by failing to engage in any interactive process as required on a case-by-case basis. He argues that Defendants never engaged in such a process to see if

he could work as a Services Technician. His evidence in support is that Pacific Bell did not agree to return him to his Services Technician job. This Court concludes that Plaintiff's argument has no merit.

As detailed in the undisputed facts, Pacific Bell undertook a significant interactive process with Plaintiff that included conducting two job searches for an alternative position for him. As explained above, Plaintiff presents no evidence that he suggested the six alleged "alternative positions" that he now claims could have been provided to him. He does not dispute that never provided any medical evidence to Pacific Bell to show that his work restrictions allegedly had been modified. As Defendants point out, Plaintiff fails to cite to a single case indicating that an employer, as part of its duty to engage in the interactive process, must provide the plaintiff with the specific accommodations he proposes, particularly where the accommodations are at odds with the doctor's restrictions presented to the employer. Moreover, an interactive process claim can stand only if there existed a reasonable accommodation for the plaintiff. "Employers who fail to engage in the interactive process in good faith face liability ... if a reasonable accommodation would have been possible." *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1116 (9th Cir.2000), vacated in part on unrelated grounds, 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002). Here, there was no reasonable way to accommodate Plaintiff within a Services Technician position due to his "desk job only" medical restriction. Plaintiff and Plaintiff's counsel cannot usurp the discretion and control of Plaintiff's employer to create a customized job for Plaintiff. All that is required is that Plaintiff's employer take all necessary and reasonable steps to reasonably accommodate Plaintiff. In the instant case the uncontroverted evidence discloses that Pacific Bell did just that and more.

#### *1198 2. Defendants are entitled to summary judgment with respect to Plaintiff's wrongful termination claims

[5][6][7] Plaintiff brings claims for wrongful termination based on disability, age and leave discrimination. Defendants argue that these claims fail because Plaintiff voluntarily resigned his employment by choosing not to appear for the qualification testing.

In a wrongful termination claim based on discrimination, Plaintiff must first establish a prima

facie case that "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Guz v. Bechtel National, Inc.,* 24 Cal.4th 317, 355, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000); *Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 917 (9th Cir.1996). For purposes of this motion, Defendants ask this Court to assume for purposes of argument that Plaintiff can establish a prima facie case as to each of his discriminatory discharge claims.

Under both federal and state law, when the plaintiff establishes a prima facie case of discriminatory discharge, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for having discharged the employee. Once the employer does so, the burden then shifts back to the plaintiff again to establish through specific facts and significant probative evidence that the employer's proffered reason for discharge was merely a pretext for discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147-49, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Guz,* 24 Cal.4th at 355-56, 100 Cal.Rptr.2d 352, 8 P.3d 1089.

This Court concludes as a matter of law that Defendants have articulated a legitimate non-retaliatory reason for having discharged Plaintiff-- Plaintiff voluntarily resigned by choosing not to appear for the testing after being repeatedly warned. It is undisputed that, pursuant to the official job declination rules, Plaintiff resigned when he decided not to show up for the October 27, 2000 testing. It is undisputed that, at the outset of the search for an alternative position, Plaintiff was explained the declination rules, including that declining to show up for testing after being matched with a lateral transfer job would be deemed a resignation.  It is also undisputed that Kathleen Davis left him two phone messages before the October 27 testing (both of which he admits he received) to remind Plaintiff of the testing and the consequences of not showing up. It is undisputed that, knowing full well of these rules, Plaintiff never showed up for the test, and never called anyone to provide an excuse for his absence. As such, Plaintiff must establish that Pacific Bell's proffered reason for discharge was merely a pretext for discrimination.

**a. Wrongful termination based on disability discrimination**

With respect to the wrongful termination claim based on disability, Plaintiff argues that the evidence of Defendants' illegal unwritten policy of not providing any disabled person with work as a Service Technician could persuade a rational fact-finder that Defendants' stated reason for firing Plaintiff was pretextual. While it is true that discrimination can be inferred by evidence of an employer's false explanation for a discharge, Plaintiff has failed to provide any evidence of such a false explanation. Indeed, the undisputed facts demonstrate that Plaintiff knew that if he did not take the test, it would be considered a declination of the position which would *1199 lead to his being deemed to have resigned from Pacific Bell and that Plaintiff did not show up for the testing. While Plaintiff points to an alleged "policy" of Defendants of not providing disabled person with work, the evidence relied on by Plaintiff, as discussed above in Section (C)(1)(c), fails to raise any inference that such unwritten policy exists. Plaintiff further argues that Defendants had already concluded Allen could do work with restrictions by denying him long term disability benefits. However, as explained above, Defendants' denial of long term disability benefits to Plaintiff does not contradict Defendants' position that Plaintiff was not eligible to work in a Services Technician position.    As such, this Court concludes that a rational fact finder could not find pretext based on the evidence presented by Plaintiff with respect to the wrongful termination claim based on disability. Summary judgment in favor of Defendants is therefore warranted as to this claim.

**b. Wrongful termination based on age discrimination**

[8] With respect to the wrongful termination claim based on age, Plaintiff argues that direct evidence supports the fact that Plaintiff's age was a motivating factor in his termination. Specifically, he relies on comments made by managers. After Defendants' hired young Service Technicians, Area Manager Kevin Quinn told them, "Don't talk to the old-timers." Manger Rick Kennedy commented to another Services Technician how Pacific Bell was hiring all "younger" Service Technicians because they "were cheaper," "complained less" and were "more easily directed" at that time. Plaintiff concludes that these comments raise an inference of discriminatory motivations.

A plaintiff can establish a prima facie case of discrimination by providing direct evidence of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.Supp.2d 1180                                                          Page 16
212 F.Supp.2d 1180
**(Cite as: 212 F.Supp.2d 1180)**

discriminatory intent. *See Cordova v. State Farm Ins. Companies*, 124 F.3d 1145, 1149 (9th Cir.1997); *Morgan v. The Regents of the University of California*, 88 Cal.App.4th 52, 67, 105 Cal.Rptr.2d 652 (2000). Generally, direct evidence of discrimination renders the shifting burdens inapplicable. *See Morgan*, 88 Cal.App.4th at 68, 105 Cal.Rptr.2d 652.

This Court concludes that Plaintiff's evidence is not direct evidence of discrimination. "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir.1998) (quoting *Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir.1994)). Here, Plaintiff submits the declaration of a former employee of Pacific Bell, Ellsworth Kagan, who stopped working for Pacific Bell in 1999. Mr. Kagan states that he heard Kevin Quinn tell young Service Technicians, "Don't talk to the old-timers." (*See* Kagan Decl., ¶ 13.) He further states that Rick Kennedy told him that Pacific Bell was hiring all "younger" Service Technicians because they "were cheaper," "complained less" and were "more easily directed." (*See id.* at ¶ 14.) As Defendants argue, this evidence does not constitute direct evidence of age discrimination against Plaintiff because the comments were not spoken by anyone involved with Plaintiff's attempted return to work, were not directed at Plaintiff specifically, and were not uttered close in time to the decision not to return Plaintiff to his Services Technician position. Instead, these comments fall within the ambit of stray remarks that have been held insufficient to establish discrimination. *See Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir.1993) (supervisor's comment that "[w]e don't necessarily like grey hair" was weak circumstantial evidence of discriminatory animus on the basis of age, was uttered in ambivalent manner, and was not tied directly to employee's termination); *1200Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir.1990) (hiring executive's comment that he chose a "bright, intelligent, knowledgeable young man" over appellant was merely stray remark and insufficient by itself to establish age discrimination). [FN7]

> FN7. Furthermore, both Plaintiff and Mr. Kagan state that they had worked at Pacific Bell for more than 20 years as of 1999. Thus, it is not surprising and not suggestive of age discrimination that most new hires they saw in 1999 were 20 years younger than they were, since those new hires would

be the same age that Plaintiff and Kagan were when they were hired.

Thus, having failed to establish direct evidence of pretext, Plaintiff must rely on this evidence to establish circumstantial evidence of pretext. This Court concludes that this evidence fails as circumstantial evidence as well. Circumstantial evidence of " 'pretense' must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate" on an improper basis. *Godwin*, 150 F.3d at 1222. As explained above, Mr. Kagan's statements about what he heard are far from "specific" and "substantial." As a result, Plaintiff has failed to create a triable issue with respect to whether Defendants intended to discriminate based on Plaintiff's age, and Defendants are entitled to summary judgment with respect to this claim.

**C. Wrongful termination based on medical leave discrimination**

With respect to his wrongful termination claim based on medical leave, Plaintiff argues that "the fact that plaintiff Allen was fired--after 26 years of employment--at the end of his medical leave raises an inference of discrimination and retaliation supporting the C.F.R.A. claim." He asserts that causation can be inferred from such timing.

While it is true that causation sufficient to establish a prima facie case of unlawful retaliation may be inferred from the proximity in time between activity protected under Title VII and allegedly retaliatory discharge, the issue here is not Plaintiff's prima facie case. Rather, the issue is whether Plaintiff can show that Defendants' proffered explanation for Plaintiff's discharge is merely a pretext for discrimination. Plaintiff has offered no evidence to show that Defendants' proffered explanation--Plaintiff resigned his job by not showing up for qualification testing--is merely a pretext for discrimination based on Plaintiff's medical leave. Consequently, summary judgment in favor of Defendants with respect to this claim is warranted.

**3. SBC is entitled to summary judgment on the additional basis that it is not a proper party to this action**

[9] Defendants contend that SBC was never Plaintiff's employer and therefore is not a proper party to this action. Based on the undisputed evidence, this Court agrees. SBC's only relation to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.Supp.2d 1180
212 F.Supp.2d 1180
(Cite as: 212 F.Supp.2d 1180)

this case is that it is the parent corporation to Pacific Bell. SBC had no more control over Pacific Bell than that typically exercised by the parent corporation in a parent/subsidiary corporate relationship. Accordingly, SBC cannot be held liable under either federal or California discrimination law for the alleged conduct of Pacific Bell. *See Laird v. Capital Cities,* 68 Cal.App.4th 727, 737-39, 80 Cal.Rptr.2d 454 (1998) (parent corporation of employer not proper defendant in FEHA action where it did not exercise more control over its subsidiary than normally would be the case in a parent/subsidiary corporate relationship and, in particular, did not exercise day-to-day control over the subsidiary's employment decisions); *Morgan v. Safeway Stores, Inc.,* 884 F.2d 1211, 1213-14 (9th Cir.1989) (cited *1201 by *Laird;* same standards apply under Title VII).

**4. A continuance of the hearing on this motion under Rule 56(f) is not warranted**

[10] In his Opposition, Plaintiff requests a denial or a continuance of this motion hearing under Rule 56(f) to complete discovery that Plaintiff set to be complete prior to Defendants' filing of the instant motion and to allow overall additional time.

First, Plaintiff seeks a continuance because he has not had sufficient time to prepare a response to this motion. He states that he "has had a total of three weeks to prepare a response to defendants' instant motion which is insufficient to properly organize and summarize all documents for the record in this case." This Court finds this to be an insufficient basis to continue this motion. Plaintiff has presented no reason why he should be accorded different treatment under the Local Rules from any other party appearing in the Central District. Indeed, this Court allowed Plaintiff an additional two weeks to file an Opposition to this Motion.

Next, Plaintiff seeks a continuance to obtain more discovery. However, Plaintiff has failed to identify any evidence he might obtain through discovery that would defeat summary judgment. Rule 56(f) allows a continuance of a summary judgment hearing only when the non-moving party specifically identifies evidence that he believes exists, but which he has not yet had an opportunity to obtain through the discovery process:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse

the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

In order to obtain a continuance of a motion for summary judgment pursuant to Rule 56(f), a party must show that the discovery he seeks will create a genuine issue of material fact. *See Krim v. BancTexas Group,* 989 F.2d 1435, 1442 (5th Cir.1993). A party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Id.*

In the Shegerian Declaration, Plaintiff's counsel summarily states that "[t]he documents are expected to create a triable issue of material fact, and as such will be dispositive of the issues this Court will address in Defendant's motion." He attempts to get more specific by stating that the documents and testimony to be produced by Defendants contain "statistical evidence" regarding Plaintiff's employment practices, including a history of failing to accommodate disabled Service Technicians. Plaintiff's counsel generally states that such evidence is relevant:

> I am informed and believe that *Diaz* holds that 'statistical evidence is unquestionably relevant in a Title VII disparate treatment case' to both 'establish a prima facie case' of discrimination and 'to use statistical evidence to show that a defendant's articulated nondiscriminatory reason for the employment decision in question is pretextual,' two issues that are disputed in this case.

(Shegerian Decl., ¶ 14.) While Mr. Shegerian recites a general principle, he fails to apply it to the facts of this case to show how such evidence would aid Plaintiff is opposing the motion here. Indeed, as Defendants assert, even assuming Pacific Bell had a history of never accommodating Services Technicians with disabilities by modifying their jobs, such would not defeat the *1202 following arguments successfully raised by Pacific Bell:

1. Plaintiff's undisputed medical restriction to working only in a desk job made him unqualified as a matter of law to continue in the physically arduous job of Services Technician.

2. Plaintiff refused multiple opportunities to transfer to "desk job" positions at Pacific Bell within his work restriction in which his previous salary would be guaranteed for at least one year.

3. Plaintiff's representations to the Social Security Administration that he cannot work at all estop him

from asserting he could have continued to work as a Services Technician if only he were excused from climbing.

4. Plaintiff's employment terminated for the undisputed reason that he consciously chose not to show up for qualification testing, which he knew constituted a voluntary resignation under Pacific Bell's alternative job search procedures.

In sum, while statistical evidence might be relevant in a different type of employment case, Plaintiff has failed to explain how it would be even minimally relevant to the matters at issue in this motion for summary judgment. Because the only information Plaintiff claims he would obtain through further discovery is immaterial "statistical evidence," he has failed to meet his burden under Rule 56(f) to justify a continuance of the summary judgment hearing. [FN8]

> FN8. As mentioned above, Plaintiff seeks a continuance of this motion based on his contention that Defendants have failed to comply with discovery. In the Shegerian Declaration, Plaintiff sets forth his asserted discovery issues. In their Reply, Defendants respond to these discovery issues and argue that Plaintiff has misrepresented the facts. This Court does not need to address the merits of the discovery issues. Both parties are well aware of the recourse provided under the Federal Rules of Civil Procedure and through the Magistrate Judge. It is sufficient for this Court to address the discovery allegations only as they relate to a request for a continuance under Rule 56(f).

### III. *Conclusion*

Accordingly, this Court **grants** Defendants Pacific Bell and SBC Communications' Motion for Summary Judgment.

**IT IS SO ORDERED.**

212 F.Supp.2d 1180

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.