# EXHIBIT – O

Westlaw.

349 F.3d 634 Page 1
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685, 2003 Daily Journal D.A.R. 12,205
(Cite as: 349 F.3d 634)

▷

United States Court of Appeals,
Ninth Circuit.
Francisco VASQUEZ, Plaintiff-Appellant,
v.
COUNTY OF LOS ANGELES, erroneously sued as
Los Angeles County Board of
Supervisors, Defendant-Appellee.
No. 00-56803.

Argued and Submitted Dec. 4, 2001.
Filed Nov. 7, 2003.
As Amended: Jan. 2, 2004.

Deputy probation officer at county youth detention center sued county under Title VII, asserting claims for race discrimination, hostile work environment, and retaliation. The United States District Court for the Central District of California, Margaret M. Morrow, J., granted summary judgment for county. Officer appealed. Superseding its prior opinion, 307 F.3d 884, the Court of Appeals, T.G. Nelson, Circuit Judge, held that: (1) officer had offered no evidence of discriminatory remarks by facility director, the decisionmaker, and failed to show nexus between supervisor's discriminatory remarks and facility director's subsequent employment decisions; (2) even assuming that officer could establish prima facie case under McDonnell Douglas framework, facility director's proffered reason for her decision to transfer officer to field position and to issue warning letter, that officer disobeyed direct order from his supervisor, was legitimate and nondiscriminatory and was not shown to be pretextual; (3) supervisor's conduct toward officer was insufficient to create actionable hostile work environment; (4) officer's retaliation claim based on his filing of discrimination charge with Equal Employment Opportunity Commission (EEOC) was not administratively exhausted; (5) retaliation claim based on officer's filing of grievance against supervisor was administratively exhausted; and (6) officer's transfer did not support retaliation claim.

Affirmed.

Ferguson, Circuit Judge, dissented and filed opinion.

Opinion, 307 F.3d 884, superseded.

West Headnotes

[1] Federal Courts ⚖776
170Bk776 Most Cited Cases
Court of Appeals reviews district court's grant of summary judgment de novo. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

[2] Civil Rights ⚖1536
78k1536 Most Cited Cases
To prevail in Title VII case, employee must establish prima facie case of discrimination and if employee succeeds in doing so, then burden shifts to employer to articulate legitimate, nondiscriminatory reason for its allegedly discriminatory conduct; if employer provides such a reason, burden shifts back to employee to show that employer's reason is pretext for discrimination. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

[3] Civil Rights ⚖1545
78k1545 Most Cited Cases
For prima facie case of discrimination under Title VII, employee must offer evidence that gives rise to inference of unlawful discrimination, either through framework set forth in McDonnell Douglas Corp. v. Green or with direct evidence of discriminatory intent. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

[4] Civil Rights ⚖1548
78k1548 Most Cited Cases
Hispanic deputy probation officer at county youth detention center offered no direct evidence of discriminatory intent with regard to his transfer to field position and issuance of warning letter; supervisor who allegedly made discriminatory remarks was not decisionmaker, and employee did not show nexus between those remarks and facility director's subsequent employment decisions, insofar as facility director conducted her own thorough investigation of subject incident. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

[5] Civil Rights ⚖1137
78k1137 Most Cited Cases
Even assuming that Hispanic deputy probation officer at county youth detention center could establish prima facie case of disparate treatment

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 4:07-cv-03224-SBA     Document 1-36     Filed 06/19/2007     Page 3 of 19

349 F.3d 634                                                                                                         Page 2
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685,
2003 Daily Journal D.A.R. 12,205
(Cite as: 349 F.3d 634)

under *McDonnell Douglas* framework, facility director's proffered reason for her decision to transfer officer to field position and to issue warning letter, that officer disobeyed direct order from his supervisor, was legitimate and nondiscriminatory and was not shown to be pretextual. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

**[6] Civil Rights ⇐1137**
78k1137 Most Cited Cases
Title VII plaintiff can show pretext directly, by showing that discrimination more likely motivated employer, or indirectly, by showing that employer's explanation is unworthy of credence. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

**[7] Civil Rights ⇐1137**
78k1137 Most Cited Cases
In Title VII case, showing that employer treated similarly situated employees outside protected class more favorably is probative of pretext. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

**[8] Civil Rights ⇐1138**
78k1138 Most Cited Cases
Individuals are "similarly situated" for purposes of establishing disparate treatment discrimination when they have similar jobs and display similar conduct; employees in supervisory positions are generally deemed not to be similarly situated to lower level employees.

**[9] Civil Rights ⇐1544**
78k1544 Most Cited Cases
To show pretext using circumstantial evidence, Title VII plaintiff must put forward specific and substantial evidence challenging credibility of employer's motives. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

**[10] Civil Rights ⇐1147**
78k1147 Most Cited Cases

**[10] Civil Rights ⇐1185**
78k1185 Most Cited Cases
To prevail on Title VII hostile workplace claim premised on either race or sex, employee must show: (1) that he or she was subjected to verbal or physical conduct of racial or sexual nature; (2) that conduct was unwelcome; and (3) that conduct was sufficiently severe or pervasive to alter conditions of his or her employment and create abusive work environment. Civil Rights Act of 1964, § 703(a)(1), as amended, 42 U.S.C.A. § 2000e-2(a)(1).

**[11] Civil Rights ⇐1147**
78k1147 Most Cited Cases
To determine whether conduct was sufficiently severe or pervasive to violate Title VII, court looks at all the circumstances, including frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating, or mere offensive utterance, and whether it unreasonably interferes with employee's work performance; in addition, working environment must both subjectively and objectively be perceived as abusive. Civil Rights Act of 1964, § 703(a)(1), as amended, 42 U.S.C.A. § 2000e-2(a)(1).

**[12] Civil Rights ⇐1147**
78k1147 Most Cited Cases
Supervisor's conduct toward Hispanic deputy probation officer at county youth detention center was not sufficiently severe or pervasive as to create hostile work environment in violation of Title VII when she made statements, more than six months apart, that officer had "typical Hispanic macho attitude" and should consider transfer to field assignment because "Hispanics do good in the field," yelled at officer twice in front of center residents, and wrote two memos about officer over course of more than one year, one responding to facility director's request for information about officer's performance and another concerning incident in which officer improperly allowed center youths to play football. Civil Rights Act of 1964, § 703(a)(1), as amended, 42 U.S.C.A. § 2000e-2(a)(1).

**[13] Civil Rights ⇐1516**
78k1516 Most Cited Cases
Under Title VII's administrative exhaustion requirement, subject matter jurisdiction extends to all claims of discrimination that fall within scope of actual investigation of employment discrimination charge by Equal Employment Opportunity Commission (EEOC) or EEOC investigation that could reasonably be expected to grow out of charge. Civil Rights Act of 1964, § 706(b), as amended, 42 U.S.C.A. § 2000e-5(b).

**[14] Civil Rights ⇐1516**
78k1516 Most Cited Cases
In deciding whether Title VII claim is reasonably

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 4:07-cv-03224-SBA    Document 1-36    Filed 06/19/2007    Page 4 of 19

349 F.3d 634                                                                                                        Page 3
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685, 2003 Daily Journal D.A.R. 12,205
(Cite as: 349 F.3d 634)

related to charge filed by employee with Equal Employment Opportunity Commission (EEOC), so as to be administratively exhausted, court may consider such factors as alleged basis of discrimination, dates of discriminatory acts specified within charge, perpetrators of discrimination named in charge, and any locations at which discrimination is alleged to have occurred. Civil Rights Act of 1964, § 706(b), as amended, 42 U.S.C.A. § 2000e-5(b).

[15] Civil Rights 🗝1516
78k1516 Most Cited Cases

[15] Infants 🗝273
211k273 Most Cited Cases
Title VII claim for retaliation allegedly arising from deputy probation officer's filing of race discrimination charge against supervisor at county youth detention center was not administratively exhausted, inasmuch as discrimination charge filed with Equal Employment Opportunity Commission (EEOC) was based solely on alleged conduct of supervisor, whereas retaliation claim rested on allegations that facility director threatened to have him transferred if he pursued discrimination claim, that officer was not assigned overtime work, and that officer did not receive bilingual pay; in investigating charges against supervisor, EEOC would have had no reason to investigate conduct of facility director or county employees who assigned overtime work and awarded bilingual pay, and complained-of actions did not occur within time frame of events alleged in EEOC charge. Civil Rights Act of 1964, § 706(b), as amended, 42 U.S.C.A. § 2000e-5(b).

[16] Civil Rights 🗝1516
78k1516 Most Cited Cases

[16] Infants 🗝273
211k273 Most Cited Cases
Claim that deputy probation officer was retaliated against by supervisor at county youth detention center after he filed grievance against her for discrimination was administratively exhausted, under Title VII, even though officer's charge filed with Equal Employment Opportunity Commission (EEOC) did not allege retaliation, inasmuch as EEOC charge alleged that supervisor harassed officer and that he was transferred out of cottage at which he had worked at youth detention center, which were same acts specified as retaliation, and therefore EEOC investigation of discrimination charge would likely have revealed officer's earlier grievance against supervisor, such that claim of retaliation could have grown out of EEOC charge. Civil Rights Act of 1964, § 706(b), as amended, 42 U.S.C.A. § 2000e-5(b).

[17] Civil Rights 🗝1243
78k1243 Most Cited Cases
To make out prima facie case of retaliation under Title VII, employee must establish that he undertook protected activity under Title VII, his employer subjected him to adverse employment action, and there is causal link between those two events. Civil Rights Act of 1964, § 704(a), as amended, 42 U.S.C.A. § 2000e-3(a).

[18] Civil Rights 🗝1251
78k1251 Most Cited Cases

[18] Civil Rights 🗝1252
78k1252 Most Cited Cases

[18] Infants 🗝273
211k273 Most Cited Cases
Transfer of deputy probation officer from cottage at which he had worked at county youth detention center did not support Title VII retaliation claim, absent causal link between officer's protected conduct of filing grievance against coworker and his transfer thirteen months later; furthermore, officer did not show that county's proffered reason for transfer, that he disobeyed direct order, was pretextual. Civil Rights Act of 1964, § 704(a), as amended, 42 U.S.C.A. § 2000e-3(a).

*637 Susan D. Salisbury, Rosemead, CA, for the plaintiff-appellant.

Barry M. Wolf, Greines, Martin, Stein & Richland, LLP, Beverly Hills, CA, for the defendant-appellee.

Appeal from the United States District Court for the Central District of California; Margaret M. Morrow, District Judge, Presiding. D.C. No. CV-99-08542-MMM.

Before FERGUSON, T.G. NELSON, and W. FLETCHER, Circuit Judges.

Opinion by Judge T.G. NELSON. Dissent by Judge FERGUSON.

*638 T.G. NELSON, Circuit Judge.

Case 4:07-cv-03224-SBA    Document 1-36    Filed 06/19/2007    Page 5 of 19

349 F.3d 634                                                                                                                  Page 4
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685,
2003 Daily Journal D.A.R. 12,205
(Cite as: 349 F.3d 634)

Francisco Vasquez, a deputy probation officer at a Los Angeles County youth detention center, brought this action against the County, alleging that the County violated Title VII of the Civil Rights Act by discriminating against him on the basis of his national origin, subjecting him to a hostile work environment, and retaliating against him for filing discrimination charges. The district court granted the County's summary judgment motion, and Vasquez appeals. We affirm the district court.

I

Francisco Vasquez is a Deputy Probation Officer, Level I (DPO I), who works for the County of Los Angeles at its Dorothy Kirby Center (DKC). DKC is a detention facility for youth who have committed less serious crimes. The youth live at DKC in various cottages, and the DPOs are assigned to a particular cottage or to the field, where they rotate between cottages. Vasquez was assigned to "turquoise cottage" during the events that led to this lawsuit.

Kelly Berglund was employed at DKC as a DPO II, and was also assigned to turquoise cottage. A DPO II has more supervisory responsibilities and takes on more complex cases than a DPO I. Berglund and Vasquez experienced conflicts while working together. Vasquez claims that Berglund yelled at him and made negative comments about him in front of the youth. During one altercation in February 1998, Berglund made a comment to Vasquez that Vasquez was too domineering with the minors and had a "typical Hispanic macho attitude." Later that month, Vasquez filed a grievance against Berglund for that remark. The director of the facility, Karma Leeds, offered to transfer Vasquez out of turquoise cottage to alleviate the conflict, but Vasquez did not want to leave turquoise cottage so he withdrew his grievance.

The following month, Berglund sent a memo to Leeds describing incidents in which she believed Vasquez had behaved inappropriately. This memo was in response to Leeds' request for information regarding the conduct and behavior of Vasquez. Then, in the fall of 1998, Berglund commented to Vasquez that he should take a job in the field because "Hispanics do good in the field."

The culmination of the conflict occurred on March 27, 1999. Berglund was acting director of DKC on that day because neither the director nor the assistant director were present. Vasquez called Berglund to request permission for his cottage to play football against garnet cottage. Vasquez contends that Berglund granted his request, providing the game was touch football. Berglund claims that there was a policy at DKC that no football of any kind was to be played, and she therefore refused his request to play football but said he could play soccer.

Approximately one half hour after the telephone call, Berglund and two DPO Is walked out to the recreation area. As they approached the area, Berglund noticed two youths sitting on the curb, one of whom stood up, threw a soccer ball toward the field, and yelled something in the direction of the field. When Berglund and the two DPOs arrived at the field, they saw the youth from turquoise cottage and garnet cottage kicking a soccer ball. Some had flags hanging from their waistbands. All play stopped when Berglund arrived at the field. Berglund asked several of the youth if they had been playing football, but they denied it. Vasquez then took the youth back to turquoise cottage. Vasquez later admitted that the youth *639 were playing football, and that he saw the game end abruptly and two players throw down their flags as Berglund approached the field.

Berglund next called Mario Ng, the DPO I for garnet cottage. Ng admitted to playing football and stated that he was not aware that Berglund had spoken to Vasquez before the game. Berglund proceeded to turquoise cottage and again questioned the youth about the game. One youth denied playing football, but Vasquez told Berglund that the youth had been playing football. After Berglund left, Vasquez told the youth that they should write letters to Berglund, apologizing for lying to her and being disrespectful, which they subsequently did.

On the following Monday, Berglund sent Leeds a memo detailing her version of the events of March 27. The memo stated that Vasquez disobeyed Berglund's order to not play football. Leeds also read the letters from the youth in turquoise cottage admitting that they had lied to Berglund and that one had acted as a lookout during the football game. Leeds then talked to Vasquez's supervisor, Star French, and Mario Ng. Finally, Leeds spoke with Vasquez, who denied doing anything wrong. However, Leeds received the impression that Vasquez knew he should not have been playing football. On April 2, 1999, Leeds removed Vasquez from turquoise cottage and placed him in a field position. On April 5, 1999, Star French issued a letter of warning to Vasquez for failing to follow

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

instructions from an acting residential supervisor. Vasquez chose not to respond to the letter.

On June 23, 1999, Vasquez filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging harassment and disparate treatment during the period of March 27, 1999, to April 5, 1999. Vasquez then went on disability leave until August 1999 because of stress and depression. Upon Vasquez's return, Leeds asked him if he planned to pursue his claim and threatened to transfer him out of DKC if he did pursue it. In addition, Vasquez was not assigned any overtime work and continued to be denied bilingual pay.

After the EEOC issued a right-to-sue letter on July 19, 1999, Vasquez filed a complaint against the County of Los Angeles under Title VII. He alleged causes of action for discrimination because of harassment and disparate treatment, and retaliation. The county moved for summary judgment, and the district court granted the motion. The court held that Vasquez could not establish a prima facie case for the disparate treatment claim because there was no adverse employment action and Vasquez failed to show that similarly situated employees were treated differently. It also held that the alleged harassment was not severe or pervasive enough to create a hostile work environment. Finally, the court dismissed the retaliation claim because Vasquez did not exhaust his administrative remedies and, in the alternative, did not establish a prima facie case because there was no adverse employment action related to the protected activity. Vasquez appeals each of those decisions. We have jurisdiction to hear this appeal pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1291.

II

[1] We review a district court's grant of summary judgment de novo. [FN1] We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether any genuine issues of material *640 fact exist and whether the district court correctly applied the relevant substantive law. [FN2]

> FN1. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc).
>
> FN2. *Id.*

III

[2] In order to prevail in a Title VII case, the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination. [FN3]

> FN3. *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir.1997).

[3] For a prima facie case, Vasquez must offer evidence that "give[s] rise to an inference of unlawful discrimination," [FN4] either through the framework set forth in *McDonnell Douglas Corp. v. Green* [FN5] or with direct or circumstantial evidence of discriminatory intent. [FN6]

> FN4. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).
>
> FN5. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, unlawful discrimination is presumed if the plaintiff can show that "(1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir.1998) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817).
>
> FN6. *Cordova*, 124 F.3d at 1148 (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994)).

[4] Vasquez has offered no direct evidence of discriminatory intent. Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." [FN7] The only evidence Vasquez offers are the remarks of Berglund. However, Berglund was not the decisionmaker, and Vasquez has offered no evidence of discriminatory remarks made by Leeds. Therefore, Vasquez must show a nexus between Berglund's discriminatory remarks and Leeds' subsequent employment decisions. [FN8] Vasquez has not shown the necessary nexus because Leeds conducted her own thorough investigation, and as mentioned above, Vasquez presents no evidence that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 4:07-cv-03224-SBA    Document 1-36    Filed 06/19/2007    Page 7 of 19

349 F.3d 634                                                                                                                    Page 6
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685, 2003 Daily Journal D.A.R. 12,205
(Cite as: 349 F.3d 634)

discriminatory animus motivated Leeds' decision. [FN9] To the extent that Berglund's remarks and Leeds' knowledge of prior conflicts between Vasquez and Berglund constitute circumstantial evidence of discriminatory intent, this evidence is insufficient to make out a prima facie case. *641 Therefore, Vasquez must proceed under the *McDonnell Douglas* framework.

>   FN7. *Godwin,* 150 F.3d at 1221 (internal quotation marks omitted) (alteration in original).

>   FN8. *DeHorney v. Bank of Am. Nat'l Trust & Sav. Assoc.,* 879 F.2d 459, 468 (9th Cir.1989).

>   FN9. *See id.; see also Willis v. Marion County Auditor's Office,* 118 F.3d 542, 548 (7th Cir.1997) (refusing to impute racial bias of subordinates who reported rule violation to superior because superior did her own independent investigation); *Long v. Eastfield Coll.,* 88 F.3d 300, 306-07 (5th Cir.1996) (noting that, if final decisionmaker based decision on independent investigation, causal link between subordinate's retaliatory motive and plaintiff's termination would be broken). The dissent's reliance upon *Gilbrook v. City of Westminster,* 177 F.3d 839 (9th Cir.1999), is misplaced. First, *Gilbrook's* context is quite different. It addressed a claim of First Amendment retaliation using a mixed motive analysis, not a Title VII claim. *Id.* at 853. Procedurally, the *Gilbrook* court was faced with reviewing a jury verdict for the plaintiff. *Id.* at 855-56. Second, the *Gilbrook* court specifically reaffirmed the principle on which we rely: no nexus exists when the decisionmaker makes an independent and legitimate decision to discipline the plaintiff. *Id.* at 855.

[5] As discussed above, if a plaintiff can satisfy the four-prong *McDonnell Douglas* test, we presume unlawful discrimination. The burden then shifts to the employer to provide a legitimate, non-discriminatory reason for the employment action. [FN10] Vasquez's claim fails because, even assuming (which we do not decide) that he can make out a prima facie case under the *McDonnell Douglas* framework, he cannot establish that the County's articulated non-discriminatory reason for his transfer is pretextual. [FN11]

>   FN10. *Godwin,* 150 F.3d at 1220; *Cordova,* 124 F.3d at 1148.

>   FN11. *Cf. Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1062 n. 8, 1063-64. (9th Cir.2002) (assuming without deciding that plaintiff made out a prima facie case of discrimination but affirming grant of summary judgment against plaintiff because she did not demonstrate that the employer's non-discriminatory explanations for her termination were pretextual).

[6] Leeds proffered a legitimate, non-discriminatory reason for her decision to transfer Vasquez to a field position and to issue the warning letter: Vasquez disobeyed a direct order from his supervisor. Therefore, Vasquez must prove that Leeds' reason is pretextual. [FN12] A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence. [FN13]

>   FN12. *Cordova,* 124 F.3d at 1148.

>   FN13. *Chuang v. Univ. of Cal. Davis,* 225 F.3d 1115, 1127 (9th Cir.2000).

[7][8] A showing that the County treated similarly situated employees outside Vasquez's protected class more favorably would be probative of pretext. [FN14] Vasquez claims that both Ng and Berglund were similarly situated and were treated better than he. However, individuals are similarly situated when they have similar jobs and display similar conduct. [FN15] Neither Berglund nor Ng were similarly situated to Vasquez. Berglund was not involved in the same type of offense as Vasquez. Further, her position was a supervisory one, with much greater responsibility. Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees. [FN16] Although Vasquez and Ng held the same level position, they were also not similarly situated. Ng did not engage in problematic conduct of comparable seriousness to that of Vasquez. [FN17] Ng did not know that Vasquez had called Berglund before the football game and believed that Vasquez was in charge of recreation for the day. Therefore, Ng did not know that he was disobeying a direct *642 order from Berglund by participating in the game.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

349 F.3d 634                                                                                                                                    Page 7
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685, 2003 Daily Journal D.A.R. 12,205
**(Cite as: 349 F.3d 634)**

FN14. *Gerdom v. Cont'l Airlines, Inc.,* 692 F.2d 602, 609 (9th Cir.1982) (en banc); *see also Snead v. Metro. Prop. & Cas. Ins. Co.,* 237 F.3d 1080, 1094 (9th Cir.2001) (concluding that a showing that similarly situated employees were treated in a like manner to plaintiff "negat[ed] any showing of pretext").

FN15. *Ward v. Procter & Gamble Paper Prods. Co.,* 111 F.3d 558, 560-61 (8th Cir.1997); *Cf. Wall v. Nat'l R.R. Passenger Corp.,* 718 F.2d 906, 909 (9th Cir.1983) (noting that district court did not err in concluding that plaintiff did not show that he was treated less favorably than similarly situated employees because other employees had no disciplinary record and were thus not similarly situated).

FN16. *See Ward,* 111 F.3d at 561; *Jones v. Denver Post Corp.,* 203 F.3d 748, 753 (10th Cir.2000).

FN17. *See Hollins v. Atlantic Co., Inc.,* 188 F.3d 652, 659 (6th Cir.1999) (holding that, to be similarly situated, an employee must have the same supervisor, be subject to the same standards, and have engaged in the same conduct); *see also Ward,* 111 F.3d at 560-61 (holding that employees who both participated in an argument were not similarly situated because their offenses resulting from the argument were quite different).

[9] Further, as discussed above, Vasquez has not offered any direct evidence that Leeds was motivated by discriminatory intent. [FN18] Nor has Vasquez shown that Leeds' explanation is not believable for some other reason. To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives. [FN19] Therefore, even assuming that Vasquez could establish his prima facie case, his claim would fail because he could not show that Leeds' reason was a pretext for discriminatory intent. Accordingly, the district court properly granted summary judgment on Vasquez's disparate treatment claim.

FN18. *See Chuang,* 225 F.3d at 1128 (finding direct evidence of pretext where member of decisionmaking body stated that "two chinks ... were more than enough") (internal quotation marks omitted); *Cordova,* 124 F.3d at 1149 (finding direct evidence of pretext when employer referred to another employee as a "dumb Mexican").

FN19. *Godwin,* 150 F.3d at 1222; *Cordova,* 124 F.3d at 1149- 50; *Lindahl v. Air France,* 930 F.2d 1434, 1438-39 (9th Cir.1991).

IV

[10] Vasquez next asserts that Berglund's conduct toward him was racially based harassment that created a hostile work environment. [FN20] Under Title VII, it is unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of his race, color, religion, sex, or national origin. [FN21] To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. [FN22] Because the elements to prove a hostile work environment are the same for both racial harassment and sexual harassment, cases analyzing both types of harassment are relevant to our analysis.

FN20. Vasquez claimed discrimination based on national origin. However, a claim that he was discriminated against because he was Hispanic is actually a race based claim.

FN21. 42 U.S.C. § 2000e-2(a)(1).

FN22. *Gregory v. Widnall,* 153 F.3d 1071, 1074 (9th Cir.1998).

[11] To determine whether conduct was sufficiently severe or pervasive to violate Title VII, we look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." [FN23] In addition, "[t]he working environment must both subjectively and objectively be perceived as abusive." [FN24] Berglund's conduct was not severe or pervasive enough to constitute a hostile

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 4:07-cv-03224-SBA    Document 1-36    Filed 06/19/2007    Page 9 of 19

349 F.3d 634                                                                                                    Page 8
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685,
2003 Daily Journal D.A.R. 12,205
(Cite as: 349 F.3d 634)

work environment and thus did not violate Title VII.

>   FN23. _Clark County Sch. Dist. v. Breeden,_ 532 U.S. 268, 270-71, 121 S.Ct. 1508, 149 L.Ed.2d 509 (internal quotation marks and citation omitted), _reh'g denied,_ 533 U.S. 912, 121 S.Ct. 2264, 150 L.Ed.2d 248 (2001).

>   FN24. _Brooks v. City of San Mateo,_ 229 F.3d 917, 923 (9th Cir.2000) (internal quotation marks and citation omitted).

[12] Vasquez claims that Berglund continually harassed him but provides specific factual allegations regarding only a *643 few incidents. The primary basis of Vasquez's claim arises from statements by Berglund that Vasquez had "a typical Hispanic macho attitude" and that he should consider transferring to the field because "Hispanics do good in the field." These statements were made more than six months apart. Concerning Vasquez's allegation that Berglund yelled at him in front of the youth, Vasquez provides evidence of only two instances when this occurred. One instance was when Berglund yelled at Vasquez for letting the youth "sniff paint" while Vasquez was painting a doorway in the cottage. The other instance occurred when Berglund called Vasquez a juvenile delinquent for letting the youth play football. Vasquez's allegation that Berglund made negative remarks about him in front of the youth is based on reports from the youth. Vasquez did not have personal knowledge of those remarks. Finally, regarding the allegation that Berglund made continual, false complaints about Vasquez to Leeds, Vasquez offers two memos written by Berglund, one in response to Leeds' request for information about Vasquez's performance, and one written a year later concerning the events of March 27. All of these incidents occurred over the course of more than one year.

When compared to other hostile work environment cases, the events in this case are not severe or pervasive enough to violate Title VII. In _Sanchez v. City of Santa Ana,_ [FN25] the court dismissed plaintiff's hostile work environment claim. We held that no reasonable jury could have found a hostile work environment despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino. [FN26] The allegations in _Sanchez_ were at least as severe as those in this case, yet the court held as a matter of law that there was no hostile work environment.

>   FN25. 936 F.2d 1027 (9th Cir.1990).

>   FN26. _Id._ at 1031, 1036.

Sexual harassment cases also provide examples of the type of conduct necessary to produce an abusive work environment. We held in _Draper v. Coeur Rochester, Inc.,_ [FN27] that defendant created a hostile work environment where the plaintiff's supervisor made repeated sexual remarks about the plaintiff over a two-year period, calling her "gorgeous" and "beautiful" rather than her name, telling her about his sexual fantasies and his desire to have sex with her, commenting on her "ass," and asking over a loudspeaker if she needed help changing clothes. [FN28] Likewise, we came to the same conclusion in _Nichols v. Azteca Restaurant Enterprises, Inc._ [FN29] There, a male employee of the restaurant was subjected to a relentless campaign of insults, name-calling, vulgarities, and taunts of "faggot" and "fucking female whore" by male co-workers and supervisors at least once a week and often several times a day. [FN30]

>   FN27. 147 F.3d 1104 (9th Cir.1998).

>   FN28. _Id._ at 1109.

>   FN29. 256 F.3d 864 (9th Cir.2001).

>   FN30. _Id._ at 870.

In contrast, we determined in _Kortan v. California Youth Authority,_ [FN31] that there was no hostile work environment when a supervisor called female employees "castrating bitches," "Madonnas," or "Regina" on several occasions in plaintiff's presence; the supervisor called the plaintiff "Medea"; *644 the plaintiff complained about other difficulties with that supervisor; and the plaintiff received letters at home from the supervisor. [FN32] The court held that, while the supervisor's language was offensive, his conduct was not severe or pervasive enough to unreasonably interfere with the plaintiff's employment. [FN33]

>   FN31. 217 F.3d 1104 (9th Cir.2000).

>   FN32. _Id._ at 1107.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 4:07-cv-03224-SBA    Document 1-36    Filed 06/19/2007    Page 10 of 19

349 F.3d 634                                                                                                                    Page 9
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685, 2003 Daily Journal D.A.R. 12,205
**(Cite as: 349 F.3d 634)**

FN33. *Id.* at 1111.

When considered in light of these previous cases, the conduct complained about by Vasquez did not create an abusive work environment. The allegedly harassing incidents, which occurred over the course of more than one year and only two of which contained racially related epithets, did not create a hostile work environment for Vasquez. The conduct was less frequent, less severe, and less humiliating than the conduct at issue in *Draper* or *Azteca* but, rather, was more in line with that in *Kortan*. Two isolated offensive remarks, combined with Vasquez's other complaints about unfair treatment, are similar to the incidents in *Kortan* where the supervisor made several offensive sexual remarks and the plaintiff had other difficulties with that supervisor. Like in *Kortan*, we conclude that Berglund's conduct was not severe or pervasive enough to create a hostile work environment.

V

[13] Vasquez's last claim is that Leeds, Berglund, and other county employees retaliated against him for filing a grievance against Berglund and for filing a discrimination charge. [FN34] To establish subject matter jurisdiction over his Title VII retaliation claim, Vasquez must have exhausted his administrative remedies by filing a timely charge with the EEOC. [FN35] This affords the agency an opportunity to investigate the charge. [FN36] Subject matter jurisdiction extends to all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge. [FN37]

> FN34. The district court only considered Vasquez's allegation that the County retaliated against him for filing a discrimination charge with the EEOC. However, it appears that Vasquez did include in his claim the allegation that the County also retaliated against him for filing the original grievance against Berglund. Therefore, we will consider both parts of his claim.

> FN35. 42 U.S.C. § 2000e-5(b); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir.2002).

> FN36. *B.K.B.*, 276 F.3d at 1099.

> FN37. *Id.* at 1100 (internal quotation marks and citation omitted).

[14] Because Vasquez's EEOC charge only claimed harassment and different treatment, we must decide whether his current retaliation claim is reasonably related to the EEOC charge. In doing so, we may consider "such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." [FN38] We conclude that Vasquez did not exhaust his administrative remedies regarding retaliation for filing the discrimination charge but that he did exhaust as to retaliation for filing the grievance.

> FN38. *Id.*

Vasquez's EEOC complaint alleged that he was subject to harassment and different treatment on March 27, 1999, because Berglund accused him of lying. The charge then states that Vasquez was transferred *645 out of turquoise cottage on April 2, 1999, and given a letter of warning on April 5, 1999. The charge also states that Berglund did not give Vasquez a reason for subjecting him to harassment and different treatment, but that Leeds told him he was transferred for failing to follow instructions and violating an established practice. The only names mentioned in the complaint were Berglund and Leeds. Vasquez checked the box on the form for discrimination based on national origin but did not check the box for retaliation.

[15] The first part of Vasquez's retaliation claim concerns retaliation against him for filing the discrimination charge with the EEOC. Vasquez filed the charge on June 23, 1999. Vasquez asserts that after he returned to work in August 1999, Leeds threatened that she could have him transferred out of DKC if he pursued his discrimination claim. Vasquez also asserts retaliation for filing his EEOC charge because he was not assigned overtime duty and he did not receive bilingual pay. None of these acts fall under an investigation that the EEOC would have conducted based on the charge.

The only person that Vasquez accused of discriminatory acts in his EEOC charge was Berglund. However, Berglund was not responsible for assigning overtime work or for awarding bilingual pay. Based on Vasquez's charge, the EEOC would

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 4:07-cv-03224-SBA   Document 1-36   Filed 06/19/2007   Page 11 of 19

349 F.3d 634 Page 10
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685, 2003 Daily Journal D.A.R. 12,205
(Cite as: 349 F.3d 634)

have no reason to investigate the employees who assigned overtime work or the employees who decided whether to award bilingual pay. In addition, the denials of overtime work and bilingual pay are completely unrelated to the facts that form the basis of the discrimination in the charge. Finally, the denial of overtime work and bilingual pay did not occur within the time frame of the events alleged in the EEOC charge. A reasonable investigation by the EEOC would not have encompassed these allegedly retaliatory acts.

As for Leeds' threat to transfer Vasquez, that event occurred several months after the alleged harassment and even after the EEOC had issued its right-to-sue letter. The EEOC could not have investigated that incident because it had not yet happened at the time the EEOC was conducting its investigation. And while Leeds' threat of transfer is similar to her transfer of Vasquez out of turquoise cottage, Leeds was not the individual accused of harassment. The EEOC would have reasonably investigated conduct of Berglund but not conduct of Leeds. Because Vasquez did not present the legal theory of unlawful retaliation, and the operative facts regarding this part of his claim were not related to the facts in the EEOC charge, he did not exhaust his administrative remedies. [FN39] Thus, we have no jurisdiction to hear the claim that the County retaliated against Vasquez for filing an EEOC charge.

> FN39. *Ong v. Cleland*, 642 F.2d 316, 319 (9th Cir.1981) (stating that an EEOC charge must notify the agency of the legal theory being argued and the operative facts at issue).

[16] The second part of Vasquez's retaliation claim is based on acts that occurred after he filed the February 1998 grievance against Berglund for discrimination. Vasquez claims that his transfer out of turquoise cottage and Berglund's harassment were in retaliation for the grievance he filed. Again we must determine whether Vasquez exhausted his administrative remedies as to this part of his claim. While the EEOC charge does not contain the relevant legal theory of retaliation, it does contain the relevant factual allegations. The EEOC charge alleges that Berglund harassed Vasquez and that he was transferred out of turquoise cottage, the same acts specified as retaliation *646 in his claim. Because an investigation of the EEOC charge would likely have revealed Vasquez's earlier grievance against Berglund, a claim of retaliation could have "grow[n] out of the charge." [FN40] We conclude that Vasquez did exhaust his administrative remedies as to this part of his claim. Thus, we have jurisdiction to consider his retaliation claim regarding the grievance.

> FN40. *B.K.B.*, 276 F.3d at 1100.

[17][18] To make out a prima facie case of retaliation, Vasquez must establish that he undertook a protected activity under Title VII, his employer subjected him to an adverse employment action, and there is a causal link between those two events. [FN41] This analysis requires us to examine separately whether the "adverse employment action" is considered through an objective or subjective lens. We addressed this question, at least in passing, in *Ray v. Henderson*. [FN42] We adopted the EEOC standard from its compliance manual, [FN43] and held that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." [FN44] In context, this is, at least in part, a subjective standard because the EEOC manual speaks of " 'any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter *the charging party* or others from engaging in protected activity.' " [FN45]

> FN41. *Kortan*, 217 F.3d at 1112.
>
> FN42. 217 F.3d 1234 (9th Cir.2000).
>
> FN43. *Id.* at 1242-43; *see also* EEOC COMPLIANCE MANUAL § 8 "Retaliation" ¶ 8008 (1998).
>
> FN44. *Ray*, 217 F.3d at 1243.
>
> FN45. *Id.* at 1242-43 (quoting EEOC COMPLIANCE MANUAL § 8 "Retaliation" ¶ 8008 (1998)) (emphasis added).

Including behavior of the charging party in the standard removes it from the hypothetical "reasonable employee" approach and makes it more subjective. Of course, it is not entirely subjective as the conduct must be "reasonably likely" to deter the protected activity, even by the charging party.

For purposes of our analysis, we will assume that the transfer met the *Ray* standard. However, this does not save Vasquez's retaliation claim because he has

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 4:07-cv-03224-SBA    Document 1-36    Filed 06/19/2007    Page 12 of 19

349 F.3d 634                                                                                                                    Page 11
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685,
2003 Daily Journal D.A.R. 12,205
(Cite as: 349 F.3d 634)

failed to show a causal link. [FN46] The protected activity occurred thirteen months prior to the alleged adverse action, [FN47] and Vasquez has not provided evidence of surrounding circumstances that show a retaliatory motive. [FN48] Further, Vasquez has not shown that the county's proffered reason--that he disobeyed a direct order--was pretextual. [FN49] Therefore, we affirm the dismissal of this claim as well.

FN46. *Kortan*, 217 F.3d at 1112.

FN47. *See, e.g., Villiarimo*, 281 F.3d at 1064-65 (finding no causal link when protected activity occurred "nearly a year and a half" before adverse employment action).

FN48. *See Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir.2003) (holding that it is error to consider the length of time in isolation and that three to eight month interval "can support an inference of retaliation" when "surrounding circumstances," such as inconsistent application of a policy, suggest that the employer had a retaliatory motive).

FN49. *Ray*, 217 F.3d at 1240, 1244.

VI

Vasquez's disparate treatment claim fails because he failed to show that Leeds' reason for transferring him was pretextual. Berglund did not subject Vasquez to a hostile work environment, and therefore, Vasquez's claim of harassment fails as well. Finally, we must dismiss Vasquez's *647 retaliation claim because he did not exhaust his administrative remedies as to part of his claim, and assuming that the transfer is an adverse employment action, he has not shown either a causal link or that the employer's proffered reason was pretextual. For these reasons, we affirm the district court's dismissal of Vasquez's claims.

AFFIRMED.

FERGUSON, Circuit Judge, dissenting:

I respectfully dissent. Today, the majority levies a blow to our important Title VII protections when it erroneously holds that Francisco Vasquez ("Vasquez") was unable to show that racially discriminatory comments by a supervisor are evidence of discriminatory intent. Despite the blatant evidence of discrimination put forth by Vasquez, the majority errs by holding that Vasquez was unable to show that his employer's stated reason for his job transfer was pretextual. Similarly, the majority inappropriately places a time limit on retaliation cases by holding that Vasquez did not show a causal link between the protected activity and his transfer solely because the latter occurred thirteen months after the former. Finally, the majority errs by dismissing Vasquez' hostile work environment claim as a matter of law. In so doing, it improperly downplays the pervasiveness of the hostile environment created by the ongoing harassing conduct of Kelly Berglund ("Berglund") and wholly fails to address the role that Vasquez' employer played in sanctioning, rather than correcting, the harassment in violation of Title VII.

I. DISPARATE TREATMENT CLAIM

I disagree with the majority's conclusion that Vasquez has not proffered any direct evidence of discriminatory intent. Berglund's anti-Hispanic comments are direct evidence of discrimination, particularly considering the ongoing conflict between Vasquez and Berglund, and Leeds' awareness of it. Moreover, even under the *McDonnell Douglas* framework, Vasquez has marshaled sufficient circumstantial evidence of discrimination.

Berglund's comments constitute direct evidence of discrimination on the basis of national origin because her explicit stereotyping conveyed discriminatory animus without " 'inference or presumption,' " *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir.1998) (citation omitted), and her report led to the decision to transfer Vasquez. The majority holds that Vasquez has not shown the necessary nexus between Berglund's discriminatory remarks and Leeds' subsequent decision to transfer Vasquez. Maj. Op. at 640-41. However, a probing examination of the facts reveals that Berglund's comments do in fact satisfy the requisite nexus to the transfer decision.

Under our case law, explicitly discriminatory remarks by a subordinate may implicate the motive of the employer if her conduct "set in motion the chain of events that led to ... the adverse employment action." *Gilbrook v. City of Westminster*, 177 F.3d 839, 854 (9th Cir.1999). Here, Berglund made several discriminatory comments, and her report of Vasquez' alleged misconduct precipitated Leeds' decision to transfer him. Although Leeds purportedly conducted her own investigation before making the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

349 F.3d 634                                                                                                                                Page 12
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685, 2003 Daily Journal D.A.R. 12,205
**(Cite as: 349 F.3d 634)**

decision, this does not break the causal connection between Berglund's illicit comments and the decision to transfer if Leeds' ultimate decision to transfer Vasquez was tainted by the discriminatory animus. Moreover, Leeds' investigation cannot sanitize the transfer decision because she also had unclean hands. Leeds was fully aware of Berglund's discriminatory comments but rather than *648 remedy the situation, she allegedly threatened to transfer Vasquez if he did not withdraw his grievance regarding those comments. In response, Vasquez withdrew his grievance.

The majority cites *DeHorney v. Bank of America National Trust & Savings Ass'n*, 879 F.2d 459 (9th Cir.1989) (per curiam), for the proposition that Vasquez cannot show a nexus between Berglund's report and the decision to transfer; however, this case is distinguishable from the one before us. In *DeHorney,* we upheld a grant of summary judgment for the employer when the employee failed to show that her termination was motivated by racial animus. *Id.* at 468. In so holding, we reasoned that the only showing of possible discrimination was represented by a racial slur made by the employee who had conducted the investigation into the plaintiff's alleged misconduct. *Id.* In that case, we found this animus did not have the requisite nexus to the decision to terminate because the subordinate played the minor role of the investigator, and there was no evidence that her bias tainted the ultimate decision. *Id.*

However, unlike the case at hand, the subordinate employee in *DeHorney* did not initiate the investigation into the misconduct, she was simply the auditor to which the case was assigned. *Id.* at 461, 468. Similarly, she had made no unsolicited suggestion to terminate the employee, and her report was made on a standard form. *Id.* at 467. Finally, the ultimate decisionmaker was neither aware of her discriminatory comments nor even the employee's race. *Id.* at 468. Consequently, the court found no nexus between the racial animus and the decision to terminate. In contrast, Berglund initiated the complaint and Leeds was aware of both Berglund's discriminatory comments and Vasquez' national origin and sex. In fact, Leeds' transfer of Vasquez was precisely what Berglund had desired all along, and was consistent with Berglund's racist remark that "Hispanics do well in the field."

Nevertheless, it is true that there remains a question as to how much Berglund's discriminatory comments and report actually influenced Leeds' decision to transfer Vasquez. This, however, is a factual question. *Gilbrook,* 177 F.3d at 855. We have held that whether the person harboring a discriminatory animus was sufficiently involved in an employment decision is a dispute "for the trier of fact to resolve." *Godwin,* 150 F.3d at 1221. Because there is evidence that Berglund's discriminatory animus may have played a role in Leeds' decision to transfer Vasquez, we should allow the jury to determine whether the direct evidence of Berglund's illicit motive rendered the employment action violative of Title VII.

Even under the *McDonnell Douglas* framework, Vasquez makes out a prima facie case of discrimination. Under *McDonnell Douglas,* he must show: (1) he is a member of a protected class, (2) he was qualified, (3) an adverse employment action, and (4) similarly-situated non-class members were treated more favorably than he. *Aragon v. Republic Silver State Disposal, Inc.,* 292 F.3d 654, 658 (9th Cir.2002). The burden then shifts to the County "to articulate a legitimate, nondiscriminatory reason for [the adverse action]." *Id.* (citation omitted). If the County is able to do so, Vasquez must proffer evidence of pretext. *Id.*

The majority holds that Vasquez cannot establish that the County's articulated non-discriminatory reason for transferring Vasquez is pretextual. Maj. Op. at 640-41. The County asserts as its reason for the transfer Vasquez' alleged disobedience of a direct order from Berglund, his supervisor *649 at the time. Vasquez proffers both direct and circumstantial evidence of pretext.

The majority applies the wrong standard to Vasquez' disparate treatment claim by disregarding his prima facie case in its pretext analysis. As we have previously held, in order to raise a triable issue of fact, "the plaintiff need not necessarily offer evidence beyond that offered to establish a *prima facie* case. The trier of fact may consider the same evidence that the plaintiff has introduced to establish a *prima facie* case in determining whether the defendant's explanation for the employment decision is pretextual." *Lowe v. Monrovia,* 775 F.2d 998, 1008 (9th Cir.1985) (citations omitted) (emphasis in original); *see also Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 4:07-cv-03224-SBA    Document 1-36    Filed 06/19/2007    Page 14 of 19

349 F.3d 634                                                                                                                                      Page 13
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685, 2003 Daily Journal D.A.R. 12,205
(Cite as: 349 F.3d 634)

In its pretext analysis, the District Court and the majority should have considered the evidence of discrimination proffered by Vasquez regarding Berglund's discriminatory comments and her role in Leeds' decision to transfer Vasquez. " '[V]ery little evidence' " is necessary to raise a genuine issue of fact regarding an employer's motive. *Godwin,* 150 F.3d at 1220 (quoting *Lindahl v. Air France,* 930 F.2d 1434, 1438 (9th Cir.1991)). It is undeniable that Berglund's explicit epithets constitute direct evidence of discrimination. *See id.* at 1221. Although Leeds made the ultimate transfer decision, Berglund's report "set in motion the chain of events that led to ... the adverse employment action." *Gilbrook,* 177 F.3d at 854. As noted earlier, whether Berglund was sufficiently involved in the decision to impute her discriminatory animus to the County is a jury question. *Godwin,* 150 F.3d at 1221.

In addition, the majority should have considered circumstantial evidence of pretext. Courts may consider myriad forms of evidence, even the employer's "reaction, if any, to [plaintiff's] legitimate civil rights activities." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Here, Leeds previously responded to Vasquez' grievance regarding Berglund's discriminatory remarks by threatening to transfer him if he did not withdraw it. Leeds' threat to transfer Vasquez for filing a grievance tends to show a discriminatory motive. *Id.* Vasquez further proffered, as circumstantial evidence of pretext, his testimony that Berglund did not forbid him from playing football. *See Aragon,* 292 F.3d at 658.

Furthermore, the majority fails to consider the relevant facts and circumstances surrounding Vasquez' transfer in their pretext analysis. Vasquez' removal from Turquoise cottage was the culmination of Berglund's efforts to have Vasquez transferred to a field position. Vasquez had resisted a transfer at every step, going so far as to pass up promotions and withdrawing a grievance of racial and sexual discrimination against Berglund to avoid the transfer to the field. Taken together, this evidence is sufficiently "specific" and "substantial" to preclude summary judgment on his disparate treatment claim. *Godwin,* 150 F.3d at 1222. Thus, Vasquez raised a triable issue as to his disparate treatment claim.

The majority also argues that Vasquez and Ng were not similarly situated because "Ng did not engage in problematic conduct of comparable seriousness to that of Vasquez." Maj. Op. at 641-42. However, they fail to see the District Court's *650 error in finding as a matter of law that Ng was not similarly situated to Vasquez for purposes of determining whether Ng was treated more favorably than Vasquez. Ng was a co-worker of Vasquez', who was also a DPO [FN1] at DKC and who participated in the football game. The District court determined, and the majority agreed, that he was not similarly situated because Vasquez had proffered no evidence that Ng was told not to organize the game or that he disobeyed the direct order of a supervisor.

> FN1. The Dorothy Kirby Center ("DKC") had gradations of Deputy Probation Officers ("DPOs"), including DPO Is, who are in direct contact with the minors under the leadership of DPO IIs, and DPO IIIs, who coordinate and supervise the programs at the DKC.

This analysis is flawed for one glaring reason: Vasquez contends that Berglund did not forbid him from organizing the flag football game. If the District Court had properly refrained from weighing the evidence and had viewed it in the light most favorable to Vasquez, then he *was* similarly situated to Ng because he was punished for organizing a game from which he was not told to refrain and he did not otherwise know it to be against the rules. Accordingly, he was treated less favorably than a similarly situated DPO I even though he did not allegedly disobey a supervisor or flout any rule of the DKC. This differential treatment is further evidence of pretext. *See Gerdom v. Continental Airlines,* 692 F.2d 602, 609 (9th Cir.1982) (en banc).

The value and import of circumstantial evidence in Title VII cases was recently affirmed by the Supreme Court in *Desert Palace, Inc. v. Costa,* 539 U.S. 90, ----, 123 S.Ct. 2148, 2155, 156 L.Ed.2d 84 (U.S.2003), which affirmed an en banc court of our circuit by holding that "[i]n order to obtain an instruction under § 2000e-2(m) [of the 1991 Civil Rights Act], a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.' " In rejecting the petitioner's argument that direct evidence was required for an instruction to be given, the Court stated, "We have often acknowledged the utility of circumstantial evidence in discrimination cases ... The reason for treating circumstantial and direct evidence alike is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 4:07-cv-03224-SBA    Document 1-36    Filed 06/19/2007    Page 15 of 19

349 F.3d 634                                                                                                                    Page 14
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685, 2003 Daily Journal D.A.R. 12,205
(Cite as: 349 F.3d 634)

both clear and deep-rooted: 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.' " *Id.* at 2154 (quoting *Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 508 n. 17, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)*). Accordingly, in light of both the direct and circumstantial evidence of discrimination that Vasquez offered, he should not have had a problem surviving the County's summary judgment motion. In sum, I would reverse the summary judgment because Vasquez proffered sufficient evidence of discriminatory intent. The District Court erred in disposing of Vasquez' claims at summary judgment and should instead have allowed his case to go forward.

## II. RETALIATION CLAIM

To sustain his retaliation claim, Vasquez must show: "(1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) that a causal link exists between the protected activity and the adverse action." *Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir.2000)*. The majority holds that Vasquez' retaliation claim fails because Vasquez did not show a causal link between the protected activity and the adverse employment action. Alternatively, the majority states that Vasquez failed to establish that the stated reason for the *651 transfer was pretextual. However, I would find that Vasquez made out a prima facie case of retaliation with regard to all three elements.

First, Vasquez showed that "he engaged in a protected activity" when he filed the February 1998 grievance regarding Berglund's discriminatory statements.

Second, Vasquez has shown that his employer subjected him to an adverse employment action. In *Ray,* we adopted a broad test for evaluating alleged adverse employment actions in the context of Title VII retaliation claims. Specifically, we held that, for purposes of Title VII retaliation claims, "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Id.* at 1243 (footnote omitted). We adopted the Equal Employment Opportunity Commission's ("EEOC") test for such actions, reasoning that its standard is "consistent with our prior case law and effectuates the language and purpose of Title VII." *Id.* (relying on EEOC Compliance Manual Section 8, "Retaliation," Par. 8008 (1998)). The EEOC, in turn, adopted this test "based on statutory language and policy considerations." EEOC Compliance Manual, § 8-II(D)(3) (1998). Retaliation claims are governed by 42 U.S.C. § 2000e-3(a) (2003), which provides that it is "an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by [Title VII]."

While the majority assumes "that the transfer met the *Ray* standard," I would explicitly find that an adverse employment action in fact exists for purposes of Vasquez' retaliation claim. Maj. Op. at 646. Vasquez' transfer from the Turquoise cottage to the field position constitutes an adverse employment action if it was "reasonably likely to deter [him] from engaging in protected activity." *Ray,* 217 F.3d at 1242-43 (internal quotation marks and citation omitted). [FN2] This is a unique case in which the facts show that the transfer *actually did deter* Vasquez from engaging in protected activity. In fact, Vasquez withdrew his grievance against Berglund after Leeds told him that the only solution to the conflict between them was to transfer him out of the Turquoise cottage, and that the only way he could avoid the transfer was to withdraw his grievance against Berglund. He promptly did. Thus, Vasquez raised a triable issue as to the adverse employment action since a reasonable jury could find that the transfer was reasonably likely to deter Vasquez' protected activity.

> FN2. Retaliation claims in the First Amendment context are similarly closely scrutinized. In *Rutan v. Republican Party, 497 U.S. 62, 76 n. 8, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)*, the Supreme Court stated, "the First Amendment ... protects state employees not only from patronage dismissals but also from 'even an act of retaliation as trivial as failing to hold a birthday party for a public employee ... when intended to punish her for exercising her free speech rights.' " (quoting the lower court opinion at *868 F.2d 943, 954 n. 4 (7th Cir.1989)*). In other words, even seemingly trivial retaliation can rise to the level of a constitutional violation.

Third, Vasquez proffered sufficient evidence that a causal link existed between the protected activity and the adverse action. Although the passing of the year between his protected activity in February of 1998

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 4:07-cv-03224-SBA   Document 1-36   Filed 06/19/2007   Page 16 of 19

349 F.3d 634                                                                                                                    Page 15
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685, 2003 Daily Journal D.A.R. 12,205
(Cite as: 349 F.3d 634)

and the transfer in March of 1999, standing alone, is probably too long to raise an inference of discrimination, Vasquez also proffered evidence of Berglund's retaliatory motive and prior attempts to have him transferred. For example, in a memo dated March 20, 1998, Berglund *652 wrote to Leeds: "It seems clear beyond a doubt that Mr. Vasquez[ ] may not be the ideal candidate to work in a cottage with the minors at DKC." Vasquez also testified that Berglund threatened to "get" him and attempted to pressure him into transferring out of the Turquoise cottage.

Despite this evidence, the majority finds that Vasquez failed to show a causal link, citing our decision in *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir.2002), for the proposition that the year between Vasquez' protected activity and the adverse employment action severed the causal link. In *Villiarimo,* we held that "[a] nearly 18-month lapse between protected activity and an adverse employment action is simply too long, *by itself,* to give rise to an inference of causation." *Id.* at 1065 (emphasis added). The critical difference in the instant case is that timing was not the sole evidence of causation that Vasquez proffered. As noted earlier, Vasquez provided evidence of Berglund's racially discriminatory comments as well as her prior efforts to have him transferred to the field.

Additionally, the majority holds that Vasquez' retaliation claim fails because Vasquez has not shown that the County's proffered reason for the adverse action--that he allegedly disobeyed a direct order--was pretextual. The majority errs in drawing this conclusion because, as noted previously in my discussion of Vasquez' disparate treatment claim, Vasquez offered both direct and circumstantial evidence of pretext. Berglund's explicit racial epithets, Vasquez' testimony that Berglund did not forbid him from playing football, and Leeds' threat to transfer him when he filed a grievance all support a finding of a triable issue as to his retaliation claim.

### III. HOSTILE WORK ENVIRONMENT CLAIM

Finally, I disagree with the majority's determination that Vasquez' hostile work environment claim fails as a matter of law. To survive summary judgment, Vasquez must raise a triable issue as to whether: (1) he was "subjected to verbal or physical conduct" because of his race and sex; (2) "the conduct was unwelcome"; and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 817 (9th Cir.2002) (internal quotation marks and citation omitted). At issue here is whether a reasonable jury could find that the harassing "conduct was sufficiently severe or pervasive 'to alter the conditions of [Vasquez'] employment and create an abusive working environment.' " *Pavon v. Swift Transportation Co.*, 192 F.3d 902, 908 (9th Cir.1999) (quoting *Meritor Sav. Bank, FSB. v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

Vasquez has proffered evidence that Berglund directed epithets at him and engaged in a campaign of harassment against him because of his race and sex. [FN3] He has also demonstrated that his employer did nothing to stop the harassment. To the contrary, his employers were aware of the harassment but tolerated and possibly endorsed it. I will address both of these aspects of the hostile work environment in turn.

> FN3. The majority states that Vasquez' claim is one for "racially based harassment." Maj. Op. at 642. However, Vasquez asserts that he was harassed because of the confluence of his race and sex, both of which are protected characteristics under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (2003) (forbidding employment discrimination on the basis of race or sex); *cf. Lam v. Univ. of Haw.*, 40 F.3d 1551, 1562 (9th Cir.1994) (recognizing combined race and sex discrimination claims under Title VII).

*653 **A. Berglund's Harassing Conduct**

As the majority recognizes, Vasquez proffered evidence of bigoted statements directed at him by Berglund. She told Vasquez that because he was Hispanic and male, "he was too aggressive, macho and domineering with the minors." She also stated that he had a "typical Hispanic macho attitude" and needed to be less aggressive with the minors. These statements were openly hostile to Vasquez and suggested that he was dangerous and unqualified to work with minors because of his race and sex. In addition, Berglund later told Vasquez that he should transfer out of the Turquoise cottage because "Hispanics do well in the field. You'll be better off. You'll get days off." These statements revealed Berglund's stereotyping of Hispanics as lazy and

Case 4:07-cv-03224-SBA   Document 1-36   Filed 06/19/2007   Page 17 of 19

349 F.3d 634 Page 16
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685, 2003 Daily Journal D.A.R. 12,205
(Cite as: 349 F.3d 634)

unambitious, and are akin to "racial profiling" in the workplace.

However, the hostility toward Vasquez did not stop there. Instead, Berglund engaged in a campaign of deprecation and harassment, the aim of which can only be interpreted as an attempt to cast Vasquez as incompetent and to have him transferred out of the Turquoise cottage. Berglund's harassing conduct included filing a number of false and harassing complaints against Vasquez and threatening him with reprisals and revenge (that she would "get" him). In addition, Berglund subjected Vasquez to public humiliation, screaming at him in front of the minors on several occasions. During one of these episodes, Berglund publicly accused Vasquez of permitting the minors to get high by sniffing fresh paint. During another, she berated him and called him a "juvenile delinquent."

The majority recognizes that Vasquez proffered some evidence of Berglund's "unfair treatment," but fails to consider his claims in the backdrop of ongoing discriminatory behavior alleged by Vasquez. Maj. Op. at 644. Yet, Berglund's repeated attacks on Vasquez' competence and character are inextricably part of the pattern of racial and sexual hostility that Berglund exhibited against Vasquez. See *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1109 (9th Cir.1998). As we stated in *Draper*, "[d]iscriminatory behavior comes in all shapes and sizes, and what might be an innocuous occurrence in some circumstance may, in the context of a pattern of discriminatory harassment, take on an altogether different character, causing a worker to feel demeaned, humiliated, or intimidated on account of [his race and gender]." *Id.* Indeed, Berglund's allegedly false complaints, such as her claim that Vasquez exhibited "inappropriate and provocative behavior with the individual minors," were consistent with her stereotyping that he was too domineering with the minors and had a "typical Hispanic macho attitude." See *Allen v. Mich. Dep't of Corrections,* 165 F.3d 405, 411 (6th Cir.1999) (finding support in plaintiff's claim that he was "treated unfairly" because his allegation of being more closely monitored than white employees was consistent with his supervisor's statement that "niggers can't be trusted").

Discounting the ongoing nature of the harassment and finding only "isolated offensive remarks" and "complaints about unfair treatment," the majority concludes that Vasquez has not proffered sufficient evidence of severe or pervasive harassment to survive summary judgment. Maj. Op. at 644. In so doing, the majority compares Vasquez' allegations to the facts of other cases to conclude that he has not suffered severe or pervasive harassment. However, it is a violation of individual justice to claim that, just because the discrimination in this case was not as severe or pervasive as some of those cases in which we found discrimination, Vasquez has no *654 remedy. The issue is not whether the discrimination was as severe or pervasive as in other cases, but whether Vasquez has presented sufficient facts to have his case decided by a jury. Moreover, the majority's notation that Vasquez alleges "only a few incidents" in which Berglund made discriminatory remarks sends the offensive message that discrimination in small doses is permissible. Maj. Op. at 642.

Here, Vasquez proffered evidence that he was subjected to "derogatory racial [and sexual] insults," which were directed *at him* personally. See *Allen,* 165 F.3d at 410-11 (reversing summary judgment for the employer on a hostile work environment claim when the employee's superiors told him "he was lazy like the rest of his people and that is why they are all in prison," "I'm writing your black ass up," and "niggers can't be trusted."); cf. *Kortan v. Cal. Youth Auth.,* 217 F.3d 1104, 1111 (9th Cir.2000) (affirming summary judgment when only one offensive comment was directed at the employee). Berglund also publicly humiliated and demeaned Vasquez, yelling at him in front of the minors and filing false charges against him. *Ray,* 217 F.3d at 1245-46 (reversing summary judgment when the employee's supervisors "regularly yelled at him during staff meetings; ... called him a 'liar,' a 'troublemaker,' and a 'rabble rouser,' and told him to 'shut up' ").

The tenor of the majority opinion is that Vasquez' claim fails because he simply experienced an interpersonal conflict with Berglund. *See* Maj. Op. at 638, 644. It is beyond dispute that a personality conflict is insufficient to trigger the protections of Title VII. However, this is not the case at hand. Vasquez has proffered evidence that his "conflict" with Berglund originated from her discriminatory statements and the animus she harbored against him as a Hispanic male. While discrimination against Hispanics is not new, the need to prevent and remedy discrimination against this group is particularly important today in light of the fact that the Hispanic community continues to grow across the country. [FN4] Sadly, the majority fails to grasp that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 4:07-cv-03224-SBA   Document 1-36   Filed 06/19/2007   Page 18 of 19

349 F.3d 634   Page 17
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685, 2003 Daily Journal D.A.R. 12,205
(Cite as: 349 F.3d 634)

nature of Berglund's conflict with Vasquez is in all likelihood based on her animosity towards Hispanics. The substance of her comments reveals particularly offensive stereotypes about Hispanics as lazy, and about Hispanic males as aggressive and domineering. Our society should not tolerate this type of racial prejudice *anywhere,* but it is particularly pernicious in a protected environment such as the workplace. Berglund's racist remarks, combined with the allegations of her humiliating comments and false accusations, suffice to raise a triable issue as to whether Vasquez was subjected to an abusive workplace because of his race and his sex.

> FN4. In June 2003, the U.S. Census Bureau reported that Hispanics became the nation's largest minority community. Press Release, U.S. Census Bureau, U.S. Department of Commerce News, Young, Diverse, Urban (June 18, 2003), at http://www.census.gov/Press-Release/www/2003/cb03-100.html. This demographic trend is even more prevalent in California, where Hispanics account for the majority of births in the state. "Based on birthrates, Latinos will constitute the majority of children entering California kindergartens in the fall of 2006; the majority entering high school in 2014; *the majority of workers entering the labor force in 2017;* and the majority of young adults eligible to vote by 2019." Lisa Richardson & Robin Fields, *Latinos Account for Majority of Births in California,* at http://www.latimes.com/news/local/la-me-births6feb06,1,920880.story (Feb. 6, 2003) (emphasis added). In Los Angeles County, where DKC is located, Hispanics comprise 44.6% of the population. L.A. County Online, Statistical Data, at http://lacounty.info/statistical_information.htm (last visited July 8, 2003).

**\*655 B. The County's Complicity in the Harassment**

The majority overlooks the actions of Vasquez' employer in analyzing his hostile work environment claim. However, the failure of his superiors to do anything to stop or to remedy the known harassment by Berglund is a violation of Title VII in and of itself.

We have held that, "[b]y tolerating sexual harassment against its employees, the employer is deemed to have adversely changed the terms of their employment in violation of Title VII." Swenson v. Potter, 271 F.3d 1184, 1191 (9th Cir.2001) (citation and footnote omitted).

> If the employer fails to take corrective action after learning of an employee's sexually [or racially] harassing conduct, or takes inadequate action that emboldens the harasser to continue [her] misconduct, the employer can be deemed to have "adopt[ed] the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy."

*Id.* at 1192 (third alteration in original) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 789, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). In such cases, it is the "adequacy of the employer's response, not the co-worker's underlying behavior[,]" that is alleged to be discriminatory. *Id.* at 1191 (identifying relevant conduct for determining whether the plaintiff's claim was time barred).

Here, both Leeds and Vasquez' direct supervisor, Star French ("French"), were aware of Berglund's discriminatory conduct, but did nothing to stop it. In fact, when Vasquez filed a grievance concerning Berglund's statements that he had a "typical Hispanic macho attitude," Leeds informed Vasquez that the only step she would take to remedy the situation was to transfer him from the Turquoise cottage. Further, the only way that he could avoid the transfer was by withdrawing his grievance.

In addition, French testified at her deposition that she had encouraged Vasquez to transfer away from Berglund and could not understand why he would not. She lamented to him: "Oh my God, let the pain end. Stop the pain. Do you enjoy the pain?" Thus, French was fully aware of Berglund's harassment of Vasquez, but she did nothing to alleviate the hostility of the situation.

Neither Leeds nor French took "corrective action" that was "reasonably calculated to end the harassment." *Id.* at 1192 (internal quotation marks and citations omitted). Rather, Leeds' threat to transfer Vasquez only demonstrated to both him and Berglund that their employer would permit the harassment to continue. In fact, the lack of corrective action emboldened Berglund, who continued to make further discriminatory statements, such as her derisive suggestion that Vasquez transfer because Hispanics are better suited for the field. Under these "circumstances, the non-action by the employer can fairly be characterized as acquiescence, i.e., having

349 F.3d 634 Page 18
349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685, 2003 Daily Journal D.A.R. 12,205
**(Cite as: 349 F.3d 634)**

changed the terms and conditions of employment to include putting up with harassment from other employees." *Brooks v. City of San Mateo,* 229 F.3d 917, 924 n. 4 (9th Cir.2000) (citation omitted).

In short, Vasquez was subjected to explicit racial and sexual epithets, as well as ongoing harassment by Berglund. Whether the harassment was sufficiently severe or pervasive to constitute a hostile working environment under Title VII should be left to the jury to determine. Further, the inaction of Vasquez' employer exacerbated, rather than corrected, the hostility of the workplace. As the Supreme Court stated *656 in *Oncale v. Sundowner Offshore Services, Inc.*, "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." 523 U.S. 75, 81-82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Under the totality of the circumstances, a reasonable jury could conclude that Vasquez was subjected to "a pattern of ongoing and persistent harassment severe enough to alter the conditions of [his] employment." *Morgan v. Nat'l R.R. Passenger Corp.,* 232 F.3d 1008, 1017 (9th Cir.2000), rev'd in part on other grounds, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (internal quotation marks and citations omitted). In the alternative, a reasonable jury could find that the failure of Vasquez' employer to stop the harassment "changed the terms and conditions of [his] employment to include putting up with harassment" from Berglund. *Brooks,* 229 F.3d at 924 n. 4 (citation omitted).

### IV. CONCLUSION

Under Title VII, an employee has a "right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, FSB.,* 477 U.S. at 65, 106 S.Ct. 2399 (citation omitted). Here, Vasquez has proffered evidence that he was subjected to an adverse employment action because of his race and sex, as well as his protected activities. He also proffered evidence that he was subjected to an abusive workplace because he is a Hispanic male, and that his employer failed to do anything about it. The proffered evidence is sufficient to survive summary judgment, and Vasquez' claims of disparate treatment, hostile work environment, and retaliation should go to a jury. Accordingly, I dissent.

349 F.3d 634, 92 Fair Empl.Prac.Cas. (BNA) 1630, 84 Empl. Prac. Dec. P 41,600, 03 Cal. Daily Op. Serv. 9685, 2003 Daily Journal D.A.R. 12,205

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.